UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: NORTH SEA BRENT CRUDE OIL FUTURES LITIGATION | Master File No. 13-md-02475-ALC-SN |
| KEVIN McDONNELL, ANTHONY INSINGA, ROBERT MICHIELS and JOHN DEVIVO, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ROYAL DUTCH SHELL PLC, BP PLC, STATOIL ASA, MORGAN STANLEY, TRAFIGURA BEHEER B.V., TRAFIGURA AG, PHIBRO TRADING LLC, VITOL, S.A. and JOHN DOES 1-50,<br><br>                    Defendants. | Case No. 13 Civ. 07089-ALC-SN<br><br>ECF Case |
| NEIL TAYLOR, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>ROYAL DUTCH SHELL PLC, BP PLC, STATOIL ASA, MORGAN STANLEY, TRAFIGURA BEHEER B.V., TRAFIGURA AG, PHIBRO TRADING LLC, VITOL, S.A., and JOHN DOES 1-50,<br><br>                    Defendants. | Case No. 13 Civ. 8179-ALC<br><br>ECF Case |

MEMORANDUM OF LAW IN SUPPORT OF MOTION
OF PLAINTIFFS KEVIN McDONNELL, ANTHONY INSINGA,
ROBERT MICHIELS, JOHN DEVIVO AND NEIL TAYLOR TO
APPOINT KIRBY McINERNEY LLP AS INTERIM LEAD COUNSEL

Proposed Lead Counsel

David E. Kovel
KIRBY McINERNEY LLP
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: 212-371-6600

November 20, 2013

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 3

ARGUMENT ..................................................................................................................... 5

I.    KIRBY McINERNEY WILL MOST ADEQUATELY REPRESENT THE CLASS
      AND MOST EFFICIENTLY PROSECUTE THE CLAIMS ............................................ 5

      A.    Appointment Of Interim Class Counsel Under Rule 23(g) Is Appropriate ............ 5

      B.    Kirby McInerney Is The Most Adequate Counsel Under The Mandatory
            Criteria of Rule 23(g), As Well As Any Discretionary Criteria ............................. 6

            1.    Rule 23(g)(1)(A)(i): The Work Done In Identifying And
                  Investigating The Claims ........................................................................... 7

            2.    Rule 23(g)(1)(A)(ii) And (iii): Experience With And Substantive
                  Knowledge Of Claims Of The Type Asserted In This Litigation And
                  Class Actions Generally............................................................................. 8

            3.    Rule 23(g)(A)(iv): The Ability To Commit The Substantial
                  Resources Needed To Prosecute This Litigation ...................................... 14

            4.    Rule 23(g) Discretionary Criteria: Additional Factors Demonstrating
                  The Ability To Most Adequately Protect All Interested Plaintiffs .......... 16

II.   THE RELATED ACTIONS ARE APPROPRIATE FOR CONSOLIDATION AND
      THE *HARTER* ACTION SHOULD BE COORDINATED ............................................... 20

CONCLUSION.................................................................................................................. 22

i

# TABLE OF AUTHORITIES

**Cases** **Pages**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
240 F.R.D. 56 (E.D.N.Y. 2006) ...................................................................... 6, 19

*In re Bear Stearns Cos., Inc. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
No. 08 MDL 1963, 2009 WL 50132 (S.D.N.Y. Jan. 9, 2009) ........................................ 6, 10

*In re Comverse Tech., Inc.*,
No. 06 Civ. 1849, 2006 WL 3511375 (E.D.N.Y. Dec. 5, 2006) ........................................... 7

*In re Crude Oil Commodity Futures Litig.*,
No. 11 Civ. 3600 (S.D.N.Y. July 22, 2011, Aug. 3, 2011, Aug. 11, 2011) ......................... 21

*Deangelis v. Corzine*,
286 F.R.D. 220 (S.D.N.Y. 2012) ............................................................................. 6

*Green Meadows Partners LLP v. Tomkinson*,
No. SACV 06-91, 2006 WL 6885989 (C.D. Cal. June 6, 2006) .......................................... 16

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ........................................................................ 20, 21

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*
No. 11 MD 2262 (NRB) (S.D.N.Y.) ......................................................... 5, 13, 21

*In re Mun. Derivatives Antitrust Litig.*,
252 F.R.D. 184 (S.D.N.Y. 2008) .......................................................................... 6, 7

*Pearlman v. Cablevision Sys. Corp.*,
No. 10 Civ. 4992 (JS), 2011 WL 477815 (E.D.N.Y. Feb. 1, 2011) ...................................... 5

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
MDL No. 2109, No. 09 C 7666, 2010 WL 1433316 (N.D. Ill. Apr. 7, 2010) ........................ 7

*In re Platinum & Palladium Commodities Litig.*,
No. 10 Civ. 3617 (S.D.N.Y. July 20, 2010) ............................................................... 20

*Resnik v. Woertz*,
774 F. Supp. 2d 614 (D. Del. 2011) ................................................................... 14, 16

*Sofran v. LaBranche & Co., Inc.*,
220 F.R.D. 398 (S.D.N.Y. 2004) ............................................................................ 20

*Strobl v. New York Mercantile Exch.*,
    768 F.2d 22 (2d Cir. 1985) ................................................................... 20

**Rules and Statutes**

Fed. R. Civ. P. 23(g)(3) ........................................................................... 1, 5

Fed. R. Civ. P. 23(g)(1)(A) ........................................................................ 6

Fed. R. Civ. P. 42(a) ............................................................................ 20, 21

7 U.S.C. § 1, *et seq*................................................................................... 4

15 U.S.C. § 1 .............................................................................................. 4

15 U.S.C. § 2 .............................................................................................. 4

28 U.S.C. § 1407 ....................................................................................... 21

17 C.F.R. § 180.1 ...................................................................................... 14

Dodd Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 741,
124 Stat. 1376, 1731 (2010)...................................................................... 14

Section 6(c)(1) of the CEA 7 U.S.C. § 9 ................................................... 14

**Secondary Authorities**

3 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*
    § 9.35 at 388 (4th ed. 2002)................................................................. 6, 16

*Manual for Complex Litigation* (Fourth) § 10.22 (2004) ........................ 5, 6

# INTRODUCTION

Plaintiffs Kevin McDonnell, Anthony Insinga, Robert Michiels, John Devivo and Neil Taylor (collectively, the "Plaintiffs") respectfully move this Court for an order pursuant to Federal Rule of Civil Procedure 23(g)(3) appointing the law firm Kirby McInerney LLP ("Kirby McInerney") as Interim Lead Counsel for all related actions and the putative class of plaintiffs trading Brent crude oil futures contracts.[1]  In weighing a Rule 23(g)(3) motion, a court considers the work counsel has done in investigating plaintiff's claims and allegations, its experience in prosecuting the types of claims asserted and knowledge of the substantive law, and the resources it will dedicate to litigating the matter.  As discussed below, all of these factors weigh heavily in favor of appointing Kirby McInerney.

