**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

In re: North Sea Brent Crude Oil Futures Litigation

No. 13-md-02475 (ALC) (SN)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR THE APPOINTMENT OF LOWEY DANNENBERG COHEN & HART, P.C., LOVELL STEWART HALEBIAN JACOBSON LLP, AND ROBINS, KAPLAN, MILLER & CIRESI L.L.P AS INTERIM CLASS COUNSEL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

ARGUMENT .................................................................................................................................. 1

I.     IT IS IN THE BEST INTERESTS OF THE CLASS TO APPOINT
LOWEY DANNENBERG, LOVELL STEWART AND ROBINS KAPLAN AS
INTERIM CLASS COUNSEL ............................................................................................ 1

     A.     Under Each and All of the Mandatory Criteria of FRCP Rule 23(g)(1)(A),
This Court Should Appoint Lowey Dannenberg, Lovell Stewart and Robins
Kaplan as Counsel "Best Able to Represent the Interests of the Class" ................... 1

     B.     Rule 23(g)(1)(A)(i):  The Extensive Work Proposed Interim Class Counsel Have
Done(and Continue to Do) in Identifying and Investigating the Putative Class's
Claims .................................................................................................................… 2

          1.     Lowey Dannenberg ...................................................................................... 2

          2.     Lovell Stewart ............................................................................................. 5

          3.     Robins Kaplan .............................................................................................. 8

     C.     Rule 23(g)(1)(A)(ii):  Proposed Interim Class Counsel's Extensive
Experience in Handling The Types of Claims Asserted ......................................... 9

          1.     Lovell Stewart ............................................................................................. 9

          2.     Lowey Dannenberg .................................................................................... 14

          3.     Robins Kaplan ............................................................................................ 19

     D.     Rule 23(g)(1)(A)(ii): Proposed Interim Class Counsel's
Extensive Experience in Handling "Class Actions And Other
Complex Litigation" .............................................................................................. 21

          1.     Lowey Dannenberg .................................................................................... 21

          2.     Robins Kaplan ............................................................................................ 21

          3.     Lovell Stewart ........................................................................................... 22

     E.     Rule 23(g)(1)(A)(iii):  Proposed Interim Class Counsel's Extensive
Knowledge of the Applicable Law ....................................................................... 22

     F.     Rule 23(g)(1)(A)(iv):  Proposed Interim Class Counsel Will Commit More Than
Ample Resources to Representing the Class………………………………………23

i

1.   Robins Kaplan........................................................................................23

2.   Lovell Stewart........................................................................................24

3.   Lowey Dannenberg........................................................................24

G.   Rule 23(g)(1)(B): Discretionary Factors................................................25

CONCLUSION          ..............................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*In re Amaranth Natural Gas Commodities Litig.,*
    269 F.R.D. 366 (S.D.N.Y. 2010) ........................................................................... 11

*In re Bear Stearns Co., Inc. Sec. Derivative and ERISA Litig.,* No. 08
    MDL 1963, 2009 WL 50132  (S.D.N.Y. Jan. 5, 2009).............................................. 1

*In re Mun. Derivatives Antitrust Litig.,*
    252 F.R.D. 184 (S.D.N.Y.) ............................................................................... 2, 3

*In re Natural Gas Commodities Litig.,*
    231 F.R.D. 171 (S.D.N.Y. 2005) ........................................................................ 11

*In re Natural Gas Commodities Litig.,*
    235 F.R.D. 199 (S.D.N.Y. 2005) ........................................................................ 16

*In re Rail Freight Fuel Surcharge Antitrust Litig.,*
    2008 WL 1883447 (D.D.C. Apr. 28, 2008) ......................................................... 25

*In re Sumitomo Copper Litig.,*
    182 F.R.D. 85 (S.D.N.Y. 1998) ..................................................................... 11, 15

*In re Sumitomo Copper Litig.,*
    74 F.Supp.2d 393 (S.D.N.Y. 1999) ............................................................ 9, 11, 15

*In re Sumitomo Copper Litig.,* 194 F.R.D. 480 (S.D.N.Y. 2000), *appeal denied,* 262 F.3d
    134 (2d Cir. 2001)……………………………………………………………………..11

*Kohen v. PIMCO,*
    244 F.R.D. 469 (N.D. Ill. 2007)...................................................................... 9, 10

*Liang v. Hunt,*
    477 F.Supp. 891 (N.D. Ill. 1979) ......................................................................... 9

*Lloyd v. Industrial Bio-Test Laboratories, Inc.,*
    454 F. Supp. 807 (D.C.N.Y. 1978) ....................................................................... 3

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,*
    456 U.S. 353 (1982)........................................................................................ 10

*National Metals Inc. v. Sumitomo Corp.,*
    No. GIC 734001, 2003 WL 22183929 (Cal. Super. Jan. 22, 2003)......................... 20

*National Superspuds, Inc. v. NYMEX,*
  470 F.Supp. 1256 (S.D.N.Y. 1979) ........................................................ 9

*Smith v. Groover*,
  468 F.Supp. 105 (N.D. Ill. 1979) ........................................................... 9

*Starr v. Sony BMG Music Entertainment*,
  592 F.3d 314 (2d Cir. 2010)............................................................ 6, 13

*Strobl v. NYMEX*, 582 F.Supp. 770 (S.D.N.Y. 1984),
  *aff'd*, 768 F.2d 22 (2d Cir. 1985).......................................... 7, 10, 13, 14

## Statutes

28 U.S.C. §1407 ...................................................................................... 3

7 U.S.C. §1 et seq.,................................................................................. 9

## Rules

Fed. R. Civ. P. Rule 23(g).......................................................................... 1

Fed. R. Civ. P. Rule 23(g)(1)(A) ................................................................ 1

Fed. R. Civ. P. Rule 23(g)(1)(A)(i).............................................................. 2

Fed. R. Civ. P. Rule 23(g)(1)(A)(ii)........................................................ 9, 21

Fed. R. Civ. P. Rule 23(g)(1)(A)(iii) .......................................................... 22

Fed. R. Civ. P. Rule 23(g)(1)(A)(iv)........................................................... 23

Fed. R. Civ. P. Rule 23(g)(1)(B)................................................................ 25

## Other Authorities

*Manual for Complex Litigation (Fourth)* § 21.11 (2009) ............................. 1

Under Federal Rule of Civil Procedure 23(g), it is appropriate at this stage of the litigation to appoint interim class counsel to further the efficiencies gained through centralization.  Rule 23(g) requires the Court to appoint interim class counsel "best able to represent the interests of the class."  As detailed below, of the firms moving to be appointed interim class counsel, Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart") as Chairman, Lowey Dannenberg Cohen & Hart, P.C. ("Lowey Dannenberg"), and Robins, Kaplan, Miller & Ciresi L.L.P. ("Robins Kaplan")(hereinafter, "Proposed Interim Class Counsel") are the most qualified to best represent the interests of the proposed class under the mandatory Rule 23(g) criteria.

## ARGUMENT

**I.     IT IS IN THE BEST INTERESTS OF THE CLASS TO APPOINT LOWEY DANNENBERG, LOVELL STEWART AND ROBINS KAPLAN AS INTERIM CLASS COUNSEL**

**A.     Under Each and All of the Mandatory Criteria of FRCP Rule 23(g)(1)(A), This Court Should Appoint Lowey Dannenberg, Lovell Stewart and Robins Kaplan as Counsel "Best Able to Represent the Interests of the Class"**

It is standard practice in class actions to appoint interim class counsel.  See *Manual for Complex Litigation (Fourth)* § 21.11 (2009).  Courts have held that the Rule 23(g)(1)(A) factors that apply in choosing class counsel at the time of class certification apply in choosing interim class counsel. *See In re Bear Stearns Co., Inc. Sec. Derivative and ERISA Litig.*, No. 08 MDL 1963 (RWS), 2009 WL 50132 at *11 (S.D.N.Y. Jan. 5, 2009).  The Rule 23(g)(1)(A) mandatory criteria that the Court "must consider"  are:

(i)     the work counsel has done in identifying or investigating potential claims in the action;

(ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)   counsel's knowledge of the applicable law;  and

(iv)    the resources that counsel will commit to representing the class.

FED. R. CIV. P. Rule 23(g)(1)(A)(i)-(iv).

Each of these demonstrates that Proposed Interim Class Counsel are best able to represent the interests of the class.

**B.**     **Rule 23(g)(1)(A)(i):  The Extensive Work Proposed Interim Class Counsel Have Done (and Continue to Do) in Identifying and Investigating the Putative Class's Claims**

The first factor to be considered when determining the appointment of interim class counsel is the work undertaken by proposed interim class counsel in investigating the facts and claims in question.  FED. R. CIV. P. 23(g)(1)(A)(i).  As a rule, courts, including in this district, typically select as interim class counsel the law firm(s) responsible for identifying and investigating the claims at issue in a case.  *See In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186  (S.D.N.Y.) (2008) ("In considering the work done by counsel in identifying and investigating potential claims in this action, the Court finds that the work done by the Firms weighs in favor of their appointment as interim lead counsel.").

