**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| IN RE: NORTH SEA BRENT CRUDE OIL FUTURES LITIGATION | No. 13-md-02475 (ALC) (SN) |
|---|---|

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO APPOINT LOVELL STEWART HALEBIAN JACOBSON LLP, LOWEY DANNENBERG COHEN & HART, P.C., AND ROBINS, KAPLAN, MILLER & CIRESI L.L.P. AS INTERIM CLASS COUNSEL**

# TABLE OF CONTENTS


A. Rule 23(g)(1)(A)(ii) and (iii). Each Of Proposed Interim Class Counsel Has Much More Experience In Handling The Type Of Claims Here And More Knowledge Of The Applicable Law Than Does Kirby ....................1

B. 23(g)(1)(A)(i). Work Done To Identify And Develop The Claim....................3

1. Kirby Copied Large Portions Of Its Complaints From Proposed Interim Class Counsel And The Platts Report....................3

a. Based On Their Work Over The Last Five Months, Proposed Interim Class Counsel May Allege Substantial Additional Allegations Of Specific False Reports, Systematic Improper Conduct, And Plausible Causation Of Artificial Futures Contract Prices ....................4

2. Also Unlike Any Decision Kirby Cites, Kirby Received Financial And Intellectual Assistance From Lovell Stewart ....................5

3. Kirby Has Violated Court Rules ....................6

4. Kirby's Own Cases Support Appointment Of Proposed Interim Class Counsel Over Kirby ....................8

5. In Trying To Build Up Its Own Efforts, Kirby Threatens To Hurt The Class ........9

Conclusion ....................10

# TABLE OF AUTHORITIES

**Cases**

*Boggs v. Chesapeake Energy Corp.*,
286 F.R.D. 621 (W.D. Okla. 2012) .......... 1

*Dusenbery v. U.S.*,
534 U.S. 161 (2002) .......... 7

*Green v. City of Asheville, N. Carolina*,
1:06 Civ. 27, 2006 WL 3825129 (W.D.N.C. Dec. 26, 2006) .......... 6

*Hammond v. Solutia, Inc. Employees' Pension Plan*,
No. 06-139, 2006 WL 1050692 (S.D.Ill. Apr. 20, 2006) .......... 7

*In re Amaranth Natural Gas Commodities Litig.*,
730 F.3d 170 (2d Cir. Sep. 23, 2013) .......... 5

*In re Comverse Tech., Inc.*,
2006 WL 3511375 (E.D.N.Y. Dec. 5, 2006) .......... 9

*In re Mun. Derivatives Antitrust Litig.*,
252 F.R.D. 184 (S.D.N.Y. 2008) .......... 8

*In re Natural Gas* Commodities,
358 F.Supp.2d 336 (S.D.N.Y. 2005) .......... 10

*In re Plasma Derivative Protein Therapies Antitrust Litig.*,
No. 09 Civ. 7666, 2010 WL 1433316 (N.D. Ill. Apr. 7, 2010) .......... 8, 9

*In re Soybean Futures*,
892 F.Supp. 1025 (N.D.Ill. 1995) .......... 10

*In re Sumitomo Copper Litigation*,
74 F. Supp.2d 393 (S.D.N.Y. 1999) .......... 1, 3

*Kandel v. Brother Int'l Corp.*,
264 F.R.D. 630 (C.D.Cal. 2010) .......... 6

*Merrill Lynch, Pierce, Fenner & Smith v. Curran*,
456 U.S. 353 (1982) .......... 1

*Schanfield v Sojitz Corp. of Am.*,
258 F.R.D. 211 (S.D.N.Y. 2009) .......... 7

*Schiller v. City of New York*,
Nos. 04-7922, 04-7921, 2008 WL 1777848 (S.D.N.Y. Apr. 14, 2008) .... 7

