UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: NORTH SEA BRENT CRUDE OIL FUTURES LITIGATION | Master File No. 13-md-02475-ALC-SN |
| KEVIN McDONNELL, ANTHONY INSINGA, ROBERT MICHIELS and JOHN DEVIVO, on behalf of themselves and all others similarly situated,<br>　　　　　　　　Plaintiffs,<br>　　　v.<br>ROYAL DUTCH SHELL PLC, BP PLC, STATOIL ASA, MORGAN STANLEY, TRAFIGURA BEHEER B.V., TRAFIGURA AG, PHIBRO TRADING LLC, VITOL, S.A. and JOHN DOES 1-50,<br>　　　　　　　　Defendants. | Case No. 13 Civ. 07089-ALC-SN<br><br>ECF Case |
| NEIL TAYLOR, on behalf of himself and all others similarly situated,<br>　　　　　　　　Plaintiff,<br>　　　v.<br>ROYAL DUTCH SHELL PLC, BP PLC, STATOIL ASA, MORGAN STANLEY, TRAFIGURA BEHEER B.V., TRAFIGURA AG, PHIBRO TRADING LLC, VITOL, S.A., and JOHN DOES 1-50,<br>　　　　　　　　Defendants. | Case No. 13 Civ. 8179-ALC-SN<br><br>ECF Case |

**[PROPOSED] REPLY MEMORANDUM IN SUPPORT OF MOTION OF
PLAINTIFFS KEVIN McDONNELL, ANTHONY INSINGA,
ROBERT MICHIELS, JOHN DEVIVO AND NEIL TAYLOR
<u>TO APPOINT KIRBY McINERNEY LLP AS INTERIM LEAD COUNSEL</u>**

　　　　　　　　　　　　　　　　　　　　**Proposed Lead Counsel**

　　　　　　　　　　　　　　　　　　　　David E. Kovel
　　　　　　　　　　　　　　　　　　　　KIRBY McINERNEY LLP
　　　　　　　　　　　　　　　　　　　　825 Third Avenue, 16th Floor
　　　　　　　　　　　　　　　　　　　　New York, NY 10022
　　　　　　　　　　　　　　　　　　　　Telephone: 212-371-6600

December 2, 2013

On behalf of Plaintiffs (defined in ECF Nos. 8-9, 20), Kirby McInerney LLP files this reply to respond to and correct factual assertions of the firms Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart"), Lowey Dannenberg Cohen & Hart, P.C. ("Lowey Dannenberg"), and Robins Kaplan Miller & Ciresi LLP ("Robins Kaplan" and, collectively, "competing counsel") in support of their motion to lead this litigation.  *See* ECF Nos. 21-23.

**First**, Kirby McInerney followed this Court's rules in requesting permission to submit an *ex parte in camera* declaration.  Specifically, Kirby McInerney followed Rules I.a. and IV.a. of this Court's Individual Practices in Civil Cases and submitted via e-mail a confidential request to the Court to file a sworn declaration under seal.  The Court granted this request.  *See* ECF No. 19.[1]  Kirby McInerney has made a clear and specific showing of reasons why *ex parte in camera* submission of confidential information furthers the best interests of the proposed class and still believes that it is in the best interests of the class to maintain this submission *in camera*.

**Second**, competing counsel's contention that Kirby McInerney copied their complaints is also misleading.  For one thing, many of the allegations competing counsel claim are copied have developed from years of drafting by many firms, including competing counsel and Kirby McInerney, on a variety of Commodity Exchange Act ("CEA"), antitrust and federal securities litigation actions.  *See, e.g.*, *In re Crude Oil Commodity Futures Litig.*, No. 11 Civ. 03600 (WHP) (S.D.N.Y. May 29, 2012) (ECF No. 66 Consolidated Amended Class Action Complaint ¶¶ 8, 33, 83); *In re LIBOR Based Financial Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB) (S.D.N.Y. Sept. 30, 2013) (ECF No. 438 Second Amended Complaint ¶ 500); *In re Commodity

---

[1] Relying upon Local Rule 6.1, competing counsel erroneously suggest that Kirby McInerney violated Court rules. But the introductory paragraph of Local Rule 6.1 expressly states that motion papers need not be served on all counsel where, as here, there are procedures "otherwise provided by . . . the Court in a Judge's Individual Practice." *See also* S.D.N.Y. Local Rule 6.1(d) ("No *ex parte* order . . . will be granted except upon a clear and specific showing by affidavit of good and sufficient reasons by a procedure other than by notice of motion is necessary."); Fed. R. Civ. P. 5(a)(1)(D) ("a written motion, except one that may be heard ex parte" must be served on all parties).

