UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:                                            :
                                                  :
NORTH SEA BRENT CRUDE OIL                         :    1:13-md-2475 (ALC)
FUTURES LITIGATION                                :
                                                  :
                                                  :
This Document Applies To:  ALL CASES              :
                                                  :
                                                  :
-------------------------------------------------------x

**PLAINTIFFS' OPPOSITION TO PLAINTIFFS KEVIN MCDONNELL,
ANTHONY INSINGA, ROBERT MICHIELS, JOHN DEVIVO AND NEIL TAYLOR'S
MOTION TO BE APPOINTED LEAD PLAINTIFFS AND TO APPOINT
<u>KIRBY MCINERNEY AS INTERIM LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

A.  This Court Should Not Appoint Lead Plaintiffs
    Or Interim Class Representatives ................................................................................... 2

    1.  FRCP Rule 23(g)(1) Expressly Authorizes The Appointment
        Of Interim Class Counsel .......................................................................... 2

    2.  But Rule 23(g)(1) Pointedly Omits To Authorize The Appointment
        Of Interim Class Representatives, And FRCP Rule 23 Does Not
        Anywhere Mention The Creation Of Lead Plaintiffs ................................. 2

    3.  Where, As Here, Competing Counsel Seek Appointment, Rule 23(g)(1)
        Mandates That This Court "Must" Select The Counsel "Best Able" To
        Represent The Class And "Must Consider" Specified Mandatory Criteria ............. 3

    4.  Congressional Reforms Of The Federal Securities Laws Created A
        "Lead Plaintiff" In Securities Class Actions And Transferred From
        The Court To The Lead Plaintiff The Determination Of Which Counsel
        Is The Best Able To Represent The Class ................................................ 3

    5.  In Stark Contrast To The Securities Laws, The Substantive Laws At
        Issue Here Have Not Been Subject To Class Action Abuses, Do
        Not Create Lead Plaintiffs, And Do Depend On Private Counsel To
        Enforce Them ............................................................................................ 4

        a.  The Sherman Act Is America's Most Important Commercial
            Law, Depends Upon Private Lawyers For Enforcement, And
            Does Not Create Lead Plaintiffs Nor Any Other Limitation On
            Class Actions ................................................................................ 4

        b.  Congress Found That Private Actions Are "Critical" To The
            Enforcement Of The CEA And Did Not Create Lead Plaintiffs
            Nor Other Limitations On Class Actions ...................................... 5

B.  Thus, Kirby Fails To Cite Any Non-PSLRA Case In Which A Lead Plaintiff
    Or Interim Class Representative Was Appointed ............................................................ 6

    1.  Far From Citing Such A Case, Kirby Appears To Acknowledge That
        There Is No Legal Basis For Appointing A Lead Plaintiff Or Interim
        Class Representative Here ........................................................................ 6

    2.  Kirby Makes Unsworn And Unsupported Assertions ............................... 8

      3.      It Is Too Early To Tell Who Has The Largest Financial Interest Because The But-For World Of Non-Artificial Prices Cannot Be Determined Until Later In The Lawsuit ................................................................................................. 8

C.      The Court Should Disregard Kirby's Additional Argument About Most Adequate Counsel Because It Apparently Violates Two Prior Court Orders ...................... 9

      1.      This Court Directed That No Further Briefing Be Made By The Original Applicants For Appointment As Interim Class Counsel .......................... 9

      2.      This Court Chose Not To Open The Door To Further Briefing By The Counsel Who Previously Submitted Briefs ..................................................... 10

CONCLUSION ............................................................................................................................ 10

Case 1:13-md-02475-ALC   Document 88   Filed 02/07/14   Page 3 of 18

## TABLE OF AUTHORITIES

**Cases**

*Alpine Pharmacy, Inc. v. Chas. Pfizer & Co., Inc.*,
   481 F.2d 1045 (2d Cir. 1973) .................................................................................................. 5

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
   133 S.Ct. 1184 (2013) ............................................................................................................... 4

