# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-202-956-7500
FACSIMILE: 1-202-293-6330
WWW.SULLCROM.COM

*1700 New York Avenue, N.W.*
*Suite 700*
*Washington, D.C. 20006-5215*

NEW YORK • LOS ANGELES • PALO ALTO
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

April 16, 2014

Honorable Andrew L. Carter, Jr.,
   United States District Judge,
      Southern District of New York,
         500 Pearl Street,
           New York, NY  10007.

        Re:    *In re North Sea Brent Crude Oil Futures Litigation*,
                No. 1:13-md-02475 (ALC)

Dear Judge Carter:

        We write on behalf of defendants[1] in response to plaintiffs' April 11, 2014 letter ("Pls.' Ltr.") seeking relief from the discovery stay and permission to serve discovery on defendants and a third-party subpoena on Platts for documents "already produced to regulatory and governmental agencies regarding the alleged manipulation of Brent Crude Oil."  Pls.' Ltr. at 1.  Plaintiffs' request, which comes even before plaintiffs have filed their consolidated amended complaint and identified the claims in the case and the defendants against which those claims are asserted, lacks merit and should be denied.

        On May 14, 2013, the European Commission ("EC") announced that it had carried out unannounced inspections at several companies with respect to "a number of oil and biofuel products."  As the EC made clear, the inspections were a "preliminary step" and did "not mean that the companies are guilty of anti-competitive behaviour."  Press Release, European Commission (May 14, 2013), *available at* http://europa.eu/rapid/press-release_MEMO-13-435_en.htm (last visited April 16, 2014).  Eight days later, the first complaint in this consolidated action was filed.  *Prime Int'l Trading, Ltd.* v.  *BP plc, et al.,* No. 1:13–cv–03473 (S.D.N.Y. May 22, 2013).  In January of this year, the Court filed its initial case management order, which included a stay of all discovery.  (Pretrial Order No. 1, at 6 (Jan. 2, 2014) (Dkt. 72) ("PTO 1").)  Plaintiffs' consolidated amended complaint is due to be filed in less than two weeks, on April 28.  Apparently concerned about the viability of their yet-to-be filed complaint, plaintiffs ask the Court to lift the discovery stay so they can obtain information that they hope may allow them to plead "superseding

---

[1] BP p.l.c., Royal Dutch Shell plc, Statoil ASA, Phibro Trading LLC, Trafigura AG, Trafigura Beheer B.V. and Morgan Stanley.

Honorable Andrew L. Carter, Jr.                                                                                          -2-

complaints." (Pls.' Ltr. at 1.) Plaintiffs have made no showing to justify such relief which, contrary to plaintiffs' assertions, would impose significant burdens.

*First*, plaintiffs have not even attempted to satisfy the standard for lifting the discovery stay set forth in PTO 1.[2] Under that order, relief from the stay may be granted only for "good cause shown, *such as the ill health of a proposed deponent*." (PTO 1 at 6 (emphasis added).); *see* Fed. R. Civ. P. 27 (permitting pre-complaint depositions to perpetuate testimony). But plaintiffs do not argue that the documents they seek might become unavailable with the passage of time. *See In re Flash Memory Antitrust Litig.*, No. C 07-0086, 2008 WL 62278, at *5 (N.D. Cal. Jan. 4, 2008) (denying pre-complaint request for DOJ production where there was "little to no risk that the[] documents w[ould] be unavailable in the future"). Nor could plaintiffs make such an argument after waiting almost a year since the EC's announcement. The principal "cause" plaintiffs assert is their need for documents to assist them in amending the consolidated amended complaint that they have yet to file—an implicit concession that the complaint they will file on April 28 lacks a sufficient basis. (Pls.' Ltr. at 1 ("Information that likely will result in superseding complaints is available in the documents that Defendants have already produced.").) This type of unsupported speculation is not "good cause" because "[i]n federal court, pre-complaint discovery is not available to determine whether a claim for relief exists." *In re Petition of Austin*, No. 13 Misc. 252, 2013 WL 5255125, at *1 (S.D.N.Y. July 16, 2013).[3]

