# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE:

NORTH SEA BRENT CRUDE OIL FUTURES
LITIGATION

1:13-md-02475-ALC

This document applies to ALL CASES

**DEFENDANTS TRAFIGURA A.G. AND TRAFIGURA BEHEER B.V.'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND
PLAINTIFFS' AMENDED CLASS ACTION COMPLAINTS**

## TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ...........................................................................................1

II.  FACTUAL BACKGROUND ............................................................................................3

    A.   The Parties .............................................................................................................3

    B.   Allegations Against The Trafigura Defendants .....................................................4

        1.   February 24, 2011 Trades ..........................................................................5

        2.   September 5, 2012 Trade ............................................................................5

        3.   September 25, 2012 Trade ..........................................................................5

        4.   September 28, 2012 Trade ..........................................................................6

III. ARGUMENT AND AUTHORITY ....................................................................................7

    A.   The Complaint Should be Dismissed For Failure To Allege Facts Specific
        to Each Defendant ..................................................................................................7

    B.   Plaintiffs' CEA and Sherman Act Claims Should be Dismissed for Failure
        to State a Claim under Rule 12(b)(6) .....................................................................8

        1.   Pleading Standards .....................................................................................9

        2.   Plaintiffs Fail to State a CEA Claim Against the Trafigura
            Defendants ...............................................................................................10

            a.   Trader Complaint Fails to State a Claim of Market
                Manipulation ................................................................................10

                i.   Plaintiffs Allege No Facts Demonstrating that
                      TBBV and TAG Had the Ability to Influence
                      Market Prices .....................................................................11

                ii.  Plaintiffs Allege No Facts Demonstrating that
                      TBBV and TAG Caused Artificial Prices.........................12

                iii. Plaintiffs Allege No Facts Demonstrating that
                      TBBV and TAG Specifically Intended to Cause the
                      Artificial Prices .................................................................13

          b.    Plaintiffs Fail to State a Claim for False Reporting and Fraud and Deceit ........................................................................... 15

          c.    Plaintiffs Fail to State Claims For Aiding and Abetting or Principal-Agent Liability ................................................................ 15

     3.    Plaintiffs Fail to Adequately Allege a Violation of the Sherman Act ........................................................................................................ 17

          a.    Plaintiffs Fail to Allege Facts Sufficient to State a Section 1 Claim .................................................................................................. 17

          b.    Plaintiffs Fail to Sufficiently Plead Facts Under Section 2 ........... 19

              i.    Plaintiffs Allege No Facts Demonstrating that the Trafigura Defendants Have Monopoly Power ................... 20

              ii.    Plaintiffs Allege No Facts Demonstrating that the Trafigura Defendants Colluded or Conspired With Anyone .................................................................................. 21

C.    The Complaints' State Law Claims Should be Dismissed ..................................... 21

     1.    The State Antitrust and Unfair Trade Practices Act Claims Should be Dismissed ............................................................................................ 22

     2.    The Unjust Enrichment Claims Should be Dismissed ............................... 22

IV.    CONCLUSION ............................................................................................................ 24

## TABLE OF AUTHORITIES

**Page**

**Cases**

*AF Gloenco Inc. v. Ushers Mach. & Tool Co.*,
2011 U.S. Dist. LEXIS 112515 (N.D.N.Y. Sept. 30, 2011) .....................................................20

*In re Amaranth Natural Gas Commodities Litig.*,
612 F. Supp. 2d 376 (S.D.N.Y. 2009)................................................................................14, 16

*In re Amaranth Natural. Gas Commodities Litig.*,
730 F.3d 170, 183 (2d Cir. 2013)............................................................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................................8, 9

*Atuahene v. City of Hartford*,
10 Fed. Appx 33 (2d Cir. 2001)................................................................................................8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................................8, 9, 17, 18

*In re Commodity Exch. Inc., Silver Futures and Options Trading Litig.*,
No. 13-cv-1416, 2014 WL 1243851 (2d Cir. March 27, 2014)...............................................10

*In re Commodity Exchange, Inc. Silver Futures and Options Trading Litig.*,
No. 11-MD-2213, 2012 WL 6700236 (S.D.N.Y. Dec. 21, 2012) ...............................11, 12, 17

*In re Crude Oil Commodity Litig.*,
2007 U.S. Dist. LEXIS 47902 (S.D.N.Y. June 28, 2007)..................................................11, 13

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
822 F.2d 1242 (2d. Cir. 1987)..................................................................................................8

*Ferro v. Ry. Express Agency, Inc.*,
296 F.2d 847 (2d Cir. 1961).....................................................................................................8

*Georgia Malone & Co.* v. *Rieder*, 19 N.Y. 3d 511 (2012) .............................................................23

*H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys. Inc.*,
879 F.2d 1005 (2d Cir. 1989)..................................................................................................20

*Hinds County, Miss. v. Wachovia Bank, N.A.*,
620 F. Supp. 2d 499 (S.D.N.Y. 2009).....................................................................................18

*Jadali v. Alamance Reg'l Med. Ctr.*,
225 F.R.D. 181 (M.D.N.C. 2004).............................................................................................18

*Kalnit* v. *Eichler*,
264 F.3d 131 (2d Cir. 2001).....................................................................................................14

*Kartell v. Blue Shield of Mass., Inc.*,
    749 F.2d 922 (1st Cir. 1984)...................................................................................................19

*Kolari v. New York-Presbyterian Hosp.*,
    455 F.3d 118 (2d Cir. 2006)....................................................................................................21

*Krause v. Forex Exch. Mkt., Inc.*,
    356 F. Supp. 2d 332 (S.D.N.Y. 2005)................................................................................16, 17

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2nd Cir. 2006)...................................................................................................11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    935 F. Supp. 2d 666 (S.D.N.Y. 2013)...............................................................................10, 23

*In re Motel 6 Sec. Litig.*,
    Nos. 93 Civ. 2183 (JFK), 92 Civ. 2866 1997 WL 154011
    (S.D.N.Y. Apr. 2, 1997).........................................................................................................23

*In re Natural Gas Commodity Litig.*,
    358 F. Supp. 2d 336 (S.D.N.Y. 2005)................................................................................13, 14

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*,
    No. 12 Civ. 2837, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012)................................................8

*In re Parcel Tanker Shipping Servs. Antitrust Litig.*,
    541 F. Supp. 2d 487 (D. Conn. 2008)......................................................................................18

*In re Piasio,*
    [1999-2000 Transfer Binder], Comm. Fut. L. Rep. (CCH) ¶ 28,276
    (CFTC Sep. 29, 2000)...............................................................................................................7

*In re Platinum & Palladium Commodities Litig.*,
    2011 U.S. Dist. LEXIS 105040, at 24.................................................................................15, 17

