UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:

NORHT SEA BRENT CRUDE OIL FUTURES             1:13-md-02475 (ALC)
LITIGATION

This document applies to:

1:13-cv-03473-ALC, 1:13-cv-03587-ALC,
1:13-cv-03944-ALC, 1:13-cv-04142-ALC,
1:13-cv-04553-ALC, 1:13-cv-04872-ALC,
1:13-cv-04938-ALC, 1:13-cv-05577-ALC,
1:13-cv-07089-ALC, 1:13-cv-08030-ALC,
1:13-cv-08151-ALC, 1:13-cv-08179-ALC,
1:13-cv-08240-ALC, 1:13-cv-08270-ALC.
-------------------------------------------------------------x

### SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MERCURIA ENERGY TRADING, S.A.'S MOTION TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

John Terzaken (admitted *pro hac vice*)
Molly Kelley (admitted *pro hac vice*)
ALLEN & OVERY LLP
1101 New York Avenue, NW
Washington, DC 20005
John.Terzaken@allenovery.com
Molly.Kelley@allenovery.com

M. Elaine Johnston
1221 Avenue of the Americas
New York, NY 10020
Telephone:  212-610-6300
Elaine.Johnston@allenovery.com

*Attorneys for Mercuria Energy Trading, Inc. and Mercuria Energy Trading, S.A.*

October 29, 2014

Defendant Mercuria Energy Trading, S.A. ("METSA")[1] was served with the Amended Consolidated Class Action Complaint in the above-captioned matter ("McDonnell Complaint") on October 8, 2014. METSA now respectfully submits this supplemental memorandum of law joining the memoranda in support of Defendants' Joint Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint ("McDonnell Brief"), and the Defendants' Joint Motion to Dismiss the Complaints as Exceeding the Extraterritorial Reach of U.S. Law ("Extraterritoriality Brief"),[2] which were filed on July 28, 2014. METSA further moves to dismiss the McDonnell Complaint for failure to state a plausible claim as to METSA.

## ARGUMENT

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), plaintiffs must plead facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Whereas here, each of plaintiffs' claims is premised on alleged collusion among defendants, plaintiffs must plead facts sufficient to demonstrate both the existence of a plausible conspiracy, as well as the participation of each defendant in that conspiracy. *See Twombly*, 550 U.S. at 565 n. 10; *In re Commodity Exchange Inc., Silver Futures & Options Trading Litig.*, 560 F. App'x 84, 87 (2d. Cir. 2014); *Hinds Cnty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 512-16 (S.D.N.Y. 2009). Plaintiffs must allege more than mere neutral facts and conclusory allegations of concerted action to support their claims of conspiracy. *In re Commodity Exchange Inc., Silver Futures & Options Trading Litig.*, 560 F. App'x at 87.

---

[1] In the Amended Consolidated Class Action Complaint ("the McDonnell Complaint"), plaintiffs name as defendants two, distinct Mercuria entities – Mercuria Energy Trading, Inc. (referred to in the McDonnell Complaint as "Mercuria Energy") and Mercuria Energy Trading, S.A. (referred to in the McDonnell Complaint as "Mercuria" and herein as "METSA").

[2] METSA does not join in the motion to dismiss complaint in *Harter v. Royal Dutch Shell PLC*, No. 1:13-cv-07443 (ALC) ("Harter Complaint"), because METSA has not been properly served with the complaint in that action.

Plaintiffs here have not pleaded facts sufficient to demonstrate the existence of any conspiracy. As more fully articulated in defendants' McDonnell Brief, missing from the McDonnell Complaint are any allegations of an actual agreement—tacit or express—between or among any defendants on anything. (McDonnell Brief at 33-35).

Nor have plaintiffs alleged a plausible factual basis to connect METSA to any alleged conspiracy. Putting aside conclusory group allegations, which alone are insufficient to implicate METSA[3], plaintiffs' sole allegation is that METSA participated in the alleged conspiracy by engaging in a purported "wash trade" with defendant Shell in January 2011. (Compl. ¶¶280-88). According to the Complaint:

- On January 13, 2011, METSA allegedly bought from Shell "a BNB cargo in the MOC at March Cash BFOE plus $0.65 FOB for delivery 23rd to 25th January 2011." (Compl. ¶280);

- On the next day, following the MOC Window, METSA allegedly "resold the same BNB cargo to Shell" reportedly on a CFR basis at "March Cash BFOE plus $0.75." (Compl. ¶284).

