UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: NORTH SEA BRENT CRUDE OIL FUTURES LITIGATION<br><br>This document applies to:<br><br>Case Nos. 13-cv-03473-ALC, 13-cv-03587-ALC, 13-cv-03944-ALC, 13-cv-04142-ALC, 13-cv-04553-ALC, 13-cv-04872-ALC, 13-cv-04938-ALC, 13-cv-05577-ALC, 13-cv-07089-ALC, 13-cv-08030-ALC, 13-cv-08151-ALC, 13-cv-08179-ALC, 13-cv-08240-ALC and 13-cv-08270-ALC. | 1:13-md-02475-ALC |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MERCURIA ENERGY TRADING, S.A.'S MOTION TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

**PRELIMINARY STATEMENT**

This brief is submitted in response to the Supplemental Memorandum of Law in Support of Mercuria Energy Trading, S.A.'s Motion to Dismiss the Amended Consolidated Class Action Complaint (ECF No. 267) ("METSA Br.").[1]

Mercuria Energy Trading, S.A., commonly referred to as "METSA", is one of the world's largest crude oil traders. ¶49. Indeed, METSA is the world's fourth-largest commodity trader, with revenues exceeding $100 billion. *Id.* A central part of METSA's core business is trading derivatives using insights gained from its physical trading. *Id.* There can be no doubt that METSA had the ability to influence market prices for Brent Crude Oil. METSA hails from a prominent privately held trading house, which is powerful global conglomerate operation known as Mercuria Energy Group Ltd. that was founded by two former Wall Street traders. *Id.* METSA, like other defendants, including its U.S. affiliate, Mercuria Energy Trading, Inc. ("METI"), had the motive and ability to: (a) enhance the value of physical, financial and derivative crude oil positions, and (b) improve the price of purchase or sale obligations through manipulation of Brent Oil prices. ¶¶488, 533. As such, Plaintiffs plausibly allege violations of antitrust law, Commodity Exchange Act ("CEA") and common law against METSA.

---

[1] "Complaint" refers to the April 28, 2013 Consolidated Amended Class Action Complaint, as corrected. [ECF No. 166]. All citations to the Complaint are denoted as "¶_." Unless otherwise indicated, all capitalized terms herein have the same meaning as ascribed in the Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint ("Plaintiffs' Omnibus Brief" or "Pls. Om. Br."). [ECF No. 253]. On October 8, 2014, Plaintiffs served a summons and the Complaint on Mercuria Energy Trading, S.A. ("METSA") through international service of process under The Hague. *See* Proof of Service on METSA. [ECF No. 275] METSA joins the briefing by the other Defendants' Joint Motion to Dismiss the Complaint and their Extraterritoriality Brief. *See* METSA Br. at 1. Likewise, Plaintiffs incorporate by reference the arguments in Plaintiffs' Om. Br. and Extraterritoriality Brief [ECF No. 243] and supporting declarations. Briefing on METSA's motion to dismiss the Complaint should be complete at the same time as the other Defendants under the Court's Scheduling Order dated June 24, 2014. [ECF No. 159].

## FACTS

METSA is a physical crude oil trader and Platts MOC participant. ¶283. METSA has a global presence with a vast network of affiliates that specialize in crude oil, as well as other markets, and uses its market knowledge and logistics capabilities to gain insights to benefit a core derivative trading business. ¶488. METSA manages its Brent Crude Oil price risks through a worldwide network of traders, including METI traders strategically located in Chicago, Illinois. *Id.* As a trader, METSA had motivation to force prices to benefit its crude oil trading book. ¶537. During the Class Period, METSA actively participated in miscreant trading in the MOC that was designed to and did create artificial Brent Crude Oil prices. ¶¶280-317. METSA engaged in a pre-arranged agreement and collusion with Shell to influence prices in the Platts MOC window during January 2011. ¶283.

