UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re North Sea Brent Crude Oil Futures Litigation | ) ) ) |
|  | Civil Action No. 1:13-md-02475 |
|  | MDL No. 2475 |
| This document applies to: | Hon. Andrew L. Carter |
| Case Nos. 13-cv-03473; 13-cv-03587; 13-cv-03944; 13-cv-04142; 13-cv-04553; 13-cv-04872; 13-cv-04938; 13-cv-05577; 13-cv-07089; 13-cv-08030; 13-cv-08151; 13-cv-08179; 13-cv-08240; 13-cv-08270 | ) ) ) ) ) ) ) ) ) ) ) |

**THE VITOL DEFENDANTS' SUPPLEMENTAL REPLY MEMORANDUM
OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

## *Preliminary Statement*

Defendants Vitol S.A. and Vitol Inc. (collectively the "Vitol Defendants") respectfully submit this supplemental reply memorandum in support of their motion to dismiss the Amended Consolidated Class Action Complaint (the "Complaint").[1]  As previously shown, plaintiffs have failed in their Complaint to plead a single factual allegation to suggest that either Vitol Defendant participated in a conspiracy to manipulate the price of Brent Crude Oil, and plaintiffs' attempt to explain that failure in their opposition briefs does not cure the fatal defect as against the Vitol Defendants.  Accordingly, the action against the Vitol Defendants should be dismissed.

## *Argument*

## I.     THE ACTION SHOULD BE DISMISSED AGAINST VITOL INC.

As this Court is by now aware, plaintiffs' theory in this case is that, since 2002, defendants have agreed with one another to manipulate the price of Brent Crude Oil and its derivatives by engaging in allegedly manipulative Brent Crude Oil trades within the daily thirty-minute window (the "Market on Close" or "MOC" Window) during which Platts assesses Brent Crude Oil prices and publishes its daily price benchmarks.  And, as the Vitol Defendants previously showed, the Complaint does not assert a single factual allegation even to suggest that Vitol Inc. engaged in a single Brent Crude Oil trade within the MOC Window or agreed with others to

---

[1]   The Vitol Defendants join in the Defendants' Reply Memorandum of Law in Support of Their Joint Motion to Dismiss the Amended Consolidated Class Action Complaint, and Defendants' Reply Memorandum of Law in Support of Their Joint Motion to Dismiss the Complaints as Exceeding the Extraterritorial Reach of U.S. Law, both of which are being filed on November 26, 2014.

participate in any of the alleged wrongdoing about which plaintiffs complain.[2]  "Without some

factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement

of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the

claim rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

Plaintiffs' allegations that Vitol Inc. is affiliated with the "integrated conglomer-

ate known as the Vitol Group" (Opp. Br. at 4), and that the Vitol Group, as a whole, has "exper-

tise . . . in geographic arbitrage for oil prices," and is a "massive user of the commodity futures

markets to hedge it price risks" (*id.*; CAC ¶ 47), do not in any way suggest that Vitol Inc. ever

conspired with any other defendant to manipulate Brent Crude Oil prices during the MOC Win-

dow.  Moreover, even plaintiffs' specific factual allegations about Vitol Inc. itself—that it "ac-

tively trades energy commodities, including crude oil futures and options on exchanges such as

NYMEX and ICE, operating as a conduit through which Vitol S.A. and other Vitol Group com-

panies receive and share vital market information" (Opp. Br. at 4; CAC ¶ 47)—are insufficient to

raise an inference that Vitol Inc. engaged in any of the wrongdoing about which plaintiffs com-

plain.[3]  *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-

---

[2]  Plaintiffs acknowledge that they have not alleged—indeed, cannot allege—that Vitol Inc. engaged in any trades within the MOC Window.  (Opp. Br. at 5.)  Instead, in their opposition, plaintiffs now refer to an "alleged symbiotic trading of Brent physical and derivative to influence and cause artificial prices in the Brent markets in conjunction with Vitol, S.A." (*Id.*)  But the Complaint contains no allegations of such "symbiotic trading" of any Brent products between Vitol Inc. and any other defendants, including Vitol S.A.  Nor would such allegations be sufficient to withstand a motion to dismiss because, as discussed below, there is no dispute that the specific transactions alleged in the Complaint are alleged to have been made by Vitol S.A., not Vitol Inc.

