**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

In re:

NORTH SEA BRENT CRUDE OIL FUTURES            1:13-md-02475 (ALC)
LITIGATION

This document applies to:  ALL CASES.

-----------------------------------------------------------x

### DEFENDANT PHIBRO TRADING LLC'S SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINTS

In addition to the reply memoranda jointly submitted on behalf of Defendants ("Defendants' Joint Reply Memoranda"),[1] Defendant Phibro Trading LLC ("Phibro") submits this Supplemental Reply Memorandum to address arguments unique to Phibro raised by the Trader Plaintiffs and the Landowner Plaintiff[2] in their briefing[3] responsive to Defendant Phibro Trading LLC's Supplemental Memorandum of Law in Support of Its Motion to Dismiss (the "Phibro Brief") the Amended Class Action Complaint filed in Cause No. 1:13-cv-07443-ALC

---

[1] Specifically, Defendant Phibro Trading LLC refers to, joins in, and incorporates by reference: Defendants' Joint Reply Memorandum of Law in Support of Their Joint Motion to Dismiss the Amended Consolidated Class Action Complaint, Defendants' Joint Reply Memorandum in Support of Their Motion to Dismiss the Complaints as Exceeding the Extraterritorial Reach of U.S. Law, and Defendants' Reply in Support of Their Joint Motion to Dismiss Plaintiff Harter's Amended Class Action Complaint.

[2] The Trader Plaintiffs include Kevin McDonnell, Anthony Insinga, Robert Michiels, Neil Taylor, Aaron Schindler, Xavier Laurens, Atlantic Trading USA, LLC, Port 22, LLC, Prime International Trading, Ltd., White Oak Fund LP, all of whom purport to have traded in Brent Crude Oil futures and/or derivative contracts during the class period. Trader Compl. at ¶¶ 24-34. The Landowner Plaintiff is David Harter, who alleges that he is a landowner and leaseholder of oil-producing lands in Louisiana, and sues on behalf of himself and a proposed nationwide class of landholders and leaseholders of oil-producing land in the United States. Landowner Compl. at ¶¶ 10, 61.

[3] The Trader Plaintiffs' responsive briefing is set forth in Plaintiffs' Supplemental Memorandum of Law in Opposition to Defendant Phibro Trading LLC's Motion to Dismiss the Amended Consolidated Class Action Complaint (the "Trader Response") (Dkt. No. 245), and the Landowner Plaintiff's responsive briefing is set forth in David Harter's Memorandum of Law in Opposition To: Defendant Phibro Trading LLC's Supplemental Memorandum of Law in Support of Its Motion to Dismiss (the "Landowner Response") (Dkt. No. 252).

(the "Landowner Complaint") and the Amended Consolidated Class Action Complaint filed in

Cause No. 1:13-md-02475 (the "Trader Complaint") (collectively, the "Complaints").

## I.     INTRODUCTION

In addition to the numerous grounds for dismissal set forth in the Defendants' joint

opening briefs, Phibro detailed in the Phibro Brief a number of deficiencies in the Complaints

specific to Phibro that warranted the dismissal of Plaintiffs' claims against Phibro.   Phibro

demonstrated:

- Plaintiffs sued the wrong Phibro entity.

- The Sherman Act claims fail because (1) Phibro's alleged trading activity is consistent with unilateral conduct, and inferring the existence of an antitrust conspiracy would be unreasonable; and (2) Plaintiffs have not alleged that Phibro possessed monopoly power or any facts to support the remaining elements of a Section 2 claim.

- The Trader Plaintiffs' CEA claims fail because Plaintiffs failed to allege sufficiently that (1) Phibro has any ability, standing alone, to influence the price in any markets; (2) artificial prices existed in connection with Phibro's trading activity; (3) Phibro caused the artificial prices of which Plaintiffs complain; (4) facts that would establish that Phibro specifically intended to influence market prices; (5) Phibro had a motive to engage in the purportedly manipulative trading activity; or (6) any particular futures contract transaction of Plaintiffs that was affected by Phibro's trading activity to establish actual damages.

- The Landowner Plaintiff's state law claims fail, among other reasons, because (1) the Landowner Plaintiff does not allege that Phibro engaged in *any* conduct in *any* state within the United States as required by many of the statutes invoked; (2) the state antitrust claims suffer from the same deficiencies as the federal antitrust claims; and (3) several of the Landowner Plaintiff's state law claims are barred by applicable statutes of limitations.

- The Trader Plaintiffs' unjust enrichment claim fails because Plaintiffs failed to allege any type of relationship with Phibro.

