**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

In re:

NORTH SEA BRENT CRUDE OIL FUTURES          1:13-md-02475 (ALC)
LITIGATION

This document applies to:

All Actions.

------------------------------------------------------------x


## DEFENDANTS ROYAL DUTCH SHELL, PLC AND SHELL TRADING (US) COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTIONS TO DISMISS

Willard K. Tom                          Steven A. Reed
J. Clayton Everett, Jr.                  R. Brendan Fee
MORGAN, LEWIS & BOCKIUS LLP             Dana E. Becker
1111 Pennsylvania Avenue, NW            MORGAN, LEWIS & BOCKIUS LLP
Washington, D.C. 20004                  1701 Market Street
Telephone:  (202) 739-3000              Philadelphia, PA 19103-2921
Facsimile:  (202) 739-3001              Telephone:  (215) 963-5000
wtom@morganlewis.com                    Facsimile:  (215) 963-5001
jeverett@morganlewis.com                sreed@morganlewis.com
                                        bfee@morganlewis.com
                                        dana.becker@morganlewis.com


*Counsel for Defendants*
**Royal Dutch Shell, plc and Shell Trading (US) Company**

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  ARGUMENT......................................................................................................... 1

    A.   Plaintiffs Fail To Aver Facts That Would Make RDS Subject To Personal
        Jurisdiction With Respect To The Claims Alleged In The Complaints................. 1

        1.   The Legal Framework................................................................................ 1

        2.   Forum Contacts Alone Cannot Justify The Exercise Of General
             Jurisdiction.............................................................................................. 2

        3.   Plaintiffs Have Not Provided Any Basis For The Exercise Of
             Specific Jurisdiction Over RDS ................................................................ 6

             a.   Harter ............................................................................................ 6

             b.   The Trader Plaintiffs ..................................................................... 7

    B.   Plaintiffs Fail To State A Claim Upon Which Relief Can Be Granted ............... 10

        1.   The Trader Plaintiffs Have Not Alleged Facts Establishing A
             Plausible Commodity Exchange Act Claim Against RDS Or
             STUSCO .................................................................................................. 11

        2.   Plaintiffs Have Not Alleged Plausible Antitrust Claims Against
             RDS Or STUSCO. .................................................................................. 12

III. CONCLUSION..................................................................................................... 14

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Barron Partners, LP v. Lab 123, Inc.*,
No. 07 Civ. 11135, 2008 WL 2902187 (S.D.N.Y. July 25, 2008) ...........................................8

*Daimler AG v. Bauman*,
571 U.S. ___, 134 S. Ct. 746 (2013).............................................................................. *passim*

*DiPlacido v. Commodity Futures Trading Comm'n*,
364 F.App'x 657 (2d Cir. 2009) .......................................................................................11

*Goodyear Dunlop Tire Ops. S.A. v. Brown*,
564 U.S. __, 134 S. Ct. 2846 (2011)...............................................................................4, 6, 7

*Gucci America, Inc. v. Bank of China*,
768 F.3d 122 (2d Cir. 2014).............................................................................................3

*Havlish v. Royal Dutch Shell plc*,
No. 13 Civ. 7074(GBD), 2014 WL 4828654 (S.D.N.Y. Sept. 24, 2014).............................2, 7

*In re Crude Oil Commodity Litig.*,
No. 06 Civ. 6677(NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007)...............................12

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) .............................................................................13

*In re Polyester Staple Antitrust Litig.*,
MDL Dkt. No. 3:03-cv-1516, 2008 WL 906331 (W.D.N.C. Apr. 1, 2008)..........................6, 7

*New York v. Mountain Tobacco Co.*,
No. 12-cv-6276, 2014 WL 5026382 (E.D.N.Y. Oct. 8, 2014) ............................................8, 9

*Precision Assocs., Inc. v. Panalpina World Trans. (Holding), Ltd.*,
No. 08 Civ. 42, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011)..........................................13, 14

