**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
In re:

NORTH SEA BRENT CRUDE OIL FUTURES
LITIGATION

This document applies to:  ALL CASES.
----------------------------------------------------------x

1:13-md-02475 (ALC)


**BP P.L.C., BP AMERICA INC. AND BP CORPORATION NORTH AMERICA INC.'S**
**SUPPLEMENTAL  REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CONSOLIDATED**
<u>**CLASS ACTION COMPLAINT AND THE AMENDED CLASS ACTION COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT ................................................................................................... 2

I.     Plaintiffs Make No Allegations Of Wrongdoing Against
       BP America and BP Corporation. ....................................................... 2

II.    Plaintiffs Do Not Allege Any Facts Supporting An Inference That The June
       2010 Cargoes Were Offered Or Sold At Uneconomic Prices............................ 3

III.   The Trader Complaint Alleges No Facts Showing That BP's September 2012
       Offers And Trades Were "Uneconomic" Or Shams. ........................................ 6

CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amaranth Natural Gas Commodities Litig.*,
  587 F. Supp. 2d 513 (S.D.N.Y. 2008)............................................................................1, 2, 8

*Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007)..........................................................................................................1

*In re Commodity Exchange, Inc., Silver Futures and Options Trading Litig.*,
  No. 11-md-2213, 2012 WL 6700236 (S.D.N.Y. Dec. 21, 2012)..............................................8

*In re Cox*,
  CFTC No. 75-16, 1987 WL 106879 (CFTC July 15, 1987)...............................................4, 5

*In re Crude Oil Commodity Litig.*,
  No. 06-cv-6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007)..............................................2

*In re Hohenberg Bros. Co.*,
  CFTC No. 75-4, 1977 WL 13562 (CFTC Feb. 18, 1977) ........................................................7

*In re Ind. Farm Bureau Coop. Ass'n, Inc.*,
  CFTC No. 75-4, 1982 WL 30249 (CFTC Dec. 17, 1982).................................................4, 7

*In re Rough Rice Commodity Litig.*,
  No. 11 C 618, 2012 WL 473091 (N.D. Ill. Feb. 9, 2012)..................................................2, 4

## PRELIMINARY STATEMENT

In addressing the grounds for dismissal raised by the BP Entities[1] in Plaintiffs'

supplemental opposition ("Pls.' BP Opp'n"),[2] Plaintiffs fail to respond to any of the

shortcomings of the Landowner Complaint or the pleading deficiencies of Plaintiffs' Sherman

Act claims in the Trader Complaint.[3]  And in defending the remainder of the Trader Complaint,

Plaintiffs continue to misunderstand their pleading obligations under both Rule 8(a) and 9(b) of

the Federal Rules of Civil Procedure, relying on speculation and innuendo to state a claim of

relief.  Merely describing a trade as a "sham" or "uneconomic" does not raise a reasonable

inference that the trade is in fact a sham or uneconomic, nor does it require this Court to accept

such conclusions as true—even at the motion to dismiss stage.  *See Bell Atl. Corp.* v. *Twombly*,

550 U.S. 544, 555 (2007); *In re Amaranth Natural Gas Commodities Litig.* (*Amaranth I*), 587 F.

Supp. 2d 513, 528 (S.D.N.Y. 2008) (legal conclusions, deductions and opinions couched as

factual allegations are not subject to a presumption of truthfulness), *aff'd*, 703 F.3d 170 (2d Cir.

2013).  Likewise, repeatedly using descriptors such as "collusive" and "manipulative" without

facts from which collusion and manipulation may be inferred is insufficient to state a claim.

Plaintiffs assert that the BP Entities "fail to raise any innocent explanation for its Brent Crude oil

trades that outweighs the competing inferences of manipulation raised by the particular timing

---

[1] Citations to the "BP Entities" refer to BP p.l.c. ("BP"), BP America Inc. ("BP America"), and BP Corporation North America Inc. ("BP Corporation").

