UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: NORTH SEA BRENT CRUDE OIL
FUTURES LITIGATION

This document applies to: ALL CASES

1:13-md-02475 (ALC)

# HESS ENERGY TRADING COMPANY, LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York  10038
(212) 806-5400
*Attorneys for Defendant Hess Energy Trading Company, LLC*

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ................................................................................................... ii
PRELIMINARY STATEMENT ..............................................................................................1
ARGUMENT .............................................................................................................................3
I. PLAINTIFFS' CEA CLAIMS AGAINST HETCO FAIL ...................................................3
   A. The Rule 9(b) Heightened Pleading Standard Applies ...............................................3
   B. No Plaintiffs Allege Harm From The Alleged Hetco Transactions ............................3
   C. Plaintiffs Fail To Plead The Elements Of Manipulation Under The CEA .................4
      1. Plaintiffs Fail To Allege Hetco's Ability To Influence Market Prices ..............4
      2. Plaintiffs Fail To Allege That An Artificial Price Existed ................................5
         a. June 15, 2010 .................................................................................6
         b. January 14, 2011 ...........................................................................6
         c. January 27, 2011 ...........................................................................6
      3. Plaintiffs Fail To Allege Hetco's Specific Intent To Influence Prices ..............7
         a. June 15, 2010 .................................................................................8
         b. January 14, 2011 ...........................................................................9
         c. January 27, 2011 .........................................................................10
      4. Plaintiffs Fail To Allege Hetco Caused Artificial Prices ................................11
   D. Plaintiffs Fail To State A Claim Against Hetco For Aiding And Abetting ..............12
   E. Plaintiffs Fail To Plead A False Reporting Claim Under The CEA .........................12
   F. Plaintiffs' Claims Under The CEA Are Untimely .....................................................13
II. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST HETCO UNDER THE SHERMAN ACT ..................................................................................................................13
III. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED AS IMPERMISSIBLY EXTRATERRITORIAL .......................................................................................................14
IV. PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED. ..............................14
CONCLUSION .........................................................................................................................14

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*In re: Amaranth Natural Gas Commodities Litigation*,
    612 F. Supp. 2d 376 (S.D.N.Y. 2009)..................................................................7, 12

*In re Amaranth Natural Gas Commodities Litigation*,
    730 F.3d 170 (2d Cir. 2013)..................................................................................10

*CFTC v. Parnon Energy*,
    875 F. Supp. 2d 233 (S.D.N.Y. 2012)......................................................................5

*In re Commodity Exchange, Inc. Silver Futures and Options Trading Litigation*,
    No. 11-md-02213 (RPP), 2013 WL 1100770 (S.D.N.Y. Mar. 18, 2013)..............11

*In re Crude Oil Commodity Litigation*,
    No. 6 Civ. 6677 (NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007)................12

*Goodman v. Port Authority of New York and New Jersey*,
    850 F. Supp. 2d 363 (S.D.N.Y. 2012)......................................................................3

*In re: Libor-Based Financial Instruments Antitrust Litigation*,
    962 F. Supp. 2d 606 (S.D.N.Y. 2013)...................................................................3, 4

*National Gear & Piston, Inc. v. Cummins Power Systems, LLC*,
    861 F. Supp. 2d 344 (S.D.N.Y. 2012)....................................................................14

*In re Natural Gas Commodity Litigation*,
    358 F. Supp. 2d 336 (S.D.N.Y. 2005)....................................................................12

*SEC v. U.S. Environmental, Inc.*,
    82 F. Supp. 2d 237 (S.D.N.Y. 2000)......................................................................12

*Shah v. Meeker*,
    435 F.3d 244 (2d Cir. 2006)...................................................................................13

*In re Term Commodities Cotton Futures Litigation,*
    No. 12-CV-5126 (ALC), 2013 U.S. Dist. Lexis 184374 (S.D.N.Y. Dec. 20,
    2013) .......................................................................................................................7

**STATUTES**

7 U.S.C. § 25(a)(1)..........................................................................................................3

Pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Hess Energy Trading Company, LLC ("Hetco") submits this reply memorandum of law, and joins in the reply memoranda of law submitted on behalf of Defendants (collectively, the "Joint Reply Memoranda"),[1] in support of its motion to dismiss the Amended Class Action Complaint relating to Case No. 1:13-cv-07443-ALC (the "Landowner Complaint") and the Amended Consolidated Class Action Complaint relating to all other cases (the "Complaint" or "Trader Compl.") (together, the "Complaints") in this multi-district litigation.

