**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>NORTH SEA BRENT CRUDE OIL FUTURES LITIGATION<br><br>This document applies to ALL CASES | 1:13-md-02475-ALC |

**DEFENDANTS TRAFIGURA A.G. AND TRAFIGURA BEHEER B.V.'S
SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION
COMPLAINT AND PLAINTIFFS' AMENDED CLASS ACTION COMPLAINTS**

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ....................................................................................1

II.  ARGUMENT ...........................................................................................................4

A.  Plaintiffs Fail to Allege Facts Specific to TBBV and TAG....................................4

B.  Plaintiffs' CEA Claims Against the Trafigura Defendants Should Be
Dismissed .........................................................................................................6

    1.  The Complaints Do Not Allege Facts Demonstrating Manipulative
Intent or Conduct ........................................................................................6

    2.  The Complaints Lack Any Facts Demonstrating that TBBV and
TAG Had the Ability to Influence Market Prices or Caused
Artificial Prices ...........................................................................................9

C.  The Aiding and Abetting or Principal-Agent Liability Claims Are
Similarly Deficient .............................................................................................10

    •  Plaintiffs do not allege any facts suggesting that the
Trafigura Defendants were employed as an agent of or
controlled by any other Defendant; and.........................................................10

    •  Plaintiffs fail to allege facts supporting an inference that the
Trafigura Defendants knew of any other Defendant's
purported intent to manipulate the market and intended to
assist in the manipulation or performed any acts in
furtherance thereof. .......................................................................................10

D.  The Allegations Are Insufficient To State a Sherman Act Claim ........................11

III.  CONCLUSION.........................................................................................................12

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Amaranth Natural Gas Commodities Litig.*,
   587 F. Supp. 2d 513 (S.D.N.Y. 2008)........................................................................6

*In re Amaranth Natural Gas Commodities Litig.*,
   612 F. Supp. 2d 376 (S.D.N.Y. 2009)......................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................4, 5, 10

*Atuahene v. City of Hartford*, 10 Fed. Appx 33, 34 (2d Cir. 2001) ............................2, 4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................................5

*In re Crude Oil Commodity Futures Litig.*,
   913 F. Supp. 2d 41 (S.D.N.Y. 2012)............................................................................7

*In re Crude Oil Commodity Litig.*,
   No. 06-cv-6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) .................................6

*Krause v. Forex Exch. Mkt.*,
   356 F. Supp. 2d 332 (S.D.N.Y. 2005)........................................................................11

*In re Matter of Daniel Shak & SHK Mgmt.*,
   2013 WL 7085760 (C.F.T.C. Nov. 25, 2013) ..............................................................7

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000).........................................................................................7

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*,
   No. 12 Civ. 2837, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012)................................4

*In re Platinum & Palladium Commodities Litig.*,
   828 F. Supp. 2d 588 ....................................................................................................11

*Rolf v. Blyth Eastman Dillon & Co.*,
   570 F.2d 38 (2d Cir. 1978)............................................................................................7

*Rothman v. Gregor*,
   220 F.3d 81 (2d. Cir. 2000)...........................................................................................7

*Southwick Clothing LLC v. GFT (USA) Corp.*,
   No. 99 Civ. 10452 (GBD), 2004 WL 2914093 (S.D.N.Y. Dec. 15, 2004)................5

In addition to the reply memoranda of law jointly submitted on behalf of all Defendants ("the Joint Reply Memoranda"),[1] Defendants Trafigura Beheer B.V. ("TBBV") and Trafigura A.G. ("TAG") (collectively, the "Trafigura Defendants")[2] submit this Supplemental Reply Memorandum to address arguments raised by the Trader Plaintiffs and Landholder Plaintiff[3] in opposition to the Trafigura Defendant's Memorandum of Law in Support of Their Motion to Dismiss (ECF No. 237) ("Trafigura Memorandum").