The majority of plaintiffs in the related actions[2] support Kirby McInerney's appointment because it is the best positioned to steer the case under the relevant criteria:

### Kirby McInerney's Investigation:

- Kirby McInerney has devoted the most resources to investigating and prosecuting this litigation so far.  As a consequence, Plaintiffs' complaints[3] contain the most substantial and particularized allegations, including allegations of manipulation in February 2011 and September 2012.  The complaints provide previously unreported allegations of

---

[1]  The "related actions" are listed in Exhibit "A" to the Declaration of David E. Kovel in Support of Motion of Plaintiffs Kevin McDonnell, Anthony Insinga, Robert Michiels John Devivo and Neil Taylor To Appoint Kirby McInerney LLP as Interim Lead Counsel (the "Kovel Decl."), which was filed contemporaneously herewith.  If appointed as interim lead counsel, Kirby McInerney will work with the law firms representing plaintiffs in various related actions and propose to the Court a Case Management Order to prosecute efficiently and effectively this litigation.

[2]  Kirby McInerney, with the law firm Glancy Binkow & Goldberg, LLP, also represents Plaintiff White Oak Fund LP ("White Oak"), which filed a Class Action Complaint in this action on July 1, 2013 (No. 13 Civ. 4553).  Plaintiff White Oak supports this motion for Kirby McInerney to be appointed interim lead counsel for all of the related actions.  Additionally, the law firms of Motley Rice, Lieff Cabraser Heimann & Bernstein LLP, and Berger & Montague, P.C., which filed Class Action Complaints in this District on behalf of plaintiffs: i) FTC Capital GmbH (No. 13 Civ. 8151); ii) Praetor Capital Cayman Ltd., Praetor Capital Management Ltd., Praetor VII Futures & Options Fund Ltd., Praetor VII Futures and Options Master Fund Ltd. (No. 13 Civ. 8270); and iii) Aaron Schindler (No. 13 Civ. 8240), respectively, all support this motion for Kirby McInerney to be appointed interim lead counsel for all of the related actions.

[3]  *See McDonnell, et al., v. Royal Dutch Shell plc., et al.*, No. 13 Civ. 7089 (S.D.N.Y. filed Oct. 4, 2013) and *Taylor v. Royal Dutch Shell plc., et al.*, No. 13 Civ. 8179 (S.D.N.Y. filed Nov. 15, 2013).

manipulation in the Brent crude oil market, including wash trades and other manipulative behavior. Moreover, Plaintiffs' allegations uniquely describe the Brent crude oil market, including the mechanics of how the physical market works. Prior to the filing of Plaintiffs' complaints, no other complaint adequately described how Platts defines its Dated Brent flagship benchmark price.

- Kirby McInerney's investigation uncovered additional Defendants [4] not previously included in the other cases. Notably, nothing in the public record previously indicated that these Defendants were engaged in manipulation, a fact brought to light solely by Kirby McInerney's due diligence. Further, the allegations pertaining to these Defendants are highly particularized, both in terms of the timing of the manipulations and the specificity of the conduct. These specific allegations contrast sharply with those of the other extant complaints, which simply note that the European Commission was investigating three oil trading firms[5] and merely recount other public information.

**Kirby McInerney's Experience and Substantive Knowledge:**

- Kirby has led or is leading some significant oil cases and some of the leading private antitrust and commodities cases currently being prosecuted, including the *In re LIBOR-Based Financial Instruments Antitrust Litigation*, No. 11 MD 2262, No. 11 Civ. 2613 (S.D.N.Y.).

- In this litigation, Kirby McInerney represents some of the largest and most active market participants and traders with years of experience trading Brent Crude Oil futures contracts. *See, e.g.,* Complaint ¶¶ 23-26.[6] At various times during the Class Period, Plaintiffs also held one or more key managing positions on various NYMEX committees, including the NYMEX Crude Oil Advisory Committee, Floor Committee and Adjudication Committee. *Id.* ¶¶ 23, 24.

- Plaintiffs' complaints also contain a new, critical legal claim not previously brought in any other case – a claim for manipulation by false reporting in violation of the Commodity Exchange Act. Rule 180.1(a) is a new rule promulgated under the Dodd Frank Act. To Plaintiffs' knowledge, this is the first private action in which the claim has been brought.[7]

---

[4] Those defendants are Morgan Stanley, Vitol S.A., Phibro Trading LLC, Trafigura AG, and Trafigura Beheer B.V.

[5] These three oil trading firms are Statoil ASA, Royal Dutch Shell plc, and BP plc.

[6] References herein to "Complaint ¶¶ __" are to Plaintiffs' Class Action Complaint captioned *McDonnell, et al., v. Royal Dutch Shell plc, et al.*, No. 13 Civ. 7089 (S.D.N.Y. filed Oct. 4, 2013).

[7] The Commodity Futures Trading Commission employed this rule for the first time in a recent action against JP Morgan. *See* Commodity Futures Trading Commission's Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions in the matter of JPMorgan Chase Bank, N.A., dated October 16, 2013, available at: http://www.cftc.gov/ucm/groups/public/@lrenforcementactions/documents/legalpleading/enfjpmorganorder101613. pdf, last accessed November 20, 2013.

**Kirby McInerney's Resources:**

- Kirby McInerney has the resources and the skill set to bring to this highly arcane area of business and the law.  Kirby McInerney has a team of proven commodities lawyers and trial lawyers (including former prosecutors and commodities traders) who will litigate this action.