**1.**     **Lowey Dannenberg**.  Lowey Dannenberg, on behalf of Plaintiff Prime International Trading, identified, investigated, and originated the legal contours of the claims alleged in the first-filed class action alleging that the Brent crude oil market had been subject to manipulative and anticompetitive conduct via false reporting to price reporting agencies.  *Prime International Trading, Ltd. v. BP PLC, et al.*, Case No. 13-cv-03473(ALC)(SN)(filed on May 22, 2013).  *See* Briganti Decl. at ¶ 2.  Plaintiff Prime International is a proprietary commodity trading company headquartered in Chicago, Illinois and is a member of the Chicago Board of Trade, Chicago Mercantile Exchange, NYMEX, and ICE.  Complaint [Dkt. 1], at ¶ 15.  Plaintiff Prime International filed the *first*-class action of the Related Actions.  Plaintiff Prime International did so, willing to risk the reputation of its firm, in order to litigate against the largest oil companies in the world, to assert its rights and those of the Class.  During the Class Period, Prime International traded *hundreds of thousands* of NYMEX and ICE Brent Crude

futures contracts[1] at allegedly artificial prices proximately caused by Defendants' unlawful manipulation and restraint of trade of the Brent crude oil market. *Id.*, at ¶ 15. Thus, Prime International has a large vested financial interest in the successful prosecution of this litigation.

The allegations in the *Prime International* complaint include careful and considered judgments on the scope of the Class, the Defendants named, as well as the claims asserted. This work-product appears near verbatim in many of the complaints filed the Related Actions. Briganti Decl., at ¶ 4; *In re Mun. Derivatives Antitrust Litig.,* 252 F.R.D. at 186 (appointing as interim lead counsel the firms that filed the first complaint where complaints in follow-on actions were "substantially similar" to the original complaint); *Lloyd v. Industrial Bio-Test Laboratories, Inc.*, 454 F. Supp. 807, 813 (D.C.N.Y. 1978) (appointing as interim lead counsel the firm that "drafted complaint" where complaints in follow-on actions were "based" on original complaint).[2]

Over the months since the filing of the *Prime International* complaint, Lowey Dannenberg has committed substantial resources intensely building upon its pre-complaint investigation and working efficiently and effectively in advancing the interests of the putative Class.

In particular, Lowey Dannenberg, working with financial fraud investigators located in the U.S. and Europe, has identified hundreds of potential witnesses and conducted in-depth interviews of dozens of fact witnesses, including former employees of Defendants and Brent Crude oil physical and futures traders, schedulers, and price reporting submitters. These efforts

---

[1] The size of each NYMEX and ICE Brent Crude futures contract is 1,000 barrels of Brent Crude oil. *Prime International Trading, Ltd. v. BP PLC, et al.,* Case No. 13-cv-03473(ALC)(SN), Complaint [Dkt. 1], at ¶¶ 34, 46.

[2] As several subsequent cases were filed in this District and elsewhere, Lowey Dannenberg understood the need to coordinate these similar proceedings before one District Judge under 28 U.S.C. §1407. As a result on July 11, 2013, Lowey Dannenberg moved for pre-trial coordination before the JPML. Lowey Dannenberg filed briefs in support of coordination on July 11, 2013 and August 21, 2013 and Lowey Dannenberg partner Vincent Briganti presented argument before the panel on September 26, 2013. The JPML accredited Lowey Dannenberg's arguments and on October 21, 2013, issued an order coordinating these actions before this Court. While the coordination motion was pending, Lowey Dannenberg took steps to foster the efficient prosecution of these cases. Principally, Lowey Dannenberg first negotiated a stipulated case management order where the parties reference the similar actions that had been filed, the JMPL motion, and the "likel[ihood that the Complaint would] be superseded by a consolidated amended complaint." *See* Briganti Decl., at ¶¶ 5-6.

have led Lowey Dannenberg to develop and interview (and continue to interview) several confidential witnesses with **first-hand, non-public** knowledge that is highly relevant to the merits and advancement of the claims alleged.

Lowey Dannenberg has retained economists with specialized expertise in antitrust conspiracies and benchmark rate litigation (include false reporting to energy price reporting agencies) to advance the interests of the class.  The expert analysis undertaken by these economists under the supervision of Lowey Dannenberg include, *inter alia*, (i) identifying and analyzing deficiencies in the methodology, structure, reporting and setting of energy price benchmarks; (ii) conducting empirical analyses of pricing patterns of spot Brent Crude oil prices; (iii) analyzing and measuring the degree of impact of Defendants' alleged false reporting of Brent crude oil spot prices on the NYMEX and ICE crude oil futures market; (iv) developing econometric models and screening analyses to identify collusive behavior in the setting of Brent crude oil spot prices including models comparing Platts against other relevant price benchmarks; (v) examining trading patterns Brent crude market participants; and (vi)  analyzing, on a historical basis, thousands of pages of economic data on Platts' and Argus' Brent Crude Oil price assessments and the daily Brent Crude "market color" and market activity during the proposed Class Period.

Lowey Dannenberg has also (a) consulted with leading Brent crude oil market experts in the U.S. and abroad, including one of the experts retained in *In re: Natural Gas Commodity Litigation* (in which Lowey Dannenberg as co-lead counsel secured a $101 million dollar settlement) to analyze the structure of the market including Brent crude oil price assessments, (b) analyzed NYMEX and ICE Brent crude oil futures prices, open interest, volume information and other relevant futures market data, and (c) consulted their prior legal research developed in numerous prior successful CEA manipulation and antitrust class actions where Lowey Dannenberg, as sole Lead or Co-Lead Counsel, has successfully obtained hundreds of millions of dollars in settlements for the benefit of their clients and the classes they served.  *See* Briganti Decl., Ex. 1 (Lowey Dannenberg Resume).

    **2.**    **Lovell Stewart.** Lovell Stewart Halebian Jacobson LLP (with its predecessors, the "Firm" or "Lovell Stewart") reviewed reports of government investigation into "collusion" to fix or manipulate Brent crude oil prices and spoke to Brent crude oil futures contract traders. Based upon thirty-three years' experience in developing and prosecuting commodity futures manipulation and antitrust price fixing claims, Lovell Stewart determined that there were three important aspects of plausibly pleading such claims on behalf of Brent crude oil futures contract traders:

    (1)    an economic analysis of whether Brent crude oil futures contract prices had moved anomalously at the times when they were vulnerable to the release of price reporting agency ("PRA") information;

    (2)    a structural analysis of the market and the companies therein with the greatest ability, opportunity and motive to succeed in realistically causing such anomalous price movements and profiting therefrom;

    (3)    a mixed legal/factual analysis of the compliance culture and pertinent regulatory history and supervision of such companies including a "compare and contrast" analysis of regulatory and "best practices" compliance regimes in the Brent crude oil and other various energy markets.

    To accomplish the economic analysis, Lovell Stewart retained two economists. One specializes in the energy markets. The other is an econometrician. Each has testified previously in cases handled by the Firm alleging manipulation or fixing of commodity prices. Having previously utilized PRA documents or information as key components of the evidence of prior alleged manipulations involving copper in London and natural gas in the United States, the Firm purchased what it determined to be usable data on which an economic analysis of the anomalous movements in Brent crude oil futures contract prices could be based.[3]

---

[3] This included extensive data reflecting prices and other aspects of crude oil futures contracts, other energy futures contracts, and physical crude oil. Firm investigators then worked with the two economists to analyze such data. This work included various regression and benchmark analyses that one Firm partner performed internally based upon our experience with various prior crude oil, natural gas, and other manipulation cases. The Firm supplied these analyses to the economists who performed analyses of their own and conferred with attorneys at the Firm. As a result, the Firm was able to select the most appropriate economic analyses to detect whether Brent crude oil futures contract prices exhibited anomalies that were consistent with Brent price manipulation or collusion.

To accomplish the structural analysis of the Brent crude oil market and the participants therein, Lovell Stewart retained the assistance of a longtime participant in the crude oil markets. This person has top educational credentials and extensive (25 years-plus) experience in crude oil trading, including purchasing Brent crude oil cargoes, trading Brent crude oil, dealing with participants in that market, and reporting transactions to various PRAs.  Meanwhile, Firm investigators developed extensive information on the pertinent markets.  In consultation with the crude oil trading expert, the Firm isolated the pertinent factors for determining which companies had the greatest ability, opportunity and motive to successfully manipulate Brent crude oil prices.

To accomplish the regulatory and compliance/best practices analysis, the Firm consulted with a leading energy compliance expert with whom the Firm has dealt in prior energy market manipulation matters.  The Firm also researched various price reporting requirements regimes including those of the United States Federal Energy Regulatory Commission, the United States Federal Trade Commission, and the International Organization of Securities Commissions.[4]

As a result of the foregoing parallel efforts and the Firm's prior experience and knowledge, the Firm developed good grounds to allege plausible claims of manipulation and collusion.  This included good grounds to make, for the first time in these actions, numerous significant fact allegations.  *E.g.*:

1. Brent Crude oil futures prices show anomalous patterns at times when the futures contract prices were most vulnerable to shocks from PRA reports.  Karkut Complaint, ¶¶51(a)-(c).