*United States v. Schwimmer*,
892 F.2d 237 (2d Cir.1989) .... 7

**Statutes**

7 U.S.C. §1 et seq., .... 1

**Rules**

Fed. R. Civ. P. 7(b) .... 6

Fed. R. Civ. P. (g)(1)(A)(ii) and (iii) .... 1

Fed. R. Civ. P. 23(g) .... 1

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) .... 9

Fed. R. Civ. P. 23(g)(1)(A)(iii) .... 3

Fed. R. Civ. P. 23(g)(3) .... 1

**Regulations**

17 C.F.R. § 180.1(a) (2013) .... 5

**Other Authorities**

H.R. Rep. No. 93-975, p. 1 (1974), 1974 U.S. Code Cong & Admin. News .... 1

*Prohibition on the Employment or Attempted Employment of Manipulative and Deceptive Devices*, 76 Fed.Reg. 41398 (July 14, 2011) .... 6

The record now demonstrates that Lovell Stewart, as Chairman, Lowey Dannenberg and Robins Kaplan[1] ("Proposed Interim Class Counsel") are the interim class counsel "best able to represent the interests of the class". Fed. R. Civ. P. 23(g)(3).

**A. Rule 23(g)(1)(A)(ii) and (iii). Each Of Proposed Interim Class Counsel Has Much More Experience In Handling The Type Of Claims Here And More Knowledge Of The Applicable Law Than Does Kirby**

Superior experience and achievement in prosecuting the type of claims at issue and developing the law pertinent to those claims, have been decisive factors in prior contested counsel leadership motions under FRCP Rule 23(g).[2] Because CEA manipulation claims are inherently "complex"[3] and play out in the "esoteric"[4] commodity futures markets, prior demonstrated success and experience are especially important in appointing class counsel for claims for manipulation in violation of the Commodity Exchange Act, 7 U.S.C. §1 *et seq*., ("CEA"). *See* Memorandum and Order, *In re Crude Oil Commodity Futures Litig*., No. 11 Civ. 3600, ECF No. 42 (S.D.N.Y. Feb. 14, 2012) (given the subject matter of "highly complex transactions in oil futures commodity contracts, alleged violations of the anti-manipulation provisions of the Commodities Exchange Act ("CEA"), and alleged violations of the antitrust laws," the court "believes that Lovell Stewart…will best represent the class"), annexed hereto as Exhibit A.

Here, each of Lovell Stewart, Lowey Dannenberg, or Robins Kaplan has far more experience in handling claims for CEA manipulation than does Kirby McInerney LLP ("Kirby").

---

[1] Defined terms herein have the meaning attributed to them in ECF No. 15.

[2] *E.g.*, *Boggs v. Chesapeake Energy Corp.*, 286 F.R.D. 621, 624 (W.D. Okla. 2012) (appointing the firm whose experience in ERISA class actions and knowledge of the applicable law exceeded that of the other firms where the appointed firm (1) was "one of the most experienced ERISA litigation firms in the country" (2) whose "litigation efforts have resulted in favorable court opinions in a number of ERISA decisions denying motions to dismiss and motions for summary judgment.").

[3] Commodity manipulation cases are "complex and difficult," presenting issues of "almost overwhelming magnitude and complexity." *In re Sumitomo Copper Litigation*, 74 F. Supp.2d 393, 395 (S.D.N.Y. 1999)

[4] *Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 356 (1982) quoting H.R. Rep. No. 93-975, p. 1 (1974), 1974 U.S. Code Cong & Admin. News at 5843.

**First**, Kirby has **not** had a Court-appointed leadership role in any prior CEA manipulation claim that has been successfully settled or tried, and has only one prior court-appointed leadership role.[5] In stark contrast, Lovell Stewart was Court appointed lead counsel in the largest and second largest, was co-lead counsel with Lowey Dannenberg and Robins Kaplan attorneys in the third largest, and was co-lead counsel with Lowey Dannenberg in the fourth largest settlement of manipulation class action claims in the history of the CEA. ECF No. 15 pp.9-10, 15-17, 20. Lowey Dannenberg was on the executive committee in such first largest settlement. Lovell Stewart has achieved successful settlements in multiple other CEA manipulation class actions. *E.g.*, ECF No. 15 p.10, n. 10 and n. 12.