1

*Exchange, Inc. Silver Futures and Options Trading Litig.*, No. 11 MD 2213 (RPP) (S.D.N.Y. Jan. 22, 2013) (ECF No. 128-1 Amended Consolidated Class Action Complaint ¶¶ 16, 182). Indeed, many of the allegations that competing counsel erroneously claim to be proprietary in nature are substantially similar from case to case and regenerate the same language used by all plaintiffs' counsel in a similar manner.[2] Competing counsel's reference to facts copied from the ICE and NYMEX websites likewise are not novel approaches to drafting complex class action complaints. It is also noteworthy that Lovell Stewart requested a copy of Kirby McInerney's complaint in September before it was filed, yet made no comments at all, let alone that there was something untoward in the use of any of the allegations. The likely reason for this is that the first 50 pages of Kirby McInerney's complaint are highly original. When it comes to the most essential descriptions of the market and the manipulations, Kirby McInerney's work product stands out both in its depth and originality. That <u>some</u> of the allegations are, <u>in part</u>, based on publicly available information hardly constitutes plagiarism – this is the nature of pre-discovery factual

---

[2] In fact, large portions of the complaint in *Prime International v. BP PLC, et al.*, No. 13 Civ. 3473 (S.D.N.Y. May 22, 2013), ECF No. 1 (*e.g.*, ¶¶ 19, 20 66, 67, 69-74, and 77), including highly substantive portions, are direct copies of earlier complaints, which are likely copies of yet earlier complaints. For example, *compare* the complaint in *Sullivan v. Barclays PLC, et al.*, No. 13 Civ. 1159 (S.D.N.Y. Feb. 12, 2013), ECF No. 1, at ¶ 60**:**

> Euribor Contributor Defendants knew that the false rates they submitted were used by the EBF in calculating and publishing Euribor. Euribor Contributor Defendants knew, as sophisticated market participants and EBF Euribor contributor banks, that the (mis)information they reported directly impacted the prices of Euribor futures and other Euribor derivative contracts traded in the U.S. and abroad.

*with* the *Prime International* complaint here at ¶ 67:

> Defendants knew that this false trade information was used by Platts in calculating and publishing its Brent crude oil prices. Further, they also knew, as sophisticated market participants, that the (mis)information they reported impacted the prices of Brent Crude oil futures contracts and other Brent Crude oil derivative contracts traded in the U.S.

investigation which must be developed from publicly-available sources. Competing counsel clearly did not undertake the same investigation.[3]

Further, Lovell Stewart's contention that it is somehow responsible for Kirby McInerney's original work product is simply false. Although it is true that Christopher Lovell and David Kovel spoke a few times about the facts that Kirby McInerney's consulting expert was helping to develop, and the Lovell Stewart firm accepted David Kovel's offer to share in the fruits and costs of the work product, it is entirely inaccurate to suggest that Lovell Stewart guided the investigation. Indeed, counsel for Kirby McInerney consulted with several plaintiffs' counsel about developing these allegations, and another firm – Glancy Binkow & Goldberg LLP – also bore some of the research costs. Unlike Lovell Stewart, these other firms rightly do not lay claim to the work product resulting from Kirby McInerney's enormous investment of time.

**Third**, competing counsel suggest that Kirby McInerney has no experience in commodities cases beyond the pleading and motion to dismiss stage. Their assertions are so cabined as to be misleading. The *Unocal* litigation (*In re Reformulated Gasoline (RFG) Antitrust and Patent Litigation and Related Actions*, MDL No. 05-1671 (C.D. Cal.)), is a case in point. There, Kirby McInerney litigated as lead counsel on behalf of a certified class of gasoline purchasers who alleged manipulation of the California "RBOB" gasoline market, and successfully settled the case, after fully briefing summary judgment. This manipulation of the gasoline market in California has many similarities to the claims at issue here, especially the relationship of various physical markets for oil products. And this is just one example. Kirby McInerney has also been pivotal in a number of commodities cases, including *In re LIBOR-*

---

[3] Instead of dissecting Kirby McInerney's complaint, if competing counsel had instead referenced the same Platts information in their complaints, their pleadings undoubtedly would have been significantly improved. But reverse engineering Kirby McInerney's allegations is not the same as developing them through investigation, which requires among other things significant expert analysis and an understanding of the crude oil physical markets.