*Cange v. Stotler & Co.*,
   826 F.2d 581 (7th Cir. Ill. 1987) .............................................................................................. 6

*Casper v. Song Jinan*,
   12 Civ. 4202, 2012 WL 3865267 (S.D.N.Y. Sept. 6, 2012) ..................................................... 4

*Deangelis v. Corzine*,
   286 F.R.D. 220 (S.D.N.Y 2012) ............................................................................................... 7

*Hevesi v. Citigroup Inc.*,
   366 F.3d 70 (2d Cir. 2004) ....................................................................................................... 8

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   240 F.R.D. 56 (E.D.N.Y. 2006) ............................................................................................... 8

*In re Crude Oil Commodity Futures Litig.*,
   913 F.Supp.2d 41 (S.D.N.Y. 2012) .......................................................................................... 9

*In re JPMorgan Chase & Co. S'holder Derivative Litig.*,
   08 CIV. 974 (DLC), 2008 WL 4298588 (S.D.N.Y. Sept. 19, 2008) ........................................ 4

*In re LIBOR-Based Financial Instruments Antitrust Litig.*,
   No. 11-md-2262, 2011 WL 5980198 (S.D.N.Y. Nov. 29, 2011) ............................................. 8

*In re Sumitomo Copper Litig.*,
   182 F.R.D. 85 (S.D.N.Y. 1998) ................................................................................................ 6

*In re Veeco Instruments, Inc.*,
   233 F.R.D. 330 (S.D.N.Y. 2005) .............................................................................................. 4

*Kuriakose v. Federal Home Loan Mortg. Co.*,
 No. 08 Civ. 7281, 2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008) ............................................. 4

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
 456 U.S. 353 (1982) .................................................................................................................. 6

*Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co.*,
 381 U.S. 311 (1965) .................................................................................................................. 5

*Strobl v. New York Mercantile Exchange*,
 582 F. Supp. 770 (S.D.N.Y. 1984) ............................................................................................ 9

*U.S. v. Topco Assocs., Inc.*,
 405 U.S. 596 (1972) .................................................................................................................. 5

**Statutes**

15 U.S.C. §78u-4(a)(2)(A)(iv) ........................................................................................................ 8

15 U.S.C. §78u-4(a)(3)(A) .............................................................................................................. 8

15 U.S.C. §78u-4(a)(3)(B)(v) ......................................................................................................... 4

**Rules**

Fed. R. Civ. P. 23(a)(4) ................................................................................................................... 2

Fed. R. Civ. P. 23(g) .................................................................................................................. 2, 3

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) .................................................................................................. 3

Fed. R. Civ. P. 23(g)(1)(A)(iv) ....................................................................................................... 2

Fed. R. Civ. P. 23(g)(2) ................................................................................................................... 3

Fed. R. Civ. P. 23(g)(3) ................................................................................................................... 2

**Other Authorities**

Rule 23 Advisory Committee Notes, Subdivision (g), Paragraph 1(A) (2003 Amendments) ....... 3

Rule 23 Advisory Committee Notes, Subdivision (g), Paragraph 1(B) (2003 Amendments)........ 2

Pursuant to the Court's Orders dated December 6, 2013 (ECF No. 47) and January 2, 2014 (ECF No. 72), Plaintiffs Prime International Trading, Ltd., William Karkut, Patricia Benvenuto, Michael Sevy, Gregory Smith, Port 22, LLC, Atlantic Trading U.S.A., LLC, Xavier Laurens, Christopher Chartier, and Melissinos Eupatrid LP (collectively, the "Plaintiffs") respectfully submit this memorandum in order to demonstrate as follows.

a. The additional arguments by Kirby McInerney LLP ("Kirby") that Kirby should to be appointed as class counsel (ECF No. 83, pp.1, 4-7),[1] should not be considered. They constitute violations of this Court's Orders. *See* ECF No. 47 and ECF No. 72, p.7. The first Order prohibited any further submissions by the counsel who had already submitted applications. ECF No. 47. The second Order authorized submissions only by those counsel who had not previously applied. ECF No. 72, p. 7; *see* "C" below.