*Second*, contrary to plaintiffs' assertion, the burden of producing documents previously produced to regulators would be substantial and undue. Plaintiffs will be entitled to discovery only of matters "relevant" to a party's claim or defense. Fed. R. Civ. P. 26(b)(1). Yet the regulatory productions of certain defendants extend beyond matter relevant to the claims asserted to-date in this case, which is evident in the EC's statement that its inspections concerned "a number of oil and biofuel products," and plaintiffs' own allegations that those inspections concerned Brent Crude Oil price reporting "*among other things*." (*McDonnell* Compl. ¶ 232 (emphasis added).) According to plaintiffs, the FTC's investigation mirrors the scope of the EC's inquiry. (*Id.* at ¶¶ 14, 234.) Defendants therefore cannot, as plaintiffs suggest (Pls.' Ltr. at 2), simply copy the material previously provided to regulators without a burdensome and expensive review for relevance. Objections "assertable against plaintiffs that were unasserted against the government . . . would take time to evaluate." *In re Graphics Processing Units Antitrust Litig.*, 2007 U.S. Dist. LEXIS 57982, at *25-26 (staying all discovery pending resolution of a motion to dismiss) (N.D. Cal. July 24,

---

[2] In addition to being foreclosed by the discovery stay imposed in PTO 1, plaintiffs' request is premature under Fed. R. Civ. P. 26(d), which states: "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . or when authorized by these rules, by stipulation, or by court order." The parties have not had a Rule 26(f) conference in this case, and any such conference would be premature at this stage of the proceedings where there is no operative complaint and the scope and validity of plaintiffs' claims is undetermined.

[3] Plaintiffs attempt to reverse the burden on this motion by arguing that "a party seeking a stay of discovery" must "meet a 'heavy burden.'" (Pls.' Ltr. at 2) Here, however, the stay is in place, and plaintiffs must demonstrate good cause to lift it. (PTO 1 at 6.) In any event, for the reasons herein, defendants have made a strong showing of the burden immediate discovery would impose. The cases cited by plaintiffs (Pls.' Ltr. at 2) are not to the contrary. *See Lofton* v. *Bank of Am. Corp.*, 2008 WL 2037606, *2 (N.D. Cal. May 12, 2008) (denying stay where discovery was relevant to jurisdictional issues); *Blankenship* v. *Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (permitting deposition where defendants failed to demonstrate burden); *Skellerup Indus. Ltd.* v. *City of Los Angeles*, 163 F.R.D. 598, 600-01 (C.D. Cal. 1995) (denying stay where defendants and third parties had already responded to discovery requests); *Twin City Fire Ins. Co.* v. *Employers Ins. of Wausau*, 124 F.R.D. 652, 653 (D. Nev. 1989) (denying stay where defendant made only "a mere conclusory statement that discovery would cause undue burden and expense").

Honorable Andrew L. Carter, Jr.                                                                                                -3-

2007).[4]  In addition, for previously unreviewed seized documents, the material would also need to be reviewed for privilege—an exercise that would entail enormous time and expense at this early stage of litigation.  In a decision directly on point, the court in *In re LIBOR-Based Financial Instruments Antitrust Litigation* denied a motion to lift a discovery stay to order production of documents previously provided to government regulators before motions to dismiss were resolved. Mem. and Order, at 2, No. 11–md–2262 (S.D.N.Y. Oct. 17, 2013) (Dkt. 489).  As that court explained, "wholesale production of the disclosures to the governmental entities is hardly burden free or necessarily appropriate" in follow-on civil litigation.  *Id.*[5]