*Potestato v. Fed. Nat'l Mortg. Ass'n*,
    No. 2:13-cv-11659, 2013 WL 5639351 (E.D. Mich. Oct. 15, 2013).........................................8

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*,
    No. 08 Civ. 42, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011).....................................................8

*Ridge at Red Hawk, L.L.C. v. Schneider*,
    493 F.3d 1174 (10th Cir. 2007 )...............................................................................................9

*Rivera v. Wal-Mart Stores, Inc.*,
    *No. Civ. A. 05-4416*, 2005 WL 2862246 (E.D. Pa. Oct. 31, 2005)..........................................8

*RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*,
    661 F. Supp. 2d 218 (E.D.N.Y. 2009) .........................................................................17, 18, 20

*Sperry v. Crompon Corp.*, 8 N.Y. 3d. 204 (2007) ..........................................................................23

*Techreserves Inc. v. Delta Controls, Inc.*,
    2014 U.S. Dist. LEXIS 47080 (S.D.N.Y. Mar. 31, 2014) .......................................................20

4

*In re Term Commodities Cotton Futures Litig.*,
  No. 12-cv-5126, 2013 U.S. Dist. LEXIS 184374 (S.D.N.Y. Dec. 20, 2013) ...................10, 16

*Verizon Comms. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004).......................................................................................................19

*Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*,
  857 F.2d 55 (2d Cir. 1988)..............................................................................................19

## Statutes

17 C.F.R. § 180.1 .............................................................................................................15

CFTC Rule § 180.1 ...........................................................................................................15

Fed. R. Civ. Proc. 8..........................................................................................................8

Fed. R. Civ. Proc. 9(b) ..........................................................................................10, 14, 16

Fed. R. Civ. Proc. 12(b)(6) .........................................................................................1, 9

7 U.S.C. § 2(a)(1)(B) .......................................................................................................16

7 U.S.C. § 9(1) ................................................................................................................10

7 U.S.C. § 13(a) ..............................................................................................................10

7 U.S.C. § 25...................................................................................................................10

28 U.S.C. § 1367..............................................................................................................21

In addition to the memoranda of law jointly submitted on behalf of all Defendants ("Defendants' Joint Memoranda"),[1] Defendants Trafigura Beheer B.V. ("TBBV") and Trafigura A.G. ("TAG") (collectively, the "Trafigura Defendants") submit this Memorandum of Law in Support of their Motion to Dismiss the Amended Class Action Complaint filed in Cause No. 1:13-cv-07443-ALC (the "Landholder Complaint"), and the Amended Consolidated Class Action Complaint filed in Cause No. 1:13-md-02475 (the "Trader Complaint") (collectively, the "Complaints") pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

## I.   PRELIMINARY STATEMENT

Despite claims of a 12-year conspiracy to manipulate prices in the Brent Crude Oil market,[3] Plaintiffs only rely on seven trades occurring over four days to allege that the Trafigura Defendants were part of this so-called vast conspiracy. Even as to this mere handful of trades, however, Plaintiffs fail to allege any facts demonstrating that TBBV or TAG manipulated the price of Brent Crude Oil, monopolized the Brent Crude Oil market, conspired with any other Defendant to fix and restrain trade in Brent Crude Oil, or otherwise acted improperly. To the contrary, the facts alleged demonstrate that the Trafigura Defendants engaged in the type of legitimate, economically justifiable trades that regularly occur in the ordinary course of business in markets throughout the world.

---

[1]     Specifically, Defendants' Joint Brief in Support of Their Motion to Dismiss Plaintiff Harter's Amended Class Action Complaint (Case No. 1:13 cv-07443-ALC) (the "Joint Landholder Memo"), Defendants' Joint Brief in Support of Their Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint (Case No. 1:13-md-02475) (the "Joint Trader Memo"), and Defendants' Joint Brief in Support of Their Motion to Dismiss the Complaints as Exceeding the Extraterritorial Reach of U.S. Law (Case No. 1:13-md-02475) (the "Extraterritorial Memo").

[2]     This motion to dismiss is brought on behalf of both TAG and TBBV with respect to the Trader Complaint, and on behalf of TAG only as to the Landholder Complaint. To date, TBBV has not been served with the Landholder Complaint.

[3]     For purposes of this memorandum, the Brent Crude Oil market is defined to include, among other things, all physical Brent Crude Oil, all oil priced by reference to Brent prices, and all Brent Crude Oil derivatives.

The Complaints identify purportedly manipulative trades by the Trafigura Defendants occurring over 4 dates in February of 2011 and September of 2012.[4]  Plaintiffs first refer to four trades on February 24, 2011 in which Trafigura sold cargos to Shell at progressively higher prices.  While Plaintiffs suggest that Shell entered the trades for manipulative purposes,[5] they make no such allegations regarding the Trafigura Defendants.  Indeed, the Complaints only allege that the Trafigura Defendants served as a counter-party to four transactions with Shell.  Merely serving as a counter-party to a transaction does not render the Trafigura Defendants co-conspirators or make them liable for others' alleged misconduct.

Plaintiffs complain of only three other trades by the Trafigura Defendants: a September 5, 2012 purchase of one cargo from BP; a September 25, 2012 purchase of a Forties cargo from Shell; and a September 28, 2012 purchase of a cargo from Vitol.  Without alleging the necessary facts to support their claims, Plaintiffs broadly allege that in each of these trades, the Trafigura Defendants purchased the oil at an artificially low price.  Again, aside from conclusory statements of impropriety, Plaintiffs allege no facts showing that the Trafigura Defendants intended to manipulate Brent Crude Oil prices or that they entered into an agreement with any other party to manipulate prices or restrain trade in the Brent Crude Oil market.

Thus, as to the Trafigura Defendants, the Complaints are entirely deficient because they fail to allege essential elements of Plaintiffs' claims.  The Complaints allege no facts demonstrating that the seven trades impacted pricing in the relevant market or that the Trafigura Defendants had the ability to manipulate or monopolize the market.  Nor do Plaintiffs allege that

---

[4]    The Complaints also refer to 21 other trades and related activity by the Trafigura Defendants in charts supposedly illustrating the trading activity of various market participants. (Trader Compl. ¶¶ 283, 309, 371-374; Landholder Compl. ¶112).  Plaintiffs do not allege, however, that any of these trades or offers were manipulative or artificial, or that the Trafigura Defendants otherwise acted improperly.  Plaintiffs appear to reference this activity solely as factual background for claims against other Defendants.