Allegedly, although the sale price on January 14, 2011 exceeded the purchase price on January 13, 2011, the resale on a CFR basis (including freight costs) instead of on an FOB basis (excluding freight costs) resulted in a reported estimated loss of "between 40-45 cents/barrel" for METSA. (Compl. ¶284). According to the Complaint, this suggests that METSA was "not an innocent party" and that METSA "actively engaged in a pre-arranged collusion with Shell in its efforts to lower relative prices." (Compl. ¶283).

Even taken as true for purposes of this motion to dismiss, the circumstances of the January 2011 transactions fail to evoke any inference that METSA joined a conspiracy to manipulate or restrain trade of Brent Crude oil or related futures. The January 2011 transactions were not, as plaintiffs characterize

---

[3] *Hinds Cnty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 512-16 (S.D.N.Y. 2009)(dismissing complaint for failure to make "specific factual averment of involvement" for each defendant); *In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 541 F. Supp. 2d 487, 491-92 (D. Conn. 2008)(holding that the "lack of specifics with respect to the acts of a particular defendant or defendants renders the complaint inadequate [under *Twombly*]").

them, a so-called "wash trade."[4]  To the contrary, the allegations demonstrate that METSA bought and sold at different prices and on different days.[5]  Further, given the different trade dates and delivery terms, the Complaint demonstrates that the trades involved market risk and resulted in a material change to the parties' positions (i.e., Mercuria entered into a purchase on FOB terms and, the next day, entered into a sale on CFR terms).  As such, it is unsurprising that plaintiffs expressly abandon labeling the January 2011 transactions as a "wash trade" in their opposition to the McDonnell Brief.  (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint, Dkt. 253, at 15 n.9, 16).

More importantly, plaintiffs have not alleged facts to suggest the January 2011 transactions were anything other than in METSA's independent self-interest, especially when considered in proper market context and in consideration of METSA's trading portfolio and strategy.  Indeed, far from implicating METSA in any conspiracy, plaintiffs concede that METSA's involvement in the January 2011 transactions is entirely consistent with a strategy by the company to optimize its freight position:

> The *most plausible explanation for the overall transactions* is that it was a freight transaction in which [METSA] had idle freight that it re-let to Shell at below market rates (in the absence of any other possible voyage charter) in order to optimize the [METSA] freight position.  (Compl. ¶286) (emphasis added).

Because METSA's alleged participation in the January 2011 transactions is directly, and certainly "just as much[,] in line with a wide swath of rational and competitive business strategy," these lone transactions do not suffice to support a claim of conspiracy against METSA.  *Twombly*, 550 U.S. at 554.

In light of the complete absence of facts plausibly connecting METSA to the alleged collusion at the root of plaintiffs' claims, the McDonnell Complaint should be dismissed against METSA.  The court

---

[4] See McDonnell Brief at 12 FN8.  (citing *In re Piasio*, Comm. Fut. L. Rep. (CCH) ¶ 28,276, 2000 WL 1466069, *7 (CFTC Sept. 29, 2000)(stating, "[t]he factors that show a wash result are (1) the purchase and sale (2) of the same delivery month of the same futures contract, (3) at the same (or a similar) price").
[5] The Complaint consistently states that the sale from Shell to METSA occurred on January 13, 2011, but is inconsistent in its identification of the date on which METSA allegedly resold the cargo back to Shell.  The proper resale date is January 14, 2011.  As noted in paragraph 288 of the Complaint, the "sale of BNB from Shell to Mercuria" occurred on January 13 and subsequent trade occurred on January 14.

should not "propel[] [METSA] into expensive [] discovery on the basis of acts that could just as easily turn out to have been rational business behavior[.]" *Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 137 (2d Cir. 2013).

## CONCLUSION

For the foregoing reasons, and those set forth in the McDonnell and Extraterritoriality Briefs, the Court should dismiss with prejudice and without leave to amend all claims against METSA.

Dated: October 29, 2014

        Respectfully submitted,

         /s/ John Terzaken  
        John Terzaken (admitted *pro hac vice*)  
        Molly Kelley (admitted *pro hac vice*)  
        ALLEN & OVERY LLP  
        1101 New York Avenue, NW  
        Washington, DC 20005  
        John.Terzaken@allenovery.com  
        Molly.Kelley@allenovery.com

        M. Elaine Johnston  
        1221 Avenue of the Americas  
        New York, NY 10020  
        Telephone: 212-610-6300  
        Elaine.Johnston@allenovery.com

        *Attorneys for Mercuria Energy Trading, Inc.*  
        *and Mercuria Energy Trading, S.A.*