As demonstrated in the Complaint, METSA opportunistically engaged in a pre-arranged wash trade for Brent Crude Oil in order to manipulate certain prices downward. Specifically, on January 13 and 14, 2011, METSA and Shell traded to each other in round-trip transactions a cargo of Brent Ninian Blend (BNB), which is one of four Brent Crude Oil grade blends derived from the different North Sea oil fields. ¶¶55, 76. Collectively, the four blends are referred to as Brent Crude Oil, and the physical market consists of trades in cargoes of the four BFOE North Sea streams of crude oil. ¶76. Defendants Shell, BP, and Statoil are each individually among the largest producers of BFOE. ¶82. Defendant BP operates the Forties (F) field; and Defendant Statoil operates the Oseberg (O) field. Defendant Shell operates the BNB field. *Id.* BNB is the blend that is reflected in the "B" in BFOE. Thus, these Defendants and their counterparties, like METSA, control the sales points for three of these four crude oil streams used for Brent pricing. ¶¶82, 85.

Using a market-on-close or MOC methodology, Platts assesses Brent Crude Oil contracts based on the price of any four grades of B, F, O or E crude oil. ¶91. Throughout most of the Class Period, the Forties grade of Brent Crude Oil, which is derived from the field operated by Defendant BP, dominated the Brent benchmark pricing, as it consistently was the most competitive (*i.e.*, the cheapest) grade setting the price reflected in Platts' benchmark assessment. ¶¶95-96. The transaction data that Platts analyzes and publishes in its price assessment for Brent Crude Oil is meant to be genuine – based on genuine trades at genuine prices at which market participants are willing to buy or sell. ¶97. On January 13-14, 2011, METSA used its market power and ability to push the price of one stream of BFOE in a particular direction by making a wash trade during the MOC. ¶¶100-01, 280.

Specifically, on January 13, 2011, METSA purchased from Shell a BNB cargo in the MOC for delivery between January 23 to 25, 2011. ¶280. METSA purportedly purchased the BNB cargo at March Cash BFOE plus $0.65 FOB. *Id.* The MOC transaction had the effect of lowering BNB's premium price by $0.28 (from $1.30 on January 12 to $1.02 on January 13) in a single day. ¶281. This trade started the downward trend for BNB prices in January 2011, which anomalously and precipitously dropped below the price of Forties blend during January 2011, as graphically depicted in the Complaint. *Id.* On January 14, 2011, METSA sold to Shell – outside the MOC Window – the *same* cargo "at a lower overall value" and estimated $0.40 to $0.45 loss per barrel (for the 600,000 barrel cargo). ¶¶284, 288.

The initial leg of the METSA wash trade on January 13, 2011, transpired on one of only 11 days in January 2011 on which a BFOE transaction in the MOC took place. ¶314. On the 11 days, there were 18 transactions, and METSA, Shell, Trafigura, BP, Hetco, Vitol, Morgan Stanley and Statoil were responsible for all but one of the 18 trades in the MOC Window during

3

January 2011.  ¶283.  The uneconomic nature of the METSA transactions with Shell is evidenced by the fact that they were out of line with price trends before and after they took place, had loading dates at the very prompt end of the Platts MOC assessment period and caused a severe magnitude of losses to METSA on a round-trip trade at substantially similar prices with different freight terms, with only one leg transacted in the MOC.  ¶286-87.  METSA's incongruous market behavior is but one example of why the MOC is a forum for Defendants to participate in price manipulation while selectively rotating physical cargoes of Brent Crude Oil through the MOC.  ¶317.

METSA's uneconomic market behavior and the related manipulation of Brent Crude Oil prices also can be seen through the fluctuations of the refining (cracking) margins during January 2011 (¶301-311), and the extreme movements in the valuations of BNB related to North Sea Dated Strip (¶312).  The increase in BNB cracking margins is due to the fact that the BNB crude price was manipulated downwards, while the refined product was not, resulting in a greater spread between the two.

METSA's uneconomic conduct is evidenced by not only the price, but also the timing of the trades.  By deliberating and recklessly manipulating BNB prices downward during the MOC and then returning the cargo to Shell *outside* of the MOC on January 14, 2014, which was the expiry date of February futures, METSA and other Defendants banged the close of MOC and Brent Crude Oil futures prices.  ¶¶55, 286-87.