[3]  Plaintiffs' assertion that Vitol Inc. was subject to a fine by the Commodity Futures Trading Commission in 2010 for a failure of disclosure to the New York Mercantile Exchange (Opp. Br. at 4; CAC ¶ 481) is wholly irrelevant to the claims in the Complaint that defendants manipulated the price of Brent Crude Oil by engaging in manipulative crude oil trades during the MOC Window.  *See, e.g.*, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007)

*(cont'd)*

42(JG)(VVP), 2011 WL 7053807, at *15 (E.D.N.Y. Jan. 4, 2011) (granting defendants' motion to dismiss where "[t]he Complaint is devoid of factual allegations that would support the inference that the corporate defendants joined the conspiracy separately or vicariously through the parents, subsidiaries, or affiliates. . .  Not only have the plaintiffs here failed to provide any facts showing *knowing* assent or approval by the grouped defendants, they certainly have not provided any allegations of direct or independent participation.").

        Finally, plaintiffs are wrong when they argue that they need not bother to sue the correct defendants and that they should be permitted to engage in discovery to determine which firms might have engaged in unlawful conduct.  Indeed, that notion conflicts with well-established pleading standards that require a plaintiff to adequately state a claim prior to being permitted discovery.  To withstand this motion to dismiss, plaintiffs must allege specific facts about the role Vitol Inc. allegedly played in the specific conspiracy about which plaintiffs complain.  As the court in *Hinds County, Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499 (S.D.N.Y. 2009), made clear, to state a claim against each defendant, plaintiffs "must make allegations that plausibly suggest that *each* Defendant participated in the alleged conspiracy."  *Id.* at 512-13 (emphasis added) (internal citation and quotations omitted); *see also Precision Assocs., Inc.*, 2011 WL 7053807, at *15 ("The argument that the grouped defendants joined the alleged conspiracies through their corporate affiliation is precisely the sort of 'legal conclusion couched

_____
*(cont'd from previous page)*
    (rejecting plaintiffs' allegation of wrongdoing in Europe as "an insufficient factual basis for their assertions" of anticompetitive conduct in the United States; the allegation of European misconduct—"absent any evidence of linkage between such foreign conduct and conduct here—is merely to suggest (in defendants' words) that 'if it happened there, it could have happened here.'"); *In re Travel Agent Comm'n Antitrust Litig.*, No. 1:03 CV 30000, 2007 WL 3171675, at *11 (N.D. Ohio Oct. 29, 2007) ("past instances of collusion or alleged collusion are not relevant to an instant claim of conspiracy" (citation omitted)).

as a factual allegation' that *Twombly* and *Iqbal* deemed insufficient to state a claim.") (Internal citations omitted).  And, unlike the plaintiffs in the cases on which plaintiffs rely, plaintiffs in this case are not confused as to which Vitol entity engaged in the trades within the MOC Window that plaintiffs contend were unlawful; plaintiffs here do not need to sort out the precise relationship among affiliated companies.  Plaintiffs have alleged a handful of specific trades involving Vitol S.A. that they contend form the predicate for their claim against both Vitol Defendants (*see* CAC ¶¶ 255-60, 273, 283, 289, 293, 307, 309, 322, 404, 407), yet there is not a single mention of Vitol Inc. from which to infer that Vitol Inc. participated in any way in any of those trades.

In sum, the Complaint does not contain a single factual allegation from which to infer that Vitol Inc. agreed with anyone to manipulate the price of Brent Crude Oil or its derivatives, or participated in any way in any alleged wrongdoing whatsoever.  In the absence of such allegations, the Complaint against Vitol Inc. should be dismissed.  *Hinds County*, 620 F. Supp. 2d at 516-17 (granting defendant's motion to dismiss where complaint did not contain "specific allegation[s] of wrong-doing related to the alleged conspiracy" and therefore failed to support the antitrust claims against the dismissed defendant).