In their respective responses, Plaintiffs make only three arguments: that Phibro

intentionally influenced market prices through trades during the market-on-close window; that

Plaintiffs can allege damages; and that Plaintiffs sued the correct Phibro entity but should be

permitted to amend to add the entity Phibro argues is correct.  These three arguments do not address most of the bases for dismissal set forth in the Phibro Brief, and dismissal is appropriate on the bases Plaintiffs chose to ignore.  Moreover, as discussed below, the three arguments Plaintiffs chose to make in their responses are wholly without merit.

## II.    ARGUMENT AND AUTHORITIES

### A.    Plaintiffs' Claim that Phibro Intentionally Engaged in Manipulation is Based on Conclusory Assertions, Not Allegations of Fact.

Plaintiffs' claim that Phibro participated in a complex, years-long conspiracy is based entirely on the following factual allegation:[4]  on September 17, 2012, Phibro purchased a cargo of Forties crude oil, and the next day Phibro offered to sell that same cargo at a lower price.  This buy one day and offer to sell the next is consistent with routine, legitimate trading activity and does not support a conclusion that there was anything improper about the activity, much less that Phibro participated in a 12-year conspiracy.

In an effort to overcome the absence of factual allegations against Phibro, Plaintiffs try to dress up the claim with conclusory characterizations of the trading activity alleged.  For example, Plaintiffs characterize Phibro's single purchase and offer to sell as a "pattern of trades" designed to manipulate Dated Brent upwards and then, a day later, manipulate it downwards.[5]  Dkt. 245 at 2.  Of course, a single purchase and offer is hardly a "pattern of trades."  Plaintiffs also characterize Phibro's trading as "spoofing" and "wash trades,'" *id.* at 2, yet Plaintiffs allege no facts that would support those conclusory assertions.  As to spoofing, the practice of bidding or offering with the intent to cancel the bid, Plaintiffs fail to allege that Phibro ever cancelled or

---

[4]    The Phibro Brief details the few other times Phibro is mentioned in the Complaints; however, these instances do not allege any wrongful conduct.  Phibro appears to have been included for the purpose of providing factual background in a failed attempt to state claims against the other Defendants.

[5]    The Landowner Complaint borrows heavily from the Trader Complaint's allegations, but focuses only on alleged downward suppression of Brent Crude Oil prices.

intended to cancel its September 18, 2012 offer.  And the facts Plaintiffs allege with respect to

Phibro's trading are inconsistent with a conclusion that Phibro engaged in any wash trades.  A

wash trade involves buying and selling a cargo for the same price.  Here, Plaintiffs allege that

Phibro bought at one price and then offered to sell at a lower price.  That is not a wash trade.

Dkt. 166 ¶ 73.

Plaintiffs go on to assert that Phibro's September 18 offer was "puk[ing]" a trade into the

market in an attempt to sell its position at a price "substantially lower" than the price at which

Phibro bought the cargo the previous day.  There is no basis to assert that a price reduced to

minus $0.25 was "substantially lower" than the purchase price or, most notably, that the offer

price was inconsistent with market conditions that existed at the time.  As Plaintiffs admit in the

Trader Response, even at the price Phibro offered, "Phibro could not secure any bids."  Dkt. 245

at 2.  And, the minus $0.25 Phibro price[6] reported by Platts on which Plaintiffs rely is not even

the price Phibro initially offered.  Phibro Commodities Limited initially offered at plus $0.15 and

slowly reduced the price over time as each offer failed to attract interested buyers.  *See*

Phibro_Ex. B, ICIS World Crude Report, Sept. 18, 2012 ("In open market trading, Phibro

offered the 3-5 October Forties that it bought on Monday, starting at Dtd plus 15 cents and

working down to Dtd less 25 cents, but without attracting any buying interest").[7]  This price

---

[6]   As described in greater detail below, Phibro Trading LLC is not the Phibro entity that engaged in the subject trades.  Rather, it is Phibro Commodities Limited, a subsidiary of Phibro Trading LLC.

[7]   Plaintiffs argue that the ICIS World Crude Report should not be considered at the Rule 12(b)(6) stage, because, according to Plaintiffs, it is a "subscription-based publication of limited distribution" that is "one private entity's description of another private entity."  Dkt. 245 at 203.  As explained in the Phibro Brief, the Court may properly refer to the report (1) because it is a publicly available document of which the Court may take judicial notice, and alternatively, (2) because it is integral to the Plaintiffs' Complaints. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (in deciding a Rule 12(b)(6) motion, court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that either are in the plaintiff's possession or were known to the plaintiff when she brought suit, or matters of which judicial notice may be taken).

reduction complied with Platts Rules regarding incrementality in the MOC Window.[8]  Whether considering only the final price Plaintiffs rely on or the series of prices at which Phibro initially offered the cargo, the fact that no buyer accepted the offers leads to the conclusion that the price at issue was above market and not that it was so wildly below market that it could be deemed uneconomic or manipulative.