*Wiwa v. Royal Dutch Petroleum Co.*,
226 F.3d 88 (2d Cir. 2008)...............................................................................................3

**STATUTES**

N.Y. CPLR § 301..............................................................................................................7

N.Y. CPLR § 302(a) ..........................................................................................................8

I.      **INTRODUCTION**

Royal Dutch Shell, plc ("RDS") and Shell Trading (US) Company ("STUSCO") moved to dismiss each of the Complaints for lack of personal jurisdiction over RDS and for failure to state a claim upon which relief can be granted against either Defendant.  RDS and STUSCO joined in motions and memoranda filed by multiple Defendants, but with respect to both the Harter Complaint and the Complaint filed by the Trader Plaintiffs, RDS and STUSCO also filed supplemental memoranda making additional defendant-specific arguments.  In response to those supplemental memoranda, both Harter and the Trader Plaintiffs have submitted opposing memoranda.  *See* David Harter's Memorandum of Law in Opposition To: . . . [*inter alia*] Defendant Royal Dutch Shell, PLC's Supplemental Memorandum Of Law In Support Of Motion To Dismiss (Dkt. 252) ("Harter Opp."), and Plaintiffs' Supplemental Memorandum Of Law In Opposition To Defendants Royal Dutch Shell, PLC And Shell Trading (US) Company's Supplemental Memorandum Of Law In Support Of Their Motion To Dismiss The Amended Class Action Complaint (Dkt. 249) ("Trader Opp.").  This reply memorandum addresses the submissions of both Harter and the Trader Plaintiffs.[1]

II.     **ARGUMENT**

    A.      **Plaintiffs Fail To Aver Facts That Would Make RDS Subject To Personal Jurisdiction With Respect To The Claims Alleged In The Complaints**

        1.      **The Legal Framework**

As set forth in the opening briefs for RDS and STUSCO, there are two well-defined types of personal jurisdiction—general jurisdiction and specific jurisdiction.  Rather than try to make a

---

[1]      RDS and STUSCO join and incorporate by reference Defendants' Reply Memorandum of Law in Support of Their Joint Motion to Dismiss the Amended Consolidated Class Action Complaint and Defendants' Joint Reply Memorandum of Law in Support of Their Motion to Dismiss the Complaints as Exceeding the Extraterritorial Reach of U.S. Law in the Trader action.  RDS also joins and incorporates by reference Defendants' Reply in Support of their Joint Motion to Dismiss Plaintiff's Amended Class Action Complaint in the Landowner action.

coherent argument that RDS is subject to personal jurisdiction under either approach, Plaintiffs simply argue that "Shell" is everywhere.  However, personal jurisdiction does not turn on the number of Shell stations in the United States or whether RDS maintains an office in Houston.

The Supreme Court has made it clear that facts assertedly showing "continuous and systematic contact" between the defendant and the forum are not the touchstone of personal jurisdiction.  Broad, substantial and continuous contact with the forum is neither enough to trigger general jurisdiction nor relevant to specific jurisdiction in connection with a particular claim.  Plaintiffs seemingly fail to understand that *general* jurisdiction is based upon where a corporate entity is "at home," not everywhere it does business.  They ignore the fact that "imputed" personal jurisdiction (by reason of alleged agency, at least) has little if any remaining role to play in general jurisdiction analysis after the Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. ___, 134 S. Ct. 746 (2013) ("*Daimler*").  Moreover, Plaintiffs present no basis for asserting that RDS could be liable by imputation or attribution—on an "alter ego" or "agency" theory—for the alleged conduct of one or more of its subsidiaries, even if Plaintiffs' allegations provided a specific basis for personal jurisdiction over some subsidiary in connection with the conduct asserted in the Complaints.  As recently concluded in another context, RDS is not subject to personal jurisdiction in this forum.  *See Havlish v. Royal Dutch Shell plc*, No. 13 Civ. 7074(GBD), 2014 WL 4828654 (S.D.N.Y. Sept. 24, 2014).