[2] Citations to "Pls.' BP Opp'n" refer to Plaintiffs' Supplemental Memorandum of Law in Opposition to Defendants BP p.l.c., BP America Inc. and BP Corporation North America Inc.'s Supplemental Memorandum of Law in Support of Their Motion To Dismiss the Amended Consolidated Class Action Complaint and the Amended Class Action Complaint, No. 1:13-md-02475-ALC, Dkt. No. 247.

[3] Citations to the "Trader Complaint" or "Trader Compl." refer to the Amended Consolidated Class Action Complaint, No. 1:13-md-02475-ALC, Dkt. No. 166.   Citations to the "Landowner Complaint" or "Landowner Compl." refer to the Amended Class Action Complaint, No. 1:13-cv-07443-ALC, Dkt. 40.

and substance of those trades." (Pls.' BP Opp'n at 1.) But it is not the BP Entities' burden of

proof to do so. Before the BP Entities are required to set forth any defense to Plaintiffs'

allegations, Plaintiffs must allege facts plausibly suggesting that Plaintiffs are entitled to relief.

*In re Rough Rice Commodity Litig.*, No. 11 C 618, 2012 WL 473091, at *5 (N.D. Ill. Feb. 9,

2012) (rejecting plaintiffs' contention that to succeed on a motion to dismiss, defendants must

articulate a non-manipulative explanation for their conduct).

   As demonstrated below, Plaintiffs allege no facts showing that the BP Entities engaged in

uneconomic transactions or offered uneconomically-priced cargoes in June 2010 or September

2012. As a result, Plaintiffs' claims must be dismissed.

## ARGUMENT

### I.  Plaintiffs Make No Allegations Of Wrongdoing Against BP America And BP Corporation.

   To support their claims against BP America and BP Corporation, Plaintiffs point to just

two paragraphs of the Trader Complaint. Plaintiffs cite the introductory paragraph of the Trader

Complaint, which recites the legal conclusion that all of the Defendants manipulated the North

Sea Brent Crude Oil Market. (Pls.' BP Opp'n at 1 (citing Trader Compl. ¶ 1).) Plainly, that

conclusory allegation does not state a claim against any of the Defendants, let alone BP America

and BP Corporation. *See Amaranth I*, 587 F. Supp. 2d at 528; *In re Crude Oil Commodity Litig.*,

No. 06-cv-6677, 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007) (complaint must specifically

allege the fraud perpetrated by each defendant).

   Next, Plaintiffs refer to their allegation that "'traders working on behalf of BP and its

global affiliates . . . are informed about and participate in trading decisions on behalf of and for

the benefit of Defendants BP and BP America and other global affiliates of BP.'" (Pls.' BP

Opp'n at 2 (quoting Trader Compl. ¶ 464).) Yet, Plaintiffs do not link any of the purportedly

- 2 -

manipulative trades in June 2010 and September 2012 to BP America or BP Corporation.  The paragraph on which Plaintiffs rely does not connect BP America or BP Corporation to the complained-of trades, noting only that the "IST group's traders in the U.S., London and other parts of the world are fully aware of the *overall* company's position and outlook on . . . Brent" and "participate in decision making on BP's *overall* world-wide exposure to Brent Crude Oil prices."  (Trader Compl. ¶ 464 (emphasis added).)  Knowledge of the company's overall position or market exposure does not establish knowledge of, or participation in, specific transactions and trading strategies.  Without any factual allegations connecting BP America and BP Corporation to the specific trading activity at issue, the Trader Complaint fails to state a cause of action against them and should be dismissed.

Apparently recognizing the insufficiency of their allegations against BP America and BP Corporation standing alone, Plaintiffs ask the Court to read those allegations in light of the claims concerning "BP as a whole."  (Pls.' BP Opp'n at 2.)  But the Complaint contains no such allegations, instead defining BP p.l.c. as "BP" and making allegations only against "BP."  (*See* Trader Compl. ¶ 37.)  In any event, Plaintiffs' allegations against "BP" are inadequate to state any claim.