## PRELIMINARY STATEMENT

In response to the charge that their Complaint is devoid of facts sufficient to support a claim under the Commodity Exchange Act ("CEA"), Plaintiffs step up their practice of labeling normal, commercial trading activity as "collusive," "uneconomic" or "sham" transactions, seek to introduce new facts through the declaration of their counsel, and flat-out misstate other facts in the Complaint. Plaintiffs' infidelity to their own pleading is striking. As just one example, Plaintiffs argue in their brief that on January 27, 2011, one of the days they claim Hetco manipulated prices, there was a "strong downward manipulation in Dated Brent" and that "the BNB crude price was manipulated downwards."[2] The table of prices in the Complaint, however, demonstrates that on January 27, 2011, the prices of both Dated Brent and BNB *increased* by over $3.00 from the prior day. (Trader Compl. ¶313.) Though Plaintiffs now contend that there was a "transcription error," Plaintiffs still admit that there was at least an "*increase* in absolute

---

[1] Defendants' Reply Memorandum of Law in Support of their Joint Motion to Dismiss Plaintiffs' Amended Class Action Complaint (the "Landholder Reply Br."), Defendants' Reply Memorandum of Law in Support of their Joint Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint (the "Trader Reply Br."), and Defendants' Reply Memorandum of Law in Support of their Joint Motion to Dismiss the Complaints as Exceeding the Extraterritorial Reach of U.S. Law (the "Extraterritorial Reply Br."), in which Hetco joins. If not otherwise defined, defined terms used herein are given the meaning ascribed in Hetco's moving brief and the Complaints.

[2] Plaintiffs' Supplemental Memorandum of Law in Opposition to Defendant Hetco's Motion to Dismiss the Amended Consolidated Class Action Complaint, dated October 27, 2014 (the "Opp.") at 12.

price on January 27, 2011 [of] $0.60 for Dated Brent and $0.045 cents for BNB." (Opp. 14) (emphasis added.) Regardless of whether those prices increased by $3.00 or by $0.60, rather than finding factual support in their Complaint, Plaintiffs' claim of a "downward manipulation" of prices on January 27, 2011 is directly contradicted by the facts alleged in the Complaint.

There are several other fundamental infirmities that pervade Plaintiffs' CEA claims, any one of which warrants dismissal of those claims: (i) because no Plaintiff alleges that they traded or held any positions in any Brent futures contracts on any of the three days Hetco is alleged to have manipulated those contracts, Plaintiffs have failed to allege the actual harm necessary to confer standing to assert a claim against Hetco; (ii) Plaintiffs have not alleged Brent futures prices were artificial on any of those three days; and (iii) Plaintiffs' CEA claims are barred by the statute's two-year limitations period.

Additionally, the Complaint does not set forth any facts to support the other elements of a manipulation claim. Instead, Plaintiffs argue, based solely on hindsight, that Hetco either sold at "uneconomically" lower prices than it would have received had it sold at other points in time, or paid more than it might have paid had it bought at other times. (Opp. 9, 12.) However, no purchaser or seller of commodities can ever predict with certainty whether a price will move lower or higher after they elect to trade. For that reason, among others, a claim of manipulation requires significantly more than bare accusations that a party sold at a price or time that Plaintiffs deem, after the fact, was too low or inopportune, or paid a price that Plaintiffs deem, again in retrospect, was too high.

Plaintiffs' remaining causes of action, under the CEA, the Sherman Act, state statutes and common law, also fail to state a claim. As discussed in Hetco's moving brief (the "Hetco Br.") and the Joint Reply Memoranda, neither Complaint alleges *any* facts supporting those claims.

**ARGUMENT**

I.      **Plaintiffs' CEA Claims Against Hetco Fail**

   A.   **The Rule 9(b) Heightened Pleading Standard Applies**

The reasoning for the application of Rule 9(b)'s pleading standards here is set forth in detail in the Trader Reply Brief.  (Trader Reply Br. 2-4)  Plaintiffs admit that their claims sound in "fraud."[3]  Regardless, as explained below, Plaintiffs fail to state a claim against Hetco under any pleading standard.