## I.   PRELIMINARY STATEMENT[4]

Plaintiffs' Oppositions make no effort to address the critical flaws in their Complaints; specifically there are *no* facts alleged demonstrating that the Trafigura Defendants engaged in manipulative acts, or conspired with other Defendants, to restrain trade or monopolize the market.[5]   As detailed in the Trafigura Memorandum, Plaintiffs improperly rely on broad, conclusory allegations regarding the *other* Defendants in a failed attempt to state a claim against

---

[1]  Specifically, Defendants TBBV and TAG refer to and incorporate by reference Defendants' Reply Memorandum in Support of Their Joint Motion to Dismiss Plaintiff Harter's Amended Class Action Complaint (Case No. 1:13-cv-07443-ALC) (the "Joint Landholder Reply Memorandum"), Defendants' Reply Brief in Support of Their Joint

[2]  This Supplemental Reply Memorandum refers to TBBV and TAG as the "Trafigura Defendants" for simplicity.  In doing so, TBBV and TAG do not concede that they are the same entity or waive their argument that the Plaintiffs have not alleged facts specific to TBBV or TAG.

[3]  The Trader Plaintiffs include Kevin McDonnell, Anthony Insinga, Robert Michiels, Neil Taylor, Aaron Schindler, Xavier Laurens, Atlantic Trading USA, LLC, Port 22, LLC, Prime International Trading, Ltd., White Oak Fund LP. *See* Amended Consolidated Class Action Complaint (Case No. 1:13-MD-02475) (the "Trader Complaint"). Landowner Plaintiff is David Harter, who sues on behalf of himself and a proposed nationwide class of landholders and leaseholders of oil-producing land in the United States. *See* Amended Class Action Complaint (Case No. 1:13-cv-07443-ALC) (the "Landholder Complaint.").  The Trader Complaint and Landholder Complaint are referred to herein as the "Complaints."

[4]  This Supplemental Reply Memorandum is submitted on behalf of both TBBV and TAG with respect to the Trader Complaint, and on behalf of TAG only as to the Landholder Complaint.  To date, TBBV has not been served with the Landholder Complaint.

[5]  Trader Plaintiffs filed a Supplemental Memorandum of Law in Opposition to Defendants Trafigura A.G. and Trafigura Beheer B.V.'s Motion to Dismiss the Amended Consolidated Class Action Complaint (ECF No. 246) (the "Trader Plaintiffs' Opp.").  Landholder Plaintiff filed a Memorandum of Law in Opposition to the Defendants' Memorandum of Law in Support of Their Joint Motion to Dismiss (ECF No. 252) (the "Landholder Plaintiff Opp.") which included a brief response to the Trafigura Memorandum.  (Landholder Plaintiff Opp., at ¶ 25).

TBBV and TAG.   But, the law requires Plaintiffs to allege specific facts against specific defendants to state a claim.  *Atuahene v. City of Hartford*, 10 Fed. Appx 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry Express Agency, Inc*. 296 F.2d 847, 851 (2d Cir. 1961).  Because Plaintiffs have not even come close to making such allegations against TBBV and TAG, their Complaints should be dismissed.

In their Oppositions, Plaintiffs attempt to rewrite and recast their Complaints in a futile attempt to save them from dismissal.  First, Plaintiffs claim in the Oppositions that TBBV executed the manipulative trades and TBBV and TAG acted together to influence prices and monopolize the market.  This is not at all what the Complaints allege.   The Complaints allege that "Trafigura," not TBBV, executed the trades.  In addition, the Complaints do not allege that TBBV and TAG acted together.  Plaintiffs cannot avoid dismissal by ignoring the allegations in the Complaints and attempting to rewrite it in their Oppositions.

Second, Plaintiffs claim that they have sufficiently alleged specific intent as to TBBV and TAG because there is "strong circumstantial evidence" that the Trafigura Defendants engaged in "conscious misbehavior or recklessness."  This argument is easily dismissed as the Complaints do not allege *any* facts supporting a finding of "recklessness" as to either TBBV or TAG.

Third, Plaintiffs argue that the facts alleged in the Complaints create a strong inference that the Trafigura Defendants executed the trades for a manipulative purpose as opposed to "innocent" reasons.  According to Plaintiffs, when the allegations demonstrate that defendants engaged in "money-losing strategies" or  "waste[d] . . . corporate assets," there is a strong inference of manipulative intent.  Significantly, however, none of the facts alleged against the Trafigura Defendants suggest that they engaged in "money-losing" strategies or wasted corporate assets.  At all relevant times, the Trafigura Defendants have acted in a commercially reasonable

manner, purchasing contracts at low prices and selling them at high ones.  Accordingly, under Plaintiffs' own test for identifying manipulative intent, the allegations against the Trafigura Defendants are insufficient to prove specific intent.