- Various highly-qualified firms representing other plaintiffs in related actions in their own right support the appointment of Kirby McInerney.  These firms include: Lieff Cabraser Heimann & Bernstein LLP; Berger & Montague, P.C.; Glancy Binkow & Goldberg, LLP; and Motley Rice LLC, which all are leading firms in class action litigation and have track records demonstrating their expertise and effectiveness in litigation with antitrust and CEA claims like those asserted here.  Collectively these firms will provide substantial support to the litigation led by Kirby McInerney.

Plaintiffs' complaints demonstrate extensive, independent and through investigation, well beyond any other allegations in other complaints filed.  The high quality of the complaints prepared and filed by Kirby McInerney weighs in support of appointment as interim class counsel.  Further, appointment of Kirby McInerney as interim class counsel will protect the interests of all investors impacted by Defendants' conduct.

For these reasons, and for the additional reasons provided in Plaintiffs' contemporaneous *ex parte* submission to the Court[8], Kirby McInerney should be appointed interim class counsel.

## BACKGROUND

In their complaints, Plaintiffs allege that defendants Royal Dutch Shell plc, BP plc, Statoil ASA, Morgan Stanley, Trafigura AG, Trafigura Beheer B.V., Phibro Trading LLC, Vitol, S.A. and others (collectively, "Defendants") unlawfully fixed and restrained trade in, and manipulated the market, for North Sea Brent Crude Oil ("Brent Crude Oil").  Plaintiffs further allege that Defendants manipulated prices for Brent Crude Oil futures contracts traded on the New York Mercantile Exchange ("NYMEX") and other electronic boards of trade and exchanges

---

[8] *See Ex Parte In Camera* Declaration of David E. Kovel in Support of Plaintiffs' Motion to Appoint Kirby McInerney LLP as Interim Lead Counsel (the "Kovel *Ex Parte In Camera* Decl."), which Plaintiffs submitted to the Court to be filed under seal because it contains work product and confidential information that cannot be publicly disclosed.

accessible in the United States.  Plaintiffs assert claims under: (i) the Commodity Exchange Act (the "CEA"), as amended, 7 U.S.C. § 1, *et seq.* (the "CEA") and the rules promulgated thereunder; (ii) the Sherman Act, 15 U.S.C. §§ 1 and 2; and (iii) the common law.  Plaintiffs seek a class action recovery on behalf of themselves and those persons who traded Brent Crude Oil futures contracts during the period of at least 2002 through the present (the "Class Period").

Plaintiffs' complaints describe in detail the process by which Platts determines its flagship Dated Brent benchmark price.  This includes the link between "Cash BFOE", the nearby contract for differences ("CFD") markets during the 10 to 21 (or 25) day delivery dates, and the "North Sea Dated Strip."  Complaint ¶¶ 38, 47, 64-68.  The complaints then describe the method by which these various over-the-counter ("OTC") markets interact to derive the Dated Brent price during the 30-minute market on close ("MOC"). *Id.* ¶¶ 68-74.  The complaints even provide a concrete example of the pricing in action on February 24, 2011. *Id.* ¶¶ 118-31.

More than simply describing the process by which Platts determines the Dated Brent benchmark and alleging plausibly that the process itself was highly vulnerable to manipulation (which they do), the complaints also provide detailed allegations of manipulation by all Defendants of prices during the Platts MOC, including two specific periods – February 2011 and September 2012 – during which Plaintiffs allege certain directly anticompetitive trades.  As alleged, during these two periods, Defendants engaged in disruptive and manipulative trading during the Platts MOC window at least in part to benefit their Brent Crude Oil derivatives positions. *Id.* ¶¶ 92-183.

Thus, for instance, Plaintiffs state that on February 24, 2011, Shell managed to control the entire MOC process and price Dated Brent at a level which was approximately $1 lower than more accurate, market-based trades taking place outside of the 10-21 day window. *Id.* ¶¶ 123-36.

Plaintiffs allege that Shell undertook this downward manipulation with Morgan Stanley in order to advantage its large short CFD positions. *Id.* ¶¶ 133, 138. As another example, Plaintiffs allege that on September 25, 2012, Shell sold a cargo to Trafigura as a wash sale, "intended solely to influence the MOC process and prices of Dated Brent." *Id.* ¶ 172. Plaintiffs allege that this was a wash transaction because "Shell mistakenly offered the [] cargo" on the next day. *Id.* ¶ 173. Notably, the complaints also provide certain Defendants' positions in the OTC market and detail manipulation relating to the relationship between Brent crude oil and Dubai crude oil. *See e.g.*, ¶¶ 104, 115, ¶¶ 183-88.

No other complaint filed prior to Plaintiffs' complaints contains this level of detail as to the manipulation of the markets.

## ARGUMENT

## I.   KIRBY MCINERNEY WILL MOST ADEQUATELY REPRESENT THE CLASS AND MOST EFFICIENTLY PROSECUTE THE CLAIMS

### A.   Appointment Of Interim Class Counsel Under Rule 23(g) Is Appropriate

Federal Rule of Civil Procedure 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). In large proposed class actions such as this one, courts routinely appoint interim class counsel to coordinate prosecution of the matter for plaintiffs.[9] Appointment of interim class counsel "clarifies responsibility for the protection of the interests of the putative class[,]" ensuring the case is litigated as efficiently as possible. *Pearlman v. Cablevision Sys. Corp.*, No. 10 Civ. 4992 (JS), 2011 WL 477815, at *2 (E.D.N.Y. Feb. 1, 2011). Moreover, the *Manual for Complex Litigation* **recommends** that early in complex litigation, the

---

[9] *See, e.g.*, Memorandum and Order, *In re LIBOR-Based Fin. Instruments Antitrust Litig.* No. 11 MD 2262 (S.D.N.Y. Nov. 29, 2011), ECF No. 66 (appointing Kirby McInerney co-lead interim counsel for the class of plaintiffs trading futures contracts impacted by LIBOR manipulation).