2. In all the circumstances of the reports of investigation of collusion, these anomalies are best explained as artificial prices caused by contrived Brent crude oil reports to the PRA from large market participants.  *Id.*

---

[4] Based upon its experience as Chair of lead counsel in a prior prosecution of propane price manipulation claims against British Petroleum entities (*In re BP Propane Indirect Purchaser Antitrust Litigation*, 06-cv-3541 (JBZ ) (N.D.Ill.)), and other publicly available sources, the Firm also investigated the prior energy price manipulation record of the companies who were being investigated for collusion to manipulate energy prices here.  *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 324 (2d Cir. 2010) (prior indications of antitrust violations add to plausibility of allegations of current violation).

3. The news flow and fundamentals of supply and demand for Brent Crude oil pricing did not support or justify the foregoing repeated anomalies. Karkut Complaint, ¶9.

4. Further adding to the plausibility of contrived reporting (a) Defendants were in a position to submit multiple reports to the PRA (Karkut Complaint, ¶50), and (b) the Brent crude oil PRA reports at issue herein did not then have the regulatory infrastructure that was put in place in the United States by the Federal Energy Regulatory Commission ("FERC") after manipulation of PRA natural gas prices by market participants during 2000-2002 (Karkut Complaint, ¶36 (comparing U.S. regulatory scheme to the European regulatory scheme)).

5. Collusive contrived reporting to a PRA increases the odds that the PRA will publish the contrived price report. Karkut Complaint, ¶14. That is, in a compliance and regulatory vacuum, industry participants can and do coordinate their contrived reports in order to increase the chances that the PRA will accept same.

6. Further in increasing the plausibility of collusive contrived reporting, collusion and concerted action are, generally, more likely to move or manipulate prices than is individual action. Karkut Complaint, ¶56 (citing *Strobl v. NYMEX*, 582 F.Supp. 770, 775 (S.D.N.Y. 1984), *aff'd*, 768 F.2d 22 (2d Cir. 1985)).

7. Defendants Shell and BP have a significant prior history involving energy price manipulation. Karkut Complaint, ¶¶61-63.

8. Specific facts indicate that Defendants each has the motive and financial incentive to manipulate Brent Crude oil prices through contrived reports to the PRA. Karkut Complaint, ¶¶6, 49-50.

9. Specific facts indicate that each Defendant individually had the greatest (or among the greatest) abilities to move or manipulate the Brent price through contrived reporting. Karkut Complaint, ¶¶7-8. Defendants collectively had an exponentially greater ability than anyone else to manipulate Brent crude prices through contrived reporting. Karkut Complaint, ¶7.

After filing the *Karkut* complaint, Lovell Stewart was accepted by the counsel for earlier filed cases into a leadership role to further the prosecution of the claims on behalf of the class. As part of these responsibilities, the Firm consulted with the Kirby McInerney firm to try to reach a consensus on class counsel leadership, to suggest further investigative steps that Kirby McInerney could take, and paid $25,000 to Kirby McInerney's expert to subsidize such further investigation on behalf of the class. After the *McDonnell* complaint was filed, Lovell Stewart

attempted (unsuccessfully through today) to reach a consensus among all the counsel firms herein as to the appropriate leadership structure.  Lovell Stewart's efforts in this regard are ongoing, have improved the information available to the class to prosecute its claims, and did succeed in helping to coalesce seven of the first eight cases into one leadership group.

3.    **Robins Kaplan**.  Robins Kaplan invested substantial resources and time into the investigation of this case.   As evidenced by the thoroughness of Plaintiff Benvenuto's Complaint, Robins Kaplan has developed including allegations setting forth a comprehensive background of the Brent Crude oil physical (spot) and futures markets.  Specifically, Robins Kaplan conducted an, in-depth analysis of the relationship between the two markets, and referenced to varied and numerous factual and industry sources, including press releases by the European Commission, public reports by international energy organizations, and public comments by market participants., it is obvious that Robins Kaplan invested substantial resources and time into the investigation of this case.

To assist in its investigation, Robins Kaplan has, among other things, employed a team of in-house Ph.D. economists, purchased relevant historical pricing data and retained experts with extensive experience researching and writing on issues pertaining to commodity futures and derivatives markets.  Robins Kaplan's in-house financial and economic consultants have performed, among others, the following tasks, which enabled them to develop a deep understanding of the organization, players and structure of the Brent physical and derivatives markets:

(a)    Researched and reviewed documents and information from various sources, including, Bloomberg, the Financial Times, the Inter Continental Exchange, Platts, and Argus, to analyze the structure of the Brent crude oil market (e.g., major participants, markets size, concentration, etc.) as well as the relationship between the Brent physical and futures market;

(b)    Collected and analyzed historical data on Brent crude oil prices, open interest, volume, and other information in the Brent futures market;

(c)    Collected historical data on prices of other crude oil blends around the world and performed statistical analyses of the relationship between those crude prices and Brent; and

(d)     Collected Platts' historical Brent crude oil price assessments, and performed statistical analyses to screen for unusual pricing patterns that were indicative of market manipulation.

Additionally, Robins Kaplan has already retained one of the class plaintiffs' experts in *In re: Natural Gas Commodity Litigation* largely responsible for the class certification decision in that case which led to the $101 million recovery.  The combination of Robins Kaplan's attorneys' expertise in commodity market manipulation and antitrust class actions, and the Firm's in-house and retained experts' experience and intimate knowledge of the energy futures markets, will be of great benefit to the plaintiffs and the class in the prosecution of this action.

### C.     <u>Rule 23(g)(1)(A)(ii)</u>:  Proposed Interim Class Counsel's Extensive Experience in Handling The Types of Claims Asserted in the Action

1.     <u>Lovell Stewart</u>.  When the Firm began in 1980, there was substantial precedent indicating that the two claims at issue in this action were not viable because there supposedly was no private right of action for manipulation in violation of the Commodity Exchange Act 7 U.S.C. §1 *et seq.,* ("CEA"), and antitrust claims for commodity futures price manipulation were supposedly not available.[5]  In prosecuting numerous cases since then, the Firm has worked successfully to overcome such adverse precedent, develop the two claims here into viable rights of action, make the claims susceptible of class treatment, and prove such claims at trial and sustain them on appeal. As parts of that long experience, Lovell Stewart has been able to obtain, as Court-appointed sole lead counsel, the **first**[6] and **second**[7] largest class action

---

[5] *Compare Liang v. Hunt*, 477 F.Supp. 891, 896 (N.D. Ill. 1979) (antitrust claim unavailable for futures market trader) *with Smith v. Groover, 468 F.Supp.* 105, 116-17 (N.D. Ill. 1979) (antitrust claim for CEA manipulation precluded); *National Superspuds, Inc. v. NYMEX*, 470 F.Supp. 1256, 1263 (S.D.N.Y. 1979) (holding no private right of action exists under the CEA).

[6] *In re Sumitomo Copper Litigation,* 74 F. Supp.2d 393, 395 (S.D.N.Y. 1999)("*Sumitomo*") ("the largest class action recovery in the 75 plus year history of the" CEA).

[7] *Compare PIMCO*, 244 F.R.D. 469 (N.D. Ill. 2007), *appeal denied*, 571 F.3d 672 (Posner, J.), *cert. denied*, 130 S.Ct. 1504 (U.S. Feb. 22, 2010) (N.D. Ill.) *with PIMCO*, 05 Civ. 4681 (N.D. Ill.), Dkt. No. 570, Final Judgment and Order (filed May 2, 2011) (approving $118,750,000 settlement) *and* Dkt. No. 38 (filed Dec. 6, 2005) (appointing Lovell Stewart as sole lead counsel in a contested leadership motion).

settlements, and as Court-appointed co-lead counsel the **third**[8] and **fourth**[9] largest settlements, in the history of the CEA claims for manipulation.

      **a. Commodity Exchange Act Manipulation Claims.**  The Firm successfully argued to the U.S. Supreme Court that it should imply a private right of action for manipulation in violation of the CEA.  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 102 S.Ct. 1825 (1982) ("*Curran*").  After the *Curran* decision, Congress considered creating an express private right of action under the CEA.  A partner of the Firm then testified before the Congressional Committee regarding the appropriate parameters of the proposed express private right of action, which became Section 22(a) of the CEA, under which the claims in these actions are brought.  *See* Statement of Leonard Toboroff, *Before The Sub-committee On Oversight And Investigations of The Committee On Energy And Commerce*, 97th Cong., 2d Sess. 584-603 (Jun. 7, 1982).

      Having successfully argued to establish a private right of action, the Firm then conducted the first trial of claims for manipulation in violation of the amended CEA and sustained the favorable verdict and judgment on appeal.  *Strobl v. New York Mercantile Exch.*, 582 F. Supp. 770 (S.D.N.Y 1984), *aff'd*, 768 F.2d 22 (2d Cir. 1985) ("*Strobl*").  At the conclusion of the *Strobl* trial, then Chief Judge Lloyd F. MacMahon stated to the Firm's senior partner, Christopher Lovell, and Defendants' attorney, Peter Fleming Jr. Esq., "You both tried a very difficult case very well."  Trial Transcript, November 17, 1983, at 1253-5, *Leist, et al. v. Simplot, et al.*, 76 Civ. 4350 (S.D.N.Y.); *Strobl*, 79 Civ. 1834 (S.D.N.Y.) (LFM) (*see* Briganti Decl., Ex. 15).