**Second**, Kirby has not previously tried or settled, nor contributed to the development of the law or even certified for class action treatment claims for manipulation in violation of the CEA. Kirby Resume, ECF No. 10-2 *passim*. At the opposite end of the continuum, Lovell Stewart attorneys have successfully tried two prior CEA manipulation claims, and have argued successfully to uphold the rights of action for CEA manipulation and to sue under the antitrust laws for manipulation in the futures markets. ECF No. 15 pp. 10-13. Lovell Stewart has argued to Courts of Appeal and Lowey Dannenberg and Robins Kaplan have worked as co-lead or as executive committee counsel with Lovell Stewart, to successfully certify multiple prior CEA manipulation claims for class action treatment and otherwise to develop the law governing such claims. *Id*.[6]

[5] Memorandum of Law in Support of Motion of Plaintiffs Kevin McDonnell, Anthony Insinga, Robert Michiels, John Devivo and Neil Taylor to Appoint Kirby McInerney LLP as Interim Lead Counsel (hereinafter "Kirby Br." or "ECF No. 9") *passim*; ECF No. 10-2 (Kirby Resume) *passim*.

[6] That Lowey Dannenberg, Lovell Stewart, and Robins Kaplan have successfully worked together in the past, is another factor strongly favoring their appointment. *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186-87 (S.D.N.Y. 2008) (three firms' "greater collective resources" appointed to prosecute bid-rigging where "many . . .of the defendants . . . are large financial institutions with substantial financial and legal resources…."); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 273 (S.D.N.Y. 2009) ("[T]here is no preference for only

**Rule 23(g)(1)(A)(iii)**. Proposed Interim Class Counsel's much greater results and experience in handling CEA manipulation claims as Court appointed counsel strongly indicate their greater knowledge of the applicable law.[7]

**B. 23(g)(1)(A)(i). Work Done To Identify And Develop The Claim**

**1. Kirby Copied Large Portions Of Its Complaints From Proposed Interim Class Counsel And The Platts Report**. Kirby asserts that it should be appointed as lead counsel because of the work that Kirby performed on the *McDonnell* complaint. This is wrong factually and legally. Factually, Kirby

> (a) copied large portions of the *McDonnell* complaint verbatim or by paraphrasing from Platts Crude Oil Marketwire ("Platts Reports"), see accompanying Raymond Girnys Declaration, Ex. A (identifying the copying in 54 paragraphs of *McDonnell* from Platts); and
>
> (b) copied verbatim or virtually verbatim significant portions of the *McDonnell* complaint from the *Karkut* complaint filed by Lovell Stewart and the *Prime International* complaint filed by Lowey Dannenberg. Exhibit A to the Amanda N. Miller Declaration, and Exhibit B to the Girnys Declaration. This copying prominently included the allegations based upon the economic analysis and the structural analysis conducted by Lovell Stewart, as described in ECF No.15, at 5-8.

The *McDonnell* complaint fails to allege that the *Karkut* or *Prime International* complaints or the Platts Reports are important sources for McDonnell's allegations except that Kirby apparently

---

one law firm to be appointed lead counsel in cases such as the current action, with many different defendants and complicated issues. Rather, appointment of multiple counsel is routine and widely accepted").

[7] Kirby asserts it has a team of "proven" commodities lawyers. ECF No. 9, p. 3. But without denigrating Kirby's efforts here or in other cases, Kirby clearly has **no** proven results as court appointed counsel in CEA manipulation claims. Thus, Kirby's Firm Resume (ECF No. 10-2) mentions only three claims for CEA manipulation. In two of these, Kirby was not Court appointed counsel. No result has been achieved in the third case. *Id*. citing to *In re LIBOR-Based Financial Instruments Antitrust Litig.*, *In re Commodity Exchange, Inc., Silver Futures and Options Trading Litig.*, and *In re Sumitomo Copper Litig.* ECF No. 10-2, *passim*.