*Based Fin. Instruments Antitrust Litigation*, No. 11 MD 2262 (NRB) (S.D.N.Y.) ("*LIBOR*"); *In re Commodity Exchange, Inc., Silver Futures and Options Trading Litigation*, No. 11 MD 2213 (RPP) (S.D.N.Y.); *In re BP Propane Indirect Purchaser Antitrust Litigation*, No. 06 Civ. 3541 (N.D. Ill.); and *In re Sumitomo Copper Litigation*, No. 96 Civ. 4584 (S.D.N.Y.).

As discussed in prior briefs, the team at Kirby McInerney has exceptional trial, antitrust and commodities experience.[4] This team has been successfully prosecuting the *LIBOR* litigation as co-lead counsel for the last two and a half years. The *LIBOR* litigation is a massive case involving arcane aspects of the CEA and allegations that the global LIBOR benchmark was manipulated and thereby caused artificiality directly in the Eurodollar futures market. Kirby McInerney has undertaken the lion's share of the briefing in that litigation, including virtually all the extensive briefing of intent standards under the CEA. The allegations of benchmark manipulation in the *LIBOR* case are analogous to the allegations of Platts benchmark manipulation at issue here and therefore bear directly on Kirby McInerney's experience.

Competing counsel's criticisms of Kirby McInerney are plainly disingenuous because they supported Kirby McInerney to be lead counsel in the *LIBOR* litigation. There, Lovell Stewart and Lowey Dannenberg (among many others) argued that Kirby McInerney was "best suited and 'most adequate' to prosecute the claims in this case." *LIBOR*, Sept. 1, 2011, ECF. No. 10, at 6; *see also* Sept. 8, 2011, ECF. No. 18, at 1 (Kirby McInerney among the proposed lead counsel that "have the requisite experience and have handled complex commodities and antitrust cases including trials."). Competing counsel supported Kirby McInerney in *LIBOR*, the largest commodities case in history, as judged by the size of the Eurodollar futures contract market, but

---

[4] In addition to David Kovel, the team includes Alice McInerney, who was Chief of the Investor Protection Bureau and Deputy Chief of the Antitrust Bureau of the New York Attorney General's office for many years. Additionally, Andrew McNeela served as Assistant United States Attorney for the Southern District of New York prior to joining Kirby McInerney, and represented the United States in a wide array of affirmative and defensive civil litigation.

now contend that Kirby McInerney does not have the requisite experience. The only thing that has changed between that case and this one is competing counsel's self interest.

That Kirby McInerney has the support of highly respected law firms, including firms that led two of the largest private settlements in history (one in antitrust, the other in the oil industry),[5] further demonstrates that Kirby McInerney can lead this litigation and undermines competing counsel's self-serving arguments about experience. Kirby McInerney will work with these highly experienced firms to prosecute this litigation.

Competing counsel also contend that because Kirby McInerney's clients filed later, their work product should somehow be discounted. However, developing these claims is not a simple matter of the passage of time. If that was the case, then competing counsel could have achieved the same results as a matter of course, something that they have not shown. Kirby McInerney's work product should not be discounted that easily.

Finally, the timing of when Kirby McInerney filed its complaints does not weigh against appointment. In the *LIBOR* litigation, Judge Buchwald appointed two firms lead counsel in one of the related cases[6] although their complaint, which was not materially different from the complaints of the other firms, was filed four months after the initial case was filed. In that situation, the court appointed lead counsel finding it "highly relevant" that the plaintiffs there, like Kirby McInerney's clients here, had the most invested in the case. *Id.* at *3.

---

[5] *See In re Payment Card Interchange Fee and Merchant Discount Litig.*, No. 05 MD 1720 (JG)(JO) (E.D.N.Y.) (recovering $7.25 billion in damages); *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010*, No. 10 MD 2179 (E.D. La.) (recovering $7.8 billion dollars in damages).

[6] This decision related to the over-the-counter portion of the *LIBOR* case, not the Exchange-Based portion, of which Kirby McInerney is co-lead counsel. *See LIBOR*, No. 11 MD 2262, 2011 WL 5980198 (S.D.N.Y. Nov. 29, 2011).

5

| | |
|---|---|
| Dated: New York, New York<br>December 2, 2013 | Respectfully submitted,<br><br>   /s/ David E. Kovel<br>David E. Kovel<br>Andrew McNeela<br>Lauren Wagner Pederson, *Of Counsel*<br>Thomas W. Elrod<br>KIRBY McINERNEY LLP<br>825 Third Avenue, 16th Floor<br>New York, NY 10022<br>Tel: 212-371-6600<br>Fax: 212-751-2540<br>dkovel@kmllp.com<br>amcneela@kmllp.com<br>lpederson@kmllp.com<br>telrod@kmllp.com<br><br>*Counsel for Plaintiffs and Proposed Interim Lead Counsel* |