b. Appointments of lead plaintiffs and/or interim class representatives are not authorized by the Federal Rules of Civil Procedure ("FRCP") Rule 23 or the substantive laws here, the Sherman Antitrust Act, 15 U.S.C. §1 *et seq.*, ("Sherman Act") and the Commodity Exchange Act, 7 U.S.C. §1 *et seq.,* ("CEA"). On the contrary, such appointments are profoundly antithetical to the letter, design and/or purposes of FRCP Rule 23, the Sherman Act, and the CEA. *See* "A" below.

c. Kirby fails to cite to any case governed by Rule 23 in which a lead plaintiff or interim class representative was appointed. *See* "B" below. Kirby has done nothing even to assert that lead plaintiffs or interim class representatives should be appointed here. *Id.* Kirby's real purpose for its latest filing appears to be, not the appointment of lead

---

[1] Plaintiffs Kevin McDonnell, Anthony Insinga, Robert Michiels, John Devivo And Neil Taylor's Memorandum Of Law In Support Of Their Motion To Be Appointed Lead Plaintiffs And To Appoint Kirby McInerney As Interim Lead Counsel, ECF No. 83 ("Kirby Brief"), pp.1, 4-7 (rearguing that Kirby should be appointed Interim Lead Counsel).

1

plaintiff, but advancing further arguments about why Kirby should be appointed class counsel.  Kirby Brief, ECF No. 83, pp.1, 4-7.

### A. This Court Should Not Appoint Lead Plaintiffs Or Interim Class Representatives

#### 1. FRCP Rule 23(g)(1) Expressly Authorizes The Appointment Of Interim Class Counsel

Rule 23(g)(3) expressly authorizes this Court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."

#### 2. But Rule 23(g)(1) Pointedly Omits To Authorize The Appointment Of Interim Class Representatives, And FRCP Rule 23 Does Not Anywhere Mention The Creation Of Lead Plaintiffs

Rule 23 conspicuously omits even to mention much less authorize the appointment[2] of any plaintiff as the interim class representative.  Instead, Rule 23(g) consistently and expressly ties the class counsel directly and only to the "class" or the "putative class" without any intermediary of an interim class representative or lead plaintiff.  *E.g.,* Rule 23(g)(1)(A)(iv) ("In appointing class counsel, the court must consider the resources that counsel will commit to representing the class"); Rule 23(g)(3) ("The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.").

Thus, the notes to Rule 23 provide: "[T]he class representatives cannot command class counsel to accept or reject a settlement proposal.  To the contrary, class counsel must determine whether seeking the court's approval of a settlement would be in the best interests of the class as a whole."  Rule 23 Advisory Committee Notes, Subdivision (g), Paragraph 1(B) (2003 Amendments).

---

[2] *Compare* FRCP Rule 23(a)(4) (in order to certify the class, which comes later, the Court must then find the plaintiff to be an "adequate" class representative).

2

Rule 23 does not even mention much less create any "lead plaintiff". *See* FRCP Rule 23, *passim*.

> 3. **Where, As Here, Competing Counsel Seek Appointment, Rule 23(g)(1) Mandates That This Court "Must" Select The Counsel "Best Able" To Represent The Class And "Must Consider" Specified Mandatory Criteria**

Rule 23(g)(2) provides that "[i]f more than one adequate applicant seeks appointment [as class counsel], the court must appoint the applicant best able to represent the interests of the class. Rule 23(g) sets forth counsel-centric **mandatory** criteria that the Court **must** consider in order to determine the counsel who is "best able to represent the interests of the class."

> (1) *Appointing Class Counsel.* Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
> (A) must consider:
> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class;

Rule 23(g)(1)(A)(i)-(iv). The above-quoted language "[u]nless a statute provides otherwise," refers to the "provisions of the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (1995) (codified in various sections of 15 U.S.C.) [("PSLRA")], [which] contain directives that bear on selection of a lead plaintiff and the retention of counsel." Rule 23 Advisory Committee Notes, Subdivision (g), Paragraph 1(A) (2003 Amendments).