   *Third*, this case does not warrant an exception to the general rule set forth in *Bell Atlantic Corp*. v. *Twombly*, that courts assess the plausibility of a plaintiff's claims before "sending the parties into discovery."  550 U.S. 544, 558 (2007) (quotations omitted).  While it is true that courts sometimes permit discovery to begin before motions to dismiss are decided (Pls.' Ltr. at 2-3 n.4-5), the circumstances in those cases are distinguishable.  For example, in *In re Platinum and Palladium Commodities Litigation*, the government investigation had resulted in a substantial fine before the court ordered discovery to begin.  *See* Futures Action Plaintiffs' and Physical Action Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Stay Discovery Pending Resolution of Defs.' Motions to Dismiss the Consolidated Complaints, at 12, No. 10–cv–3617 (S.D.N.Y. Sep. 14, 2010) (Dkt. 42); *see also* Tr., at 8, *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09–cv–3690 (N.D. Ill. Jan. 19, 2010) (Dkt. 60) (permitting limited discovery prior to motion to dismiss where government investigation had resulted in a $12 million settlement).  In *In re Lithium Ion Batteries Antitrust Litigation*, the court allowed limited discovery before the motion to dismiss where, unlike here, defendants did not argue that the production would be unduly burdensome.  No. 13–md–2420, 2013 WL 2237887, at *1 (N.D. Cal. May 21, 2013).  And in *In re Bank of America Corp. Securities, Derivative, & Employment Retirement Income Security Act (ERISA) Litigation*, the court permitted pre-motion-to-dismiss discovery in one of three consolidated civil cases, where discovery was "moving apace in parallel litigation" and the remaining plaintiffs would be "unduly prejudiced" if their discovery lagged behind.[6]  No. 09–md–2058, 2009 WL 4796169, at *3 (S.D.N.Y. Nov. 16,

---

[4] *See also Rio Grande Royalty Co., Inc*. v. *Energy Transfer Partners, L.P*., No. H–08–cv–0857, 2008 WL 8465061, at *1 (S.D. Tex. Aug. 11, 2008) (producing government productions was unduly burdensome where production would require additional review); *In re Lithium Ion Batteries Antitrust Litig*., 2013 WL 2237887, at *3 (staying discovery of DOJ production requiring review of 700,000 documents for over $250,000 and 4,000 attorney hours).

[5] Plaintiffs' request to issue a third party subpoena should be denied as burdensome for similar reasons.  Platts, which apparently has not been served with plaintiffs' letter, would presumably be required to re-review previously produced materials for relevance to this action and for any applicable privileges.

[6] Other cases cited by plaintiffs are not on point or contain no reasoning.  In *In re Plastics Additives Antitrust Litig*., the complaint had *survived a motion to dismiss* before the court ordered production of regulatory materials.  No. 03-2038, 2004 WL 2743591, at *2, 10-12 (E.D. Pa. Nov. 29, 2004) (cited in Pls.' Ltr. at 2); *see also* Amended Case Management Order, at 5, *Meijer, Inc*. v. *Warner Childcott Holdings*, No. 05–cv–2195 (D.D.C. June 30, 2006) (Dkt. 41) (defendants answered complaint before entry of discovery order cited by plaintiffs) (cited in Pls.' Ltr. at 3 n.4).  In *In re Photochromic Lens Antitrust Litigation*, defendants *agreed* to produce documents previously produced to the Federal Trade Commission before an amended complaint was filed.  Supplemental Case Management Report, at 3, No. 10–md–2173 (M.D. Fla. Oct. 12, 2010) (Dkt. 59) (cited in Pls.' Ltr. at 3 n.4).  Plaintiffs' other authorities (Pls.' Ltr. at 2 n.4) contain no reasoning to support early discovery.  *See* Supplemental Case Management Order No. 1, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07–cv–1819 (N.D. Cal. June 21, 2007) (Dkt. 217) (no explanation for order to produce documents before motions to dismiss decided); Order, at 2, *King Drug Co*. v. *Cephalon, Inc*., No. 06–cv–1797 (E.D. Pa. Sept. 24, 2009) (Dkt. 219) (same); Order, at 2-3, *Vista Healthplan, Inc*. v. *Cephalon, Inc*., No. 06–cv–1833 (E.D. Pa. Sept. 24, 2009) (Dkt. 93) (same); Pretrial Order No. 5, at 2, *In re: Pool Prods. Distribution Market Antitrust Litig.*, No. 12–md–2328 (E.D. La. June 4, 2012) (Dkt. 93) (same); *see also In re NASDAQMarket-Makers*