[5]    As discussed in the Defendants' Joint Memoranda, the allegations against all the Defendants, including Shell, are also deficient and fail to state a claim.

the Trafigura Defendants intended to manipulate prices or conspired with any other Defendant to manipulate prices or restrain trade. In essence, the threadbare facts contained in Plaintiffs' Complaints allege nothing more than on four dates over a 12-year period, the Trafigura Defendants executed arms-length, economically rational trades. Because Plaintiffs allege no wrongful actions by the Trafigura Defendants, their claims must be dismissed.

In addition to the flaws described above, the Complaints are deficient because they fail to allege facts specific to TBBV or TAG. Instead, the Plaintiffs make allegations against a generalized, undifferentiated group of defendants, or improperly lump the two Trafigura Defendants together and refer to them as the single entity "Trafigura." Where, as here, the Complaints allege fraud, Plaintiffs must plead specific facts about the nature of *each* defendant's participation in the fraud. By wrongfully lumping the defendants together, Plaintiffs fail to allege specific facts against each Trafigura Defendant.[6] Accordingly, dismissal of TBBV and TAG is warranted on this separate and independent basis.

## II.    FACTUAL BACKGROUND

### A.    The Parties

**Trader plaintiffs** are individual U.S. and U.K. residents and Illinois corporations that allegedly have traded either NYMEX or ICE Brent Crude Oil futures contracts (or both). (Trader Compl. ¶¶ 24-34). They seek to represent a class of "[a]ll persons, corporations and other legal entities that transacted in and/or held (a) ICE derivatives contracts tied to Brent Crude Oil (such as Brent futures) and/or (b) NYMEX derivatives contracts tied to Brent Crude Oil (such as Brent futures) during the Class Period" which spans from 2002 to 2014. (*Id.* ¶ 525).

---

[6]     This lumping together of the Trafigura Defendants is an obvious attempt by Plaintiffs to avoid specifying TAG's involvement in the trades at issue, since TAG did not execute or participate in any of the trades.

**Landholder plaintiff** is a resident of Louisiana who, through his 25% ownership stake in Harter Oil, owns partial interests in oil-producing land and holds multiple royalty and working interests in certain oil leases in the State of Louisiana. (Landholder Compl. ¶¶ 10, 61). Plaintiff seeks to represent a class of "all landholders and leaseholders of oil-producing property in the U.S. who received reduced compensation from the sale of oil extracted from their leased or owned property, reduced compensation in the sale of interests in oil production, and/or reduced compensation from the sale of oil producing land as a result of the misconduct alleged." (*Id.* ¶ 60). According to the Landholder Complaint, Plaintiff and the putative class he purports to represent are individuals and companies that own property or interests in property that generate crude oil, which is priced with reference to West Texas Intermediate ("WTI") oil or Louisiana Light Sweet ("LLS") oil. (*Id.* ¶¶ 54, 60-62).

**TBBV** sources and trades "crude oil, petroleum products and other products for industrial consumers worldwide and holds itself out as one of the world's leading commodity traders." (Landowner Compl. ¶ 16; Trader Compl. ¶ 43). TBBV "is the parent company of the Trafigura Group, which is incorporated in the Netherlands," and has "81 offices in 56 countries." (*Id.*).

**TAG** is "a wholly-owned subsidiary of [TBBV] and is organized under the laws of Switzerland." (Landowner Compl. ¶ 17; Trader Compl. ¶ 44). TAG "operates oil and petroleum product trading out of Houston, Texas." The Complaints do not distinguish between TBBV and TAG. (*Id.*). Rather, Plaintiffs improperly lump TBBV and TAG together and refer to them collectively as "Trafigura."

### B.    Allegations Against The Trafigura Defendants

Plaintiffs complain of seven specific trades by the Trafigura Defendants: (1) four trades on February 24, 2011, (2) one trade on September 5, 2012, (3) one trade on September 25, 2012,

4

and (4) one trade on September 28, 2012.[7]  (Trader Compl. ¶¶ 350-51, 383, 399-405; Landholder Compl. ¶ 133).  These trades are described more fully below.

### 1.    February 24, 2011 Trades

Plaintiffs allege that on February 24, 2011, the Trafigura Defendants sold Shell four April Cash BFOE contracts at progressively higher prices ranging from $113.60 to $113.72.  (Trader Compl. ¶¶ 350-51, 364).  Plaintiffs allege that "[t]he prices were 'walked' higher" over the Market-on-Close ("MOC") period to benefit Shell in the Contracts-for-Differences ("CFD") market where "Shell had major pricing positions."  (Id. ¶ 351).

### 2.    September 5, 2012 Trade

Plaintiffs also allege that on September 5, 2012, the Trafigura Defendants purchased one Cash BFOE from BP at an unspecified low price.  (Id. ¶ 383).  According to Plaintiffs, BP was purposefully offering BFOE cargos at low prices to push the "CFD curve down further."  (Id.).  Plaintiffs allege that the sale to the Trafigura Defendants "cemented the lower prices into the Platts MOC pricing methodology."  (Id.).

### 3.    September 25, 2012 Trade

Plaintiffs further allege that on September 25, 2012, the Trafigura Defendants purchased one Forties cargo (designated "F1005") at a low price.  (Trader Compl. ¶ 399; Landowner Compl. ¶ 133).  On the following day, Shell offered the F1005 cargo again, but quickly withdrew this offer.  (Trader Compl. ¶ 400).  According to Plaintiffs, Shell "spoofed" the market again on September 28, 2012 " by reoffering [the F1005 cargo], then withdrawing it."  (Trader Compl. ¶ 404).  Plaintiffs describe the September 25, 2012 transaction as "a wash trade intended solely to

---

[7]    The Trader Complaint references five trades by the Trafigura Defendants on February 24, 2011 (Trader Compl. ¶ 350), however, the Plaintiffs only complain of the four trades with Shell (Id. ¶ 351).  The trade with Mercuria provides context for Plaintiffs' allegations against Shell.  (Id. ¶¶ 350-351).  The Trader Complaint does not allege that the trade with Mercuria was manipulative or improper.  (Id.).

influence the MOC process and prices of Dated Brent." (Trader Compl. ¶ 399; Landowner Compl. ¶ 133). According to Plaintiffs, the purchase of F1005 "served no other economically justifiable or rational purpose." (Trader Compl. ¶ 399).

### 4.      September 28, 2012 Trade

Finally, Plaintiffs allege that on September 28, 2012, Vitol sold Trafigura a cargo loading October 11 to October 13 at a price below the previous day's price assessment for the same loading period. (*Id.* ¶ 404). According to the Complaint, "Vitol's trade was used as an overhang to the Brent market, even though aside from [the Defendants' trades], the Brent Crude market was much more tightly priced." (*Id.*). Plaintiffs "believe" that the September 28, 2012 trade between Vitol and Trafigura "was manufactured by those participating in the South Korean arbitrage (or those with synthetic arbitrage positions constructed from futures or other derivatives)." (*Id.* ¶ 405).