## ARGUMENT

METSA argues that Plaintiffs' allegations – even if taken as true – are insufficient to "evoke" an inference that METSA joined a conspiracy and restrained trade of Brent Crude Oil and related futures.  METSA Br. at 2.  Plaintiffs plausibly allege that METSA and Shell, in a pre-

arranged, transaction, selectively reported one leg of a wash trade in the MOC, in an aberrantly-priced transaction, in order to artificially impact the price of Brent Crude Oil and Brent futures and derivative contracts.  Against this backdrop, METSA's arguments in support of its motion to dismiss are meritless and should be rejected.

First, METSA denies that there are any facts alleged to demonstrate a plausible tacit or express agreement between or among Defendants – on anything.  METSA Br. at 3.  This argument is easily dispensed with by repeated allegations that METSA's purchase from and sale to Shell of the same BNB cargo on January 13 and 14, 2011, respectively, was "pre-arranged."  ¶¶283, 286.  By alleging that the wash trade was pre-arranged, Plaintiffs have more than adequately alleged a tacit and express agreement to collude and conspire to influence prices and restrain trade.  *See* Pls. Om. Br. at 54-57; *see also Transnor (Bermuda) Ltd. v. BP N. Am. Petroleum*, 738 F. Supp. 1472, 1484 (S.D.N.Y. 1990) (holding that circular sales of Brent between defendants "strongly supports an inference that there was some form of coordination among [them]").

Second, METSA improperly cherry picks two paragraphs from Plaintiffs' Complaint to try to limit and control Plaintiffs' allegations against METSA for conduct in January 2011.  METSA Br. at 2 (citing ¶¶280, 284).  The Complaint alleges that METSA participated in a wash trade with Shell on January 13-14, 2011, which was designed to suppress BNB prices on January 13, 2011 and resulting price trends.  ¶¶280-288.  Because the Complaint alleges specific trades in which METSA participated on specific dates, the cases cited in the METSA's Brief in which defendants were grouped for concerted action with no "specifics" with respect to the "involvement" or "acts of a particular defendant" are inapposite.  METSA Br. at 2 and n.3.

5

Third, METSA repeats an argument from Defendants' joint brief to argue that its round-trip purchase and sale of Brent Crude Oil does not technically qualify as a "wash" trade. *Id.* at 3 and n. 4 (citing *In re Piasio*, Comm. Fut. L. Rep. (CCH) ¶28, 276, 2000 WL 1466069, *7 (CFTC Sept. 29, 2000) (stating, "[t]he factors that show a wash result are (1) the purchase and sale (2) of the same delivery month of the same futures contract, (3) at the same (or a similar) price")). METSA cannot argue that the purchase and sale of the identical Brent Crude Oil cargo was not for the same delivery month at similar prices, and instead focuses on the difference in delivery terms to argue that the transaction purportedly can be viewed just as easily as a wash trade, as "in line with a wide swath of rational and competitive business strategy." *Id.* at 3 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). METSA further manufactures a possible rational explanation for the wash transaction, arguing that in the "proper market context" the wash trade is consistent with a strategy to optimize its freight position. METSA Br. at 3. Even if METSA's alternative suggestion of why it could have made sense for it to engage in a wash trade of the same cargo on which it lost hundreds of thousands of dollars had some superficial appeal, the explanation should not be considered on a Rule 12(b)(6) motion because is at odds with Plaintiffs' plausible allegations that there was *no* legitimate purpose associated with the timing and nature of the transaction. ¶286 ("To convert a freight transaction into the purchase and re-delivery of a BNB cargo, with only one leg transacted in the MOC, is a blatant collusion to manipulate BNB prices in particular and the BFOE complex in general."). *See In re: Term Commodities Cotton Futures Litig.*, No. 12 Civ. 5470 (ALC), 2013 WL 9815198, at *15 (S.D.N.Y. Dec. 20, 2013) ("The Court is required to accept Plaintiffs' well-pled allegations as true, regardless of whether Defendants present an equally plausible scenario. The Court's role

on a Rule 12(b)(6) motion is to determine whether Plaintiffs can state a claim – not whether Plaintiffs can provide the most convincing of two competing explanations.").