## II.     THE ACTION SHOULD BE DISMISSED AGAINST VITOL S.A.

The action against Vitol S.A. also should be dismissed because the Complaint fails to plead factual allegations from which to draw a reasonable inference that Vitol S.A. agreed with anyone to manipulate the price of Brent Crude Oil or its derivatives.  As previously explained, the Complaint merely alleges that Vitol S.A. traded physical Brent crude oil and derivative contracts thereon in a handful of instances during June 2010, January and February 2011, and September 2012, but does not make any factual allegations that would support a plau-

sible inference that Vitol S.A. ever acted against its independent self-interest or pursuant to an illegal conspiracy. The handful of alleged trades in which Vitol S.A. participated are fully consistent with Vitol S.A.'s unilateral economic interest, and thus cannot, without more, support an inference of conspiracy. As the Supreme Court held in *Twombly*, a conspiracy cannot be plausibly inferred from facts that are "consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy." *Twombly*, 550 U.S. at 545, 554. Where, in the face of allegations of conspiracy, there is "an obvious alternative explanation" for the challenged conduct, the inference of conspiracy is unreasonable and cannot sustain the plaintiff's complaint. *Id.* at 567.

The Second Circuit concurs. If antitrust plaintiffs could overcome a motion to dismiss by challenging conduct that is "just as much in line with a wide swath of rational and competitive business strategy," the appellate court recently held, "we risk propelling defendants into expensive antitrust discovery on the basis of acts that could just as easily turn out to have been rational business behavior as they could a proscribed antitrust conspiracy." *Mayor and City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 137 (2d Cir. 2013) (citation omitted).

In their opposition brief, plaintiffs simply identify the same handful of individual trades involving Vitol S.A. as they allege in the Complaint and characterize those trades as artificial, uneconomic or manipulative. (Opp. Br. at 2-4.) But labels and conclusions are not facts entitled to the presumption of truth for purposes of a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth"); *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Plaintiffs have not pleaded any

*facts* from which this Court could infer that these episodic trades—which plaintiffs do not contend were against Vitol S.A.'s economic interest—were manipulative or, more importantly, that Vitol S.A. entered into any of these independent, arms' length transactions pursuant to a broader conspiracy among more than a dozen firms over more than a decade to manipulate the price of Brent Crude Oil and its derivatives during the MOC Window.  *See, e.g.*, *Mayor & City Council of Baltimore, Md.*, 709 F.3d at 135; *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("To survive a motion to dismiss under *Twombly*, it is not enough to make allegations of an antitrust conspiracy that are consistent with an unlawful agreement; to be viable, a complaint must contain 'enough factual matter (taken as true) to suggest that an agreement to engage in anticompetitive conduct was made.'" (citation omitted)).

   In sum, the Complaint identifies a small number of episodic market transactions in which Vitol S.A. either purchased or sold—or, in three instances, merely offered to purchase—Brent Crude Oil or its derivatives, and spins a fanciful web of conspiratorial intrigue around those transactions with absolutely no factual allegations to support any inference that Vitol S.A. agreed with anyone to do anything other than to consummate the completed individual transactions with its counterparty.  Nothing in the Complaint suggests that Vitol S.A. conspired with anyone to manipulate the price of Brent Crude Oil or its derivatives.  Accordingly, the Complaint against Vitol S.A. should be dismissed.  *See In re Commodity Exch., Inc. Silver Futures & Options Trading Litig.*, 560 Fed. Appx. 84, 87 (2d Cir. 2014) (affirming dismissal where "conclusory allegations did not identify any concerted action among the defendants").

## *Conclusion*

For the foregoing reasons, as well as for the reasons set forth in the Vitol Defendants' moving brief and defendants' joint moving and reply papers, the action against the Vitol Defendants should be dismissed in its entirety.

Dated:  November 26, 2014                    Respectfully submitted,


                                             **SKADDEN ARPS SLATE MEAGHER &
                                             FLOM**

                                             By: /s/ Shepard Goldfein
                                             Shepard Goldfein
                                             Mark D. Young
                                             Karen Hoffman Lent
                                             Peter S. Julian
                                             4 Times Square
                                             New York, New York 10036
                                             Telephone:  (212) 735-3276
                                             Facsimile:  (917) 777-3276
                                             karen.lent@skadden.com
                                             shepard.goldfein@skadden.com

                                             *Attorneys for Vitol Inc. and Vitol S.A.*