In the end, Plaintiffs' colorful language and conclusory assertions do not establish any impropriety on which causes of action against Phibro could be based.  Labels and conclusions are not sufficient to stave off dismissal.  *See Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) ("pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth"; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions. . .").

### B.    Plaintiffs Fail to Allege Actual Damages.

Here, as in *LIBOR II*,[9] Plaintiffs fail to point to any futures contracts they may have entered into in September 2012 that were affected by Phibro's allegedly artificial prices.  The absence of any such allegation is fatal to their CEA claims.[10]

Plaintiffs attempt to distinguish *LIBOR II*, claiming Plaintiffs are not required to show actual damages because they have alleged "persistent suppression" as opposed to "sporadic trader manipulation."  Dkt. 245 at 3 (citing Dkt. 253 at 37, n.32).  This is a mischaracterization of Plaintiffs' own allegations against Phibro.  Plaintiffs contend that Phibro "created ***upward***

---

[8]    *See* Exhibit ETB_F (Cause No. 1:13-md-02475, Dkt. No. 202-6) ("There are . . . strict standards defining the increment levels for each bid or offer to ensure orderly price formation, to avoid a scenario in which a market might be 'gapped' higher or lower.").

[9]    *In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*LIBOR II*), 962 F. Supp. 2d. 606, 621 (S.D.N.Y. 2013) ("[d]espite the fact that plaintiffs indisputably have access to their own Eurodollar futures contract trading records, the PSAC is devoid of any references to particular Eurodollar contracts").

[10]    *Id.* at 622 (in order to state a CEA claim, plaintiffs must "allege that they engaged in a transaction at a time during which prices were artificial as a result of defendants' alleged trader-based manipulative conduct, and that the artificiality was adverse to their position").

pressure" on September 17, 2012, and "drove the market *downward*" on the next day.  Dkt. 166
¶¶ 395-96.  Because Plaintiffs have alleged discrete, episodic trader activity, all occurring within
a 24-hour period, Plaintiffs should be required to show actual damages.  Bare allegations that
Plaintiffs were "net purchasers" or "net sellers" on those dates do not satisfy the requirements of
*LIBOR II*, which requires reference to specific contracts affected.

### C. Plaintiffs Named the Wrong Entity, and Amendment of Plaintiffs' Complaints Would be Futile and Would Cause Undue Delay and Prejudice.

As previously noted, it was Phibro Commodities Limited, a subsidiary of Phibro Trading
LLC, that engaged in the alleged trades referenced in the Complaints.  Phibro Commodities
Limited, not Phibro Trading LLC, was the entity that "appear[s] in Platts' market-on-close
assessment processes."  *Id.*  Plaintiffs devote the majority of the Trader Response to the issue of
amendment, arguing they should be permitted to add Phibro Commodities Limited as a
defendant.  Dkt. 245 at 6-9.[11]

To the extent that Plaintiffs purport to move for leave within their Response
Memorandum,[12] the motion should be denied as premature under this Court's requirement for a
pre-motion conference.  Court's Individual Practices at 2(A).  At Plaintiffs' request, the Court
has set a pre-motion conference for December 12, 2014 (Dkt. 278).  Accordingly, the decision to
grant or deny leave to amend is premature until after the Court has conducted the pre-motion
conference.

---

[11]   Phibro explicitly stated in the Phibro Brief that "[t]he substantive arguments made . . .  apply equally to any potential amended claims naming the proper Phibro entity" and asked "that the Court dismiss these claims with prejudice and deny any leave to bring them against any other Phibro entity."  Dkt. 224.

[12]   While Plaintiffs frame this argument as a statement of their "inten[t] to seek leave to amend," they also argue that their "motion for leave to amend . . . should be granted."  Dkt. 245 at 9.

If and when the issue of amendment is properly brought before the Court, leave should be denied because it violates Rule 15.  As detailed in Phibro's opposition letter (Dkt. 269),[13] good reason exists to deny Plaintiffs' request because: (1) Plaintiffs' proposed amendment would be futile, (2) Plaintiffs have been dilatory in seeking amendment, and (3) amendment at this stage in the litigation would unduly prejudice Phibro Trading LLC.