**2.      Forum Contacts Alone Cannot Justify The Exercise Of General Jurisdiction**

The Supreme Court in *Daimler* made it clear that extensive contact alone—even substantial, regular and deliberate contact—between a defendant and a forum does not justify the exercise of general jurisdiction.  Plaintiffs are unwilling to accept this reality.  Indeed, Harter does not even mention *Daimler*, much less explain how his arguments can be reconciled with it.

-2-

Both Harter and the Trader Plaintiffs primarily emphasize the extent of contacts or apparent contacts between "Shell" and the United States—citing, for example, the presence of Shell branded gas stations (which RDS does not even own or control). Harter Opp. at 14, 20. Without distinguishing among any of the various entities that include the word "Shell" in their names, Harter concentrates on "Shell" "holding itself out as doing business in the United States." *See id.* at 13-14. The Trader Plaintiffs similarly argue that the Shell Investor Relations Office and the "Shell Technology Center" in Houston (neither of which are owned by RDS), along with press releases and other public announcements, establish sufficient contact between RDS and the United States to justify the exercise of personal jurisdiction. According to them, "[t]hese sorts of contacts were previously held sufficient to justify an exercise of personal jurisdiction over RDS's predecessors, Royal Dutch Petroleum Co. and Shell Transport & Trading." *See* Trader Opp. at 12 (citing *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95-96 (2d Cir. 2008)).

This approach to general jurisdiction is no longer valid.[2] The Supreme Court in *Daimler* expressly rejected the notion that general jurisdiction could be based simply on substantial, continuous and systematic contact with the forum. "Plaintiffs would have us . . . approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.' That formulation, we hold, is unacceptably grasping." *Daimler*, 134 S. Ct. at 760-61 (internal citation omitted). As the Court explained, "[a] corporation that operates in many places can scarcely be deemed at home in all of them.

---

[2]     The Supreme Court's decision in *Daimler* altered the landscape as defined in *Wiwa*, as the Second Circuit recently noted: "[p]rior to *Daimler*, controlling precedent in this Circuit made it clear that a foreign bank with a branch in New York *was* properly subject to general jurisdiction here." *Gucci America, Inc. v. Bank of China*, 768 F.3d 122, 136 (2d Cir. 2014) (citing *Wiwa*) (emphasis in original). The court concluded in *Gucci* that the entity challenging personal jurisdiction based on *Daimler* had not waived that argument by failing to raise it below, because *Daimler* had changed the previously controlling law in the Circuit—as had been set forth in *Wiwa*. *Id.* at 135-36.

Otherwise, 'at home' would be synonymous with 'doing business'. . . .  Nothing in *International Shoe* and its progeny suggests that 'a particular quantum of local activity' should give a State authority over a 'far larger quantum of . . . activity' having no connection to any in-state activity."  *Id.* at 762 n.20 (citation omitted).  Indeed, the Court had previously rejected such an approach to general jurisdiction: ". . . the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are ***so 'continuous and systematic' as to render [it] essentially at home in the forum State.***'"  *Id.* at 761 (quoting *Goodyear Dunlop Tire Ops. S.A. v. Brown,* 564 U.S. __, 134 S. Ct. 2846, 2851 (2011) (emphasis added)).

As explained in the Declaration of Ken Lawrence ("Lawrence Declaration") filed with RDS's motions to dismiss (Dkts. 222 & 228), RDS is in no sense "at home" in the United States—a place where it is ***not*** qualified to conduct business, does ***not*** maintain an office, does ***not*** own real property, and does ***not*** pay taxes.  *Id.* at ¶¶ 6, 8, 9, 11.  Rather, RDS is at home in the United Kingdom where its offices, executives, and book and records are located.  *Id.* at ¶ 8.  Under *Daimler*, RDS's alleged activities do not subject it to general jurisdiction in the United States because it is not "at home" in the United States.