## II.    Plaintiffs Do Not Allege Any Facts Supporting An Inference That The June 2010 Cargoes Were Offered Or Sold At Uneconomic Prices.

As Plaintiffs' Opposition makes clear, the sole basis for asserting that BP's offers and transactions in June 2010 were uneconomically priced is that they were "not keeping pace with" the market trend towards higher prices.  (Pls.' BP Opp'n at 4; *see also id.* at 2 (quoting Compl. ¶ 257 (alleging transaction "ran against the flow of fundamentals")).)  But, Plaintiffs must do more than simply allege that isolated cargoes were bought and sold at prices that were, according to them, unusually low.   In determining whether a price is artificial, "the focus should not be as

much on the ultimate price, as on the nature of the factors causing it," *i.e.*, the aggregate forces of supply and demand and whether those forces are legitimate.  *In re Ind. Farm Bureau Coop. Ass'n, Inc.* (*Ind. Farm Bureau*), CFTC No. 75-4, 1982 WL 30249, at *4 n.2 (CFTC Dec. 17, 1982); *In re Cox*, CFTC No. 75-16, 1987 WL 106879, at *9 (CFTC July 15, 1987); *see also, e.g.*, *In re Rough Rice Commodity Litig.*, 2012 WL 473091, at *6.  If a manipulation claim could be sustained simply by alleging that a transaction was priced in contravention of the current price trend, the federal courts would be deluged with price manipulation complaints.  That outcome is obviously absurd.  Plaintiffs now contend, in a footnote, that the June 2010 trades were not only executed at artificially low prices but also that "other consideration changed hands outside of the MOC."  (Pls.' BP Opp'n at 3 n.3.)  However, there are no such allegations in the Trader Complaint.  Plaintiffs' failure to allege anything beyond their belief that the June 2010 transactions were priced too low dooms these claims against BP.

Moreover, the "market fundamentals" or market trends on which Plaintiffs rely to allege that BP bought and sold cargoes at artificially low prices do not support such an inference.

June 9, 2010:  With respect to Vitol's June 9 sale of a Forties cargo to BP, Plaintiffs' sole "market fundamental" consists of Platts' report that "the Forties differential to August cash BFOE was rising" yet the cargo sold at a low price.  (Pls.' BP Opp'n at 2-3 (citing Trader Compl. ¶ 257); *see* July 28, 2014 Davidoff Decl. Ex. A (Platts Crude Oil Marketwire report (June 9, 2010)) at 3 (Dkt. No. 216).)  Platts clearly attributes the "rise" in the Forties assessment to "futures values pushing higher on supportive US economics" (Trader Compl. ¶ 257; July 28, 2014 Davidoff Decl. Ex. A at 3), not changes in the supply of or demand for physical oil. Plaintiffs thus identify no illegitimate factor affecting this trade, nor could they.  Indeed, there are many legitimate reasons why pricing of one particular cargo may not follow a higher

trending futures market, including, but certainly not limited to, the quantity, quality, or delivery time frame or delivery location of the cargo.  *See In re Cox*, 1987 WL 106879, at *10 (noting that "[t]he cash market has several characteristics which limits its reliability for comparative purposes" in measuring the artificial nature of futures prices).  While Plaintiffs must allege additional facts showing that an illegitimate factor played a role in pricing the June 9 cargo, they do not do so.

June 10, 2010:  Plaintiffs argue that BP's June 10 sale of the June 9 cargo to Vitol occurred at an artificially low price merely because BP sold it to Vitol for less than its previous day's purchase price.  (Pls.' BP Opp'n at 2.)  The fact that the June 10 cargo was priced lower than the previous day is not indicative of any illegitimate factor.  To the contrary, a lower price merely suggests that there are fewer buyers/bids as the delivery window (in this case, June 21-23) narrows, resulting in lower prices.  In addition, Platts reported that day that there were multiple bids and offers that did not follow any specific trend:  "Forties remained assessed at Dated Brent minus $0.34/b despite more aggressive indications.  *These bids and offers were, however, sufficiently divergent to keep the assessment on the same track.*"  (Trader Compl. ¶ 259 (emphasis added); July 28, 2014 Davidoff Decl. Ex. B (Platts Crude Oil Marketwire report (June 10, 2010)) at 3 (Dkt. No. 216).)  In other words, the market activity as a whole, not BP's transaction, failed to support a change in the assessment.