   B.   **No Plaintiffs Allege Harm From The Alleged Hetco Transactions**

Plaintiffs must allege not only the elements of a manipulation claim, but also that they have standing to sue.  *See In re: Libor-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 620 (S.D.N.Y. 2013) ("LIBOR II").  A plaintiff has standing only if he has suffered "actual damages" as a result of a defendant's manipulation.  *Id.* at 620; 7 U.S.C. § 25(a)(1).  The Complaint does not plead this essential element.  In fact, the Complaint does not allege that any Plaintiff bought, sold or held any positions in Brent futures contracts on any of the days on which Hetco is accused of manipulation: June 15, 2010, January 14, 2011 and January 27, 2011. (Hetco Br. 22-24; Trader Compl. ¶¶429-37.)

Finding no support in their Complaint, Plaintiffs' sole response to this deficiency is limited to a single sentence in their brief, citing only their counsel's declaration: "[O]n the dates for which Hetco claims no Plaintiffs traded (January 14 and 27, 2010) [*sic*], Plaintiffs actually have traded ICE Brent futures." (Opp. 16.)  However, the Kovel Declaration, which impermissibly attempts to add facts to cure the Complaint's fatal defects, should be disregarded. *See Goodman v. Port Authority of New York and New Jersey*, 850 F. Supp. 2d 363, 380

---

[3] *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint (the "Omnibus Opp.") at 20-21, 46.

(S.D.N.Y. 2012) ("memoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint").  Further, even if considered, the Kovel Declaration provides no details of which particular ICE Brent futures contracts Plaintiffs "actually have traded," whether any Plaintiff purchased, sold or held the specific ICE Brent futures contracts claimed to have been manipulated on January 14 or 27, 2011, or whether Plaintiffs purchased or sold such contracts *after* the allegedly manipulated MOC periods on these days.  (Kovel Decl. ¶5) (Trader Reply Br. 13-15.)  With respect to June 15, 2010, Plaintiffs actually admit no Plaintiff was "harmed" that day.  (Kovel Decl. ¶5.)

In *LIBOR II*, the court denied plaintiffs leave to amend their complaint because they had not plausibly alleged "(1) that they transacted in Eurodollar futures contracts on days on which Eurodollar futures contract prices were artificial as a result of trader-based manipulation of LIBOR, or (2) that their positions were such that they were injured." *LIBOR II*, 962 F. Supp. 2d at 620-21.  Likewise here, where the alleged manipulation is "episodic and varying in direction," Plaintiffs' failure to allege that they traded or held positions in the "particular" Brent futures contracts allegedly manipulated on the days of (and following) Hetco's transactions is fatal to their claims.  *Id.* at 620.

### C. Plaintiffs Fail To Plead The Elements Of Manipulation Under The CEA

#### 1. Plaintiffs Fail To Allege Hetco's Ability To Influence Market Prices

Plaintiffs state in conclusory fashion, and, again, without citation to the Complaint, that "Hetco's status as a trader and its parent's [Hess] status as a major producer and refiner of Brent granted Hetco the ability to influence market prices."  (Opp. 7.)  However, the Complaint does not identify how many barrels of Brent Crude oil were "produced" or "refined" by Hess in 2010 or 2011, and, in fact, states that Hess imported only 422,000 barrels of Dated-Brent priced oil

4

(less than one full cargo) into the United States in all of 2010, and *none* in 2011 and 2012. (Trader Compl. ¶491.)  The Complaints also fail to plead any facts suggesting that Hess had any involvement in the alleged activities of Hetco on the three (or any other) days in question.

Plaintiffs' assertion that it also has sufficiently pled Hetco's ability to influence market prices because it has "enumerated the entirety" of Hetco's physical transactions on the three days in question, including "how much Brent Hetco sold, at what price and to whom," (Opp. 7) is meaningless unless placed in the context of the overall market, a defendant's footprint in that market, and that defendant's overall positions.  (*See* Hetco Br. 16.)  The Complaint, however, provides no details of the size of the market, the impact of worldwide crude oil prices or other factors on Brent prices, or whether there was one, one dozen, or one hundred cargoes traded on the days Hetco allegedly transacted.  If simply describing the commercial terms of a single transaction in the physical Brent market, whether in the MOC or not, and then labeling it "uneconomic" were sufficient to allege ability to influence Brent futures prices, then a buyer or seller of a single cargo of Dated Brent, regardless of its market position or size, would always be exposed to a manipulation claim.  That is not and cannot be the law.[4]