Lastly, in support of their Sherman Act claims against TBBV and TAG, Plaintiffs cite broad, conclusory allegations about the Defendants as a whole.  Plaintiffs do not identify any allegations describing specific, unlawful conduct by the Trafigura Defendants.  Plaintiffs' failure to plead specific facts showing that TBBV and TAG entered into agreements to restrain trade or monopolize the market is fatal to their Sherman Act claims.[6]

Not one of the Plaintiffs' arguments in their Oppositions cures the deficiencies in the Complaints.  Plaintiffs have not, as they must, alleged facts specific to TBBV and TAG.  Instead, they rely on general conclusions regarding all Defendants and improperly ascribe conduct by other Defendants to TBBV and TAG.  In fact, the few allegations specifically related to TBBV and TAG demonstrate that the Trafigura Defendants engaged in legitimate, economically justifiable trades in which they bought contracts at low prices, and sold them at high prices.  Such commercially rational conduct is not unlawful and cannot support any of the Plaintiffs' claims against the Trafigura Defendants.

---

[6]  Plaintiffs do not advance any substantive arguments as to why the false reporting, unjust enrichment, and state law claims should not be dismissed against TBBV and TAG.  (Trader Plaintiffs Opp., at ¶¶ 9, 10, Landholder Plaintiffs Opp., at ¶ 25).  Instead, Plaintiffs rely on the broad, generalized arguments regarding all Defendants that are set forth in the Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint (Case No. 13-md-2475 ALC) (ECF No.,253).("Trader Plaintiffs' Omnibus Memo").  For the reasons set forth in the Joint Trader Reply Memorandum and the Joint Landholder Reply Memorandum, these conclusory claims should be dismissed against TBBV and TAG.

## II.    ARGUMENT

### A.    Plaintiffs Fail to Allege Facts Specific to TBBV and TAG

The Complaints against the Trafigura Defendants should be dismissed for "failure to isolate the key allegations against" TBBV and TAG.  *Ochre LLC v. Rockwell Architecture Planning & Design*, *P.C.*, No. 12 Civ. 2837, 2012 WL 6082387, at * 6 (S.D.N.Y. Dec. 3, 2012).  As discussed in the Trafigura Memorandum, TBBV and TAG are two separate and distinct companies that Plaintiffs' improperly lump together and label as "Trafigura."  (Trafigura Memorandum, at ¶ 8; Trader Complaint, at ¶¶ 43-44; Landholder Complaint, at ¶¶ 16-17).  The Complaints do not allege conduct specific to either TBBV or TAG.  (*Id.*).  Pursuant to Rule 8 of the Federal Rules of Civil Procedure, such generalized and undifferentiated allegations are insufficient to state a claim against TBBV or TAG.  *See Atuahene*, 10 Fed. Appx at 34; Trafigura Memorandum, at 7-8.

Recognizing these deficiencies, Plaintiffs attempt to rewrite the Complaints in their Oppositions.  (Trader Plaintiffs' Opp., at ¶¶ 2-3).  For example, Plaintiffs claim, for the first time, that TBBV engaged in the manipulative trades and that TBBV and TAG acted together to influence Brent Crude Oil prices.[7]  (Trader Plaintiffs' Opp., at ¶ 3).  The Complaints, however, contain no allegations that TBBV engaged in the trades.  (Trader Complaint, at ¶¶ 346-369, 399-400, 404-10, 460; Landholder Complaint, at ¶ 133).  Instead, the Complaints only allege that "Trafigura" executed the trades.  (*Id.*).  In addition, unlike the new arguments raised in Plaintiffs' Oppositions, the Complaints do not allege that TBBV and TAG acted together to manipulate

---

[7] For example, when summarizing the allegations against the Trafigura Defendants in their Oppositions, Plaintiffs state that "TBBV engaged in episodic manipulative trading in the MOC during at least February 2011 and September 2012."  (Trader Plaintiffs' Opp., at ¶ 3).  Plaintiffs do not make similar claims with respect to TAG however.  (*Id.*).  Indeed, the only factual allegations Plaintiffs issue against TAG relate to TAG's general business operations.  (*Id.*).

prices, restrain trade, or monopolize the market.[8]   (*Id.*).   Plaintiffs are not permitted to cure a deficient complaint through their Oppositions.   *E.g.*, *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99 Civ. 10452 (GBD), 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004).