court select and authorize attorneys to act on behalf of other counsel and their clients.  All counsel so designated "assume a responsibility to the court and an obligation to act fairly, efficiently, and economically in the interests of all parties and parties' counsel."  *Manual for Complex Litigation* (Fourth) § 10.22 (2004).[10]

### B.    Kirby McInerney Is The Most Adequate Counsel Under The Mandatory Criteria of Rule 23(g), As Well As Any Discretionary Criteria

Rule 23(g)(1)(A) enumerates the mandatory factors that courts consider in appointing class counsel.  These factors have been used repeatedly to guide interim class counsel decisions. *See In re Bear Stearns Cos., Inc. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 08 MDL 1963, 2009 WL 50132, at *11 (S.D.N.Y. Jan. 9, 2009) (It is "generally accepted that the considerations set out in Rule 23(g)(1)(c), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification.") (quoting *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006)). The mandatory factors are:

> (1) the work counsel has done in identifying or investigating potential claims in the action;
>
> (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;
>
> (3) counsel's knowledge of the applicable law; and
>
> (4) the resources counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A); *see Deangelis v. Corzine*, 286 F.R.D. 220, 223 (S.D.N.Y. 2012) (citing factors in action under federal commodities and securities laws); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (citing factors).

---

[10] In fact, in all class actions, "it is now almost standard practice for the court to issue an order at an early stage."  H. Newberg & A. Conte, *Newberg on Class Actions*, § 9.35 at 390.  Here, the size and complexity of this litigation and the scope of lawsuits involved warrant appointment of interim class counsel at this time to promote efficiency and economy in the representation of all plaintiffs.

As discussed below, each of these factors strongly supports appointment of Kirby McInerney as interim class counsel.

### 1. Rule 23(g)(1)(A)(i): The Work Done In Identifying And Investigating The Claims

Plaintiffs' allegations demonstrate that Kirby McInerney thoroughly investigated Defendants' misconduct and developed the most comprehensive claims asserted by any of the complaints. *See In re Comverse Tech., Inc.*, No. 06 Civ. 1849, 2006 WL 3511375, at *4 (E.D.N.Y. Dec. 5, 2006) (affirming magistrate's appointment of lead counsel on grounds that their complaint contained a "superior factual backdrop"); *In re Mun. Derivatives*, 252 F.R.D. at 186 (considering "work done by counsel in identifying and investigating potential claims in this action, the Court finds that the work done by the Firms weighs in favor of their, appointment as interim lead counsel"). Kirby McInerney has done so through thorough pre-complaint investigation as well as subsequent work enhancing the allegations. *See, e.g.,* Kovel *Ex Parte In Camera* Decl. (submitted *in camera* to be filed under seal).

Plaintiffs' claims are highly technical and involve the interplay between the futures market and derivatives and the physical pricing for Brent Crude Oil. Complaint ¶¶ 11, 192-98. The claims thus require a detailed understanding of commodity futures regulation, the mechanics of physical commodity trading, and trading on futures exchanges such as NYMEX. In this important action, the level of specificity and analysis of artificial pricing for Brent Crude Oil in Plaintiffs' complaints stand out from the other related actions and demonstrates that Kirby McInerney has the requisite detailed understanding to effectively prosecute this action. *See In re Plasma-Derivative Protein Therapies Antitrust Litig.*, MDL No. 2109, No. 09 C 7666, 2010 WL 1433316, at *6 (N.D. Ill. Apr. 7, 2010) (counsel's "amended complaint is detailed and showcases

7

its attorneys' efforts in prosecuting this matter, and the court therefore considered it favorably when evaluating the relative merits of the applicants."). Moreover, prior to filing the complaints, Kirby McInerney performed substantial independent investigations of Defendants' conduct. These investigations included detailed financial and trading analyses; factual and legal research; consultation with experts on Platts and Brent Crude Oil pricing and other experts familiar with the formulas and processes involved in setting Dated Brent prices. Since filing the complaints, Kirby McInerney has continued to investigate and coordinate its efforts with traders and consulting experts and has begun to frame a consolidated complaint, as it continues to perform targeted research of specific issues in this case.

Further setting Kirby McInerney apart is its inclusion of allegations demonstrating the artificial pricing and manipulation of Dated Brent *on specific occasions* during the proposed Class Period, as well as the conspiratorial basis for Defendants' conduct. *See, e.g.,* Complaint ¶¶ 123-38, 142, 151-61, 164-65, 177-82, 185-88, 64-264. Kirby McInerney did so by using trading prices and data to show that Defendants' transactions and reporting were highly unlikely to have occurred absent unlawful collusion among Defendants. *Id.* ¶¶ 1156-57, 60-61, 165-68, 172.

Lastly, the Kovel *Ex Parte In Camera* Decl. explains that these efforts have directly and substantially benefited the litigation and resulted in more detailed identification of the claims.

2.   **Rule 23(g)(1)(A)(ii) and (iii): Experience With And Substantive Knowledge of Claims of The Type Asserted In This Litigation and Class Actions Generally.**

As detailed in the firm resume of Kirby McInerney, which is attached to the Kovel Decl. as Exhibit B, Kirby McInerney is a specialist litigation firm with expertise in antitrust, commodities, securities, and other consumer matters. Kirby McInerney has achieved and is pursuing landmark results in the fields of antitrust, commodities fraud, securities fraud, corporate

8

governance, consumer, and health care, representing our clients in both class actions and individual litigation.

Kirby McInerney has also been a pioneer in securities and class action law, and is one of the oldest firms in the field, with over 60 years of experience. As a consequence of this record, Kirby McInerney's experience in sophisticated financial cases is remarkable. Kirby McInerney has developed expertise in many areas of securities, including in the more obscure securities and fixed income products. Notable examples of its securities cases, includes representation of an investment fund that acted as lead counsel for a certified class of purchasers of Preferred Redeemable Increased Dividend Equity Securities in connection with Cendant Corporation's accounting fraud. *See In re Cendant Corp. PRIDES Litig.*, No. 98 Civ. 2819 (D. N.J.). Kirby McInerney secured a $350 million settlement – an unprecedented 100 percent recovery for the class. Also, representing a bank as lead plaintiff, Kirby McInerney acted as co-lead counsel in connection with a securities action brought against Adelphia Communications Corporation, obtaining a $455 million for the class. Kirby McInerney also represented the New York State Common Retirement Fund as lead plaintiff in *In re National City Corporation Securities, Derivative & ERISA Litigation*, a securities class action arising from National City's alleged misrepresentations regarding exposure to subprime mortgage related losses, and ultimately secured a $168 million settlement. Kirby McInerney recently served as lead counsel in a securities class action lawsuit against Citigroup which settled for approximately $590 million. *In re Citigroup Inc. Sec. Litig.*, No. 07 Civ. 9901 (S.D.N.Y.) (Stein, J.).