      Lovell Stewart then developed CEA claims for manipulation into viable class action claims by repeatedly and successfully arguing in Courts of Appeal to sustain decisions granting class certification.  *E.g., Kohen v. PIMCO*, 244 F.R.D. 469, 481 (N.D. Ill. 2007) ("*PIMCO*")

---

[8] *In re Natural Gas Commodities Litig.*, Index No. 03 Civ. 6186 (VM) (AJP) (S.D.N.Y.) ($100,800,000 settlement as co-lead counsel) ("*Natural Gas*").

[9] *Amaranth,* 07 Civ. 6377 (S.D.N.Y.), Dkt. Nos. 365, 368, and 404 ($77,100,000 settlement as co-lead counsel).

(granting plaintiffs' motion for class certification), *appeal denied*, 571 F.3d 672, 680 (7th Cir.

2009) (Posner, J.); *In re Sumitomo Copper Litig.,* 182 F.R.D. 85, 97 (S.D.N.Y. 1998)

("*Sumitomo*") (granting plaintiffs' motion for class certification); *Sumitomo,* 194 F.R.D. 480, 483

(S.D.N.Y. 2000) (same)*, appeal denied,* 262 F.3d 134, 143 (2d Cir. 2001).

      The largest settlement of a class action manipulation claim in the history of the CEA was

*Sumitomo*, 74 F.Supp.2d at 395, in which, as here, it was alleged that the artificial impact of

collusively manipulated prices in London and Europe was transmitted to the prices of U.S.

futures contracts.  In *Sumitomo*, the Honorable Milton Pollack praised what Judge Pollack found

were the Firm's "**unprecedented efforts**" and "**skill and persistence**" which overcame what

Judge Pollack found was "**virtually overwhelming resistance**."  *Sumitomo*, 74 F.Supp.2d at 396

(emphasis supplied).

      Based on its success in *Sumitomo* and, later, *PIMCO*, Lovell Stewart successfully

opposed, as Court-appointed co-lead counsel, petitions to the Court of Appeals that sought to

overturn the grants of class certification which the Firm had successfully argued in other cases

alleging CEA price manipulation.  *E.g.*, *In re Natural Gas Commodities Litig.,* 231 F.R.D. 171,

177 (S.D.N.Y. 2005) (granting plaintiffs' motion for class certification and finding "persuasive,

indeed controlling" the reasoning in *Sumitomo*), *petition for leave to appeal denied sub nom.*

*Cornerstone Propane Partners, L.P., et al. v. Reliant Energy Services, Inc., et al*., No. 05-5732-

cv (2d Cir. Aug. 1, 2006) (citing *Sumitomo*, 262 F.3d 134, 139 (2d Cir. 2001)); *In re Amaranth*

*Natural Gas Commodities Litig.,* 269 F.R.D. 366, 386 (S.D.N.Y. 2010), *petition for leave to*

*appeal denied sub nom. Amaranth Advisors, LLC, et al. v. Roberto E. Calle Gracey, et al*., No.

10-4110-mv (2d Cir. Dec. 30, 2010) (citing *Sumitomo*, 262 F.3d at 139-40).

      Having thus further developed the viability of the class action treatment of claims similar

to that at issue here, Lovell Stewart then also negotiated to obtain, as Court appointed co-lead

counsel, the third (*Natural Gas*) and fourth (*Amaranth*) largest class action recoveries in the

history of the CEA in manipulation claims.

In *Amaranth*, the most recent of these, the Honorable Shira Scheindlin stated to the Firm's senior partner, near the conclusion of the active litigation that preceded the settlement of the claim, as follows:   "Mr. Lovell, and your lawyering is usually so excellent that I wouldn't expect it [an unsuccessful argument] from you..." *Amaranth*, 07 Civ. 6377 (S.D.N.Y.), Hr'g Tr., at 5:2 (dated Jul. 6, 2011) attached to Briganti Decl., Ex. 16.

Thus, Lovell Stewart's experience with the claims here includes the fact that it is the first and only plaintiffs' law firm to do any of the following: (a) try a CEA manipulation claim successfully; (b) argue successfully for class certification of such claim in a Court of Appeals; (c) argue to the U.S. Supreme Court successfully to uphold the private right of action; and (d) to argue for and successfully establish the viability of CEA manipulation allegations from the time that the claim itself arguably did not exist until its well-accepted status today.

In the process, Lovell Stewart has also accumulated long experience as Court appointed co-lead counsel in obtaining results[10] or otherwise prosecuting[11] CEA manipulation class action claim, involving false reporting.  In addition to all its other experience (see Firm Resume), Lovell Stewart has been appointed sole class counsel in other CEA manipulation class actions in which proposed settlements have been obtained,[12] and also recently before the Honorable Andrew L. Carter as sole interim class counsel in another class action pending in this Court.  *In re Term Commodities Cotton Futures Litig.*, No. 12 Civ. 5126 (S.D.N.Y.) (ALC), Dkt. No. 14 (Aug. 13, 2012) (appointing Lovell Stewart as sole lead class counsel).

---

[10] *In re Natural Gas Commodities Litig.*, Index No. 03 Civ. 6186 (VM) (AJP) (S.D.N.Y.) ($100,800,000 settlement as co-lead counsel); *In re Soybeans Futures Litig.*, 89 Civ. 7009 (CRN) (N.D. Ill.) ($21,500,000 settlement as co-lead counsel).

[11] *E.g.*, *In re LIBOR-Based Financial Instruments Antitrust Litig.*, No. 11-md-2262 (S.D.N.Y.) (NRB), Dkt. No. 90 (appointing Lovell Stewart as co-lead counsel); *Sullivan v. Barclays PLC, et al.*, 13 Civ. 2811 (S.D.N.Y.) (PKC), Dkt. No. 72 (court found it premature to appoint counsel).

[12] *In re Platinum and Palladium Commodities Litig.*, 10 Civ. 3617 (S.D.N.Y.) (WHP), Dkt. No. 18 (appointing Lovell Stewart as sole lead counsel) and Dkt. No. 140 (requesting preliminary approval of a partial settlement consisting of a $48,400,000 cash payment and a $35,000,000 assignment and judgment); *In re Dairy Farmers of America, Inc., Cheese Antitrust Litigation*, 09 Civ. 3690 (N.D. Ill.) (RMD), Dkt. No. 413 (appointing Lovell Stewart as sole lead class counsel) and Dkt. No. 335 (requesting preliminary approval of a partial settlement consisting of a $46,000,000 cash payment).

      **b.**     **Antitrust Claims.**  Lovell Stewart argued successfully to the Second Circuit Court of Appeals that claims that defendants had conspired to fix futures contract prices in violation of the antitrust laws, were viable and were **not** preempted by the CEA.  *Strobl*, 768 F.2d at 31.  After arguing in *Strobl* to successfully establish antitrust claims for futures contract manipulation, the Firm has been privileged to serve repeatedly as Court-appointed class counsel in antitrust class claims involving price fixing in the exchange context or of commodity prices.  Thus, *Bloomberg Markets* magazine reported:

> "To classify Pacific Investment Management Co. [managed by CEO and founder Bill Gross] as a large mutual fund family does it little justice.  Its $747 billion in bond assets almost matches the gross domestic product of Australia . . . .  Pimco has found itself up against a formidable opponent in [Christopher] Lovell.  What [Bill] Gross is to the world of bonds, [Christopher] Lovell is to commodities-manipulation and price-fixing lawsuits."

Seth Lubove and Elizabeth Stanton, *Pimco Power in Treasuries Prompts Suits*, BLOOMBERG MARKETS, February 20, 2008.

      In one of these actions, the Firm, as Court-appointed co-lead counsel, obtained what then was the largest class action settlement in the history of the antitrust laws.  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 471 (S.D.N.Y. 1998)(a class action resulting in an "all-cash [$1.027 billion] settlement, achieved through 'four years of hard-fought litigation,' apparently is [at that time] the largest recovery (class action or otherwise) in the hundred year history of the state and federal antitrust laws").  The Firm (a) is the **only** Plaintiffs' law firm it knows of to successfully take antitrust claims to trial in the Southern District of New York (and has done so twice), and (b) has argued repeatedly in courts of appeal and once before the U.S. Supreme Court on antitrust issues.  E.g., *Billing v. Credit Suisse First Boston Ltd.*, 287 F.Supp.2d 497 (S.D.N.Y. 2003) (dismissing complaint), *vacated*, 426 F.3d 130 (2d Cir. 2005) ("epic Wall Street conspiracy") (vacating dismissal and remanding for further proceedings), *reversed*, 127 S.Ct. 2383 (2007); *Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2dCir. 2010), *cert. denied,* 131 S.Ct. 901 (2011) ("*Digital Music*") (first decision by the court of appeals

reversing a decision on *Twombly* grounds); *Strobl supra* (after the Department of Justice decided not to bring price-fixing claims under the federal antitrust laws and after the CFTC lost a trial seeking to prove attempted manipulation, the Firm tried and won claims for price fixing and manipulation in a three-week jury trial).