Similarly, the Kirby attorneys' individual biographies reflect that **only one attorney**, David Kovel, lists commodities as an area of focus. *Compare* ECF No. 10-2, p. 7 (Kovel biography) *with* ECF No. 10-2, pp. 2-6, 8-26 (remaining Kirby attorneys do **not** list commodities as an area of focus but **INSTEAD** list varying combinations of securities, shareholder derivative, consumer, healthcare, structured finance, merger and acquisition, commercial, whistleblower, unclaimed property, and antitrust litigation).

attributes the allegations in ¶¶152, 176 to Platts. E.g., *McDonnell* Complaint *passim* and p. 1 (alleging its sources).

The remaining substantive allegations in the *McDonnell* complaint include 30 allegations that are clearly copied verbatim from other public documents. Amanda N. Miller Declaration Exhibit B. Of the remaining substantive allegations, 42 are based on inferences from or interpretations of the Platts Reports, the *Karkut* complaint, or other public sources, and the “game-changing” news reports earlier this year of investigations into false reporting, confessions of false reporting, etc. *McDonnell* Complaint ¶¶ 92-93, 101-06, 108, 110, 113-14, 118-19, 127-28, 130, 132-33, 135, 138, 141-48, 150, 160, 169, 178-81, 185-87, 195, 198, 225.

**a. Based On Their Work Over The Last Five Months, Proposed Interim Class Counsel May Allege Substantial Additional Allegations Of Specific False Reports, Systematic Improper Conduct, And Plausible Causation Of Artificial Futures Contract Prices**

Eliminating transitional and non-substantive allegations, there remain some new allegations in the *McDonnell* complaint that were developed by Kirby during the extra four months that Kirby took to file McDonnell, its second complaint after its earlier *White Oaks* complaint herein. (Kirby also copied the *White Oaks* complaint from *Prime International*. Ex. B to Girnys Declaration.)

However, also during the last four months, (a) Lovell Stewart has developed additional facts that permit it to allege (1) **six** specific false reporting periods (in addition to, and outside of the **two** false reporting periods commendably alleged in the *McDonnell* complaint), and (2) multiple allegations that enhance the plausibility of the pleading that the false reports (including those in the *McDonnell* complaint) caused changes in futures contract prices; (b) Lowey Dannenberg has identified over 170 potential witnesses in the U.S. and U.K., including former employees of Defendant companies and Platts, and has developed through dozens of interviews

extensive non-public information that gives it good grounds to make new allegations to enhance the plausibly of false reporting including systematic violations of compliance rules intended to prevent false reporting and many additional facts; and (c) Robins Kaplan has developed additional facts and economic analysis that permit it to make allegations that add to the plausibility of manipulation.

Thus, the four month delay in the timing of the *McDonnell* complaint, the extensive copying therein, and the assistance that Kirby received (see below) from Lovell Stewart, explain why *McDonnell* has more allegations than the much earlier complaints filed many months ago by Proposed Interim Class Counsel. Those obsolete complaints do not begin to reflect the current state of their counsel's respective investigations.

2. **Also Unlike Any Decision Kirby Cites, Kirby Received Financial And Intellectual Assistance From Lovell Stewart.** Kirby likewise fails to mention that its copying from Platts and the *Karkut* complaint are all the more significant because:

(a) Lovell Stewart suggested that Kirby pursue certain areas of investigation, including the Platts Reports as the next order of business;
(b) Kirby asked for and Lovell Stewart made a $25,000 payment to Kirby's expert to subsidize such investigation on behalf of the class;[8]
(c) Kirby sent a draft of the *McDonnell* complaint to Lovell Stewart for comments; and
(d) As Kirby performed its investigation that led to the *McDonnell* complaint, Kirby conferred and had multiple conversations[9] with Lovell Stewart.