> 4. **Congressional Reforms Of The Federal Securities Laws Created A "Lead Plaintiff" In Securities Class Actions And Transferred From The Court To The Lead Plaintiff The Determination Of Which Counsel Is The Best Able To Represent The Class**

3

Specifically, in 1995, Congress found that the then extremely high number of class action lawsuits brought under the federal securities laws had been riddled by various abuses.[3] These included frivolous claims, extortionate settlements, and the presence of so-called professional plaintiffs who filed many of the frivolous suits in which extortionate settlements were sought. *Id.*

In order to redress these abuses, Congress created a lead plaintiff position and expressly provided that the "most adequate plaintiff shall…select and retain counsel to represent the class." 15 U.S.C. §78u-4(a)(3)(B)(v). Lead plaintiff's selection is "subject to the approval of the court." 15 U.S.C. §78u-4(a)(3)(B)(v). But the PSLRA "evidences a strong presumption in favor of approving a properly selected lead plaintiff's decisions as to counsel selection and counsel retention." *Kuriakose v. Federal Home Loan Mortg. Co.*, No. 08 Civ. 7281, 2008 WL 4974839, at *9 (S.D.N.Y. Nov. 24, 2008).[4]

> 5. **In Stark Contrast To The Securities Laws, The Substantive Laws At Issue Here Have Not Been Subject To Class Action Abuses, Do Not Create Lead Plaintiffs, And Do Depend On Private Counsel To Enforce Them**
>
>> a. **The Sherman Act Is America's Most Important Commercial Law, Depends Upon Private Lawyers For Enforcement, And Does Not Create Lead Plaintiffs Nor Any Other Limitation On Class Actions**

---

[3] PSLRA; *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S.Ct. 1184, 1200 (2013); *In re JPMorgan Chase & Co. S'holder Derivative Litig.*, 08 CIV. 974 (DLC), 2008 WL 4298588, at *10 (S.D.N.Y. Sept. 19, 2008).

[4] "The Court should disrupt the lead plaintiff's choice only when 'necessary to protect the interests of the class.'" *Kuriakose v. Federal Home Loan Mortg. Co.*, 2008 WL 4974839, at *9 (citations omitted); *see also Casper v. Song Jinan*, 12 Civ. 4202, 2012 WL 3865267, at *3 (S.D.N.Y. Sept. 6, 2012) (same); *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 334 (S.D.N.Y. 2005) (appointing lead plaintiff's selection of counsel and stating that "[o]rdinarily, the lead plaintiff's choice of counsel is selected to serve as lead counsel").

"Antitrust laws in general, and the Sherman Act in particular are the Magna Carta of free enterprise. They are as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms." *U.S. v. Topco Assocs., Inc.,* 405 U.S. 596, 610 (1972).

"Congress has expressed its belief that private antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws." *Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co.,* 381 U.S. 311, 318 (1965). The "antitrust class action [] depends heavily on the notion of the private attorney general as the vindicator of the public policy." *Alpine Pharmacy, Inc. v. Chas. Pfizer & Co., Inc.,* 481 F.2d 1045, 1050 (2d Cir. 1973).

Accordingly, Congress has not imposed any limitations on class actions and has not created any lead plaintiff under the antitrust laws. Sherman Act, *passim*.

        **b.**    **Congress Found That Private Actions Are "Critical" To The Enforcement Of The CEA And Did Not Create Lead Plaintiffs Nor Other Limitations On Class Actions**

Private actions alleging CEA manipulation have been extremely rare. There have been twenty-three class actions alleging commodity manipulation since the enactment of the CEA in 1974, or one about every 1.7 years. This is derived from a WESTLAW search of the ALLFEDS database specifying "class /3 action /p commodit! /s manip!" and culling duplicates and non-commodity cases. Thus, class actions under the CEA have not exhibited any frequent filing or other abuses. Accordingly, Congress did not create any class action limitations or "lead plaintiff" requirements. CEA, *passim*.