Honorable Andrew L. Carter, Jr.                                                                                           -4-

2009). In sum, courts allow discovery to go forward before deciding a motion to dismiss only in limited and appropriate circumstances.[7]

In contrast, where, as here, the context and history of a case do not justify the burden of early production, courts delay discovery unless and until a complaint survives a *Twombly* review. Thus, in *In re Commodity Exchange, Inc., Silver Futures and Options Trading Litigation*, the court denied plaintiffs' motion to compel early discovery of documents produced to the CFTC where it was "not clear" that the complaint was "viable" or that the CFTC's investigation into the defendants' conduct would "result in any criminal action being filed." Op. & Order, at 38-39, No. 11–md–2213 (S.D.N.Y. Dec. 21, 2012) (Dkt. 127). Likewise, in *In re LIBOR-Based Fin. Instruments Antitrust Litigation*, the court denied a motion to compel discovery of documents produced to government agencies more than eighteen months after the litigation began where "[t]he contours of what will be the operative complaint are still very much in flux" and "the viable causes of action are yet to be determined." Mem. and Order, at 1, 2, No. 11–md–2262 (S.D.N.Y. Oct. 17, 2013) (Dkt. 489). Here, as in the *Silver* and *LIBOR* actions, there is no indication that plaintiffs' complaint will ultimately proceed, or if it does, the form their claims would take or the defendants against whom those claims would proceed. Imposing the burdens of discovery "prior to sustaining a complaint" as plaintiffs request would "defeat one of the rationales of *Twombly*." *Graphics Processing*, 2007 U.S. Dist. LEXIS 57982, at *23.

Finally, as plaintiffs have alleged, many of the defendants are organized and headquartered outside the United States and are members of "multinational group[s]" with separate affiliates and subsidiaries in various countries. *See McDonnell* Compl. ¶¶ 27-33. In addition to an anticipated *Twombly* challenge, certain defendants may seek dismissal based on lack of personal or subject matter jurisdiction and/or failure to name the correct party. Fundamentally, defendants should not be required to produce documents before the time has even arrived for them to lodge any jurisdictional challenges that they may have.

For these reasons, defendants respectfully request that the Court deny plaintiffs' request to lift the discovery stay.

---

*Antitrust Litig.*, 929 F. Supp. 723 (S.D.N.Y. 1996) (decision does not indicate whether motion to dismiss decided before discovery ordered); *In re Wirebound Boxes Antitrust Litig.*, 126 F.R.D. 554 (D. Minn. 1989) (same).

[7] Plaintiffs are incorrect that the Pilot Project Regarding Case Management Techniques for Complex Civil Cases (the "Pilot Project") "recommends" that discovery proceed while motions to dismiss are pending. (Pls.' Ltr. at 3.) The Pilot Project permits document discovery following service of a motion to dismiss (Dkt. 2, at 34) subject to Rule 26(b), which requires courts to limit discovery if "the burden of expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Honorable Andrew L. Carter, Jr. -5-

        Respectfully,

        /s/ Daryl A. Libow
        Daryl A. Libow
        SULLIVAN & CROMWELL LLP
        1700 New York Avenue, N.W.,
        Suite 700
        Washington, D.C.  20006
        Telephone: (202) 956-7500
        Facsimile:  (202) 956-6973
        libowd@sullcrom.com

        *Attorneys for BP p.l.c.*

cc: Counsel of Record (via ECF)