Regarding each of the February and September trades, Plaintiffs merely allege that the Trafigura Defendants executed arms-length, economically rational trades with Shell, BP, and Vitol. (Trader Compl. ¶¶ 350-51, 364, 399-405; Landowner Compl. ¶ 133). While Plaintiffs claim that Shell, BP, and Vitol entered these trades for manipulative purposes,[8] the Plaintiffs allege no facts suggesting that the Trafigura Defendants intended to manipulate prices or otherwise acted improperly. (*Id.*). Rather, Plaintiffs rely on conclusory statements, with no factual support, to suggest that the Trafigura Defendants colluded with Shell, BP, and Vitol to manipulate prices and restrain trade. For example, Plaintiffs label the September 25, 2012 trade with Shell a "wash," but fail to allege any facts supporting that conclusion. "The factors that show a wash result are (1) the purchase and sale (2) of the same delivery month of the same

---

[8]      As discussed in the Defendants' Joint Memoranda, Plaintiffs allegations against Shell, BP, and Vitol are also deficient.

futures contract (3) at the same (or similar) price." *In re Piasio*, [1999-2000 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 28,276 at 50,691 (CFTC Sep. 29, 2000). Plaintiffs do not allege any facts demonstrating that the Trafigura Defendants re-sold to Shell the same futures contract, for the same delivery month, at the same or similar price. Instead, Plaintiffs assume that the transaction was a manipulative "wash trade" based solely on Shell's subsequent offers and withdrawals of the same cargo. Plaintiffs then suggest that the Trafigura Defendants were co-conspirators merely because they were a counter-party to the initial, economically rational trade of the F-1005 cargo.

Similarly, with respect to the September 28, 2012 trade, Plaintiffs "believe," based on nothing more than an arms-length commercial transaction between the Trafigura Defendants and Vitol, that the trade was "manufactured" by those participating in the "South Korea arbitrage." (Trader Compl. ¶ 405). Not only do the Plaintiffs fail to allege any facts about the purported "South Korea arbitrage" conspiracy, the Complaints allege no facts demonstrating that the Trafigura Defendants participated in this alleged conspiracy or entered into an agreement with Vitol to manipulate prices or restrain trade. Once again, Plaintiffs label the Trafigura Defendants as co-conspirators based solely on (a) their role as a counter-party to the trade, and (b) the alleged conduct of others.

## III.   ARGUMENT AND AUTHORITY

### A.   The Complaint Should be Dismissed For Failure To Allege Facts Specific to Each Defendant

Many of Plaintiffs' allegations in this case are directed at generalized, undifferentiated groups of defendants. Moreover, TBBV and TAG are separate entities individually named as defendants in this case, (*see* Trader Compl. ¶¶ 43-44; Landholder Compl. ¶¶ 16-17), yet Plaintiffs improperly lump TBBV and TAG together and refer to them as "Trafigura." Plaintiffs

make no effort to distinguish between TBBV or TAG, or to allege conduct specific to either of them.

Rule 8 of the Federal Rules of Civil Procedure "requires, at a minimum, that a complaint give *each* defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford*, 10 Fed. Appx 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Express Agency, Inc.* 296 F.2d 847, 851 (2d Cir. 1961) (emphasis added). Plaintiffs cannot satisfy Rule 8 "[b]y lumping all defendants together . . . and providing no factual basis to distinguish their conduct." *Id.* In addition, because the Plaintiffs allege fraud against multiple defendants, "the complaint should inform each defendant of the nature of his alleged participation in the fraud."[9] *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d. Cir. 1987); *see also Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08 Civ. 42, 2011 WL 7053807, at *15 (E.D.N.Y. Jan. 4, 2011) (plaintiffs must allege facts establishing the direct and independent participation [of each defendant] in the alleged conspiracy). "[F]ailure to isolate the key allegations against each defendant supports dismissal" under the standards set forth by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12 Civ. 2837, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012). Accordingly, the Complaints should be dismissed against TBBV and TAG on this basis alone.

### B.  Plaintiffs' CEA and Sherman Act Claims Should be Dismissed for Failure to State a Claim under Rule 12(b)(6)

---

[9]      As previously discussed, Plaintiffs cannot satisfy these pleading requirements as to TAG because TAG was not involved in any of the trades referenced in the Complaints. Accordingly, dismissal of TAG is warranted for this reason alone. *See Rivera v. Wal-Mart Stores, Inc.*, No. Civ. A. 05-4416, 2005 WL 2862246 at *2 (E.D. Pa. Oct. 31, 2005) (dismissing Wal-Mart Stores, Inc. from action as improperly named defendant because Wal-Mart Puerto Rico, Inc. was the proper party); *Potestato v. Federal Nat'l Mortg. Ass'n*, No. 2:13–cv–11659, 2013 WL 5639351, at *3 (E.D. Mich. Oct. 15, 2013) (granting motion to dismiss because "Plaintiffs have sued the wrong entity [and] . . . the Court cannot "draw the reasonable inference that [the improperly named defendant] is liable for the misconduct alleged").

### 1.   Pleading Standards

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim that is merely "possible" or "conceivable" should be dismissed. *Iqbal*, 556 U.S. at 679 (courts must be able to "infer more than the mere possibility of misconduct"). A viable complaint must allege facts that, if proven, would establish a "plausible" claim for relief. *Twombly*, 550 U.S. 544, 555-57 (2007); *Iqbal*, 556 U.S. at 680. A claim is facially plausible only if the plaintiff pleads facts from which the court can draw reasonable inferences that the defendant is liable for the alleged misconduct. *Id.* Where, as here, the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but failed to show that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679; *see also Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007 ) ("the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims").

In addition, a complaint based on "nothing more than conclusions" does not satisfy the pleading requirements of the Federal Rules of Civil Procedure. *Iqbal*, 556 U.S. at 678-79. Courts need not consider allegations that are mere legal conclusions because "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." Indeed, when evaluating whether a complaint states a claim for relief, conclusory allegations should be disregarded. *Id.* at 679.

For the reasons set forth below, Plaintiffs fail to allege sufficient facts in support of their CEA and Sherman Act claims to satisfy the pleading standards set forth in both *Twombly* and *Iqbal*.

### 2. Plaintiffs Fail to State a CEA Claim Against the Trafigura Defendants[10]

The first four claims in the Trader Complaint (Trader Compl. ¶¶ 531-568) relate to purported violations of the CEA, which prohibits (i) manipulation of the price of any commodity or commodity future, and (ii) false or misleading reports regarding market information or conditions. *See* 7 U.S.C. §§ 9(1), 13(a), 25. In addition to the deficiencies set forth in Defendants' Joint Memoranda, the Trader Complaint contains no allegations supporting any of Plaintiffs' CEA claims against the Trafigura Defendants.