Plaintiffs' allege plausible facts that set forth a particular manipulative trading strategy based upon inherently illegitimate conduct by METSA with suspicious "'timing of trades intended to change the closing price.'"  Pls. Om. Br. at 20 (citing *CFTC v. Wilson*, No. 13 Civ. 7884, 2014 WL 2884680, at *5 (S.D.N.Y. June 26, 2014) (manipulative timed trading to influence a benchmark index resembled an unlawful "banging the close" scheme).  These facts are more than adequate to state a claim against METSA for antitrust, CEA (principal, vicarious, and aiding and abetting) and unjust enrichment claims.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that METSA's Motion to Dismiss the Amended Consolidated Class Action Complaint be denied.

DATED:  November 17, 2014

        **KIRBY McINERNEY LLP**

          /s/ *David E. Kovel*
        David E. Kovel
        Lauren Wagner Pederson, Of Counsel
        Thomas W. Elrod
        dkovel@kmllp.com
        lpederson@kmllp.com
        telrod@kmllp.com
        825 Third Avenue, 16th Floor
        New York, New York 10022
        Telephone:  (212) 371-6600
        Facsimile:  (212) 751-2540

        *Interim Lead Counsel for the Brent Derivative*
        *Trader Plaintiffs and Proposed Class*

| | |
|---|---|
| **BERGER & MONTAGUE, P.C** <br> Merrill G Davidoff <br> Michael Dell'Angelo <br> Candice J. Enders <br> mdavidoff@bm.net <br> mdellangelo@bm.net <br> cenders@bm.net <br> 1622 Locust Street <br> Philadelphia, PA  19103 <br> Telephone:  (215) 875-3084 <br> Facsimile:  (215) 875-4604 | **MOTLEY RICE LLC** <br> Michael M. Buchman <br> John Andrew Ioannou <br> David P. Abel <br> jioannou@motleyrice.com <br> mbuchman@motleyrice.com <br> dabel@motleyrice.com <br> 600 Third Avenue, 21st Floor <br> New York, NY  10016 <br> Telephone:  (212) 577-0051 <br> Facsimile: (212) 577-0054 |
| **GLANCY BINKOW & GOLDBERG LLP** <br> Brian Philip Murray <br> Lee Albert <br> Lionel Z. Glancy <br> bmurray@glancylaw.com <br> lalbert@glancylaw.com <br> lglancy@glancylaw.com <br> 122 East 42nd Street, Suite 2920 <br> New York, NY  10168 <br> Telephone:  (212) 682-5340 <br> Facsimile:  (212) 884-0988 | **LOWEY DANNENBERG COHEN & HART, P.C.** <br> Vincent Briganti <br> Geoffrey M. Horn <br> vbriganti@lowey.com <br> ghorn@lowey.com <br> One North Broadway <br> White Plains, NY 10601 <br> Telephone:  (914) 997-0500 <br> Facsimile:  (914) 997-0035 |
| **LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP** <br> Steven E. Fineman <br> Douglas Ian Cuthbertson <br> sfineman@lchb.com <br> dcuthbertson@lchb.com <br> 250 Hudson Street, 8th Floor <br> New York, NY  10013 <br> Telephone:  (212) 355-9500 <br><br> Eric B. Fastiff <br> Brendan P. Glackin <br> efastiff@lchb.com <br> bglackin@lchb.com <br> 275 Battery Street 29th Floor <br> San Francisco, CA  94111-3339 <br> Telephone:  (415) 956-1000 | **CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP** <br> Bryan L. Clobes <br> bclobes@caffertyclobes.com <br> 1101 Market Street, Suite 2650 <br> Philadelphia, PA 19107 <br> Telephone: (215) 864-2800 <br> Facsimile: (215) 864-2810 <br><br> Anthony F. Fata <br> Daniel O. Herrera <br> afata@caffertyclobes.com <br> dherrera@caffertyclobes.com <br> 30 N. LaSalle, Suite 3200 <br> Chicago, Illinois 60602 <br> Telephone: (312) 782-4880 <br> Facsimile: (312) 782-4485 |

*Additional Counsel for Plaintiffs and Proposed Class*