Amendment would be futile because Plaintiffs cannot state a plausible claim for relief against Phibro Commodities Limited.  Plaintiffs admit that, by amending, they do not seek to allege any new claims or facts, but simply to add "[Phibro's] wholly–owned subsidiary, whose liability is predicated on the same set of factually sufficient allegations."  Dkt. 245 at 6. Because, as previously explained, Plaintiffs have failed to present factual allegations that entitle them to relief against Phibro Trading LLC, those claims are subject to dismissal under to FED. R. CIV. P. 12(b)(6).[14]  Defendants' arguments made in support of dismissal of the claims against Phibro Trading LLC would fully support dismissal of the claims against Phibro Commodities. Accordingly, Plaintiffs' proposed amendment would be futile and their request for leave, when it is properly made, should be denied.  *See Williams v. Citigroup Inc.*, 659 F.3d 208, 213-14 (2d Cir. 2011) (per curiam) (noting the well-established rule that leave to amend need not be granted where amendment would be futile).

Another independent basis for denial of Plaintiffs' request is that Plaintiffs have been dilatory in seeking amendment.  Plaintiffs claim they "did not become aware of the need to add other Phibro affiliates" until Phibro filed its motion to dismiss.  Dkt. 245 at 5.  However, even a minimal amount of diligence would have shown that it was Phibro Commodities that engaged in

---

[13]   Phibro refers to and incorporates by reference the arguments and authorities that support such denial, as detailed in its opposition letter (Dkt. 269).

[14]   *See generally* Phibro Brief (Dkt. 224) and Defendants' Joint Memoranda in support of their Motions to Dismiss (Dkts. No. 201, 211, 219).

the disputed trades. This information has been publicly available on the Platts website since June 25, 2010.[15]  Plaintiffs' unexplained delay in seeking amendment constitutes good cause for denial of a request for leave to amend.[16]

Finally, Phibro will suffer undue prejudice if Plaintiffs are permitted to amend.  To date, the parties have adhered to a scheduled briefing process, and Phibro Trading LLC and the other Defendants have already expended significant time and resources to brief the instant motions to dismiss.[17]  Upon filing of this and other reply memoranda, the issues are ripe for resolution.  The addition of Phibro Commodities, a foreign defendant that will likely challenge the Court's jurisdiction, will only work to delay the proceedings.  In light of the futility of Plaintiffs' claims against Phibro Commodities, that delay is unduly prejudicial to Phibro Trading LLC.

## III.   CONCLUSION

Because Plaintiffs have not and cannot overcome the many grounds for dismissal put forth by Phibro, Phibro respectfully requests that the Court dismiss with prejudice Plaintiffs' claims as to Phibro, and award such other and further relief as the Court deems appropriate.

---

[15]   Phibro_Ex. A, Platts Subscriber Notes and Methodology Updates (Dkt. 226-1) (announcing transfer of business activities, such that "Phibro Commodities Ltd. will appear in Platts' market-on-close assessment processes").

[16]   *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010) (per curiam) (concluding that the plaintiff did not demonstrate good cause to amend where the factual basis for amendment was publicly available, but the plaintiff, without explanation, failed to timely move to amend the complaint).

[17]   *George v. Pathways to Housing, Inc*., No. 10 Civ. 9505(ER), 2012 WL 2512964, at *7–8 (S.D.N.Y. 2012) ("allowing Plaintiff to amend his Complaint for a third time would be unduly prejudicial to Defendants who have already expended significant time and resources to brief the instant motions to dismiss the Second Amended Complaint");  *Kelly v. Ulster Cnty., NY*, No. 12–CV–1344, 2013 WL 3863929, at *4 (N.D.N.Y. July 24, 2013) ("Allowing plaintiff to amend his complaint for a fourth time would be unduly prejudicial to defendants who have already 'expended significant time and resources to brief the instant motions to dismiss.'").

Dated: November 26, 2014.

Respectfully submitted,

**VINSON & ELKINS L.L.P.**

By: _/s/ Karl S. Stern_____

    Karl S. Stern
    Stacy M. Neal
    Liane Noble
    VINSON & ELKINS L.L.P.
    1001 Fannin Street, Suite 2500
    Houston, Texas 77002-6760
    Tel 713.758.3828
    E-mail kstern@velaw.com

    **Attorneys for Defendant**
    **Phibro Trading LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2014, a copy of the foregoing was filed electronically and sent by e-mail to all parties who have appeared by operation of this Court's electronic filing system. Parties may access this filing through the court's CM/ECF System.

　/s/ Liane Noble　　　　　　
Liane Noble

US 3094438v.2