*Daimler* also effectively forecloses any argument that RDS may be subject to general jurisdiction in the United States if it has a subsidiary that is subject to general jurisdiction in the United States.[3]  The precise question presented in *Daimler* was whether a parent was subject to personal jurisdiction based on its subsidiary's contact with the forum.  The Supreme Court's

---

[3]     The Supreme Court in *Daimler* noted that it "need not pass judgment on invocation of an agency theory [*i.e.*, whether a subsidiary's jurisdictional contacts can be imputed to its parent absent so much domination as to rise to an alter ego relationship] in the context of general jurisdiction, for in no event can the appeals court's analysis be sustained."  134 S. Ct. at 759.  The Court held that even if one attributed all of the subsidiary's contacts to the parent, one could not attribute the "at home" status of that subsidiary.  *Id.* at 760-62.

-4-

focus for general jurisdiction purposes rested squarely on the parent, notwithstanding the

subsidiary's extensive connections to the forum:

> Even if we were to assume that [defendant's U.S. subsidiary,] MBUSA is at home in California, and further to assume [that subsidiary]'s contacts are imputable to Daimler, ***there would still be no basis to subject Daimler to general jurisdiction in California***, for Daimler's slim contacts with the State hardly render it at home there.

134 S. Ct. at 760 (emphasis added).

Although the *Daimler* court assumed Daimler's subsidiary was subject to general

jurisdiction, and it also assumed that the subsidiary's contacts could be imputed to the parent, the

Supreme Court nevertheless found general jurisdiction lacking over the parent.  The specific

holding of *Daimler* makes plain that even if the contacts of a subsidiary are attributed to a parent

(and the subsidiary is assumed to be "at home" in the forum) such contacts will not justify

general jurisdiction: "[i]t was therefore error for the Ninth Circuit to conclude that Daimler, even

with MBUSA's contacts attributed to it, was at home in California, and hence subject to [general

jurisdiction] in California."  *Id.* at 762.

In the end, both Harter and the Trader Plaintiffs base their arguments for general personal

jurisdiction over RDS principally on allegedly extensive contacts between "Shell" and the United

States, and representations that "Shell" is a global enterprise.  The facts and allegations they

point to, however, are both wrong and, in any event, no longer proper building blocks of general

jurisdiction.  In light of *Daimler*, arguments simply cataloging alleged contacts between RDS

and the forum (accurate or not) are irrelevant.

### 3.       Plaintiffs Have Not Provided Any Basis For The Exercise Of Specific Jurisdiction Over RDS

Plaintiffs' briefs do not clearly distinguish arguments asserted in support of general personal jurisdiction over RDS on the one hand and arguments for specific personal jurisdiction over RDS on the other.  Neither Harter nor the Trader Plaintiffs appear to argue that RDS is directly subject to specific jurisdiction in the United States with respect to the allegations in the Complaints, *i.e.*, that RDS itself engaged in actionable conduct in, or directed at, the United States.  Nor could they, given that RDS is a holding company and did not itself engage in any of the challenged transactions.  However, both briefs seem to argue that RDS is subject to specific personal jurisdiction in the United States by reason of contacts on the part of Shell subsidiaries. Those arguments fail as well.

#### a.       Harter

Harter refers to "general or all-purpose jurisdiction and specific or case-linked jurisdiction" in and around a quote from *Goodyear*.  *See* Harter Opp. at 16 & n.21.  His argument for specific jurisdiction consists of little more than the naked assertion in the first sentence of his personal jurisdiction argument—"Royal Dutch Shell PLC is commonly known as Shell."  *Id.* at 13.  Having simply posited that any reference to "Shell" is a reference to RDS, Harter then goes through a litany of purported links between "Shell" and the United States.  He ends with the conclusory assertion that "Shell's" contacts with the United States are "both specific to the Brent crude oil trading as well as reporting price information concerning Brent crude oil to Platts, and so systematic and continuous that general jurisdiction is appropriate."  *Id.* at 17.