Plaintiffs rely on Platts' reporting of the trades and the corresponding "double reversal" in futures prices that allegedly occurred on June 10 as proof of artificiality.  (*See* Pls.' BP Opp'n at 3.)  Yet, as BP explained in its moving brief, Plaintiffs' assertion is nonsensical because the Platts information either would have been taken into account before the relevant MOC windows

or was published after.  (Mem. at 7-9.)[4]  As a result, Plaintiffs do not adequately allege that the June 9 and 10 trades influenced futures prices on June 10, 2010.

June 11, 2010:  Plaintiffs argue that BP's June 11 sale of a Forties cargo to Litasco was "uneconomical," again relying on Platts' report for that day that other Brent grades (*i.e.*, Brent, Oseberg and Ekofisk) were rising and "BP sold Forties grade at a price that was not keeping pace with this trend."  (Pls.' BP Opp'n at 4.)  The Trader Complaint recognizes that Forties is generally a cheaper grade.  (Trader Compl. ¶ 96.)  And the Platts report also notes that demand for Forties was lagging behind demand for the other grades:

> Sweet grades in the North Sea leapt in value Friday, as the demand seen at the back end of June *for grades apart from Forties* continued unabated. . . .  Expectation began to creep in that *Forties, whose demand and value have lagged behind the other North Sea grades in recent days*, might see some uptick in both as a result."

(*Id*. ¶ 262 (emphasis added); July 28, 2014 Davidoff Decl. Ex. E (Platts Crude Oil Marketwire report (June 11, 2010)) at 3 (Dkt. No. 216).)  As a basic economic principle, lower demand implies that BP could not demand a sale price in line with grades for which higher demand existed.  Without any facts supporting a reasonable inference that this transaction was uneconomically priced, Plaintiffs' claim of artificiality is not plausible.

## III.  The Trader Complaint Alleges No Facts Showing That BP's September 2012 Offers And Trades Were "Uneconomic" Or Shams.

As with the June 2010 allegations, Plaintiffs make no factual allegations in their Complaints from which one could infer that any of the September 2012 offers and transactions were uneconomically priced.

September 3, 2012:  Plaintiffs ignore most of the arguments set forth in BP's brief, responding only that it was "irrational" for BP to offer six cargoes during the "illiquid and thinly

---

[4] Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Consolidated Class Action Complaint, No. 1:13-md-02475-ALC, Dkt. No. 211.

traded MOC process" when BP could have gradually offered them in the market over the course of the day.  (Pls.' BP Opp'n at 5.)  The timing of the trades, they claim, created artificial downward pressure on Platts' Dated Brent Assessment.  (*Id*.)

Plaintiffs thus reject without explanation the rationale alleged in the Complaint for creating and using the MOC process—that it is, in Platts' view, a "time period . . . of high activity."  (Trader Compl. ¶ 93.)  Further, it would plainly be rational for a seller to trade during the MOC if the seller expected to receive better prices during that time.  *See Ind. Farm Bureau*, 1982 WL 30249, at *8 ("Holding out for high prices is normally rational and lawful market behavior" and "only becomes unlawful when it is accompanied by manipulative intent as generally manifested by conduct other than simply seeking the best price . . . ."); *see also In re Hohenberg Bros. Co.*, CFTC No. 75-4, 1977 WL 13562, at *9 (CFTC Feb. 18, 1977) ("Even though respondents' activities may have involved a 'profit motive,' absent a finding of manipulative intent, trading with the purpose of obtaining the best price for one's [commodity] . . . does not constitute, in itself, a violation of the [CEA].").