### 2. Plaintiffs Fail To Allege That An Artificial Price Existed

A manipulation claim requires a plausible allegation of an artificial price "that does not reflect the basic forces of supply and demand." *CFTC v. Parnon Energy*, 875 F. Supp. 2d 233, 246 (S.D.N.Y. 2012).  Plaintiffs assert in their brief that they identified "artificial prices on the days in which Hetco is alleged to have manipulated the market" based on "double reversals" in

---

[4] Plaintiffs' other arguments are equally devoid of merit.  Plaintiffs contend they have sufficiently pled Hetco's ability to set prices because "on June 15, 2010, when Hetco sold its Forties cargo at -$0.30/bb. to Dated Brent, Platts set its Forties spot assessment at -$0.30-$0.32/bbl." (Opp. 7.)  However, the Complaint alleges that on June 15, 2010, there were *two* transactions in the MOC: the Hetco sale and a sale by Statoil to Shell at Dated Brent -$0.20/barrel. (Trader Compl. ¶¶269-70.)  Moreover, Hetco did not *offer* the cargo at any price—Morgan Stanley *bid* for a cargo, and Hetco accepted that bid.  (*Id.* ¶270-71.)  Finally, Platts set the Dated Brent assessment "at a discount of $0.31 to North Sea Dated Strip," (*Id.* ¶271), not the Dated Brent minus $.30/bbl at which Hetco sold its cargo.

5

the prices of certain ICE Brent futures contracts. (Opp. 15.) But that assertion is not borne out by the Complaint, which does not allege a single artificial price or "double reversal" in the Brent futures contracts Plaintiffs claim were manipulated on any of the three days on which Hetco is accused of manipulation.

### a.   June 15, 2010

Plaintiffs admit that on June 15, 2010, the "expiring July contract *did not exhibit a double reversal* … because it was in the process of settling to the ICE Brent Index." (Omnibus Br. 15, n.12; Trader Compl. ¶269) (emphasis added.) Under Plaintiffs' theory (Opp. 15-16), if Hetco's "manipulative" sale of a Forties cargo that day was used, in part, to calculate the ICE Brent Index, against which the expiring ICE Brent futures contract settles, then the *expiring* futures contract price would have exhibited a "double reversal." Plaintiffs' admission that there was no such double reversal means that there was no artificial Brent futures price on June 15, 2010.

### b.   January 14, 2011

In their Hetco opposition brief, Plaintiffs argue that "the Complaint alleges" that on January 14, 2011, there was "a double reversal in which ICE Brent futures prices were suppressed during the MOC window." (Opp. 15, citing Trader Compl. ¶282.) In their Omnibus Opposition, however, Plaintiffs correct that misstatement explaining that, while "the Complaint ¶282 alleges '*around* January 14, 2011' for this manipulation … [t]he double reversal was *on January 13*. …" (Omnibus Br. 16, n.13) (emphasis added.) Thus, there was no double reversal and, therefore, no artificial Brent futures price alleged *on* January 14, 2011.

### c.   January 27, 2011

Nor do Plaintiffs allege an artificial price on January 27, 2011. While Plaintiffs contend in their brief that "the Complaint alleges several double reversals in the ICE Brent futures

market" in "late January 2011," (Opp. 15) Plaintiffs admit, and the Complaint alleges, that a "double reversal" occurred *only on January 28*—when Hetco is not alleged to have transacted. (*see* Omnibus Br. 16, n.14; Trader Compl. ¶316.)  Having pled no artificial Brent futures prices for *any* of the days of Hetco's alleged manipulation, Plaintiffs' claim should be dismissed.