Because Plaintiffs concede that TAG did not participate in any of the alleged manipulative trades, the Complaints should be dismissed against TAG for this reason alone. (Trafigura Memorandum, at 8 n. 9).   Plaintiffs claim that "it is of no moment" that TAG "did not participate in the manipulative MOC trades," because the "alleged symbiotic trading of Brent Physical and derivatives to influence and cause artificial prices in the Brent markets is more than sufficient to state a claim against TAG."   (Trader Plaintiffs' Opp., at 3).   But, Plaintiffs do not allege any facts establishing a connection between TAG and the "alleged symbiotic trading of Brent Physical and derivatives."   Plaintiffs merely allege that TAG, a subsidiary of Trafigura, (a) manages and hedges "Trafigura's" price risks and global positions, and (b) imports crude oil benchmarked and priced as a differential to Brent.   (*Id.* at 3; Trader Complaint at ¶¶ 479, 491). In other words, Plaintiffs' claims against TAG are solely based upon its subsidiary relationship with "Trafigura" and TAG's general business operations – nothing more.   Such allegations simply do not state a claim against TAG.   *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-57 (2007) (a viable complaint must allege facts that, if proven, would establish a "plausible" claim for relief); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (courts must be able to "infer more than the mere possibility of misconduct").

---

[8]   Even if the Complaints alleged that TBBV and TAG acted together to restrain trade or manipulate prices, such conclusory allegations are insufficient to withstand a motion to dismiss.   *See* Trafigura Memorandum, at 9; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("[t]hreadbare recitals of the elements of a cause of action . . . do not suffice").

**B.**    **Plaintiffs' CEA Claims Against the Trafigura Defendants Should Be Dismissed**

    **1.**    The Complaints Do Not Allege Facts Demonstrating Manipulative Intent or Conduct

The CEA claims against the Trafigura Defendants are based upon seven trades over four days (Trader Complaint, ¶¶ 350-51, 364, 399-405; Landholder Complaint, ¶ 133).  The only facts Plaintiffs allege about these seven trades are that the Trafigura Defendants purchased contracts at low prices or sold them at high ones.[9]  (*Id.*).  Plaintiffs allege *no* facts suggesting that the Trafigura Defendants intended to manipulate prices or otherwise acted improperly.  (*Id.*). Rather, Plaintiffs claim that other defendants executed these trades for manipulative purposes and assume, with no factual support, that the Trafigura Defendants must have colluded with the other defendants to manipulate prices.[10]  (*Id.*).  Because Plaintiffs "do not point to a specific instance in which [the Trafigura Defendants] engaged in a manipulative manner, and instead rely on conclusory statements about actions [other] defendants allegedly took to further their scheme," the CEA claims should be dismissed.  *In re Crude Oil Commodity Litig.*, No. 06-cv-6677, 2007 WL 1946553, at *7 (S.D.N.Y. June 28, 2007).

Not surprisingly, Plaintiffs ignore the deficiencies in their CEA claims and assert yet another new legal theory in their Oppositions.  Specifically, Plaintiffs argue, for the first time, that the allegations in the Complaint are sufficient to establish specific intent because the

---

[9]  Such activity is evidence of normal, economically self-motivated behavior and is not a basis for a manipulation claim.  *See In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 534-35 (S.D.N.Y. 2008) ("the laws that forbid market manipulation should not encroach on legitimate economic decisions").

[10]  For example, in support of its claims, Plaintiffs state that "Trafigura participated in four trades with Shell whereby the prices . . . were progressively walked higher over the [MOC Period]" and "[a]lthough Shell may have been driving the trades, it does not mean that Trafigura was not aware of and did not participate in Shell's conduct and should not be held liable for it."  (Trader Plaintiffs' Opp., at ¶ 7).  Plaintiffs do not allege any facts, however, demonstrating that Trafigura "was aware of" or "participated" in Shell's conduct.  (*Id.; see also* Trader Complaint, at ¶¶ 350-51).  Similarly, Plaintiffs claim that "Trafigura participated in a larger manipulation of the Dated Brent Crude market downward" in September 2012, but the only facts alleged in support of this claim are that Trafigura purchased (1) one contract from BP at a low price; and (2) one contract from Vitol for a low price.  (Trader Plaintiffs' Opp., at ¶¶ 6-7).