Kirby McInerney's experience in antitrust and commodities litigation over the past two decades is also substantial. In commodities litigation, Kirby McInerney has been involved in some of the most cutting edge areas of futures manipulation cases, including a seminal case

involving Sumitomo Corporation's manipulation of the copper market. *See In re Sumitomo Copper Litigation*, No. 96 Civ. 4584 (S.D.N.Y. 1999). Of late, Kirby McInerney has represented market makers and hedge funds in commodities manipulation cases involving silver, propane and fixed income products. *See* Kirby McInerney Firm Resume (Exhibit B to the Kovel Decl.). Kirby McInerney's experience in market manipulation and price fixing for both direct and indirect purchases, in cases brought under the Sherman Act and state law analogs, spans the markets for gasoline, propane, cement, concrete, steel, potash, silver and even fixed income products. Where, as here, Plaintiffs' claims involve a highly specialized area of law, it is appropriate to appoint class counsel with knowledge and experience in the specialized field. *See In re Bear Stearns*, 2009 WL 50132, at *11.

David Kovel, a leader in Kirby McInerney's antitrust and commodities litigation practice and heading the firm's commitment in this matter, has significant experience representing both individual and institutional investors and classes of direct purchasers in antitrust matters. Prior to receiving his JD/MBA from Columbia University, Mr. Kovel was a commodities trader for a large financial firm. As a commodities trader, Mr. Kovel took financial risk in futures and options markets and traded physical markets in US, Europe, Asia and Latin America and became a specialist in understanding market dynamics, especially in pricing matters.

Mr. Kovel leads numerous cases in which Kirby McInerney has been appointed interim co-lead counsel in various antitrust and commodity actions, including those in the oil sector. Under his direction, Kirby McInerney is co-lead counsel in the antitrust and CEA action *In Re: LIBOR-Based Financial Instruments Antitrust Litigation,* No.11 MD 2262 (NRB) (S.D.N.Y.), a case, like here, alleging the manipulation of prices of a global pricing benchmark. Additionally, Mr. Kovel and Kirby McInerney acted as lead counsel in *In re Reformulated Gasoline (RFG)*

*Antitrust and Patent Litigation and Related Actions*, MDL No. 05-1671 (C.D. Cal.), an antitrust class action pertaining to Unocal's alleged manipulation of the standard-setting process for low-emissions reformulated gasoline in California, which plaintiffs claim caused inflated retail prices. This litigation resulted in a $48 million settlement for indirect purchasers.  Kirby McInerney, again under the leadership of Mr. Kovel, was also a co-lead counsel on behalf of indirect purchasers in *In re BP Propane Indirect Purchaser Antitrust Litigation,* No. 06 Civ. 3541 (N.D. Ill.), which resulted in a $15 million settlement on behalf of propane purchasers.

Mr. Kovel and Kirby McInerney also participated as a lead counsel to classes of indirect purchasers in connection with antitrust proceedings against Microsoft in *Charles Cox and Old Factories, Inc. v. Microsoft Corp.*, Index No. 105193/00, Part 3 (N.Y. Sup. Ct.); *Gordon, et al. v. Microsoft Corp.,* No. 00-5994 (Minn. Dist. Ct. Hennepin Cnty. Ct.).  These litigations resulted in settlements totaling nearly a billion dollars for consumers in the States of New York, Florida, Tennessee, West Virginia, and Minnesota (where the litigation proceeded to trial).  The specific cases cited here, conducted on behalf New York and Minnesota consumers, resulted in recoveries of approximately $350 million and $175 million, respectively.  Kirby McInerney also acted as one of the firms with primary responsibility for *In re Visa Check/Mastermoney Antitrust Litigation*, No. 96 Civ. 5238 (E.D.N.Y.), a case on behalf of a class of retailers in connection with Visa MasterCard policies pertaining to debit card fees.  The litigation resulted in a settlement of over $3 billion for the class and landmark injunctive relief.

Many of Kirby McInerney's other attorneys are also exceptionally well versed in antitrust litigation.  Prior to joining Kirby McInerney, Alice McInerney was Chief of the Investor Protection Bureau and Deputy Chief of the Antitrust Bureau of the New York Attorney General's office.  Other partners from Kirby McInerney who will work on the case include

11

former prosecutors with substantial trial experience.  For example, Andrew McNeela served as Assistant United States Attorney for the Southern District of New York for five years prior to joining Kirby McInerney, and represented the United States in a wide array of affirmative and defensive civil litigation.

Kirby McInerney has further represented a variety of healthcare entities in antitrust and deceptive trade practices involving medical devices and pharmaceutical products, including: *In re Hypodermic Products Direct Purchaser Antitrust Litig.*, MDL No. 1730 (D. N.J.) and *Saint Francis Medical Ctr. v. C.R. Bard, Inc.*, No. 07 Civ. 00031 (E.D. Mo.) (lead counsel of direct purchaser class alleging monopolization).  Kirby McInerney successfully represented the City of New York in a case against GlaxoSmithKline PLC ("GSK") alleging that GSK monopolized the market for the compound paroxetine (generic Paxil).  *See City of New York v. GlaxoSmithKline PLC, et al.*, No. 04 Civ. 2134 (E.D. Pa.).  Kirby McInerney also represented the City of New York in analogous generic blocking antitrust litigation in the market for Oxycontin.  *See City of New York v. Purdue Pharma Co., et al.*, No. 04 Civ. 3499 (S.D.N.Y.) (Stein, J.).  And Kirby McInerney has represented whistleblowers in *qui tam* actions involving generic blocking, including representing the former head of worldwide patent litigation for one of the largest pharmaceutical companies in the world.