More generally, billions of dollars in class action settlements have been obtained in antitrust class actions in which the Firm was Court appointed counsel. *See* Lovell Stewart Resume attached to Briganti Decl., Ex. 2.

>    **2.**    **Lowey Dannenberg.**

**a.**    **Commodity Manipulation.** Lowey Dannenberg has been representing clients in commodity futures litigation since the early 1970s, developing an expertise in the commodities markets, representing brokers, dealers and customers in litigation and regulatory proceedings involving potato, silver and copper contracts. The firm played a major role in the complex litigation that ensued following the highly publicized May 1976 default of Maine potato futures contracts that occurred when the sellers of 1,000 contracts failed to deliver approximately 50 million pounds of potatoes. Through its extensive experience prosecuting commodities manipulation and antitrust actions, Lowey Dannenberg has developed significant relationships with commodities markets experts, numerous substantial futures market participants including multi-billion dollar hedge funds, past NYMEX directors, and former regulatory personnel. These relationships allow Lowey Dannenberg to quickly develop expertise in the particular futures and physical trading markets at issue. With the continuing evolution of competing trading platforms, multiple over-the-counter markets, and complex physical markets, Lowey Dannenberg's experience and extensive market relationships give the firm a significant knowledge advantage.

Lowey Dannenberg, led by partners Vincent Briganti and Geoffrey M. Horn, has successfully prosecuted, as court appointed lead or co-lead counsel or individual plaintiff's counsel, the most important and complex commodity manipulation actions since the enactment of the CEA.

**Sumitomo**.  In *In re Sumitomo Copper Litigation* ("*Sumitomo*"), Master File No. 96 CV
4854 (S.D.N.Y.) (Pollack, J.), Lowey Dannenberg was appointed as one of three executive
committee members.  Stipulation and Pretrial Order No. 1, dated October 28, 1996, at ¶ 13.
Plaintiffs' counsels' efforts in *Sumitomo* resulted in a settlement on behalf of the certified class
of in excess of $149 million, which is the largest class action recovery in the history of the CEA.
*In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 95 (S.D.N.Y. 1998).  One of the most able and
experienced United States District Court judges in the history of the federal judiciary, The
Honorable Milton Pollack, took note of counsel's efforts in *Sumitomo* in various respects,
including the following:

> The unprecedented effort of Counsel exhibited in this case led to their successful
> settlement efforts and its vast results.  Settlement posed a saga in and of itself and
> required enormous time, skill and persistence.  Much of that phase of the case
> came within the direct knowledge and appreciation of the Court itself.  Suffice it
> to say, the Plaintiffs' counsel did not have an easy path and their services in this
> regard are best measured in the enormous recoveries that were achieved under
> trying circumstances in the face of virtually overwhelming resistance.

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999).  What Judge Pollack
found to be "the skill and persistence" of counsel in *Sumitomo* will be brought to bear to
represent the Class here as well.

**In re Natural Gas.**  Lowey Dannenberg helped pioneer benchmark rate litigation when it
served as co-lead counsel in *In re Natural Gas Commodity Litigation*, No. 03 CV 6186
(S.D.N.Y.) (Marrero, J.) which resulted in over $101 million in settlements, the third largest
commodity manipulation class action recovery in the history of the CEA.  *In re Natural Gas*, 231
F.R.D. 171 (S.D.N.Y. 2005)(certifying class of NYMEX natural gas traders in more than 60
contracts over a three-year class period).  Like here, plaintiffs in *In re Natural Gas* alleged false
price reporting of price and volume information of physical (spot) natural gas transactions at
numerous natural gas delivery hubs across the United States by more than 20 large energy
companies to leading natural gas industry publishers (*i.e.*, Platts) whose indices were used to
price and settle hundreds of millions of dollars in exchange-traded natural gas derivatives,

including NYMEX natural gas futures contracts.   Lowey Dannenberg obtained critical evidence via successful motions to compel from publishers of natural gas price indices.  *In re Natural Gas*, 235 F.R.D. 199 (S.D.N.Y. Nov. 16, 2005) (Peck, M.J.), *aff'd as modified*, 235 F.R.D. 241 (S.D.N.Y. Apr. 18, 2006) (Marrero, J.).  Proposed Interim Class Counsel expect it will be necessary to engage in similar contested efforts to compel disclosures by non-party Platts of evidence relating to Defendants' submission of false physical Brent Crude oil price and volume information that was used to compile Platts' benchmark Brent Crude oil price assessments.

**Amaranth.**  Lowey Dannenberg served as co-lead counsel in *In re Amaranth Natural Gas Commodities Litigation*, Master File No. 07 Civ. 6377 (S.D.N.Y) (Scheindlin, J.) ("*Amaranth*"), a certified class action involving the manipulation of NYMEX natural gas futures and options contract prices in 2006 by Amaranth LLC, one of the country's largest hedge funds, prior to its widely-publicized multi-billion dollar collapse in September 2006.[13]  Among other successes, Lowey Dannenberg spearheaded efforts that led the Court to grant plaintiffs' motion for pre-judgment attachment of $72.4 million against Amaranth LLC, a Cayman Islands company and the "Master Fund" in the Amaranth master-feeder-fund hedge fund family. *Amaranth*, 711 F. Supp. 2d 301 (S.D.N.Y. 2010).  On April 11, 2012, the Court entered a final approved the $77.1 million dollar settlement reached in the action, an amount **more than ten times greater** than the $7.5 million joint settlement achieved by the Federal Energy Regulatory Commission and the Commodity Futures Trading Commission against Amaranth Advisors LLC and representing the **fourth largest** class action recovery in the 85-plus year history of the CEA.

**Hershey v. PIMCO**.  Lowey Dannenberg served as class counsel and counsel to certified class representative Richard Hershey in a class action alleging manipulation by PIMCO of the multi-billion dollar market of U.S. 10-Year Treasury Note futures contracts traded on the Chicago Board of Trade ("CBOT").  The case settled in 2011 for $118,750,000, the **second**

---

[13] In appointing Lowey Dannenberg as co-lead counsel for plaintiffs and the Class, the Honorable Shira A. Scheindlin specifically noted "the impressive resume" of Lowey Dannenberg and that "plaintiffs' counsel has vigorously represented the interests of the class throughout this litigation."

**largest** recovery in the history of the CEA.  *Hershey v. Pacific Investment Management Company LLC, et al.,* No. 05-CV-4681 (N.D. Ill.)(RAG).

Lowey Dannenberg continues to be appointed in leadership roles in large scale, class actions involving manipulation of globally important benchmarks through false reporting and restraints of trade.

**Laydon v. Mizuho Bank, Ltd. et al.**  Lowey Dannenberg serves as Sole Lead Counsel in *Laydon v. Mizuho Bank, Ltd. et al*. 12-cv-03419 (S.D.N.Y.)("*Euroyen*"), a proposed class action asserting violations of the CEA, the Sherman Act, and common law arising from the intentional and systematic manipulation (through false reporting and other unlawful means) of the London Interbank Offered Rate for the Japanese Yen ("Yen-LIBOR") and Euroyen TIBOR (the Tokyo Interbank Offered Rate) by some of the world's largest financial institutions. Euroyen TIBOR and Yen-LIBOR are used to price, settle and benchmark Euroyen TIBOR futures contracts (the *most actively* traded non-US interest rate contract in the world) and other Euroyen derivative contracts traded in the U.S. and abroad. Defendants named in the lawsuit have already pled guilty to criminal charges of price fixing and paid billions in fines to regulators, and defendant UBS AG has been granted conditional leniency from the U.S. Department of Justice ("DOJ") pursuant to the Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA") for alleged anticompetitive conduct relating to the Euroyen market.  Lowey Dannenberg on April 15, 2013 filed a 337-page Seconded Amended Complaint.   Defendants, in thirteen separate memoranda of law, moved to dismiss the Complaint in *Euroyen*.  Lowey Dannenberg, as sole lead counsel, responded to all memoranda and oral argument has been scheduled for January 29, 2013.  We expect many of the legal issues already briefed by Lowey Dannenberg in the *Euroyen* matter will appear be front and center in the Brent crude oil litigation.  The case is currently pending before The Honorable George B. Daniels in the Southern District of New York.

**Sullivan v. Barclays PLC et al.**  Lowey Dannenberg is also leading the prosecution of an additional rate setting case against the numerous global financial institutions responsible for

the setting of the Euro Interbank Offered Rate, a global reference rate used to benchmark and price settle over $200 trillion of financial products. On November 2, 2013, Lowey Dannenberg filed a comprehensive, 129-page amended class action complaint alleging multiple CEA and Sherman Act violations. The case is currently pending before The Honorable P. Kevin Castel. *Sullivan v. Barclays PLC et al.*, Case No. 13-cv-2811 (S.D.N.Y.).