---

[8] Kirby claims that it has spent more money than any other class counsel. Kirby Br. p. 1. Having chosen to make an assertion about other counsel's expenditures that Kirby clearly lacked sufficient knowledge to make, Kirby then also chose to omit to mention that all that Kirby knew for sure was that Kirby had asked Lovell Stewart for $25,000, and Lovell Stewart had provided same.

[9] This included a discussion of the following portion of an appeal that Lovell Stewart had argued. *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 173 and fn.1 (2d Cir. Sep. 23, 2013) ("*Amaranth*"). "The Commodity Futures Trading Commission ("CFTC") has since promulgated a regulation making it unlawful for any person to "intentionally or recklessly" manipulate prices through various deceitful or fraudulent conduct. *See* 17

The original law firms in this case held open, at Lovell Stewart's request, any vote among counsel on private ordering until after the *McDonnell* complaint had been filed. This was so that Kirby could be judged in such vote by its second complaint herein (*McDonnell*) rather than its original complaint on behalf of plaintiff White Oak LP, which copied near verbatim in words or substance the allegations of the first-filed *Prime International* Complaint (see Girnys Decl. Ex. B). In sum, Kirby's work in this case and its motion for appointment here implicitly and explicitly have relied upon and profited from the inclusive conduct of Proposed Interim Class Counsel. It provided Kirby with intellectual assistance, financial assistance, the earlier *Karkut* complaint to copy, advice that analysis of the Platts Reports was the next order of business, and held open for four months the vote by counsel in the different cases herein on counsel leadership.

3. **Kirby Has Violated Court Rules.** Contrary to the inclusive conduct by the undersigned that has greatly helped Kirby in this case, Kirby has engaged in exclusionary conduct in order (a) to try to bring in new counsel and plaintiffs who did not previously contribute to the claims here, so as to exclude all the prior counsel and (b) moreover to exclude Proposed Interim Class Counsel from service of an *ex parte* submission by Kirby of its credentials to support its motion to become sole class counsel. ECF No. 18; Kirby Br. pp. 3 & n. 3, 7-8. In so doing, Kirby violated Court rules by submitting materials *in camera* without prior motion.[10] *See Kandel v. Brother Int'l Corp*., 264 F.R.D. 630, 634 (C.D.Cal. 2010) (counsel who violated rules was not "best able" to represent class). Competing counsel in other cases **have given notice** to the opposition and obtained prior Court permission before an *in camera*

C.F.R. § 180.1(a) (2013). This regulation does not impact the present appeal, however, given the regulation's effective date of August 15, 2011. *See* Prohibition on the Employment or Attempted Employment of Manipulative and Deceptive Devices, 76 Fed.Reg. 41398, 41398 (July 14, 2011)."

[10] Fed.R.Civ.P. 7(b)((1) (application for an order shall be by motion which "shall state with particularity the grounds therefor"); S.D.N.Y. Local Civil Rules at 6.1(b)(1) ("On all civil motions, ... the notice of motion, supporting affidavits, and memoranda of law shall be served by the moving party on all other parties that have appeared in the action."); *see also Green v. City of Asheville, N. Carolina*, 1:06 Civ. 27, 2006 WL 3825129 at *3 (W.D.N.C. Dec. 26, 2006) (unauthorized *in camera* submission violated local rule requiring briefing).

submission. *Hammond v. Solutia, Inc. Employees' Pension Plan*, No. 06-139, 2006 WL 1050692 at *1 (S.D.Ill. Apr. 20, 2006) (requiring notice without reference to any Local Rule). Ethical violations may result from failure to give notice.[11]

Suppose Kirby had not paid back the inclusivity and financing provided by Proposed Interim Class Counsel by violating the express requirements of multiple Court rules. Suppose Kirby had instead properly moved for leave to submit its materials *in camera*. Proposed Interim Class Counsel would have opposed such motion. They have both a due process right, and a common interest exception to the scope of the claimed work product privilege. *See Schanfield v Sojitz Corp. of Am.*, 258 FRD 211, 214-15 (S.D.N.Y. 2009) (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989)). Regarding such common interest exception, Kirby **did** work with, and ask for and receive financial and other assistance from Lovell Stewart. *See* pp.5-6 *supra*. Kirby **did** send a draft of the *McDonnell* complaint to Lovell Stewart. *Id.* Kirby did so on behalf of a common client, *i.e.*, the class. Kirby's *ex parte* submission runs afoul of the Due Process Clause: parties "whose property interests are at stake are entitled to notice and an opportunity to be heard."[12]