On the contrary, unlike under the federal securities laws, the rarely-asserted private rights of action for CEA manipulation are an unqualifiedly valuable supplement to the criminalization of manipulation, the prophylactic exchange rules, and the other deterrents of manipulation that

5

Congress created in the CEA. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 316 (1982); *In re Sumitomo Copper Litig.,* 182 F.R.D. 85, 89 (S.D.N.Y. 1998). Thus, part of the enhanced efforts of the amended CEA to prevent and deter price manipulation was the creation in 1982 of an **express** right of action for civil plaintiffs under Section 22(a) of the CEA, 7 USC § 25(a). *Cange v. Stotler & Co.,* 826 F.2d 581, 595 (7th Cir. 1987) ("Congress viewed private lawsuits as 'critical to protecting the public and fundamental to maintaining the credibility of the futures market'").

### B. Thus, Kirby Fails To Cite Any Non-PSLRA Case In Which A Lead Plaintiff Or Interim Class Representative Was Appointed

Kirby merely reargues (virtually verbatim) the arguments for lead plaintiff appointment it has already made. *Compare* ECF No. 20, p. 6 *and* ECF No. 83, pp. 3-4 (showing that Kirby's lead plaintiff argument found under its heading "B", with the exception of two sentences, is a verbatim copy of Kirby's prior argument at ECF No. 20, p. 6).

#### 1. Far From Citing Such A Case, Kirby Appears To Acknowledge That There Is No Legal Basis For Appointing A Lead Plaintiff Or Interim Class Representative Here

Kirby cites to no non-PSLRA cases in which a lead plaintiff or interim class representative was appointed. Kirby Brief, ECF No. 83, *passim*. Nor does Kirby assert that the laws here contemplate appointment of lead plaintiffs or interim class representatives. Kirby Brief, ECF No. 83, *passim*; *compare Anderson v. Fiserv, Inc.*, Nos. 09 Civ. 5400 (BSJ)(FM); 09 Civ. 839 (BSJ)(FM), 2010 WL 571812, at *3 (S.D.N.Y. Jan. 29, 2010) ("Unlike Rule 23(g), which focuses on the qualifications of attorneys to be appointed as class counsel, the [PSLRA] focuses on the selection of a representative lead plaintiff who then selects class counsel with the approval of the Court. . . Since all counsel seem to agree that the case should proceed on state law claims, not securities, the *Anderson* plaintiffs' reliance on PSLRA terminology is

6

puzzling.").

Kirby states:

> Under the [CEA] and the Sherman Act, there is no statutory authority, such as the [PSLRA], which *requires* the Court to appoint a lead plaintiff in a proposed class action. Rather CEA and antitrust class actions, like the instant action, are governed by Fed. R. Civ. P. Rule 23....*See* Fed. R. Civ. P. 23(a)(4).

Kirby Brief, ECF No. 83, p. 2. Kirby does not appear to assert that there is a need for a lead plaintiff or interim class representative. Kirby Brief, ECF No. 83, *passim*. Instead, Kirby says that "to the extent" that this Court finds that there is some problem that could be satisfied by monitoring by a lead plaintiff, the Trader Plaintiffs could or should be appointed as lead plaintiffs. Kirby Brief, ECF No. 83, p. 3. But Kirby then does not identify any such problem or argue that the Court **should** make such an appointment as some solution for any such (non-described) problem. *Id.*

Moreover, the cases Kirby cites, do not even consider whether there is a problem with class counsel that appointment of a lead plaintiff could rectify. The closest case Kirby cites is *Deangelis v. Corzine*, 286 F.R.D. 220 (S.D.N.Y 2012). There, plaintiff Sapere sought to be appointed co-lead plaintiff but **not** named class counsel so that it could "retain control over **its individual** causes of action." *Id.* at 223 (emphasis added). The Court appointed two law firms as co-lead counsel and held that "because of Sapere's significant interest in retaining control over **its individual** action," plaintiff Sapere was to be integrated "into the leadership structure in a manner to reduce duplicative labor and most efficiently share information and costs." *Id.* at 225. Thus, neither Sapere nor its counsel was appointed as lead plaintiff or interim counsel of a class. *Id.* at 224. Rather, the Court *only* ordered interim co-lead counsel to coordinate with Sapere's separate individual action. *Id.* at 225-26.