### a. Trader Complaint Fails to State a Claim of Market Manipulation

A claim for market manipulation under the CEA requires plaintiffs to allege that (1) the defendant(s) had the ability to influence market prices; (2) artificial prices existed; (3) the defendant(s) caused the artificial price; and (4) the defendant(s) specifically intended to cause the artificial price. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 713 (S.D.N.Y. 2013); *In re Commodity Exchange Inc., Silver Futures and Options Trading Litig.* ("*Silver II*")*,* No. 13-cv-1416, 2014 WL 1243851, at 1-2 (2d Cir. March 27, 2014). Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, Plaintiffs must plead the elements of market manipulation *with particularity* because the claims "involve disseminating false or misleading information in the market."[11] *In re Term Commodities Cotton Futures Litig.* ("*In re Cotton Futures*"), No. 12-cv-5126, 2013 U.S. Dist. LEXIS 184374, at 34-35 (S.D.N.Y. Dec. 20, 2013) (emphasis added).

---

[10]    The Landholder Complaint does not assert any CEA claims. As a result, the discussion of Plaintiffs' CEA claims relates entirely to the Trader Complaint.

[11]    Even under Rule 8(a), Plaintiffs must allege more than vague allegations of "uneconomic conduct," *Silver II*, 2014 WL 1243851, at 2, and instead must allege that causing an artificial price was "the purpose or conscious object" of the act. *In re Cotton Futures*, No. 12-CV-5126, at 54.

In addition, a CEA market manipulation claim is a specific intent cause of action. *In re Commodity Exchange, Inc. Silver Futures and Options Trading Litig.* (*Silver I*), No. 11-MD-2213, 2012 WL 6700236, \*10 (S.D.N.Y. Dec. 21, 2012).  As a result, plaintiffs must do more than allege that a facially legitimate transaction was intended to manipulate the market.  *Id.* Rather, the allegations must give rise to a strong inference that manipulation was the dominant purpose of the transaction.  *Id.*  To plead a "strong inference of scienter," plaintiffs must either allege facts showing that a defendant (a) had both motive and opportunity to commit fraud, or (b) facts constituting strong circumstantial evidence of conscious misbehavior or recklessness.  *In re Crude Oil Commodity Litig.*, 2007 U.S. Dist. LEXIS 47902, \*17 (S.D.N.Y. June 28, 2007) (citing *Lerner v. Fleet Bank, N.A.*, 459 F. 3d 273, 290-91 (2nd Cir. 2006)).

The Trader Complaint fails to allege *any* facts establishing the elements of market manipulation against TBBV and TAG, let alone facts sufficient to satisfy the particularity requirement of Rule 9(b).

> i.  Plaintiffs Allege No Facts Demonstrating that TBBV and TAG Had the Ability to Influence Market Prices

First, Plaintiffs fail to allege that TBBV or TAG had the ability to influence market prices. The only allegations in the Complaint regarding the role of TBBV and TAG in the Brent Crude Oil market are that:

> Trafigura's trading operations are integrated with its local storage, shipping, and chartering departments which enables the company to 'react quickly to shifting demand patterns.'  Trafigura's affiliates and subsidiaries in the U.S. are active in the financial derivatives markets, employing futures, forwards, options and OTC instruments to manage Trafigura's physical positions and hedge exposure to related risks.  Plaintiffs allege that Brent Crude futures and other derivatives are among the products traded by Trafigura and its affiliates.
>
> . . . . Trafigura holds itself out as the world's second-largest privately-owned oil trading company and reports that, in the crude oil market, Trafigura uses its global presence, market knowledge and logistics capabilities to balance supply and demand.

(Trader Compl. ¶¶ 478-79).

Other than Plaintiffs' general summary of TBBV and TAG's business, Plaintiffs do not allege that TBBV and TAG had any ability to influence prices in the Brent Crude Oil market. As detailed in Defendants' Joint Memoranda, the Dated Brent Assessment at issue is (a) determined by a broad range of physical and derivative Brent trades after Platts, a price reporting agency, exercises its independent judgment and (b) *not* linked to the futures prices Plaintiffs claim were affected. (Joint Trader Memo at 7-10). In addition, the Complaint demonstrates that Brent crude oil cargos and BFOE cash cargos are bought and sold by multiple, sophisticated market participants other than the Trafigura Defendants. (*Id.* at 20). Furthermore, Plaintiffs describe multiple instances where Platts discounted or ignored certain trades. (*Id.* at 20-22). Finally, the Complaint demonstrates that the market did not always move in tandem with the Defendants' trades. (*Id.* at 20-21). As a result, Plaintiffs allege no facts from which the court could infer that TBBV and TAG have the ability to influence the complex and sophisticated market at issue.

ii.     Plaintiffs Allege No Facts Demonstrating that TBBV and TAG Caused Artificial Prices

Second, Plaintiffs fail to allege facts demonstrating that the Trafigura Defendants caused artificial prices in the Brent Crude Oil market. Plaintiffs merely assert that the "Defendants," as a whole, caused artificial prices of both physical Brent crude oil and Platts' Dated Brent Assessment, and that these artificial prices had the effect of causing artificial prices for Brent futures and derivatives. (Joint Trader Memo at 18-19). Such generalized assertions are insufficient to establish causation. "The causation element [of a market manipulation claim] requires that a defendant be the proximate cause of the price artificiality." *Silver I*, 2012 WL 6700236, at * 16. Thus, Plaintiffs "must specify 'what manipulative acts were performed, which

defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue.'" *In re Crude Oil Commodity Litig.*, 2007 U.S. Dist. LEXIS 47902, at 18 (citing *In re Natural Gas Commodity Litig.*, 358 F. Supp. 2d 336, 344 (S.D.N.Y. 2005)).