To support his position, Harter cites *In re Polyester Staple Antitrust Litig.*, MDL Dkt. No. 3:03-cv-1516, 2008 WL 906331 (W.D.N.C. Apr. 1, 2008).  Harter Opp. at 19.  But that 2008 district court decision, which based jurisdiction on the foreign defendant's "continuous and

systematic contacts with the United States," 2008 WL 906331, at *12, has been superseded by *Goodyear* and *Daimler*.  The court's alternative "alter ego" analysis in that case is likewise unhelpful to Harter.  There, the court found that the parent company "operated and controlled on a day-to-day basis" the activities of the subsidiary (*id*. at *14), and that the relevant subsidiary (Trevira) "was merely an arm" of the parent.  *Id.* at *16.

No such facts have been pled (or exist) here.  Indeed, in construing N.Y. CPLR § 301, Judge Daniels recently concluded that RDS's subsidiaries in the United States "are not its 'mere department[s].'"  *Havlish*, 2014 WL 4828654, at *3.  Harter's critical relevant allegation in this context is the circular averment that "Shell" subsidiaries "were created or acquired to carry out the business of Shell" (Harter Opp. at 18) and that "Shell" "controls a global corporate group that operates worldwide, including in the United States, and holds itself out as a globally integrated business organization under a trademarked name."  *Id.* at 19.  That allegation does nothing to rebut the specific factual averments made in the Lawrence Declaration.  By such analysis, all global businesses would be subject to personal jurisdiction in the United States if they had direct or indirect U.S. subsidiaries (including Daimler), but that simply is not the law.  And, to the extent he attempts to invoke specific jurisdiction as to RDS, Harter presents no facts to support such jurisdiction.

### b.    The Trader Plaintiffs

The Trader Plaintiffs somewhat more plainly state what they believe to be their case for the exercise of imputed specific personal jurisdiction over RDS.  They argue they can establish "personal jurisdiction by way of an agency theory" if they show that "the subsidiary engaged in purposeful activities in the United States for the benefit of and with the knowledge and consent of the parent, and that the parent exercised some control over the subsidiary in the matter."  Trader Opp. at 9.  In other words, they argue that a subsidiary's contacts may be imputed to a

parent if the parent knew of the activities, consented to them, and exercised "some control" over the subsidiary.  They go on to identify three Shell-related entities they allege are "involved in importing physical cargoes of Brent into the United States," point out that one of those subsidiaries has offices in a location raided by the European Commission ("EC"), and finally note that RDS employees made press statements about the EC's inquiry.  *Id.* at 9-10.  They then simply conclude with the assertion that "[t]hese facts demonstrate sufficient awareness and control by RDS over its subsidiaries' responsibilities for Brent Crude trading."  *Id.* at 10.

The Trader Plaintiffs cite *New York v. Mountain Tobacco Co*., No. 12-cv-6276, 2014 WL 5026382 (E.D.N.Y. Oct. 8, 2014) for their key proposition—that a corporation's contacts with a forum may be imputed to its parent on an "agency" theory if the actions were taken "for the benefit of and with the knowledge and consent of the parent, and that the parent exercised some control over the subsidiary in the matter."  Trader Opp. at 9.  *Mountain Tobacco* in turn quotes *Barron Partners, LP v. Lab 123, Inc*., No. 07 Civ. 11135, 2008 WL 2902187 (S.D.N.Y. July 25, 2008), which construes N.Y. CPLR § 302(a).  However, even if New York law were the appropriate reference point for determining when personal jurisdiction may constitutionally be exercised on an "agency" theory, *Barron Partners* makes it clear that "in order to make a '*prima facie* showing of control, a plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a primary actor in the specific matter in question.'"  2008 WL 2902187, at *10 (quoting *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998)).  "Where the plaintiff has made only broadly worded or vague allegations about a defendant's participation in the action allegedly taken in [the forum], courts have routinely granted motions to dismiss for lack of personal jurisdiction."  *Barron Partners*, 2008 WL 2902187, at *10.