Even if the MOC were an "illiquid and thinly traded" time frame, Plaintiffs' theory of what constitutes rational and irrational market behavior is not derived from any economic principle.  Plaintiffs' theory is simply not plausible, especially given all the other contradictory facts mentioned in the Platts publication for that date and incorporated by reference into the Trader Complaint, namely that:

> (i)   only two of the six cargoes were for the sale of Forties crude, the grade that, according to Plaintiffs, typically sets Platts' Dated Brent Assessment;
>
> (ii)   BP's first offer was not picked up even though it was uneconomically low according to Plaintiffs;
>
> (iii)   BP's second offer was at a higher price, but when it was not picked up, BP withdrew the offer rather than lowering the price; and
>
> (iv)   Platts' Dated Brent Assessment increased $0.94/$0.93 that day.

- 7 -

(Trader Compl. ¶ 379; July 28, 2014 Davidoff Decl. Ex. F (Platts Crude Oil Marketwire report (Sept. 3, 2012)) at 1, 3-4 (Dkt. No. 216).)

September 4-6, 2012:  Plaintiffs do not make any factual allegations from which one could infer that the offers and transactions occurring on September 4-6 were uneconomic or were offered at artificially low prices.  Plaintiffs argue that BP's September 4 offer of a "raft" of cargoes caused artificial prices because the offer was intended "'to give the impression that there was a glut of oil in the nearby market.'"  (Pls.' BP Opp'n at 5 (quoting Trader Compl. ¶ 382).) This is a conclusory allegation unsupported by any facts alleged in the Complaint, and is therefore entitled to no weight.  *In re Commodity Exchange, Inc., Silver Futures and Options Trading Litig.*, No. 11-md-2213, 2012 WL 6700236, at *8 (S.D.N.Y. Dec. 21, 2012), *aff'd* 560 F. App'x 84 (2d Cir. 2014); *Amaranth I*, 587 F. Supp. 2d at 528.   In addition, this allegation says nothing from which one could reasonably infer that the offers were uneconomic, that they caused futures prices to be artificial, or that BP intended to create these artificial prices.

Plaintiffs also argue that BP offered "lower" prices on cargoes on September 5 during the MOC window.  (Pls.' BP Opp'n at 5 (citing Trader Compl. ¶ 383).)  Plaintiffs' opinion that prices were "lower" and were incorporated into the Platts MOC pricing methodology does not make them artificial and cannot provide the factual basis for a price manipulation claim.

For the same reason, Plaintiffs have not adequately pled any wrongful conduct in connection with BP's sale of a Brent cargo to Shell on September 6.  Plaintiffs' allegation that this trade was a "collusive and sham trade" is simply a conclusion.  This is not, as Plaintiffs argue, a situation where the court is presented with two equally plausible scenarios and must accept Plaintiffs' well-pled factual allegations as true.  Plaintiffs make unsupported and conclusory allegations that Defendants colluded with each other.  These are insufficient as a

matter of law to support Plaintiffs' antitrust and price manipulation claims.  *Twombly*, 550 U.S. at 553-54 ("a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality").

September 7, 2012:  According to Plaintiffs, BP's offer of a Forties cargo on September 7 was uneconomically high because it was not accepted by Shell until just before the end of the MOC.  (Pls.' BP Opp'n at 6 (citing Trader Compl. ¶ 389).)  Without any factual  allegations of collusion between BP and Shell, Plaintiffs' inferences of artificiality and wrongful intent are unsubstantiated.  Plaintiffs' allegations about how this trade artificially affected Platts' Dated Brent Assessment is equally conclusory.  Plaintiffs suggest that while Platts discounted this Forties trade "to a degree," the trade still "significantly and artificially affect[ed] the price trends of Dated Brent."  (Pls.' BP Opp'n at 6 (citing Trader Compl. ¶ 389).)  But if Platts did view this trade "as so out of line with other bids in the market," as Plaintiffs allege (Trader Compl. ¶ 389), it is not reasonable to infer without additional supporting facts (of which there are none) that the transaction price artificially affected Platts' Dated Brent Assessment.