### 3. Plaintiffs Fail To Allege Hetco's Specific Intent To Influence Prices

To survive a motion to dismiss, Plaintiffs must allege facts which give rise to a "strong inference that manipulation was the dominant purpose of the transaction" and must assert a "concrete and personal benefit" resulting from the alleged fraud.  *In re: Amaranth Natural Gas Commodities Litig.,* 612 F. Supp. 2d 376, 383, 386 (S.D.N.Y. 2009) ("Amaranth II").  Though Plaintiffs assert that Hetco's "motivation" was to "force prices to the benefit of their trading book," (Trader Compl. ¶ 537) the Complaint provides no allegations concerning any Hetco trading book and sets forth no facts of a single Hetco position that conceivably could have benefitted from the alleged "manipulative" transactions.  (*See* Hetco Br. 17-19.)  Instead, Plaintiffs contend only that Hetco sold dated cargoes of oil in two instances at prices Plaintiffs deem were too low and, in another instance, purchased EFPs at prices Plaintiffs deem were too high.  However, a seller of oil may sell in a declining market and a buyer of oil may buy in a rising market, without any manipulative intent.  Here, Plaintiffs do not allege that Hetco sold its cargoes at lower prices than it could have sold, or bought its EFPs at higher prices than it had to, based on other bids or offers in the market.  Contrast this with *In re Term Commodities Cotton Futures Litig.*, No. 12-CV-5126 (ALC), 2013 U.S. Dist. Lexis 184374, at *22 (S.D.N.Y. Dec. 20, 2013), in which plaintiffs alleged, among other things, that defendants "uneconomically refused to purchase the lower priced, high quality cotton available . . . [in the] cash markets" and bought "higher priced futures contracts on the ICE."  The Complaint here contains no such allegations.

### a.     June 15, 2010

In lieu of factual allegations that would support an inference of specific intent to manipulate the market downward, Plaintiffs question the timing of Hetco's sale of a single Forties cargo to Morgan Stanley on June 15, 2010, asking "what Hetco, a trading company, was doing holding on to a physical cargo of dated Brent in the first place." (Opp. 9.) The answer is in their own Complaint: Hetco is a "trading firm that generally focuses on profiting from arbitrage opportunities *in the physical market* for refined fuels, natural gas, *and crude oil, including Brent Crude Oil*." (Trader Compl. ¶ 48) (emphasis added.) That Hetco traded physical oil is indicative of nothing untoward.

Plaintiffs also ask, "Why would Hetco wait until the MOC, the last 30 minutes of the day, before selling its position?" (Opp. 9.) While such musings are insufficient to satisfy Plaintiffs' obligation to plead facts, the answer again can be found in the Complaint. The "MOC" period "tends to be one of high activity" for trading, in which traders are more likely to find buyers and sellers. (Trader Compl. ¶93.)[5]

Lastly, while Plaintiffs claim in their brief that Hetco's trade on June 15, 2010 was "out of line with price trends before and after it took place," (Opp. 10) the Complaint pleads that, with one exception, the Dated Brent Assessments for the entire week prior were in line with the assessment on June 15. (Trader Compl. ¶¶254, 256, 259-60, 262, 267.) Also, on June 15, Hetco accepted Morgan Stanley's bid of "Dated Brent minus $0.30/b," the *exact same price* at which Shell offered a cargo earlier in the MOC Window. (*Id.* ¶270.) The very suggestion that Hetco

---

[5] Plaintiffs' attempt to impute ill-intent based on Hetco keeping a cargo "from the chains" (Opp. 9) reflects their clear misunderstanding of the physical markets. Keeping a cargo "from the chains" does not mean "with[holding] [it] from the market" as Plaintiffs assert (*id.*), but rather keeping a Cash BFOE cargo after it has been assigned a specific grade and dates and been passed from a selling counterparty. As Plaintiffs allege, the "daisy chain" is the process of "passing the same Brent cargo related uniquely to a single set of cargo dates through a paper chain involving a sequence of transactions among various sellers and buyers," and each chain may involve "more than 30 passes." (Trader Compl. ¶¶60, 376.)

8

intended to sell cargoes of oil (each containing 600,000 barrels of oil worth approximately $60 million) at anything but the best prices available at the time is completely implausible. Not surprisingly, Plaintiffs fail to identify any market participant that offered Hetco a higher price.[6]

### b. January 14, 2011

To support their claim of manipulation on January 14, 2011, Plaintiffs argue that "around expiry day Vitol, Hetco and Statoil manipulated an unprecedented number of inflated EFPs." (Omnibus Br. 16.) Plaintiffs' argument is, once again, unfaithful to their Complaint. Plaintiffs contend in their brief that, "[d]ue in part to Hetco's two March EFP purchases … the EFP differential was extraordinarily higher on January 14, 2011," assessed at "+$0.40 to March Cash BFOE." (Opp. 11.) However, the Complaint alleges that Hetco's EFP transactions were executed at "March +0.17," (Trader Compl. ¶289) nowhere near the purportedly "inflated" price of March +.40.[7] Further, Plaintiffs admit that Platts made "no mention of these EFP trades" in its narrative recap that day, undercutting their argument that such trading was either used in that day's assessment or was in any way "unprecedented." (*Id.* ¶290.)