Trafigura Defendants engaged in uneconomic transactions constituting "strong circumstantial evidence of conscious misbehavior or recklessness." (Trader Plaintiffs' Opp., at ¶ 5). This new theory does not resuscitate the CEA claims. The Complaints do not allege any facts demonstrating an "extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant[s] or so obvious that the defendant[s] must have been aware of it."[11] *Rothman v. Gregor*, 220 F.3d 81, 90 (2d. Cir. 2000) (quoting *Rolf v. Blyth Eastman Dillon & Co.,* 570 F.2d 38, 47 (2d Cir. 1978)). Rather, as discussed above, Plaintiffs' allegations merely show that the Trafigura Defendants purchased contracts at low prices, and sold them at high prices in the ordinary course of business. There is nothing "extreme" or "uneconomical" about such conduct.[12]

Indeed, the only "strong circumstantial evidence" cited by the Plaintiffs is the alleged "wash" trade with Shell in September 2012. (Trader Plaintiffs' Opp., at ¶ 7). Plaintiffs allege that on September 25, 2012, the Trafigura Defendants purchased a contract from Shell at a low price. (Trader Complaint, at ¶ 399; Landholder Complaint, at ¶ 133). The following day, Shell offered the same contract that it previously sold to the Trafigura Defendants, but quickly withdrew the offer. (Trader Complaint, at ¶ 400). Plaintiffs claim that this conduct constitutes

---

[11] The "conscious misbehavior or recklessness" standard is exacting and will only be met where plaintiffs allege specific facts that defendants: (1) "engaged in deliberately illegal behavior;" (2) "knew facts or had access to information suggesting that their public statements were not accurate;" or (3) "failed to check information they had a duty to monitor." *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000).

[12] The decisions relied upon by Plaintiffs in support of this "recklessness" argument are inapplicable. (Trader Plaintiffs' Opp., at ¶ 6). First, neither opinion evaluates intent under the recklessness standard. Second, both cases are distinguishable from the facts alleged against TBBV and TAG. For example, *In re Matter of Daniel Shak & SHK Mgmt.,* 2013 WL 7085760 (C.F.T.C. Nov. 25, 2013) is a CFTC case in which the court, not applying the Federal Rules of Civil Procedure, determined that respondents were liable for attempted manipulation based on "aggressive" purchasing and selling such as "banging the close." Here, there are no allegations of "banging the close" or "aggressive" trading behavior. In *In re Crude Oil Commodity Futures Litig.,* 913 F. Supp. 2d 41 (S.D.N.Y. 2012), the court determined that the defendant's (1) purchase of a dominant share of physical oil (when he did not need it), and (2) subsequent sale of the share at an uneconomic time constituted willful intent to acquire monopoly power because there was no rational business purpose for the conduct. In this case, however, the Complaints contain no such allegations against the Trafigura Defendants. In fact, the allegations demonstrate the opposite – TBBV and TAG purchased and sold contracts at economic times for rational business purposes.

"strong circumstantial evidence" that Trafigura resold the same contract to Shell and that a wash trade occurred.  (Trader Plaintiffs' Opp., at ¶ 7).  According to Plaintiffs, this wash trade served "no other economically justifiable or rational purpose than to manipulate the Platts Dated Brent assessment downward."  (*Id.*).

Plaintiffs do not explain, however, why this trade constitutes "recklessness," or how it benefitted the Trafigura Defendants in an unlawful way.  (*Id.*, at ¶ 7).  In addition, as previously discussed in the Trafigura Memorandum, Plaintiffs label the September 25 trade a "wash," but fail to allege any facts supporting that conclusion.  (Trafigura Memorandum, at ¶ 6-7).  A "wash" result occurs when a party purchases and sells the same delivery month, of the same futures contract, at the same (or similar) price.  (*Id.* at ¶ 7).  Plaintiffs do not allege any facts demonstrating that the Trafigura Defendants re-sold to Shell the same futures contract, for the same delivery month, at the same or similar price.  (Trader Complaint, ¶¶ 399-40, Landholder Complaint, at ¶ 133).  Accordingly, the allegations regarding the September 25, 2012 trade do not constitute "strong circumstantial evidence" of a "wash" trade, let alone reckless conduct.