Overall, Kirby McInerney has represented clients in a wide variety of antitrust matters at the trial and appellate level in state and federal courts throughout the country.  *See* Kirby McInerney Firm Resume (attached as Exhibit B to the Kovel Decl.).  As noted above, relevant examples of the firm's antitrust experience include the following, among others:

• *In re Visa Check/MasterMoney Antitrust Litigation*, No. 96 Civ. 5238 (S.D.N.Y.) (over $3 billion settlement in direct purchaser debit card fee case – Kirby McInerney was class counsel with second largest lodestar in the case);

• *Microsoft antitrust cases*: Kirby McInerney acted as a lead counsel to classes of indirect purchasers in connection with antitrust proceedings against Microsoft. The litigations resulted in settlement totaling nearly a billion dollars for consumers in the states of New York, Florida, Tennessee, West Virginia, and Minnesota (where the litigation proceeded to trial);

• *In re Reformulated Gasoline (RFG) Antitrust and Patent Litigation and Related Actions,* MDL No. 05-1671 (C.D. Cal, 2005) (representation as co-lead counsel in a class action against Unocal Corporation and recovered $48 million settlement on behalf of indirect gasoline purchasers);

• *In re BP Propane Indirect Purchaser Antitrust Litigation,* No. 06 Civ. 3541 (N.D. Ill. 2010) ($15 million settlement on behalf of indirect propane purchasers);

• *In re LIBOR-Based Fin. Instruments Antitrust Litigation*, No. 11 MD 2262 (S.D.N.Y.) (case pending alleging the manipulation of prices of a benchmark interest rate – LIBOR – and representing putative class of purchasers of LIBOR based products traded on exchanges);

• *In re Potash Antitrust Litigation,* No. 08 Civ. 6910 (N.D. Ill.) (indirect purchaser price fixing case – pending on appeal);

• *In re Commodity Exchange, Inc., Silver Futures and Options Trading Litigation,* No. 11 MD 2213 (RPP) (S.D.N.Y.) (market manipulation case pending);

• *Supreme Auto Transport LLC v. Arcelor Mittal et al,* No. 08 Civ. 5468 (N.D. Ill.) (indirect purchaser price fixing case pending);

13

• *Coordination Proceeding Special Title (Rule 1550(b)) InteI x86 Microprocessors Cases*, No. 05 Civ. 45077 (Cal. Super. Ct. Santa Clara Cnty. Ct.) (representation as co-lead counsel of a class of purchasers of computers containing Intel's microprocessor chips, case pending); and

• *In re Sumitomo Copper Litigation*, No. 96 Civ. 4584 (S.D.N.Y.) (counsel in matter involving settlement of over $140 million in market manipulation case).

The breadth and depth of experience that Kirby McInerney brings to this litigation strongly supports appointment of Kirby McInerney as interim lead counsel.

Also, Kirby McInerney's knowledge of the applicable law in this litigation cannot be disputed.  Indeed, Kirby McInerney has included among Plaintiffs' allegations a unique CEA claim that is based on Dodd Frank amendments to the CEA.[11]  *See* Complaint ¶¶ 281-88.  The inclusion of this claim for manipulation under CEA Section 6(C)(1) and its implementing Rule 180.1, which no other plaintiffs alleged prior to Kirby McInerney asserting the claim in this action, demonstrates that Kirby McInerney is particularly suited to prosecute vigorously the manipulative conduct alleged here and further demonstrates the skill and expertise that Kirby McInerney brings to this action, which will benefit all plaintiffs.  *See Resnik v. Woertz*, 774 F. Supp. 2d 614, 626 (D. Del. 2011) (counsel "better qualified to serve" where their complaint included additional causes of action not pled by other counsel).

### 3.     Rule 23(g)(A)(iv): The Ability To Commit The Substantial Resources Needed To Prosecute This Litigation

Kirby McInerney has the financial, professional, investigative, and technological resources required to prosecute these claims.  Moreover, Kirby McInerney is committed and able to devote and expend the vast resources necessary to properly prosecute this important litigation.

---

[11] *See* Dodd Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 741, 124 Stat. 1376, 1731 (2010), enacting Section 6(c)(1) of the CEA, 7 U.S.C. § 9.  *See also* 17 C.F.R. § 180.1.

These resources include millions of dollars for experts and consultants, the undertaking of international discovery, the use of advanced software systems for analyzing electronic documents and the commitment of numerous investigative and attorney professionals needed to advance the complex claims here and represent plaintiffs adequately against highly-qualified defense counsel.

Indeed, Kirby McInerney is well equipped with resources and expertise to handle large-scale litigation and invest the resources needed to succeed in these type of actions. A case in point is *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456: *The City of New York, et al. v. Abbott Laboratories, et al.*, No. 01 Civ. 12257 (D. Mass). In that matter, Kirby McInerney has vigorously litigated against 40 defendant drug manufacturers as counsel to the State of Iowa, the City of New York, and 42 New York County governments in individual Medicaid fraud cases asserting that the defendant pharmaceutical companies manipulated their average wholesale price data to inflate prices charged to government payers. Since 2003, this case has involved immense discovery and expert burdens. Kirby McInerney has recovered over $225 million for the New York and Iowa Medicaid programs. In the process, Kirby McInerney obtained partial summary judgment against thirteen companies for false reporting practices, successfully defended more than 20 motions to dismiss, and resolved claims against all but eight defendants.

Kirby McInerney has successfully managed many complex litigations like this case. *See* Exhibit B to the Kovel Decl. (Kirby McInerney's firm resume). Kirby McInerney is well prepared to do so here as well.

15

**4.      Rule 23(g) Discretionary Criteria: Additional Factors Demonstrating The Ability To Most Adequately Protect All Interested Plaintiffs**

In addition to being the most adequate counsel under the mandatory criteria of Rule 23(g)(1)(A), Kirby McInerney respectfully submits that it is the most adequate counsel under the following pertinent discretionary criteria as well.