**Optiver**. Lowey Dannenberg serves as Co-Lead Counsel in a proposed class action involving the alleged manipulation of NYMEX light sweet crude oil, heating oil and gasoline futures contracts prices by Optiver US, LLC and other Optiver defendants. *In re Optiver Commodities Litigation*, Case No. 08 CV 6842 (S.D.N.Y.) (LAP). The case is currently pending before The Honorable Loretta A. Preska in the Southern District of New York.

**In re Rough Rice Futures Litigation**. Lowey Dannenberg serves as Co-Lead Counsel in a proposed class action involving the alleged manipulation of rough rice futures and options traded on the CBOT. *Laydon v. Daniels et al*., Case No. 11-cv-618 (JAN) (N.D. Ill.). Plaintiffs allege that, between at least October 1, 2007 and July 31, 2008, defendants repeatedly exceeded CBOT rough rice position limits for the purpose of manipulating CBOT rough rice futures and option contract prices. The case is currently pending before The Honorable John W. Darrah in the Northern District of Illinois.

**White v. Moore Capital Management, L.P.** Lowey Dannenberg is counsel to class representative in an action against Moore Capital relating to alleged manipulation of NYMEX palladium and platinum futures prices in 2007 and 2008. *White v. Moore Capital Management, L.P.*, Case No. 10 CV 3634 (S.D.N.Y.) (Pauley, J.).

**In re Crude Oil Commodity Futures Litigation**. Lowey Dannenberg represents a proposed class representative and large crude oil trader in a proposed class action involving the alleged manipulation of NYMEX crude oil futures and options contracts. *In re Crude Oil Commodity Futures Litigation*, Case No. 11-cv-03600 (S.D.N.Y.) (Pauley, J.).

**In re Commodity Exchange, Inc., Silver Futures and Options Trading Class Action.** Lowey Dannenberg was also appointed by The Honorable Robert P. Patterson to a four-firm

executive committee in a class action alleging the manipulation of Commodity Exchange Inc. ("COMEX") silver futures and options contracts. *In re Commodity Exchange, Inc., Silver Futures and Options Trading Class Action*, Case No. 1:11-md-02213 (RPP).

Based on the experience gained in the successful prosecution of *In re Natural Gas*, and more recent litigation experience in complex rate setting cases against the world's largest financial institutions (*i.e*., Euroyen and Euribor), Lowey Dannenberg is uniquely positioned to best represent the interests of the proposed class and to lead the successful prosecution of this case.

       **b.**     **<u>Antitrust and Overcharge Litigation</u>**. Lowey Dannenberg is the nation's premier litigation firm for health insurers to recover overcharges for prescription drug and other medical products and services. Our skills in this area are recognized by the largest payers for pharmaceuticals in the United States, including Aetna, CIGNA, Humana, and WellPoint, who consistently retain Lowey Dannenberg, either on an individual or a class basis, to assert claims against pharmaceutical manufacturers for conduct, including monopoly and restraint of trade, resulting in overpriced medication. *See* Lowey Dannenberg Resume (Briganti Decl., Ex. 1).

       **3.**     **<u>Robins Kaplan</u>**. Because of Robins Kaplan's recognized expertise in <u>both</u> commodities manipulation and antitrust cases, it is uniquely well-suited to lead this case. Attorneys from Robins Kaplan who will be litigating this action serve in leadership positions representing plaintiffs in nearly a dozen vigorously contested commodities manipulation and antitrust actions:

- *Dahl v. Bain Capital Partners LLC*, Civil Action No. 07-12388-EFH (D. Mass);

- *In re Air Cargo Shipping Services Antitrust Litigation*, Case No. 06-MD-01775 (JG) (VVP) (E.D.N.Y.);

- *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311 (E.D. Mich.);

- *In re Blood Reagents Antitrust Litigation*, Case No. 2:09-MD-2081-JD (E.D. Pa.);

- *In re Chocolate Confectionary Antitrust Litigation*, Case No. 1:08-mdl-01935 (M.D. Pa.);

- *In re Commodity Exchange, Inc., Silver Futures and Options Trading Litigation*, Case No. 1:11-md-02213 (RPP) (S.D.N.Y.)

- *In re: Crude Oil Commodity Futures Litigation*, Master File No. 11 Civ. 3600 (WHP) (S.D.N.Y.);

- *In re Merck Mumps Vaccine Antitrust Litigation*, No. 12-cv-03555 (E.D. Pa.);

- *In re: Optiver Commodities Litigation*, Master File No. 08 Civ 6842 (LAP) (S.D.N.Y.);

- *In re Payment Card Interchange Fee and Merchant Discount Litigation*, No. 05-MD-1720 (JG) (JO) (E.D.N.Y.); and

- *In re Polyurethane Foam Antitrust Litigation*, Case No. 1:10-md-02196-JZ (N. D. Ohio).

Robins Kaplan attorneys also have a particular depth of experience in actions involving alleged manipulation and monopolization of energy futures markets, which are the primary causes of action alleged against Defendants.[14]  For example, as interim co-lead counsel, Bernard Persky and Hollis Salzman, attorneys now at Robins Kaplan, were instrumental[15] in obtaining what was then the second largest commodity manipulation class action recovery on record ($101 million) in *In re: Natural Gas Commodity Litigation*,[16] a commodities manipulation class action in which the factual allegations are generally acknowledged to be similar to those alleged here. [17]

---

[14] These energy market manipulation class cases include:  *In re Natural Gas Commodity Litigation*,  *In re: Optiver Commodities Litigation*, *In re: Crude Oil Commodity Futures Litigation*, *In re Amaranth Natural Gas Commodities Litigation*, *In re: Energy Transfer Partners Natural Gas Litigation*, Master File No. 4:07-cv-03349 (S.D. Tex.); *see also National Metals Inc. v. Sumitomo Corp.*, No. GIC 734001, 2003 WL 22183929 (Cal. Super. Jan. 22, 2003) (nearly $90 million settlement on behalf of copper product purchasers in multi-state antitrust class action arising from Sumitomo's manipulation of copper commodity prices (results obtained prior to joining Robins Kaplan)).

[15] Among other things, Mr. Persky successfully argued the motion by class plaintiffs to overcome Platts' assertion of the qualified reporter's privilege to quash subpoenas seeking production of the market participants' price data reported to Platts underlying its published energy market price indices.  *See* Mark Hamblett, *Plaintiffs Overcome Journalists' Privilege in Bid for Gas Figures*, 234 N.Y.L.J. 95 (Nov. 16, 2005).  Given the nature of the allegations in this MDL, it is likely Platts may again assert the qualified reporter's privilege to seek to prevent discovery of the data underlying its published Brent crude oil price assessments, making Mr. Persky's knowledge and experience gained litigating this important issue extremely valuable to plaintiffs and the members of the proposed class.

[16] Master File No. 03-cv-06186 (VM) (AJP) (S.D.N.Y.).  Results obtained prior to joining Robins Kaplan.

[17] Mr. Persky recently co-authored an article, "Brent Crude Oil Price-Fixing:  Have We Seen This Before?" examining the striking similarities between this case and *In re: Natural Gas*.  Briganti Decl., at Ex. 17.

*See* Biographies of Hollis Salzman and Bernard Persky, and news articles, attached as Ex. 3 to the Briganti Decl.  Finally, the Robins Kaplan Firm is regularly sought out for its thought leadership in the area of commodity manipulation and antitrust litigation, with firm attorneys drafting approximately six dozen articles in this area over these areas in the past five years.

### D.   Rule 23(g)(1)(A)(ii): Proposed Interim Class Counsel's Extensive Experience in Handling "Class Actions And Other Complex Litigation"

1.   **Lowey Dannenberg**.  In addition to Lowey Dannenberg's extensive experience and success in commodity futures markets, Lowey Dannenberg has represented sophisticated clients in complex litigation for the past 40 years involving federal securities, antitrust and RICO violations, for which Lowey Dannenberg has achieved recoveries in excess of one billion dollars.  These clients include Fortune 100 companies such as WellPoint, Inc., Aetna, Inc., Humana Inc., CIGNA, Horizon BC/BS of New Jersey, and Verizon, Inc., as well as the nation's largest pension funds, including, the New York State Common Retirement Fund and the New York City Pension Funds, and sophisticated institutional investors, such as Federated Investors, Inc., an investment firm with more than $341 billion in assets under management. In the 2013 edition of *Corporate Counsel* magazine's "In House Law Departments at the Top 500 Companies," Lowey Dannenberg is identified as a "Go-to Law Firm" for litigation services by its longtime clients Aetna Inc. and Humana, Inc.    These accomplishments are detailed in Lowey Dannenberg Resume, attached as Briganti Decl., Ex. 1.

2.   **Robins Kaplan**.  Robins Kaplan is a 230-plus lawyer firm that brings 75 years of courtroom experience to its representation of corporate, government and individual clients.  The Firm's Antitrust and Trade Regulation Practice Group has successfully represented parties, including Fortune 100 companies, on both sides of the courtroom and has obtained several of the largest antitrust recoveries on record.  The Firm's Antitrust and Trade Regulation Practice Group has obtained over $15 billion in settlements on behalf of its clients in large-scale antitrust litigation, earning it a reputation as one of the nation's premiere litigation practices.  *See* Robins Kaplan Resume, attached hereto as Exhibit 3 to the Briganti Decl.; www.rkmc.com.