Proposed Interim Class Counsel respectfully submit that (a) Kirby's conduct has **NOT** waived any privilege as to the **Defendants**, (b) the materials filed under seal should **remain** under seal, (c) Kirby's violations of Court rules need not be the subject of any adverse finding by the Court because the Court should deny Kirby's application to be appointed as interim class counsel regardless of the contents of the *in camera* submission, and (d) the Court may simply

[11] *See also* N.Y. State Bar Assoc. Comm. on Prof'l Ethics, Op. 325 (1974) (unless expressly permitted by the court upon application on notice to all parties or authorized by law, it is improper to submit a brief or other communication to the court without promptly delivering a copy to opposing counsel).

[12] *Dusenbery v. U.S.*, 534 U.S. 161, 167 (2002) (citations and quotation marks omitted); *Schiller v. City of New York*, Nos. 04-7922, 04-7921, 2008 WL 1777848 at *5 (S.D.N.Y. Apr. 14, 2008) ("overwhelming weight of authority favors the view that a court's reliance on *ex parte, in camera* submissions is strongly disfavored") (citations omitted).

disregard such *in camera* materials for purposes of this contested motion. If, however, the Court is nonetheless inclined to consider Kirby's *in camera* submission, then Kirby should be directed to serve its *ex parte*, now-sealed submission on Proposed Interim Class Counsel but **not** on Defendants.

4. **Kirby's Own Cases Support Appointment Of Proposed Interim Class Counsel Over Kirby.** No case has ever rewarded a counsel who has done what Kirby has done with any appointment much less a sole lead counsel appointment. Thus, even the decisions Kirby cites, favor Proposed Interim Class Counsel and disfavor Kirby. In *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 185-86 (S.D.N.Y. 2008), cited at Kirby Br. p. 1, the counsel who were appointed by the Court had filed **early** complaints, as Proposed Interim Class Counsel did here. *Id.* Counsel who filed later complaints that copied parts of the earlier complaint were rejected. *Id*. Further, the appointed counsel had initiated settlement negotiations with Bank of America, which culminated in an agreement with Bank of America for cooperation. This cooperation could not be copied from an earlier complaint or a publication, and the early filing counsel did not solicit or receive financial and intellectual assistance from other counsel nor file the last complaint a half a year after the first complaint. *See* pp. 3-6 *supra*.

In *In re Plasma Derivative Protein Therapies Antitrust Litig.*, No. 09 Civ. 7666, 2010 WL 1433316 (N.D. Ill. Apr. 7, 2010) ("*Plasma*"),cited at Kirby Br. p.7, the Court selected two firms as co-lead counsel based on their extensive experience with the complex claims at issue. *Plasma*, 2010 WL 1433316, at *6. Just the opposite, Kirby suffers from an experience deficit on the type of claims here compared to Lovell Stewart, Lowey Dannenberg or Robins Kaplan. *See* pp. 1-2 *supra*. In *Plasma*, one of the selected firms was the first to file a complaint (as Lowey did here). *Id*. The selected firm later filed a much more detailed complaint (as Lovell Stewart did

here) which was apparently copied by later counsel, as Kirby did here. *Id*. Further, the successful movants had worked closely together in the past on successful cases (as Proposed Interim Class Counsel have done). *Id*. Unlike Kirby, the movants in *Plasma* had not filed a complaint **four** months later than any other; just the opposite. Such movants also had not copied from the competing counsel's complaint. Nor had they asked for and obtained financial, intellectual, and other assistance from competing counsel.