7

But here, there are no individual plaintiff claims. The remainder of Kirby's cases are even more inapposite.[5]

### 2.  Kirby Makes Unsworn And Unsupported Assertions

Without following the notice process or the evidentiary safeguards of submitting verified losses required by the PSLRA,[6] Kirby makes unsworn and unsupported statements in its brief: the self-styled Trader Plaintiffs supposedly have "enormous economic interests" (ECF No. 20, p. 6 and ECF No. 83, p. 4) and supposedly have "the most invested in the case." ECF No. 52, p. 5. These unsupported statements do not tend to show anything about the Trader Plaintiffs. Kirby has not explained why these unsupported assertions would somehow justify a change in the law or the appointment of lead plaintiffs or interim class representatives. Kirby Brief, ECF No. 83, *passim*.

### 3.  It Is Too Early To Tell Who Has The Largest Financial Interest Because The But-For World Of Non-Artificial Prices Cannot Be Determined Until Later In The Lawsuit

One typical measure of damages in CEA manipulation cases is the difference between the

---

[5] *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 85 (2d Cir. 2004) (in a securities class action governed by the PSLRA, the Second Circuit granted defendants' petition for leave to appeal the district court's order granting class certification); *In re LIBOR-Based Financial Instruments Antitrust Litig.*, No. 11-md-2262, 2011 WL 5980198, at *4 (S.D.N.Y. Nov. 29, 2011) (multiple classes and multiple different types of purchasers involved; did **not** appoint a lead plaintiff or interim class representative); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 58 (E.D.N.Y. 2006) (antitrust class action appointing four firms as interim co-lead counsel, **not** considering or appointing a lead plaintiff, and not considering or finding that interim appointment of a class representative could solve some problem).

[6] Congress provided multiple protections during the process of appointment of a lead plaintiff in securities class actions. These included procedural protections for the notification of all interested shareholders when a securities fraud lawsuit was initiated (15 U.S.C. §78u-4(a)(3)(A)), the opportunity of any investor to come in and seek to become the lead plaintiff (15 U.S.C. §78u-4(a)(3)(A)), and required sworn certifications that set forth the amount of loss and interest in the lawsuit held by each investor seeking to be appointed as a lead plaintiff. 15 U.S.C. §78u-4(a)(2)(A)(iv).

price at which a class member transacted and that price at which they would have transacted if there were no manipulation. *Strobl v. New York Mercantile Exchange*, 582 F. Supp. 770, 773 (S.D.N.Y. 1984) (upholding jury's damage verdict based on "the difference between what he actually received when he liquidated his position and what he would have received but for defendants' manipulation"), *aff'd*, 768 F.2d 22, 23-24 (2d Cir. 1985).

This determination cannot be made at the outset of the lawsuit nor even after the motion to dismiss. *In re Crude Oil Commodity Futures Litig.*, 913 F.Supp.2d 41, 61 (S.D.N.Y. 2012) (Pauley, J.) ("[w]hile Plaintiffs may have a difficult time proving 'actual damages,' that is a fact-intensive inquiry for another day"). Thus, even if all the procedural safeguards had been followed, and Kirby had submitted sworn statements, it would be at best difficult to determine the greatest financial interest now.

For all the foregoing reasons, this Court should not devote its resources to considering Kirby's invitation that this Court become apparently the first court to appoint lead plaintiffs or interim class representatives in a non-PSLRA case.