As discussed above, Plaintiffs fail to allege any manipulative acts by the Trafigura Defendants, let alone *the effect* such acts had on the Brent Crude Oil market. Indeed, Plaintiffs allege no facts demonstrating that Trafigura purchased cargos at manipulative prices. (Joint Trader Memo, at 13-19). In addition, as discussed fully in Defendants' Joint Memoranda, Plaintiffs have failed to allege facts establishing a causal connection between the seven trades executed by the Trafigura Defendants in the MOC Window and (i) a Dated Brent Assessment based on Platts independent evaluation of a number of different inputs, or (ii) any futures pricing that is derived from inputs other than the Dated Brent Assessment. (*Id.* at 18-21). Because Plaintiffs have not made a single allegation that the Trafigura Defendants caused artificial prices (or possessed the power to do so), Plaintiffs' market manipulation claim should be dismissed.

                iii.    Plaintiffs Allege No Facts Demonstrating that TBBV and TAG Specifically Intended to Cause the Artificial Prices

Finally, Plaintiffs fail to allege a single fact demonstrating that TBBV and TAG specifically intended to influence market prices. As discussed above, Plaintiffs make no allegations that the trades were manipulative, or that the conduct of TBBV or TAG was improper. Plaintiffs make conclusory allegations about the seven trades, unsupported by factual allegations, to demonstrate motive and intent. For example, Plaintiffs claim that the Trafigura Defendants engaged in a "wash" trade on September 25, 2012, and an artificial exchange on September 28, 2012 (purportedly orchestrated by unidentified participants in the "South Korea arbitrage" conspiracy). In both instances, Plaintiffs' allegations point only to the alleged conduct

13

of Shell and Vitol, and not to conduct by the Trafigura Defendants.  Indeed, Plaintiffs allege no facts that the Trafigura Defendants sought to manipulate prices or colluded with Shell or Vitol to do so.   Indeed, the facts pled by the Plaintiffs regarding each of the seven trades only demonstrate that the Trafigura Defendants acted in a legitimate and economically rational manner.

Other than the deficient allegations regarding the seven trades, Plaintiffs rely on broad, conclusory allegations about "middle-men" and "traders" to establish the motive and intent of TBBV and TAG.  For example, the Complaint alleges that for defendants such as TBBV and TAG, "their *motivation* as to where they require absolute or relative prices to move is much more opportunistic.  These Defendants will attempt to force prices to the *benefit* of their trading books. Therefore, trading book positions can change dramatically from day to day and will influence their required market direction on both an absolute and relative basis." (Trader Compl. ¶ 537) (emphasis added).  Plaintiffs' generalizations about the motive and intent of "middle-men" and "traders" are insufficient under Rule 9(b) to demonstrate that the Trafigura Defendants had the motive and opportunity to commit fraud or intended to manipulate prices in the Brent Crude Oil market.  *In re Natural Gas Commodity Litig.* 358 F. Supp. 2d at 343 .  Rule 9(b) requires Plaintiffs to assert a concrete and personal benefit to the Trafigura Defendants resulting from the fraud.  *In re Amaranth Natural Gas Commodities Litig. (Amaranth II)*, 612 F. Supp. 2d 376, 383 (citing *Kalnit* v. *Eichler*, 264 F.3d 131, 139 (2d Cir. 2001)).  It is insufficient for Plaintiffs to simply assert that the Trafigura Defendants had a position that would "benefit" from price movements.  Without specific, plausible allegations about the intent and motive of the Trafigura

Defendants to manipulate prices in the Brent Crude Oil market, the Plaintiffs cannot establish a CEA claim against TBBV and TAG.[12]

For the foregoing reasons, Plaintiffs' market manipulation claim against the Trafigura Defendants should be dismissed.

### b. Plaintiffs Fail to State a Claim for False Reporting and Fraud and Deceit

Plaintiffs also assert a claim of manipulation by false reporting and fraud and deceit. (Trader Compl. ¶¶ 548-556). The elements of a CEA false reporting claim are: the intentional or reckless (i) delivery for transmission, (ii) of "a false or misleading or inaccurate report" tending to "affect the price of any commodity in interstate commerce," (iii) with knowledge or reckless disregard for the false, misleading or inaccurate nature of the report. 7 U.S.C. § 9(1)(A), *see* CFTC Rule 180.01, 17 CFR § 180.1. This claim fails against TBBV and TAG because Plaintiffs have not alleged that the Trafigura Defendants delivered or caused to be delivered *any* report regarding Brent crude oil, let alone a false or misleading one. (Joint Trader Memo at 24-26). As a result, Plaintiffs' false reporting claim should be dismissed on this basis alone.[13]

### c. Plaintiffs Fail to State Claims For Aiding and Abetting or Principal-Agent Liability

Plaintiffs' remaining CEA claims are derivative claims for principal-agent and aiding and abetting liability (Trader Compl. ¶¶ 556-568). As a threshold matter, these claims are fatally flawed as there can be no principal-agent liability or aiding and abetting where, as here, Plaintiffs fail to adequately plead the underlying claim. *In re Platinum & Palladium Commodities Litig.*, 2011 U.S. Dist. LEXIS 105040, at 24 (where complaint "fails to allege the requisite intent of any

---

[12]     Even under Rule 8(a), Plaintiffs' allegations are insufficient to demonstrate the required intent under the CEA. *See* Joint Trader Memo at 22.

[13]     Additionally, as discussed in the Joint Trader Memo at 24-25, to the extent Plaintiffs have alleged that TBBV or TAG engaged in false reporting prior to August 15, 2011, such claim fails because a cause of action for false reporting under the CEA did not exist until August 15, 2011.

primary actor, there can be no aiding and abetting liability as a matter of law."). Additionally, Plaintiffs allege no facts supporting either of these theories.

First, with respect to the principal-agent theory of liability, Plaintiffs do not allege any facts establishing the key elements of this claim. In order to establish principal-agent liability under the CEA, Plaintiffs must allege facts demonstrating: (1) "the principal's manifestation of intent to grant authority to the agent, and (2) agreement by the agent." *Amaranth II*, 612 F. Supp. 2d 376, 385 (S.D.N.Y. 2009). In addition, Plaintiffs must allege that the principal "maintain[s] control over key aspects of the undertaking," *id.*, and the agent acted "within the scope of his employment." 7 U.S.C. § 2(a)(1)(B). Plaintiffs do not allege any facts suggesting that the Trafigura Defendants were employed as an agent of or controlled by any other Defendant, and for this reason alone, this claim should be dismissed.

Similarly, Plaintiffs fail to sufficiently plead a claim for aiding and abetting. The elements of aiding and abetting manipulation under the CEA are that a defendant "(1) had knowledge of a principal's intent to manipulate the market and intended to assist to further that manipulation, and (2) performed an act in furtherance of that manipulation." *Amaranth II*, 612 F. Supp. 2d at 389 (S.D.N.Y. 2009). These elements must be pled with particularity under Rule 9(b). *Krause* v. *Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332, 338 (S.D.N.Y. 2005). However, Plaintiffs' claims fail under any pleading standard.