-8-

Here, the Trader Plaintiffs make, at best, nothing more than "broadly worded or vague allegations" about "Shell's" participation in the actions challenged in their Complaint (putting aside whether any such action can be said to have been taken in the United States). *Mountain Tobacco* provides no basis for imputing contacts to RDS on an "agency" theory.

Notwithstanding Plaintiffs' reliance on cases interpreting what constitutes "doing business" for purposes of interpreting New York law, or what constitutes agency in that context, RDS's moving papers set forth the proper reference point for analysis: "[C]onstitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or state ownership alone where the parent does not exercise an unusually high degree of control over the subsidiary." Supplemental Memorandum of Law of Defendants Royal Dutch Shell, PLC and Shell Trading (US) Company In Support of Their Motion to Dismiss The Consolidated Amended Complaint ("Opening Br.," Dkt. 227) at 11-12 (quoting *Novelaire Techs, LLC v. Munters AB*, No. 12 Civ. 472, 2013 WL 6182938, at *12 (S.D.N.Y. Nov. 21, 2013)). Plaintiffs bear the burden here, but they have neither pled nor argue that corporate formalities have not been observed, or that RDS has exercised unusual control over some direct or indirect subsidiary that might be subject to specific jurisdiction in the United States, given the precise conduct challenged in the Complaints. In short, Plaintiffs present no basis for the exercise of specific jurisdiction over RDS based upon its own activities or the activities of any other entity.[4]

---

[4]    Recognizing their failure to make out a *prima facie* case of personal jurisdiction over RDS, both Harter and the Trader Plaintiffs request jurisdictional discovery and Harter requests (but has not moved for) leave to amend to add additional Shell-related entities. These requests should be denied for the reasons set forth in RDS and STUSCO's October 31, 2014 letter to the Court (Dkt. 268) and RDS's September 25, 2014 letter to counsel for the Trader Plaintiffs (Dkt. 268-1, Attachment B), which RDS and STUSCO incorporate by reference herein.

### B.     Plaintiffs Fail To State A Claim Upon Which Relief Can Be Granted

In attempting to state claims as a matter of substantive law, both Harter's and the Trader

Plaintiffs' Oppositions are infected by the same problems that plague their Complaints.  Indeed,

remarkably, Harter does not even attempt to defend the sufficiency of his pleading.  Instead, he

merely incorporates by reference the flawed arguments made by the Trader Plaintiffs as to the

sufficiency of their allegations.  *See* Harter Opp. at 12.  Consequently, with respect to Plaintiffs'

failure to state a claim, we focus on the arguments made in the Trader Plaintiffs' Opposition.[5]

The Trader Plaintiffs continue to conflate the actions of different, unidentified entities

under the umbrella term "Shell" without identifying any actions by either RDS or STUSCO

specifically that would violate the Commodity Exchange Act ("CEA"), the antitrust laws, or

common law principles of unjust enrichment.  Plaintiffs' position seems to be that each

invocation of the term "Shell" in the Complaints means just what they choose it mean—

sometimes referencing RDS, sometimes incorporating STUSCO, and sometimes meaning some

other entity entirely.

The law does not allow such obfuscation.  Plaintiffs do not contest that they must make

"specific factual averment[s] of involvement" by each defendant in the purported violations in

order to state a claim or that "group pleading" concerning the "actions" of corporate families is

improper.  *See* Opening Br. at 4-5.  Yet, they have completely failed to make such specific

factual averments when it comes to RDS and STUSCO and—given how they pled their

Complaints—can only point to group pleading that lump those entities together as "Shell."