September 13, 2012:  Plaintiffs likewise fail to identify any factual allegations in the Trader Complaint supporting an inference that BP's offer of a Forties cargo on September 13 was uneconomic or caused artificial futures prices.  Plaintiffs argue that it was offered at a time of "tightness in the market" (Pls.' BP Opp'n at 7 (citing Trader Compl. ¶ 393)), but that says nothing regarding the offer's legitimacy or BP's intent.  If Plaintiffs are suggesting that BP was colluding with Shell, which allegedly caused artificial prices by simply booking a very large cargo carrier on that same day (Trader Compl. ¶ 391), the Complaint contains no facts supporting any explicit or implicit agreement between BP and others on this date (or any other).

- 9 -

September 17, 2012:  Plaintiffs argue that BP's sale of the Forties cargo to Phibro on

September 17 was "'collusive.'"  (Pls.' BP Opp'n at 7 (quoting Trader Compl. ¶ 396).)  But as

with Plaintiffs' other allegations, Plaintiffs allege no facts demonstrating that BP colluded with

Phibro in connection with BP's sale of the cargo or Phibro's subsequent alleged scheme to "drive

the market downward" by offering in the MOC that Forties cargo below its previous purchase

price.  (Pls.' BP Opp'n at 7 (citing Trader Compl. ¶ 397).)

**CONCLUSION**

Plaintiffs cannot point to any facts from which one can infer that any of the BP

transactions were uneconomic or artificially priced.  Plaintiffs rely exclusively on these allegedly

"uneconomic transactions" and other conclusory allegations to demonstrate BP's specific intent

to manipulate exchange-traded Brent derivative contracts.  Therefore, the failure to plead

adequately the uneconomic nature of these trades means that Plaintiffs allege no facts from

which one could infer BP's intent to manipulate prices.  The Plaintiff in the Landowner

Complaint does not even attempt to defend the sufficiency of his pleading, instead "incorporating

by reference" the arguments set forth by the Trader Plaintiffs.  (Landowner Opp'n at 23.)[5]  Thus

all the arguments expressed herein apply equally to that Complaint.

For the reasons set forth above and in Defendants' joint briefs filed herewith,[6] the Trader

and Landowner Complaints as to Defendants BP p.l.c., BP America Inc., and BP Corporation

North America Inc. should be dismissed in their entirety.

---

[5] David Harter's Memorandum of Law in Opposition to, *inter alia*, BP p.l.c., BP America Inc. and BP Corporation North America Inc.'s Supplemental Memorandum of Law, No. 13-md-2475-ALC, Dkt. No. 252.

[6] Defendants' Reply Memorandum of Law in Support of Their Joint Motion to Dismiss the Amended Consolidated Class Action Complaint, and Defendants' Reply Memorandum of Law in Support of Their Joint Motion to Dismiss the Complaints as Exceeding the Extraterritorial Reach of U.S. Law.

Dated: November 26, 2014

Respectfully Submitted,

**SULLIVAN & CROMWELL LLP**

By: /s/Daryl A. Libow
Daryl A. Libow
Amanda F. Davidoff
Brooke T. Mickelson
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006
Telephone: (202) 956-7500
Facsimile:  (202) 956-6973
libowd@sullcrom.com
davidoffa@sullcrom.com
mickelsonb@sullcrom.com

*Attorneys for BP p.l.c., BP America Inc. and*
*BP Corporation North America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 26, 2014, I filed the foregoing BP p.l.c., BP America Inc., and BP Corporation North America Inc.'s Supplemental Reply Memorandum of Law in Support of Their Motion to Dismiss the Amended Consolidated Class Action Complaint and Amended Class Action Complaint via the Court's CM/ECF system, which shall transmit notice to all counsel of record.

/s/ Daryl A. Libow
Daryl A. Libow