Finally, while Plaintiffs characterize (again, without citation to the Complaint) Hetco's Dated Brent and cash BFOE transactions on January 14, 2011 as "uncharacteristically large single day investments," (Opp. 10) the Complaint contains no allegations describing Hetco's "characteristic" single day investments, rendering their argument meaningless. Additionally, merely alleging a large position is insufficient to state a claim for manipulative intent, as a

---

[6] Plaintiffs also contend that the date of the transaction, the date of the July futures expiration, adds "further weight to the inference of manipulation." However, as explained *supra* at 6, Plaintiffs admit that the "expiring July contract did not exhibit a double reversal on that day because it was in the process of settling to the ICE Brent Index." (Omnibus Opp. at 15, n.12; Trader Compl. ¶269.)

[7] In addition, Plaintiffs' conjecture that Platts was forced to derive its Dated Brent Assessment from March EFP transactions because Hetco "refused" to "liquidate some of its long physical Forties positions at the market price when Glencore bid for it on January 14" (Opp. 10), is entirely speculative and contradicted by the Complaint's allegation that Hetco *did offer* a Forties cargo in the MOC on June 14, 2011. (Trader Compl. ¶292.)

"trader may [] acquire a large position in the belief that the price of the future will, for reasons other than the trader's own activity, move in a favorable direction." *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 184 (2d Cir. 2013) ("Amaranth III").

### c.  January 27, 2011

As noted earlier, Plaintiffs' contention that on January 27, 2011, there was a "strong downward manipulation" in Dated Brent and BNB (Opp. at 12), and that "Hetco drove down BNB prices by an astonishing $0.65 in one day" (Omnibus Opp. 16), lacks all semblance of veracity, as their own Complaint demonstrates that the prices of both Dated Brent and BNB *increased* by over $3.00 each on January 27. (Trader Compl. ¶313.)[8] Indeed, according to the Complaint, the prices of all four grades of B, F, O and E *and* the Dated Brent assessment increased each day from January 25 to January 31, 2011. (*Id.*)[9]

Plaintiffs' claim that Hetco effected the supposedly downward manipulation on January 27 by holding its cargo "until only one or two market participants were capable of bidding" rather than selling it earlier "when more market participants could bid," (Opp. 12) is also belied by the Complaint, which alleges that Hetco was actively selling (not holding) its cargoes that week. (Trader Compl. ¶307.)

---

[8] Plaintiffs attempt to overcome this inconsistency by stating Hetco is "wrong to focus on absolute prices" and that "the price differentials for the different grades" are more important. (Opp. 14.) However, any change in the price differential between grades from one day to the next is simply a mathematical function of the relative change in the absolute prices for each. Here, that BNB allegedly went from trading at a premium to Dated Brent to trading at a discount does not indicate that there was a "downward manipulation" of either price. To the contrary, as Plaintiffs admit (even based on their correction of the "transcription error" in the Complaint), the prices of *both* Dated Brent and BNB *increased* on January 27, but the increase in Dated Brent (+$0.60) was more than the increase in BNB (+$0.045), resulting in the change in price differential, but no decrease in the price of either.

[9] That Plaintiffs would continue to claim that "the BNB crude price was manipulated *downwards*" on January 27 (Opp. 12) (emphasis added) while admitting two pages later that the prices, in fact, *increased* "on January 27, 2011 [by] $0.60 for Dated Brent and $0.045 for BNB" (Opp. 14; Kovel Decl. ¶21) is troubling, to say the least. No doubt the Court is aware that Hetco was added as a defendant only after Lead Counsel represented to the Court that it should be appointed because it had "uncovered additional Defendants not previously included in other cases." Plaintiffs' Memorandum of Law in Support of Motion to Appoint Kirby McInerney LLP as Interim Lead Counsel, dated November 20, 2013 (Docket No. 9 in 1:13-md-02475-ALC) at 2.