Plaintiffs also claim that they have sufficiently alleged facts of manipulative or uneconomic intent because the inference that the Trafigura Defendants sought to benefit from manipulating prices is stronger than the "innocent" inference.  (Trader Plaintiffs' Opp., at ¶ 6).  In support of this claim, Plaintiffs state the following:

> Ultimately, whether Plaintiffs pled scienter requires a balancing of the competing inferences of manipulation and innocence.  Here, the inference that Trafigura sought to benefit from manipulating Brent prices through uneconomic activity is far stronger than the innocent alternative, that Trafigura, a for-profit corporation staffed by professional traders, engaged in money-losing strategies and the waste of corporate assets.

(*Id.*, at ¶ 6) (citation omitted).  Plaintiffs thereby admit that to allege "scienter," they must show that the defendants engaged in "money-losing strategies" and the "waste of corporate assets."

8

(*Id.*).  Applying Plaintiffs' own definition of manipulative intent, the only inference to be drawn from the allegations against the Trafigura Defendants is that the seven trades at issue constituted normal, economically rational trading activity.  Far from engaging in "money-losing strategies," the Trafigura Defendants engaged in commercially rational transactions by purchasing contracts at low prices, and selling them at high prices.[13]

> **2.**     **The Complaints Lack Any Facts Demonstrating that TBBV and TAG Had the Ability to Influence Market Prices or Caused Artificial Prices**

As noted in the Trafigura Memorandum, the Complaints lack specific facts as to how the Trafigura Defendants (a) influenced market prices;[14] or (b) caused artificial prices.  (Trafigura Memorandum, at 11-13).   The Complaints merely allege general facts about the business operations of TBBV and TAG and assert that the "Defendants," as a whole, caused artificial prices.  (Trafigura Memorandum, at 12).  In their Oppositions, Plaintiffs ignore the allegations in the Complaints and conclude that the Trafigura Defendants (1) had the ability to influence prices because they traded during periods of manipulation, and (2) Trafigura's trading activity led to artificial prices.  (Trader Plaintiffs' Opp., at ¶ 5, 8) (citing Trader Complaint, at ¶¶ 350-51; 383; 399-400).

In support of these arguments, Plaintiffs improperly rely on conclusory allegations about the purpose and impact of the trades executed by the Trafigura Defendants.[15]  (Trader Plaintiffs

---

[13] Plaintiffs further claim that the Trafigura Defendants traded "during periods of known manipulation" which, combined with other incidents, "raises an inference that Trafigura participated in manipulative trading conduct throughout the period."  (Trader Plaintiffs' Opp., at ¶ 8).  These statements are conclusory and fail to rectify the deficiencies in the claims against TBBV and TAG.

[14] Plaintiffs claim that "Trafigura readily admits that its trading activity influences supply and demand for Brent Crude Oil."  (Trader Plaintiffs' Opp., at ¶ 4) (citing Trader Complaint, at ¶ 479; and Trafigura Memorandum, at ¶ 11).  Plaintiffs misstate the record.  The Complaint alleges that "Trafigura uses its global presence, market knowledge and logistics capabilities *to balance* supply and demand [in the crude oil market]."  (Trader Complaint, at ¶ 479) (emphasis added).  The Complaint does not allege, and the Trafigura Defendants certainly do not admit, that its trading activity influences supply and demand for Brent Crude Oil.

[15] For example, Plaintiffs conclude, without citing facts specific to TBBV or TAG, that (1) a "single sale to Trafigura cemented the lower prices into Platts April Case BFOE Price;" (2) the "wash trade with Shell [was]

Opp., at ¶¶ 5, 8-9; Trader Complaint, at ¶¶ 350-51; 364, 383; 399-400). Such conclusions, without factual support, cannot possibly establish that the Trafigura Defendants had the ability to influence prices or caused artificial prices. *Iqbal*, 556 U.S. at 678-79 (a complaint based on "nothing more than conclusions" does not satisfy the pleading requirements of the Federal Rules of Civil Procedure). Furthermore, Plaintiffs do not allege any facts explaining or describing how these specific trades prove that the Trafigura Defendants had the ability to influence prices, let alone how they caused artificial prices.