First, Plaintiffs have vast Brent Crude Oil futures trading experience and have held senior NYMEX leadership positions, which bring a level of trading expertise and experience to this litigation that is beneficial to all plaintiffs in this action. *See* Complaint ¶¶ 23-26.  Throughout the Class Period, Plaintiffs traded on the NYMEX exchange and in open outcry trading pits in New York, as well as on the Intercontinental Exchange ("ICE") platforms accessible in the United States). *Id.*  Plaintiffs are uniquely suited to work with their selected counsel, Kirby McInerney, to lead this litigation.

In addition, Kirby McInerney already is counsel for 5 plaintiffs out of the total 19 plaintiffs in the related cases, and is supported by 5 others, in this MDL litigation.  Similarly, the stature of the Plaintiffs Kirby McInerney represents, coupled with those other plaintiffs who support this application, militates in favor of appointment. *Resnik*, 774 F. Supp. 2d at 625-26 (derivative action) (In selecting lead counsel "factors include 'the quality of the pleadings, the economic interest of the plaintiffs, and the vigor with which the plaintiffs have prosecuted their lawsuits.'") (quoting 3 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 9.35 at 388 (4th ed. 2002)); *Green Meadows Partners LLP v. Tomkinson*, No. SACV 06-91, 2006 WL 6885989, at *3 (C.D. Cal. June 6, 2006) ("Also weighing in favor of [counsel] is the relative economic interest of their clients in this case.").

Second, several other of the nation's leading antitrust class action counsel support Kirby McInerney's application to lead this litigation. These firms have decided to support Kirby McInerney as the proposed appointment of interim class counsel rather than seek their own appointment as interim class counsel, although many supporting firms have themselves served in leadership positions in major antitrust litigation. These counsel, representing various other plaintiffs, have submitted their own papers supporting this application. Nonetheless, a brief summary of their *bona fides* is below.

- Berger & Montague serves as co-lead counsel in a proposed class action brought on behalf of approximately seven million merchants in the United States who accept Visa and MasterCard credit or signature debit cards that alleged defendants illegally fixed the interchange fee paid by merchants on Visa and MasterCard credit card transactions.[12] That case settled for a historic $7.25 billion, which is believed to be the largest ever settlement of a private antitrust case under the Sherman Act. Berger & Montague also served as co-lead counsel in *In re MF Global Holding Ltd. Investment Litig.*, No. 12-md-2338-VM (S.D.N.Y.), which recently secured final approval of a settlement with JPMorgan Chase & Co., for $100 million in cash and other relief, stemming from the bank's role in the collapse of commodities broker MF Global. The firm has also served as lead, co-lead or co-trial counsel on many of the most significant civil antitrust cases over the last 40 years, including *In re: Currency Conversion Fee Antitrust Litigation* (recovery of $336 million), *In re Corrugated Container Antitrust Litigation* (recovery in excess of $366 million), and the *High-Fructose Corn Syrup Litigation* (settlement of $531 million) to name a few.

---

[12] *See In re Payment Card Interchange Fee and Merchant Discount Litig.*, No. 05 MD 1720 (JG)(JO) (E.D.N.Y.).

17

- Lieff Cabraser served as co-lead counsel for direct purchasers in litigation against the world's leading manufacturers of Thin-Film Transistor Liquid Crytal Displays, which are used in various electronic devices.[13] That case subsequently settled for over $470 million. The firm also recently obtained the reinstatement of a $203 million judgment in *Gutierrez v. Wells Fargo Bank*, No. C 07-05923 WHA (N.D. Cal.). Lieff Cabraser currently serves as Co-Lead counsel in multiple antitrust class actions including *In re Lithium Ion Batteries Antitrust Litigation*, MDL No. 2420; *In re High-Tech Employee Antitrust Litigation*, No. 11 CV 2509 (N.D. Cal.); and *Haley Paint  v. E.I. Dupont De Nemours and Co.*, No. 10-cv-00318-RDB (N.D. Md.) (titanium dioxide antitrust litigation), among others, and has served as Lead or Co-Lead Counsel in many of the nation's most prominent antitrust class actions over the past two decades. Lieff Cabraser also represents the Charles Schwab family of funds in *In Re: Libor-Based Financial Instruments Antitrust Litigation*, 1:11-md-02262-NRB (S.D.N.Y.).

- Glancy Binkow and Goldberg LLP ("GBG") has served and currently serves as Class Counsel in a number of antitrust class actions, including *In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*, Civ. No. 11-009-SLR (D. Del.) (interim Co-Lead Counsel for Indirect Purchaser Plaintiffs); *In re Photochromic Lens Antitrust Litig.*, MDL No. 2173, (M.D. Fla.) (interim Co-Lead Counsel for Indirect Purchaser Plaintiffs); *In re Fresh and Processed Potatoes Antitrust Litig.*, MDL No. 2186 (D. Idaho) (interim Co-Lead Counsel for Indirect Purchaser Plaintiffs); *In re Urethane Antitrust Litigation*, MDL No. 1616 (D. Kan.) (Settlement Class Counsel); and *In re Western States Wholesale Natural Gas Litigation*, MDL 1566 (D. Nev.). GBG also filed the initial landmark antitrust lawsuit against all of the major NASDAQ market makers and served on Plaintiffs' Counsel's Executive Committee in *In re Nasdaq Market-*

---

[13] *See In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.).

*Makers Antitrust Litigation*, MDL No. 1023 (S.D.N.Y.), which recovered $900 million for investors.  The firm was recently on the executive committee in *Sullivan v. DB Investments*, 04CV2819 (D.N.J.), which resulted in a $295 million recovery for the Class and was Co-Lead Counsel in *In re Korean Air Lines Antitrust Litig.*, MDL No. 1891 (C.D. Cal.), which culminated in a $65 million settlement.

- Motley Rice served as one of two counsel responsible for negotiating the $7.8 billion settlement in the Deepwater Horizon oil spill, the largest class action settlement in U.S. history.[14] Motley Rice also achieved the largest civil settlement in U.S. history with the $246 billion Master Tobacco Settlement Agreement, and its antitrust counsel was involved in litigating record-setting antitrust class actions.  *See In re NASDAQ Market-Makers Antitrust Litigation*, MDL No. 1023 (S.D.N.Y.) ($1.027 billion settlement) (Sweet, J.); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, MDL 1720 (E.D.N.Y.) ($7.2 billion settlement final approval pending) (Gleeson, J.).