Most recently, the Firm reached a groundbreaking $7.25 billion antitrust class-action settlement with Visa, MasterCard and major U.S. banks relating to interchange fees and merchant point-of-sale rules – the largest ever for a private antitrust case. *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, Case No. 05-md-1720 (JG)(JO) (E.D.N.Y.). Robins Kaplan is regularly recognized by national legal ranking organizations. This year alone, it was honored by in BTI Consulting Group*,* which named the Firm an "Awesome Opponent" in its 2013 Litigation Outlook, *ALM*, which placed the firm on its list of "2013 Go-To Law Firms for the Top 500 Companies" and *Chambers USA*, which placed the Firm on its list of leading law firms in 2013.

Moreover, Robins Kaplan is also well-known for its ability to try complex commercial cases to verdict. The Firm has litigated hundreds, if not thousands of cases to a successful jury verdict, including those involving complex antitrust and class action claims. For example, in *In re Lorazepam and Clorazepate Antitrust Litigation*, MDL Docket No. 1290 (D.D.C.), the firm obtained a $76.8 million jury verdict on behalf of three health insurers who overpaid for prescription drugs because of the branded manufacturer's exclusion of generic competition through the restriction of the generics' supply. And most recently, the Firm obtained a $2.75 billion arbitration award after a three-week hearing of a complex commercial dispute between its client, Kraft Foods Group/Mondelez International Inc. and Starbucks Coffee Company.

It is this demonstrated ability to successfully try any type of commercial case that enables Robins Kaplan to negotiate the best settlements with defendants who elect to resolve litigation before trial, and it is the reason corporate in-house counsel view Robins Kaplan as an "Awesome Opponent." Given its experience and track record of success, courts regularly appoint Robins Kaplan's Antitrust and Trade Regulation Practice Group to lead high-profile commodities manipulation and antitrust class actions.

        **3.**      **Lovell Stewart**. Lovell Stewart's work since 1980 in developing class action treatment of complex claims is reflected previously herein and in the Firm's Resume, attached as Ex. 2 to the Briganti Decl.

E.    **Rule 23(g)(1)(A)(iii):  Proposed Interim Class Counsel's Extensive Knowledge of the Applicable Law**

As demonstrated above as well as the firm resumes attached to the Briganti Declaration, Proposed Interim Class Counsel have extensive knowledge of commodity futures manipulation and antitrust law as well as class action law.  Proposed Interim Class Counsel respectfully submit that their knowledge of the law applicable to the claims and defenses here is most clearly reflected in the substantial results they have successfully obtained in prosecuting similar complex commodity futures manipulation and antitrust cases.  *See supra*.

F.    **Rule 23(g)(1)(A)(iv):  Proposed Interim Class Counsel Will Commit More Than Ample Resources to Representing the Class**

1.    **Robins Kaplan.**  Robins Kaplan is well-capitalized and has the manpower necessary to prosecute this multi-district litigation.  The Firm is currently prosecuting major class actions seeking billions of dollars in federal and state courts throughout the country.  In successfully prosecuting contingent litigation for decades, Robins Kaplan routinely advances the costs of litigation and has demonstrated an ability and willingness to dedicate its substantial resources to vigorously prosecute litigation on behalf of its clients.  The firm includes over 230 attorneys in six major cities across the United States as well as three distinct litigation support groups dedicated to providing significant resources that would advance this litigation for the benefit of the Class.  First, Robins Kaplan has a committed team of in-house financial and economic consultants, comprised of CPAs, MBAs and PhD economists, who can provide an efficient and cost-effective means to develop econometric measures of "but-for" pricing, market share and damages that are usually performed by hired outside economic consultants.  Our financial and economic consultants include experts in accounting, financial analysis, economic valuations and econometrics who are well-versed in reviewing and interpreting financial documents, including trading data and records and other economic discovery materials relevant to a complex commodities case. Second, the Firm has a dedicated Ediscovery Practice Group whose sole mission is to develop strategic Ediscovery plans customized to be cost-effective and

23

efficient for each of the Firm's countless complex actions.  The Ediscovery Practice Group includes an experienced staff of document review attorneys.  This group also has the ability to host electronic database reviews internally and the technology to implement predictive coding, without the additional hefty costs typically associated with hiring outside vendors.  From the onset of a case, the Firm's Ediscovery Practice Group is available with an arsenal of tools at its disposal, including targeted custodian interviews, strategic development and usage of keyword search terms, culling strategies and an in-depth understanding of Ediscovery law.  Robins Kaplan is prepared to deploy all of these valuable resources for the benefit of the proposed class.[18]

   **2.**  **Lovell Stewart.**  Lovell Stewart attorneys have tried more than ninety cases, have combined experience with CEA manipulation and antitrust claims of well in excess of 100 years, and have proprietary document software that has been used in prior class actions to save the class substantial expenses in reviewing the large document productions that are inherent in CEA manipulation and antitrust claims. *E.g.*, *Amaranth* (more than 10,000,000 pages of documents processed by the Firm's proprietary software).  The Firm has paid significantly in excess of one million dollars of expenses in each of several prior class actions to fund the prosecution of class claims.  If the Firm serves as Court appointed counsel, it is prepared to do so here and commit its proprietary document review software as well.

   **3.**  **Lowey Dannenberg**.  Lowey Dannenberg has a demonstrated record that spans more than 40 years showing that it has more than sufficient resources to finance and vigorously prosecute complex, lengthy and contentious commodities and securities litigation matters (*see* Lowey Dannenberg Resume *passim*).  Lowey Dannenberg has advanced millions of dollars on behalf of the classes it has represented, currently has sufficient resources to finance and

---

[18] Robins Kaplan also has a Trial Support and Multimedia/Graphics Department that provides resources, including multimedia production and trial technology and logistics support.  Courtroom technology, presentation technology, hotel and war-room technology & equipment, and mock trial assistance and coordination are just a few of the trial-specific resources available at the Firm.  In addition, the Firm's Minneapolis office houses one of the most technologically advanced trial practice centers in the country.  The trial practice center can be used to acclimate witnesses and experts to a courtroom setting prior to actual testimony, as well as host depositions, mediations, mock trials and simulated oral arguments.

vigorously prosecute this action, and is prepared to advance similar substantial sums in this case.[19]

G.   **Rule 23(g)(1)(B): Discretionary Factors**

Rule 23(g)(1)(B) states that courts "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." All but six (6) out of the twenty (20) firms representing plaintiffs in all of the Related Actions filed to date support the appointment of Proposed Interim Class Counsel. Of the 6 firms not supporting Proposed Interim Class Counsel, four (4) of these firms[20] waited nearly 6 months after the filing of the *Prime International Action* (on May 22, 2013) to commence their cases, and filed their cases only after the Court on November 8, 2013 set a briefing schedule for the appointment of interim class counsel. Firms supporting Proposed Interim Class counsel include many of the nation's other leading antitrust and commodity futures manipulation class action counsel. *See* Resumes attached as Exhibits 1-14, to the Briganti Decl.[21]

## CONCLUSION

For the foregoing reasons, this Court should appoint Lovell Stewart Halebian Jacobson LLP as Chairman, Lowey Dannenberg Cohen & Hart, P.C., and Robins, Kaplan, Miller & Ciresi L.L.P. as Interim Class Counsel.

---

[19] For example, during the course of a four year litigation, Lowey Dannenberg advanced over $450,000 in connection with the *In re Beacon* class action, which settled earlier this year for $219.9 million. In addition, the firm has developed and implemented strategic electronic discovery plans in complex cases. For instance, in *In re Beacon*, Lowey Dannenberg took the lead and coordinated with numerous plaintiffs' counsel the review of the more than 14 million pages of documents produced by defendants. In order to efficiently review and manage the millions of pages of documents, Lowey Dannenberg established an electronic document depository as well as a system of coding and categorizing the documents relevant to the parties' claims and defenses. Using this platform, Lowey Dannenberg was able to prioritize document review projects to other firms; monitor the progress of the document review and isolate specific people and topics to target in the discovery process, making the document review process extremely efficient and cost-effective.

[20] These 4 firms are (i) Motley Rice LLC; (ii) Berger & Montague, P.C.; (iii) Roger J. Bernstein; and (iv) Lieff Cabraser Heimann & Bernstein, LLP.

[21] The collective judgment of these very-experienced, top-tier counsel is entitled to serious consideration, and their decision to support Proposed Interim Class Counsel is a reflection of their considered judgment that the interests of the litigation and the class would best be served by doing so. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 2008 WL 1883447, at *2 (D.D.C. April 28, 2008) (establishing leadership structure supported by majority of plaintiffs while rejecting argument that court should only defer to private ordering where there is complete unanimity among counsel).

Dated: November 20, 2013

LOWEY DANNENBERG COHEN
& HART, P.C.