Finally, Kirby cites *In re Comverse Tech., Inc.*, No. 06 Civ. 1849 (E.D.N.Y.), ECF No. 94, pp. 5, 7, *aff'd* 2006 WL 3511375 (E.D.N.Y. Dec. 5, 2006). Kirby Br. p. 7. *Comverse* is legally distinguishable because the Court (1) did **not** apply the four factors under Rule 23(g)(1)(A)(i)-(iv) as the Court here must, (2) stated that "there is [] no statutory authority setting forth the criteria a court must apply in appointing lead counsel in a consolidated shareholder derivative suit," and (3) held that "[t]here is also no controlling case law setting forth such criteria either, thus leaving the criteria to be applied to the discretion of the Court." Also, factually, *Comverse* is extremely distinguishable from all the facts unique to Kirby's soliciting financial and intellectual assistance, copying other complaints, filing four months late, etc., here.

5. **In Trying To Build Up Its Own Efforts, Kirby Threatens To Hurt The Class.** Kirby McInerney touts its work in this case by asserting that it has alleged "a new, critical legal claim not previously brought …" Kirby Br., p. 2, 14, fn. 7. However, in *Amaranth,* cited at Fn. 9 *supra*, the Second Circuit appeared to hold that the effective date of CFTC Reg. §180.1(a), which is the basis for Kirby's new claim, is August 15, 2011. To any extent CFTC Reg. §180.1 is **not** retroactive, 85% of the class members who Kirby seeks to represent (*i.e*., those who transacted from 2002 through August 14, 2011), would **not** qualify for any claim under CFTC Reg. §180.1. In that event, by arguing that Reg. 180.1 is "critical", Kirby would be implying

that 85% of the class would not have some "critical" rights available under §180.1. Excluding Proposed Interim Class Counsel from reading the pertinent filings and from continuing in the case, is one thing. But excluding 85% of the class from enjoying a "critical" right, is another thing. A more inclusive argument for the entire class is (a) that the specific intent element of CEA manipulation is "modified" to be mere knowledge or recklessness in claims alleging, as here, false reports, *In re Soybean Futures*, 892 F.Supp. 1025, 1045 (N.D.Ill. 1995); *In re Natural Gas Commodities Litig.*, 358 F.Supp.2d 336, 341, 344 (S.D.N.Y. 2005), and (b) that prices affected by false reports are necessarily artificial prices. *See In the Matter of Indiana Farm Bureau*, CFTC No. 75-14, 1982 WL 30249, *4, n.2 (CFTC Dec. 17, 1982). The foregoing propositions effectively supply for 100% of the class all that Reg. 180.1 promises to supply for a limited portion of the class. Thus, a Reg. 180.1 claim may be made but it is, at best, ill advised to characterize such claim as "critical".

**Conclusion.** Lovell Stewart, as Chairman, and Lowey Dannenberg, and Robins Kaplan should be appointed interim class counsel.

Dated: November 26, 2013

LOVELL STEWART HALEBIAN
JACOBSON LLP

By: /s/ Christopher Lovell
Christopher Lovell
Amanda N. Miller
61 Broadway, Suite 501
New York, NY 10006
Tel.: (212) 608-1900
Fax: (212) 719-4677
clovell@lshllp.com
Amiller@lshllp.com

*Counsel for Plaintiff William Karkut and Proposed Interim Class Counsel*

LOWEY DANNENBERG COHEN & HART, P.C.

By: /s/ Vincent Briganti
Vincent Briganti
Geoffrey M. Horn
One North Broadway
White Plains, New York 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
vbriganti@lowey.com
ghorn@lowey.com

*Counsel for Plaintiff Prime International Trading, Ltd. and Proposed Interim Class Counsel*

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By: /s/ Hollis Salzman
Hollis Salzman
Bernard Persky
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 980-7400
Fax: (212) 980-7499
hsalzman@rkmc.com
bpersky@rkmc.com
klerner@rkmc.com

*Counsel for Plaintiff Patricia Benvenuto and Proposed Interim Class Counsel*