Finally, the Plaintiffs have all been alleged in their respective complaints to be adequate class representatives. *See, e.g.*, Complaint, *Prime International Trading, Ltd. v. BP PLC, et al.*, Case No. 13-cv-03473 (ALC), ECF No. 1, p. 26 ¶A; Complaint, *Karkut v. Royal Dutch Shell PLC, et al.*, Case No. 13-cv-04872 (ALC), ECF No. 1, p. 26 ¶A; Complaint, *Benvenuto v. BP PLC, et al.*, Case No. 13-cv-04142 (ALC) ECF No. 1, p. 51 ¶A.

    **C.**    **The Court Should Disregard Kirby's Additional Argument About Most Adequate Counsel Because It Apparently Violates Two Prior Court Orders**

        **1.**    **This Court Directed That No Further Briefing Be Made By The Original Applicants For Appointment As Interim Class Counsel**

9

On December 6, 2013 the Court ordered that "[n]o further submission on the appointment of Interim Lead Counsel shall be considered." ECF No. 47. This was in response to Kirby's request to file an additional submission in support of its original application for lead counsel (ECF No. 32) and Plaintiffs' objection. ECF No. 46.

### 2. This Court Chose Not To Open The Door To Further Briefing By The Counsel Who Previously Submitted Briefs

On January 2, 2014, this Court ordered that "[a]ny application for appointment of lead plaintiff and lead counsel, **if not already made**, is due by January 24, 2014." ECF No. 72, p. 7 (emphasis added). The "if not already made" language is consistent with this Court's December 6, 2013 order. Both orders prohibit Kirby and the Plaintiffs' counsel from making any further submissions on their motions to be appointed as interim class counsel. *Compare* ECF No. 72, p. 7 *with* ECF No. 47.

Accordingly, Kirby's recent submission, actually entitled "Motion To Be Appointed Lead Plaintiffs **And To Appoint Kirby McInerney As Interim Lead Counsel**", violates the foregoing two Orders by rearguing that Kirby should be appointed interim lead counsel. *Compare* ECF No. 72, p. 7 *with* ECF No. 83, pp. 1, 4-7.

The Plaintiffs respectfully refer the Court to their arguments in ECF No. 46, p. 4 and n. 5, to the effect that Kirby was not authorized to make its prior submission that provoked the December 6, 2013 Order.

### CONCLUSION

Kirby's additional arguments in favor of its appointment as class counsel should not be considered. They constitute further violations of Court orders.

The Court should not waste its resources considering the appointment of lead plaintiffs or interim class representatives. The latter are not authorized by or are contrary to FRCP Rule 23

10

and the substantive laws here.

Dated: February 7, 2014

          LOVELL STEWART HALEBIAN
          JACOBSON LLP

          By: /s/ Christopher Lovell
          Christopher Lovell
          Amanda N. Miller
          61 Broadway, Suite 501
          New York, NY 10006
          Tel.: (212) 608-1900
          Fax: (212) 719-4677
          clovell@lshllp.com
          amiller@lshllp.com

          *Counsel for Plaintiff William Karkut and Proposed Interim Class Counsel*

          LOWEY DANNENBERG COHEN
          & HART, P.C.

          By: /s/ Vincent Briganti
          Vincent Briganti
          Geoffrey M. Horn
          One North Broadway
          White Plains, New York 10601
          Tel.: (914) 997-0500
          Fax: (914) 997-0035
          vbriganti@lowey.com
          ghorn@lowey.com

          *Counsel for Plaintiff Prime International Trading, Ltd. and Proposed Interim Class Counsel*

          ROBINS, KAPLAN, MILLER
          & CIRESI L.L.P.

          By: /s/ Hollis Salzman
          Hollis Salzman
          Bernard Persky
          Kellie Lerner
          601 Lexington Avenue
          New York, NY 10022

Tel.: (212) 980-7400
Fax: (212) 980-7499
hsalzman@rkmc.com
bpersky@rkmc.com
klerner@rkmc.com

*Counsel for Plaintiff Patricia Benvenuto and Proposed Interim Class Counsel*