None of the facts alleged in the Trader Complaint support an inference that the Trafigura Defendants knew of any other Defendant's purported intent to manipulate the market and intended to assist in the manipulation or performed any acts in furtherance thereof. *In re Cotton Futures*, No. 12-cv-5126, at 65 (quoting *In re Amaranth Natural. Gas Commodities Litig.(Amaranth III)*, 730 F.3d 170, 183 (2d Cir. 2013) ("aiding and abetting requires knowledge

of the primary violation and an intent to assist it"). Instead, Plaintiffs merely allege that the Trafigura Defendants engaged in arms-length, economically rational trades. (Trader Compl. ¶¶ 350-51, 364, 383, 399-405). The mere fact that the Trafigura Defendants bought from or sold to another party in an economically rational manner is not sufficient to establish an intentional act to assist in price manipulation. It simply shows that the Trafigura Defendants exercised sound business judgment. *See Silver I*, 2012 WL 6700236, at *19 (dismissing aiding and abetting claim where complaint alleged nothing more than market activity). Moreover, the Plaintiffs general assertion that "[e]ach and every defendant had extensive knowledge of the manipulation and, with such knowledge, materially assisted the manipulation by the other [D]efendants," (Trader Compl. ¶¶ 562), is insufficient to demonstrate aiding and abetting by the Trafigura Defendants. *Krause*, 356 F. Supp. 2d at 338 (holding that the elements of a claim for aiding and abetting manipulation under the CEA must be pled with particularity); *see also In re Platinum*, 2011 U.S. Dist. LEXIS 105040, at * 24 (where complaint "fails to allege the requisite intent of any primary actor, there can be no aiding and abetting liability as a matter of law."). As a result, this claim should be dismissed.

### 3.   Plaintiffs Fail to Adequately Allege a Violation of the Sherman Act

#### a.   Plaintiffs Fail to Allege Facts Sufficient to State a Section 1 Claim

Section 1 of the Sherman Act prohibits "unreasonable restraints of trade . . . effected by a contract, combination, or conspiracy." *Twombly*, 550 U.S. at 553. Therefore, the "crucial question" under Section 1 is whether the "challenged anticompetitive conduct stems from independent decision or from an agreement, tacit or express." *Id.* (internal quotation marks omitted). In order to state a Section 1 claim for antitrust conspiracy, Plaintiffs must go beyond bare allegations and provide basic details regarding the alleged agreement, including, among

other things, the identity of the alleged participants and when the conspiracy was formed. *RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*, 661 F. Supp. 2d 218, 231 (E.D.N.Y. 2009), (plaintiffs failed to state a claim for Section 1 conspiracy where the complaint offered no facts that would indicate the existence of an illegal agreement, such as "when the alleged conspiracy began, where it occurred, or what statements the [...] [d]efendants made to one another"); *see also Jadali v. Alamance Regional Med. Ctr.*, 225 F.R.D. 181, 186 (M.D.N.C. 2004) (plaintiff failed to state a claim for Sherman Act conspiracy and was not entitled leave to amend his complaint where he failed to provide any details of the alleged conspiracy, name participants, or describe how or when the conspiracy formed).

Here, the Complaints assert, without any supporting allegations, that "Defendants" entered into a contract, combination or conspiracy in restraint of trade in violation of Section 1 of the Sherman Act. (Trader Compl. ¶ 570; Landholder Compl. ¶ 265). Under *Twombly*, such undifferentiated pleading against a group of defendants is insufficient. *Hinds County, Miss.* v. *Wachovia Bank, N.A.*, 620 F. Supp. 2d 499, 512-16 (S.D.N.Y. 2009) (requiring "specific factual averment of involvement" for each defendant); *In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 541 F. Supp. 2d 487, 491-92 (D. Conn. 2008) ("[The] lack of specifics with respect to the acts of a particular defendant... renders the complaint inadequate").

Furthermore, the Complaints allege *no facts* demonstrating that the Trafigura Defendants entered into an agreement with any other Defendant, or tying the Trafigura Defendants to the supposed conspiracy. Notably missing from the Complaints are allegations of: (1) an alleged agreement between the Trafigura Defendants and Shell, BP, Vitol or any other Defendant, (2) the identity of the alleged participants, including those allegedly participating in the "South Korean arbitrage" whom Plaintiffs believe manufactured the September 28 trade, (3) conversations

between the Trafigura Defendants and Shell, BP, Vitol, or any other co-conspirators, and (4) when the alleged conspiracy was formed. *See Alcon Labs*, 661 F. Supp. 2d at 231. Without this information, Plaintiffs cannot state a claim under Section 1. (*Id.*).

Indeed, the only facts alleged by Plaintiffs is that Trafigura (without specifying which Trafigura Defendant) purchased or sold cargos in an economically rational manner. This type of activity is neither *per se* illegal nor an unreasonable restraint of trade under Section 1. *See, e.g., Kartell* v. *Blue Shield of Mass., Inc.*, 749 F.2d 922, 924 (1st Cir. 1984) (the negotiation of prices between buyers and sellers is not a restraint of trade).

In sum, Plaintiffs' Section 1 claims must fail because the Plaintiffs have not alleged any facts demonstrating that the Trafigura Defendants agreed to engage in anticompetitive conduct with any of the other defendants. The conduct of TBBV and TAG, as alleged by Plaintiffs, is just as consistent with unilateral conduct as it is an antitrust conspiracy.

### b.  Plaintiffs Fail to Sufficiently Plead Facts Under Section 2

Plaintiffs have also alleged that "Defendants" monopolized and conspired to monopolize the Brent crude oil market. (Trader Compl. ¶ 581; Landholder Compl. ¶ 276). A claim for monopolization under Section 2 of the Sherman Act requires a plaintiff to plausibly allege that a defendant: (1) possesses monopoly power in a relevant market, and (2) has maintained, acquired or enhanced that power through exclusionary conduct. *Verizon Comms. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). In addition, a Section 2 claim for conspiracy to monopolize requires Plaintiffs to allege facts giving rise to a plausible inference of (1) a combination or conspiracy among defendants, (2) an overt act in furtherance of the conspiracy, and (3) specific intent to monopolize. *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 74 (2d Cir. 1988). Plaintiffs' Section 2 claims should be dismissed for the following reasons.

19

        i.     Plaintiffs Allege No Facts Demonstrating that the Trafigura
               Defendants Have Monopoly Power

First, the Complaints fail to adequately allege that the Trafigura Defendants have monopoly power. Rather, Plaintiffs merely conclude, without supporting allegations, that, collectively, "Defendants' unlawful price control of the Brent Crude Oil Market during the Class Period reflects monopoly power." (Trader Compl. ¶ 583; Landholder Compl. ¶ 278). Allegations that Defendants "aggregated" or "shared" monopoly power cannot support a Section 2 monopolization claim against TBBV or TAG. *See H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys. Inc.*, 879 F.2d 1005, 1018 (2d Cir. 1989); *Alcon Labs.*, Inc., 661 F. Supp. 2d at 235 ("[t]he Second Circuit has specifically rejected monopolization claims under Section 2 based on a shared monopoly theory of liability"). Instead, a complaint must plausibly allege that a single defendant possessed monopoly power.