Plaintiffs' protean use of the term "Shell" cannot obscure the facts that (a) there are many

---

[5]     RDS is a defendant in both actions, while STUSCO is only named in the Trader Complaint.
While both Harter and the Trader Plaintiffs assert antitrust claims, their theories of harm (among other
things) are very different, and they have each alleged other, distinct causes of action.  This makes Harter's
decision to rely entirely on the Trader Plaintiffs' defense of their pleading even more puzzling.

different affiliated, but separate, corporate entities under the umbrella of what Plaintiffs are calling "Shell"; (b) Plaintiffs fail to differentiate what actions they contend each of those different entities have taken; (c) neither RDS (which is a holding company) nor STUSCO is alleged to have made any of the trades that Plaintiffs claim were "manipulative" or to have participated in the Platts "Market on Close" process for Brent Crude Oil; and (d) there are no facts that would connect RDS or STUSCO to the conduct Plaintiffs allege other than their affiliation with what Plaintiffs are calling "Shell."

### 1.     The Trader Plaintiffs Have Not Alleged Facts Establishing A Plausible Commodity Exchange Act Claim Against RDS Or STUSCO

The Trader Plaintiffs appear to have conceded that they have not stated a CEA claim against RDS.  While they seek to argue, unconvincingly and without support, that alleged actions of "Shell" allow them to state a CEA claim against STUSCO, they make no response to RDS's arguments that the Complaints fail to state a claim against it.  *Compare* Opening Br. at 8-9, *with* Trader Opp. at 4-5.

Their arguments concerning STUSCO fare no better.  Notably absent from the Trader Plaintiffs' defense of their CEA claims is any allegation that STUSCO took any actions that "caused the artificial prices" that Plaintiffs allege.  *Cf.* Opening Br. at 6 (arguing that Plaintiffs fail to allege that STUSCO "caused" artificial prices); *see also DiPlacido v. Commodity Futures Trading Comm'n*, 364 F. App'x 657, 661 (2d Cir. 2009) (cited by Plaintiffs) (essential elements of a CEA claim include that "the accused caused the artificial prices").  The Trader Plaintiffs claim that "manipulation of Dated Brent and Brent Crude oil prices . . . also manipulated the prices" of the financial derivatives they traded, but they have no allegations or argument that STUSCO took any actions to "cause" the alleged "artificiality" of Dated Brent and Brent Crude oil prices.  That alone warrants dismissal.

-11-

Plaintiffs' allegations concerning the other elements of a CEA claim are also deficient. They argue that STUSCO had the "ability to influence market prices" because "Shell" had that ability and STUSCO "plays a critical role in Shell's global operations."  Trader Opp. at 4-5. What neither the Complaint nor Plaintiffs' Opposition explains, however, is how STUSCO could manipulate the Market-On-Close prices of Brent Crude when it did not participate in any of the trades the Plaintiffs allege were manipulated and did not report any Brent Crude information to Platts.  There are no allegations that STUSCO took any of the actions that the Plaintiffs claim are manipulative and thus no basis to claim that STUSCO caused any harm.

Furthermore, Plaintiffs' allegations that "Defendants" generally "stood to financially benefit" from manipulation does not establish that STUSCO had the intent to manipulate Brent Crude Oil prices. *Cf. id.* at 5.  As another court in this district held in granting a motion to dismiss a complaint involving similar allegations that defendants "stood to gain large profits" from an alleged manipulation, "[s]uch a generalized motive, one which could be imputed to any corporation with a large market presence in any commodity market, is insufficient to show intent [for the purposes of the CEA]."  *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677(NRB), 2007 WL 1946553, at *8 (S.D.N.Y. June 28, 2007).

### 2.      Plaintiffs Have Not Alleged Plausible Antitrust Claims Against RDS Or STUSCO

The Trader Plaintiffs are wrong in contending that alleging action by "Defendants" generally which "raises a suggestion of a preceding agreement" carries their burden on their antitrust claims.  *See* Trader Opp. at 5.  It is not enough to plausibly allege an agreement (something that Plaintiffs have failed to do).  Plaintiffs must also allege facts plausibly establishing the "direct and independent participation [of each defendant] in the alleged conspiracy." *Precision Assocs., Inc. v. Panalpina World Trans. (Holding), Ltd.*, No. 08 Civ. 42,

2011 WL 7053807, at *15 (E.D.N.Y. Jan. 4, 2011) (citation omitted).  RDS and STUSCO made

that argument in their opening brief (at 1, 4, 10), and Plaintiffs never respond to or address it.