### 4. Plaintiffs Fail To Allege Hetco Caused Artificial Prices

The CEA requires Plaintiffs to allege plausible factual allegations showing a causal connection between Hetco's actions and the alleged artificial prices in Brent futures. *See In re Commodity Exchange, Inc. Silver Futures and Options Trading Litig.*, No. 11-md-02213 (RPP), 2013 WL 1100770, at *4 (S.D.N.Y. Mar. 18, 2013). The Complaint sets forth no facts from which a causal connection can be inferred.

In an attempt to create such a connection, Plaintiffs, yet again, assert arguments in their brief that are at odds with the allegations in the Complaint. The Complaint correctly refers to the ICE website, stating that "[a]t expiry of a Brent futures contract, the index price is based on the average value of *BFOE cash cargoes* on expiry day" and that "the index represents the average price of trading in the 25-day *'cash' BFOE market* in the relevant delivery month as reported and confirmed by the media industry [e.g. Platts]… ." (Compl. ¶ 179) (emphasis added.)[10] In their opposition, Plaintiffs admit that "ICE Brent Futures settle to the ICE Brent Index," but then claim, without any support, that the ICE Brent Index is "calculated in part based upon media reports including the Platts Brent Assessment." (Opp. 15-16, citing Trader Compl. ¶¶179-80.) However, neither the Complaint nor the ICE website provides that the *Dated Brent* assessment is taken into account in calculating the ICE Brent Index, which is based on *cash BFOE* prices. (Trader Compl. ¶¶179-80) (Davidoff Decl. Ex. B, stating that the "industry media publish *25-day BFOE* price assessments throughout the trading day") (emphasis added.) Thus, Plaintiffs' entire causation theory, that the Dated Brent Assessment impacts the ICE Brent futures settlement price, is predicated on a false premise.

---

[10] As Hetco has pointed out, on all trading days other than expiration, ICE Brent Futures price not against a Platts benchmark price, but against the weighted average price of futures trades on ICE Futures Europe during the two-minute settlement period, from 7:28-7:30 London time. (Hetco Br. 23.) This has not been (and cannot be) disputed.

11

### D. Plaintiffs Fail To State A Claim Against Hetco For Aiding And Abetting

To support their aiding and abetting claim, Plaintiffs refer to paragraphs in the Complaint that do not mention Hetco or resort to wholly conclusory allegations. (*See* Opp. 16-17.) Plaintiffs' citation to paragraph 251 in the Complaint, for example, refers only to "Shell, BP, Vitol and Statoil" and makes no mention of Hetco. When Plaintiffs do describe Hetco's transactions, they self-servingly label normal market activity as "collusive" or as "aiding" other market participants without reference to a single factual allegation of concerted effort by Hetco. *See Amaranth II*, 612 F. Supp. 2d at 390 (dismissing aiding and abetting claims because "[t]he only allegations in the Complaint that [were] related directly to plaintiffs' claims for aiding and abetting against [Defendants] [were] conclusory and insufficient."). (*See* Hetco Br. 24-25.)

### E. Plaintiffs Fail To Plead A False Reporting Claim Under The CEA

As set forth in the Trader Reply Brief, Plaintiffs fail to state a false reporting claim because, among other reasons, CEA Section 6(c)(1) does not apply retrospectively. (Trader Reply Br. 13.) Moreover, Plaintiffs' argument that "Hetco's manipulative trading caused Platts to report inaccurate Brent prices" (Opp. 17) is insufficient to state such a claim. False reporting claims involve fabrications of price, volume or other trade information. *See In re Natural Gas Commodity Litig.*, 358 F. Supp. 2d 336, 344 (S.D.N.Y. 2005). Here, no prices reported to Platts, while alleged to be manipulative, are claimed to have been false. *See SEC v. U.S. Envtl., Inc.*, 82 F. Supp. 2d 237, 240 (S.D.N.Y. 2000) (noting manipulation claims "do not necessarily involve affirmative misrepresentations."). Plaintiffs do not "specify the time, place, speaker, and content of [any] alleged statements [or] explain why those statements were misleading" on any of the days Hetco allegedly reported false prices, as required under Rule 9(b). *In re Crude Oil Commodity Litig.*, No. 6 Civ. 6677 (NRB), 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007).