### C.   The Aiding and Abetting or Principal-Agent Liability Claims Are Similarly Deficient

As demonstrated by the Trafigura Memorandum, Plaintiffs claims for aiding and abetting and principal-agent liability fail for the following reasons:

- Plaintiffs do not allege any facts suggesting that the Trafigura Defendants were employed as an agent of or controlled by any other Defendant;[16] and

- Plaintiffs fail to allege facts supporting an inference that the Trafigura Defendants knew of any other Defendant's purported intent to manipulate the market and intended to assist in the manipulation or performed any acts in furtherance thereof.[17]

Plaintiffs concede that they have not alleged sufficient facts to support these claims as they make no effort to refute any of the foregoing arguments in their Oppositions. (Trader Plaintiffs' Opp., at ¶ 9). Once again, Plaintiffs merely conclude, without factual support, that the

---

designed to influence the MOC process and prices of Dated Brent;" (3) "Trafigura's trades with Shell on February 24, 2011 set the April Cash BFOE price higher than it otherwise would have been;" and (4) "Trafigura's purchase from BP on September 5, 2012 led to lower prices in the Platts MOC pricing methodology and ensured that Platts would report prices at the lower numbers." (Trader Plaintiffs' Opp., at ¶¶ 5, 8-9). Notwithstanding the fact that the allegations in the Complaint do not support these conclusions, Plaintiffs do not explain how the conduct of TBBV or TAG specifically influenced or caused artificial prices, nor do Plaintiffs cite any facts supporting their conclusions about the alleged intent of the Trafigura Defendants.

[16] In order to establish principal-agent liability under the CEA, Plaintiffs must allege facts demonstrating: (1) "the principal's manifestation of intent to grant authority to the agent; and (2) agreement by the agent." *In re Amaranth Natural Gas Commodities Litig.*, 612 F. Supp. 2d 376, 385 (S.D.N.Y. 2009).

[17] The elements of aiding and abetting manipulation under the CEA are that a defendant "(1) had knowledge of a principal's intent to manipulate the market and intended to assist to further that manipulation, and (2) performed an act in furtherance of that manipulation." *Id*. at 389.

seven trades conducted by the Trafigura Defendants in 2011 and 2012 were "collusive."  (*Id.*).

Such generalized statements are insufficient to support aiding and abetting claims against the

Trafigura Defendants.  *Krause v. Forex Exch. Mkt.*, 356 F. Supp. 2d 332,  338 (S.D.N.Y. 2005)

(holding that elements of a claim for aiding and abetting manipulation under the CEA must be

pled with particularity); *see also In re Platinum & Palladium Commodities Litig.*, 828 F. Supp.

2d 588, 599 (where complaint "fails to allege the requisite intent of any primary actor, there can

be no aiding and abetting liability as a matter of law").

### D.        The Allegations Are Insufficient To State a Sherman Act Claim

The Trafigura Memorandum demonstrates that Plaintiffs allege *no* facts showing that the

Trafigura Defendants entered into an agreement with any other Defendant to restrain trade or

monopolize the market.  (Trafigura Memorandum, at ¶¶ 18, 21).  The Trafigura Memorandum

also illustrates the lack of non-conclusory allegations regarding the Trafigura Defendants'

specific intent to monopolize the market.   (Trafigura Memorandum, at ¶ 21).   Indeed, the

allegations in the Complaints demonstrate that "Trafigura" purchased or sold contracts in an

economically rational manner.  (Trafigura Memorandum, at ¶¶ 18, 21).

In their Oppositions, Plaintiffs attempt to cure the deficiencies in their Sherman Act

claims by improperly lumping all Defendants together and arguing that "each and every

Defendant . . . us[ed] their superior market position" to manipulate prices and that "Trafigura is

no different from other Defendants in this regard."  But Plaintiffs do not and cannot provide an

explanation as to why this is so.  The fact remains that the Complaints do not allege that the

Trafigura Defendants entered into agreements to restrain trade or monopolize the market.

(Trader Plaintiffs' Opp., at ¶ 10).  Accordingly, the Sherman Act claims against TBBV and TAG

should be dismissed.

11

## III.    CONCLUSION

For the foregoing reasons, Defendants Trafigura Beheer B.V. and Trafigura A.G. respectfully request that the Court dismiss the Complaints against the Trafigura Defendants.


Dated:        New York, New York                  QUINN EMANUEL URQUHART
              November 26, 2014                    & SULLIVAN LLP

                                                   By: _____
                                                   William A. Burck
                                                   Stephen M. Hauss
                                                   777 6th Street, N.W., 11th Floor
                                                   Washington, D.C.  20001
                                                   Telephone:  (202) 538-8000
                                                   Facsimile:  (202) 538-8100

                                                   *Attorneys for Trafigura Beheer B.V. and Trafigura A.G.*