The collective judgment of these counsel is entitled to serious consideration, and their decisions to support Kirby McInerney is a reflection of their considered judgment that the interests of the litigation and the class would best be served by doing so.  *See In re Air Cargo*, 240 F.R.D. at 58 (That a "large number[ ] of experienced counsel are satisfied to be represented by these two competing applicants is some measure of the respect they command and the confidence of their peers that they will serve well in the role.").

---

[14] *See In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010*, No 10 MD 2179 (E.D. La.).

## II. THE RELATED ACTIONS ARE APPROPRIATE FOR CONSOLIDATION AND THE *HARTER* ACTION SHOULD BE COORDINATED

Pursuant to Rule 42(a), the "related actions" should be consolidated into a single action because they all arise from common facts and present sufficiently common legal questions and involve derivatives traders of Brent crude oil. *See* n.1, *supra*, Exhibit A to Kovel Decl. (listing all related actions). Consolidation of different actions pending before a court is appropriate where, as here, the actions involve "common question[s] of law or fact." *See* Fed. R. Civ. P. 42(a); *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007).[15]

The related actions primarily allege federal antitrust claims and Commodity Exchange Act claims and are brought by Brent crude oil derivatives traders. As the Second Circuit has explained, "price manipulation is an evil that is always forbidden under every circumstance by both the Commodity Exchange Act and the antitrust laws." *Strobl v. New York Mercantile Exch.*, 768 F.2d 22, 28 (2d Cir. 1985). In *Strobl*, the plaintiffs tried their antitrust and CEA claims together in the same trial, and prevailed through verdict, post-judgment motions, and appeals. *Id.* at 27-28.

Putting aside that the antitrust and CEA claims asserted in this action are closely related, Rule 42 does not require that actions be identical in order to be consolidated, although the claims of all plaintiffs in the related actions substantially overlap. *Sofran v. LaBranche & Co., Inc.,* 220 F.R.D. 398, 401 (S.D.N.Y. 2004); *compare* Pre-Trial Order, *In re Platinum & Palladium Commodities Litig.*, No. 10 Civ. 3617 (S.D.N.Y. July 20, 2010), ECF No. 18 (ordering consolidation of CEA claims involving exchange-traded instruments and antitrust claims

---

[15] Consolidation under Rule 42(a) is appropriate where there are factual and legal similarities among the actions and the defendants overlap in substantial degree. *See* 9 Wright & Miller, *Federal Practice and Procedure* §2384 p. 447 ("Actions involving the same parties are apt candidates for consolidation."); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 & n.10 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.") (citing, *inter alia*, Fed. R. Civ. P. 42).

involving non-exchange-traded instruments); *In re Crude Oil Commodity Futures Litig.*, No. 11

Civ. 3600 (S.D.N.Y. July 22, 2011, Aug. 3, 2011, Aug. 11, 2011) ECF Nos. 17-19 (all plaintiffs

proposed such consolidation where the antitrust claims involved different class members than the

CEA claims did); *Kaplan*, 240 F.R.D. at 91 (holding that differences in causes of action,

defendants, or the class period do not render consolidation inappropriate where, as here, the

cases present sufficiently common questions of fact and law, and the differences do not outweigh

the interests of judicial economy served by consolidation).

 In addition to consolidating the related actions, which were all filed in this District, Kirby

McInerney proposes that the Court coordinate for pretrial purposes the *Harter v. BP, PLC, et al.,*

action, which was filed in Louisiana and transferred to this District through the MDL

proceedings.[16]   The *Harter* action pertains to a different type of plaintiffs – landowners or

lessors who receives revenues or royalties based on the extraction of oil from their property in

the United States.[17]  This particular type of action is not appropriate for consolidation pursuant to

Rule 42(a) but rather should be coordinated with the related actions for pre-trial purposes

pursuant to 28 U.S.C. § 1407.  *See In re: North Sea Brent Crude Oil Futures Litig*., MDL No.

2475, No. 13 MD 2475-ALC-SN [ECF No. 1] (Transfer Order filed Oct. 21, 2013) (transferring

actions for coordinated or consolidated pretrial proceedings).  *See also In re LIBOR-Based Fin.*

*Instruments Antitrust Litig*. No. 11 MD 2262 (NRB) (S.D.N.Y.) [ECF No. 187] (Order clarifying

---

[16]  *See Harter v. BP, PLC, et al.,* No. 13 Civ. 7433 (ALC) (S.D.N.Y); No. 13 Civ. 00337 (M.D. LA); *In re: North Sea Brent Crude Oil Futures Litig*., MDL No. 2475 (Transfer Order filed Oct. 21, 2013), No. 13 MD 2475-ALC-SN (ECF No. 1).

[17]  The class in the *Harter* action is defined as:

> All landowners (whether onshore or offshore) in Louisiana, Texas or any state in North America of oil producing property, oil lease owners, royalty or working interests owners, persons, business or entities (other than Defendants and any parent, subsidiary, affiliate, or agent of any Defendant) that purchased or sold Crude Oil during the period of at least 2002 through the Present (the "Class Period").

*See Harter* Complaint ¶ 36.

that coordination of related actions transferred from districts outside of the Southern District of New York extends only to pre-trial matters).

Accordingly, consolidation of all the related actions into a single action is warranted. These actions, and any similar actions that are subsequently filed in this District or transferred to this District, should be consolidated.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Kirby McInerney LLP be appointed interim lead counsel for all related consolidated actions in this litigation.


Dated: New York, New York
      November 20, 2013

                                 Respectfully submitted,

                                 */s/ David E. Kovel*
                                 David E. Kovel
                                 Lauren Wagner Pederson
                                 Thomas W. Elrod
                                 KIRBY McINERNEY LLP
                                 825 Third Avenue, 16th Floor
                                 New York, NY 10022
                                 Tel: 212-371-6600
                                 Fax: 212-751-2540
                                 dkovel@kmllp.com
                                 lpederson@kmllp.com
                                 telrod@kmllp.com

                                 *Counsel for Plaintiffs and Proposed Interim Lead Counsel*

22