By: /s/  Vincent Briganti
Vincent Briganti
One North Broadway
White Plains, New York 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
vbriganti@lowey.com
ghorn@lowey.com

*Counsel for Plaintiff Prime International
Trading, Ltd. and Proposed Interim Class
Counsel*

LOVELL STEWART HALEBIAN
JACOBSON LLP

By: /s/  Christopher Lovell
Christopher Lovell
61 Broadway, Suite 501
New York, NY 10006
Tel.: (212) 608-1900
Fax: (212) 719-4677
clovell@lshllp.com
istoll@lshllp.com

*Counsel for Plaintiff William Karkut and
Proposed Interim Class Counsel*

ROBINS, KAPLAN, MILLER
& CIRESI L.L.P.

By: /s/  Hollis Salzman
Hollis Salzman
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 980-7400
Fax: (212) 980-7499
hsalzman@rkmc.com
bpersky@rkmc.com

*Counsel for Plaintiff Patricia Benvenuto and
Proposed Interim Class Counsel*

## CERTIFICATE OF SERVICE

I, Vincent Briganti, hereby certify that, on the 20th day of November, 2013, I caused the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will automatically serve a copy of same upon all attorneys of record.

I, Vincent Briganti, hereby certify that I caused to be emailed the foregoing on the following counsel of record:

| | |
|---|---|
| Daryl A. Libow<br>SULLIVAN & CROMWELL LLP<br>libowd@sullcrom.com<br><br>*Counsel for Defendant BP p.l.c.* | John Dellaportas<br>MORGAN, LEWIS & BOCKIUS LLP<br>jdellaportas@morganlewis.com<br><br>*Counsel for Defendant Royal Dutch Shell PLC* |
| Douglas Curtis<br>WILMER CUTLER PICKERING HALE and DORR LLP<br>douglas.curtis@wilmerhale.com<br><br>*Counsel for Defendant Statoil ASA* | Christopher Lovell<br>Ian T. Stoll<br>LOVELL STEWART HALEBIAN JACOBSON LLP<br>clovell@lshllp.com<br>istoll@lshllp.com<br><br>*Counsel for Plaintiff William Karkut* |
| Kellie Lerner<br>Hollis Salzman<br>Bernard Persky<br>ROBINS, KAPLAN, MILLER & CIRESI L.L.P.<br>klerner@rkmc.com<br>hsalzman@rkmc.com<br>bpersky@rkmc.com<br><br>*Counsel for Plaintiff Patricia Benvenuto* | K. Craig Wildfang<br>Thomas J. Undlin<br>Ryan W. Marth<br>ROBINS, KAPLAN, MILLER & CIRESI L.L.P.<br>kcwildfang@rkmc.com<br>tjundlin@rkmc.com<br>rwmarth@rkmc.com<br><br>*Counsel for Plaintiff Patricia Benvenuto* |
| Joseph A. Clark<br>Greg Collett<br>COLLETT CLARK LLP<br>joe.clark@collettclark.com<br>greg.collett@collettclark.com<br><br>*Counsel for Plaintiff Patricia Benvenuto* | Christopher J. Gray<br>LAW OFFICE OF CHRISTOPHER J. GRAY, P.C.<br>gray@cjgraylaw.com<br><br>*Counsel for Plaintiff Patricia Benvenuto* |
| Michael Eisenkraft<br>J. Douglas Richards<br>Sharon K. Robertson | Manuel John Dominguez<br>COHEN MILSTEIN SELLERS & TOLL, PLLC |

| | |
|---|---|
| COHEN MILSTEIN SELLERS & TOLL, PLLC<br>meisenkraft@cohenmilstein.com<br>drichards@cohenmilstein.com<br>srobertson@cohenmilstein.com<br><br>*Counsel for Plaintiff Christopher Chartier* | jdominguez@cohenmilstein.com<br><br>*Counsel for Plaintiff Christopher Chartier* |
| Solomon B. Cera<br>C. Andrew Dirksen<br>Thomas C. Bright<br>GOLD BENNETT CERA & SIDENER LLP<br>scera@gbcslaw.com<br><br>*Counsel for Plaintiff Christopher Chartier* | David E. Kovel<br>Lauren Wagner Pederson<br>Thomas W. Elrod<br>KIRBY McINERNEY LLP<br>dkovel@kmllp.com<br>lpederson@kmllp.com<br>telrod@kmllp.com<br><br>*Counsel for Plaintiffs Kevin McDonnell, Anthony Insinga, Robert Michiels, and John Devivo* |
| Michael M. Buchman<br>John A. Ioannou<br>MOTLEY RICE LLC<br><br>*Counsel for Plaintiff FTC Capital GMBH* | Robert W. Fenet<br>FENET LAW FIRM, LLC<br>bob@fenetlaw.com<br><br>*Counsel for Plaintiff David Harter* |
| Robert S. Kitchenoff<br>Steven A. Asher<br>David H. Weinstein<br>Edward Skipton<br>WEINSTEIN KITCHENOFF & ASHER LLC<br>kitchenoff@wka-law.com<br>asher@wka-law.com<br>Weinstein@wka-law.com<br>skipton@wka-law.com<br><br>*Counsel for Plaintiff Melissinos Eupatrid LP* | Karen Hanson Riebel<br>Richard A. Lockridge<br>W. Joseph Bruckner<br>Heidi M. Silton<br>LOCKRIDGE GRINDAL NAUEN P.L.L.P.<br><br>*Counsel for Plaintiff Melissinos Eupatrid LP* |
| David E. Kovel<br>Lauren Wagner Pederson<br>Thomas W. Elrod<br>KIRBY McINERNEY LLP<br>dkovel@kmllp.com<br>lpederson@kmllp.com<br>telrod@kmllp.com<br><br>*Counsel for Plaintiff Neil Taylor* | Robert S. Schachter<br>Dan Drachler<br>Sona R. Shah<br>Zwerling, Schachter & Zwerling, LLP<br>rschachter@zsz.com<br>ddrachler@zsz.com<br>sshah@zsz.com<br><br>*Counsel for Plaintiffs Port 22, LLC, Atlantic Trading U.S.A., LLC, and Xavier Laurens* |
| Anthony F. Fata<br>Christopher B. Sanchez<br>CAFFERTY CLOBES MERIWETHER & | Bryan L. Clobes<br>CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP |

| | |
|---|---|
| SPRENGEL LLP<br>afata@caffertyclobes.com<br><br>*Counsel for Plaintiffs Port 22, LLC, Atlantic Trading U.S.A., LLC, and Xavier Laurens* | bclobes@caffertyclobes.com<br><br>*Counsel for Plaintiffs Port 22, LLC, Atlantic Trading U.S.A., LLC, and Xavier Laurens* |
| Steven E. Fineman<br>Douglas I. Cuthbertson<br><br>LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP<br>sfineman@lchb.com<br>dcuthbertson@lchb.com<br>*Counsel for Plaintiffs Praetor Capital Cayman Ltd., Praetor Capital Management Ltd., Praetor VII Futures & Options Fund Ltd., and Praetor VII Futures and Options Master Fund Ltd.* | Eric B. Fastiff<br>Brendan P. Glackin<br>LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP<br>efastiff@lchb.com<br>bglackin@lchb.com<br>*Counsel for Plaintiffs Praetor Capital Cayman Ltd., Praetor Capital Management Ltd., Praetor VII Futures & Options Fund Ltd., and Praetor VII Futures and Options Master Fund Ltd.* |
| Roger J. Bernstein<br>rbernstein@rjblaw.com<br><br>*Counsel for Plaintiff Aaron Schindler* | Merrill G. Davidoff<br>Michael C. Dell'Angelo<br>Candice J. Enders<br>BERGER & MONTAGUE, P.C.<br>mdavidoff@bm.net<br>mdellangelo@bm.net<br>cenders@bm.net<br><br>*Counsel for Plaintiff Aaron Schindler* |
| Gregory S. Asciolla<br>Jay L. Himes<br>Matthew J. Perez<br>LABATON SUCHAROW LLP<br><br>*Counsel for Plaintiff Michael Sevy* | Brian Levin<br>Jeffrey B. Kaplan<br>DIMOND KAPLAN & ROTHSTEIN, P.A.<br>blevin@dkrpa.com<br>jkaplan@dkrpa.com<br>*Counsel for Plaintiff Michael Sevy* |
| Samuel H. Rudman<br>Robert M. Rothman<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>srudman@rgrdlaw.com<br>rrothman@rgrdlaw.com<br><br>*Counsel for Plaintiff Gregory Smith* | Bonny E. Sweeney<br>David W. Mitchell<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>bsweeney@rgrdlaw.com<br>davidm@rgrdlwa.com<br><br>*Counsel for Plaintiff Gregory Smith* |
| Lee Albert<br>Lionel Z. Glancy<br>GLANCY BINKOW & GOLDBERG LLP<br>lalbert@glancylaw.com lglancy@glancylaw.com<br>*Counsel for Plaintiff White Oak Fund LP* | David E. Kovel<br>KIRBY McINERNEY LLP<br>dkovel@kmllp.com<br><br>*Counsel for Plaintiff White Oak Fund LP* |

Dated: November 20, 2013                                    /s/ Vincent Briganti