Furthermore, Plaintiffs fail to allege any allegations about TBBV's or TAG's market share, nor do they plausibly allege other facts suggesting that any defendant had monopoly power. These failures, standing alone, are sufficient to warrant dismissal of Plaintiffs' Section 2 claims against the Trafigura Defendants. *Techreserves Inc. v. Delta Controls, Inc.*, 2014 U.S. Dist. LEXIS 47080, at 22-23 (S.D.N.Y. Mar. 31, 2014); *see also, e.g., AF Gloenco Inc. v. Ushers Mach. & Tool Co.*, 2011 U.S. Dist. LEXIS 112515, at *8 (N.D.N.Y. Sept. 30, 2011) ("[b]ecause [n]o facts relating to Gloenco's market share or barriers to entry to the market are adduced, Ushers has failed to plead a plausible claim" under Section 2); *Alcon Labs.*, 661 F. Supp.2d at 234 ("this failure to allege the individual market share of each PWD is fatal to Plaintiff's Section 2 claims").

          ii.     Plaintiffs Allege No Facts Demonstrating that the Trafigura
                    Defendants Colluded or Conspired With Anyone

Second, Plaintiffs fail to allege facts supporting any inference that the Trafigura Defendants (1) conspired with any other entities to monopolize the relevant market, (2) committed any acts in furtherance of any such conspiracy, or (3) possessed the specific intent to monopolize. As discussed above with regard to Plaintiffs' Section 1 claim, the Complaints rely on conclusory allegations regarding the "Defendants" as a whole, and fail to allege specific facts regarding TBBV and TAG. *See e.g.* Joint Trader Memo at 33-35, 38-39. Accordingly, Plaintiffs conspiracy to monopolize claims should be dismissed for failure to state a claim.

**C.**    **The Complaints' State Law Claims Should be Dismissed**

In addition to their federal law claims, Plaintiffs have also asserted various state law claims against TBBV and TAG. In the Landholder Complaint, Plaintiff asserts that he is entitled to relief under the unfair trade practices and antitrust statutes of 27 various states. In the Trader Complaint, Plaintiffs seek to recover under the common law principle of unjust enrichment. Because the Trafigura Defendants are entitled to dismissal of all federal claims asserted in the Complaints, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. Under 28 U.S.C. § 1367, "district courts may decline to exercise supplemental jurisdiction over a [state law claim]" if the district court "has dismissed all claims over which it has original jurisdiction." *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). However, in the event that the Court exercises jurisdiction over Plaintiffs' state law claims, those claims should be dismissed for failure to state a claim.

### 1.   The State Antitrust and Unfair Trade Practices Act Claims Should be Dismissed

For the reasons set forth in the Joint Landholder Memo, the facts and arguments of which TAG joins and incorporates herein,[14] Plaintiff fails to plead any facts supporting his state unfair trade practices and antitrust claims against TBBV and TAG.  First, many of the state statutes require some part of the unlawful conduct or injury to occur within that state.  The Landholder Complaint does not allege that the Trafigura Defendants engaged in any conduct, let alone any unlawful conduct, in any state within the United States, much less those states listed in the Landholder Complaint.  Second, as discussed in greater detail in the Joint Landholder Memo, each of these claims should also be dismissed because (1) Plaintiffs lack constitutional standing to bring claims under the laws of any state other than Louisiana, (2) Plaintiffs' claims other than those brought under Louisiana law are barred by the dormant Commerce Clause, (3) the state antitrust laws invoked must be construed consistent with federal antitrust laws and those claims fail for the same reasons that Plaintiff's federal claims fail, and (4) several of Plaintiffs' state law claims are barred by applicable statutes of limitations.

### 2.   The Unjust Enrichment Claims Should be Dismissed

Plaintiffs' claim against TBBV and TAG for unjust enrichment should be dismissed for the elemental reason, set forth in the Joint Trader Memo at Section III, that Plaintiffs have failed to allege any direct relationship between Plaintiffs and the Trafigura Defendants.  In order to sufficiently plead unjust enrichment under New York law, a plaintiff must allege that "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good

---

[14]   As stated in the Joint Landholder Memo at 1 n.1, TBBV has not been served with the Landholder Complaint, and therefore does not join in Section II(C)(1) of this Motion.

conscience to permit the other party to retain what is sought to be recovered."[15]  *Georgia Malone & Co. v. Rieder*, 19 N.Y. 3d 511, 516 (2012).  Unjust enrichment requires "some type of direct dealing, or actual, substantive relationship" between the plaintiff and defendant.  *In re Motel 6 Sec. Litig.*, Nos. 93 Civ. 2183 (JFK), 92 Civ. 2866 (JFK), 1997 WL 154011, at *7 (S.D.N.Y. Apr. 2, 1997), that is not "too attenuated." *Sperry v. Crompon Corp.*, 8 N.Y. 3d 204, 215-16 (2007).

In this case, Plaintiffs have not alleged the existence of any type of relationship between the Trafigura Defendants and Plaintiffs, much less the type of relationship that would support an unjust enrichment claim.  (Trader Compl. ¶¶ 590-98).  Courts in this district have dismissed similar unjust enrichment claims used as a catchall in manipulation cases for precisely this reason.  *In re LIBOR,* 935 F. Supp. 2d at 737-38 (dismissing unjust enrichment claim because plaintiffs did not purchase contracts from defendants, nor did they have any other relationship with defendants).  For that reason alone, Plaintiffs' claim should be dismissed.  Additionally, Plaintiffs fail to allege how the Trafigura Defendants received a benefit at Plaintiffs' expense as a result of the trades they conducted.  *Georgia Malone*, 19 N.Y. 3d at 516-17 (2012).  For this additional reason, Plaintiffs' unjust enrichment claim should be dismissed.

---

[15]     The Trader Complaint does not identify which state's common law it seeks to apply to this claim.  As a result, the Trafigura Defendants have assumed that Plaintiffs seek to invoke New York law.

## IV.   CONCLUSION

For the foregoing reasons, Defendants Trafigura Beheer B.V. and Trafigura A.G. respectfully request that the Court dismiss the Complaints against the Trafigura Defendants.

Dated:    New York, New York            QUINN EMANUEL URQUHART
              July 28, 2014                 & SULLIVAN LLP

                                              By: _____
                                              William A. Burck
                                            Stephen M. Hauss
                                            777 6th Street, N.W., 11th Floor
                                            Washington, D.C.  20001
                                            Telephone:  (202) 538-8000
                                            Facsimile:  (202) 538-8100

                                            *Attorneys for Trafigura Beheer B.V. and Trafigura A.G.*