Far from "cherry-pick[ing] the Complaints' allegations" as Plaintiffs contend (Trader

Opp. at 5), RDS and STUSCO addressed each and every one of the allegations addressing those

entities specifically in their opening brief.  *See* Opening Br. at 5-9.  As explained, those

allegations do not, either individually or taken together, suffice to state an antitrust claim against

RDS or STUSCO even viewed in the context of the "complete picture painted by plaintiffs."  *Cf.*

Trader Opp. at 5

Other than claiming that STUSCO "cherry-picked" their allegations, the section of the

Trader Plaintiffs' Opposition addressing their antitrust claims (*id.* at 5-7) literally does not

reference STUSCO at all.  That itself is telling.  It confirms that there is no plausible basis to

allow the antitrust claims against STUSCO to continue.

The only specific allegation or argument Plaintiffs make concerning RDS is that it should

be subjected to suit here because its offices were purportedly "raided by the European

Commission."  *Id.* at 6.  Putting aside that the allegations at issue actually reference "Shell"

generally, rather than RDS, and that Plaintiffs have not and could not allege that RDS, a holding

company, is under investigation for purported "trading activity," allegations that a government

enforcer is conducting an investigation "carr[y] no weight in pleading an antitrust conspiracy

claim."  *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal.

2007) (dismissing antitrust class actions for failure to state a claim despite allegations about DOJ

criminal antitrust investigation of defendants).

Other than the single argument about the purported investigation of RDS, Plaintiffs'

arguments concerning their antitrust claims, as noted above, are all about the purported actions of

-13-

"Shell," without identifying what "Shell" entity actually took any action.  There are no allegations or arguments about STUSCO's or RDS's role in the purported conspiracy, or any actions they took or even could have taken to further the purported conspiracy's goals.  Plaintiffs seek to impose liability on those entities solely on the basis of their corporate affiliation with "Shell."  That is legally insufficient. *See Precision Assocs., Inc.*, 2011 WL 7053807, at *15 ("The argument that [] grouped defendants joined the alleged conspiracies through their corporate affiliation is precisely the sort of 'legal conclusion couched as a factual allegation' that *Twombly* and *Iqbal* deemed insufficient to state a claim.").

## III.   CONCLUSION

There is no basis to exercise personal jurisdiction over RDS in either of these actions, and neither Harter (who sued RDS) nor the Trader Plaintiffs (who sued RDS and STUSCO) have stated a claim against any Shell entity.  Accordingly, the Complaints should be dismissed as to both RDS and STUSCO.

Dated:  November 26, 2014

Respectfully submitted,

/s/ Steven A. Reed
Steven A. Reed
R. Brendan Fee
Dana E. Becker
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:  (215) 963-5000
Facsimile:  (215) 963-5001
sreed@morganlewis.com
bfee@morganlewis.com
dana.becker@morganlewis.com

*-and-*

Willard K. Tom
J. Clayton Everett, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW

-14-

-15-

Washington, D.C. 20004
Telephone:  (202) 739-3000
Facsimile:  (202) 739-3001
wtom@morganlewis.com
jeverett@morganlewis.com

*Counsel for Defendants,*
Royal Dutch Shell, plc and Shell Trading (US)
Company

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2014, the Reply Memorandum of Law in Support of the Motions to Dismiss of Royal Dutch Shell, plc and Shell Trading (US) Company was filed electronically with the Court and served electronically on all counsel of record who have entered an appearance through the Court's CM/ECF system.

 /s/ R. Brendan Fee

*Counsel for Defendants,*
Royal Dutch Shell, plc and
Shell Trading (US) Company