### F.  Plaintiffs' Claims Under The CEA Are Untimely

As more fully discussed in the Trader Reply Brief, Plaintiffs' CEA claims relating to Hetco's trading activity are untimely because they rely exclusively on quotes and prices from Platts publications which would have, at a minimum, put Plaintiffs on inquiry notice of any alleged harm as of January 2011.  (Trader Reply Br. 22-24; Hetco Br. 10-12.)  Those Platts reports, which Plaintiffs quote exhaustively in the Complaint, provide all of the company and transaction-specific facts underlying Plaintiffs' claims, including the contracts, dates, parties, prices, grades, and loading dates for each of Hetco's allegedly fraudulent transactions.  (*See* Trader Compl. ¶¶270, 290, 310.)

While none of those facts published by Platts give rise to a CEA claim against Hetco, they are the only facts on which Plaintiffs rely in support of its claims.  Even if not considered "widespread and prominent" under the *Staehr* sliding scale, (Omnibus Opp. 43-44) there can be no dispute that the Platts reports quoted by Plaintiffs contain the very company-specific information "at the heart of" Plaintiffs' claims that they themselves argue is sufficient to constitute a "storm warning," putting them on inquiry notice. (*See id.*) (*Shah v. Meeker*, 435 F.3d 244, 251 (2d Cir. 2006) (dismissing action where a news article described with sufficient detail the allegations "at the heart of" plaintiff's complaint.))[11]

### II.  Plaintiffs Fail To State A Claim Against Hetco Under The Sherman Act

Plaintiffs' Sherman Act claims against Hetco fail for the reasons set forth in the Joint Reply Memoranda.  Further, with respect to their Section 2 monopolization and conspiracy claims, Plaintiffs fail to allege how Hetco, a trading firm without any production, distribution or refining capacity, possessed monopoly power.  Instead, Plaintiffs make passing reference to

---

[11] For the same reasons set forth in the Trader Reply Memo, Plaintiffs' attempt to toll the applicable statute of limitations under the doctrine of fraudulent concealment fails.  (*See* Trader Reply Br. 24.)

"relevant Platts commentaries" and cite an article impermissibly attached to their counsel's declaration. (Opp. 18.) Far from demonstrating that Hetco had monopoly power through its physical position, or that it maintained, acquired or enhanced that power through exclusionary conduct, the Complaint instead alleges that Hetco actively liquidated its physical Brent position throughout January 2011 by offering and selling its Dated cargoes in the MOC. (Trader Compl. ¶307.) *See Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC,* 861 F. Supp. 2d 344, 374 (S.D.N.Y. 2012).[12]

### III. Plaintiffs' Claims Should Be Dismissed As Impermissibly Extraterritorial

For the reasons set forth in the Extraterritorial Reply Memo, Plaintiffs' CEA and Sherman Act claims should be dismissed for exceeding the territorial reach of the U.S. laws.

### IV. Plaintiffs' State Law Claims Should Be Dismissed.

Finally, for the reasons set for in Hetco's moving brief as well as the Joint Reply Memoranda, Plaintiffs' state law claims against Hetco, including claims under state antitrust and unfair practices statutes and for unjust enrichment, should be dismissed. (Hetco Br. 27-28.)

### CONCLUSION

For the reasons set forth herein, in Hetco's moving brief and in the Joint Reply Memoranda, Hetco respectfully requests that the Court dismiss with prejudice Plaintiffs' claims as to Hetco pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and award such other and further relief as the Court deems appropriate.

---

[12] David Harter's Memorandum in Opposition to Hetco's Motion to Dismiss (the "Landowner Opp.") does not even attempt to defend the insufficiency of his pleading, but instead "incorporate[es] by reference" the flawed arguments set forth in the Trader Plaintiffs' Omnibus Opp. (Landowner Opp. 24.) For the same reasons set forth herein, the Landowner Complaint should be dismissed as against Hetco.

Dated: November 26, 2014
New York, New York

STROOCK & STROOCK & LAVAN LLP

By: s/ Melvin A Brosterman
Melvin A. Brosterman
Francis C. Healy
David J. Kahne

180 Maiden Lane
New York, New York 10038
Tel: (212) 806-5400
Fax: (212) 806-6006
mbrosterman@stroock.com
fhealy@stroock.com
dkahne@stroock.com

*Attorneys for Defendant Hess Energy Trading Company, LLC*

15

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2014, I electronically filed and served Hess Energy Trading Company, LLC's Reply Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint and Plaintiff's Amended Class Action Complaint via the Court's CM/ECF system, which transmits notice to all counsel of record who have entered an appearance.

/s/ Francis C. Healy
Francis C. Healy