UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: NORTH SEA BRENT CRUDE OIL FUTURES LITIGATION<br><br>This document applies to:<br><br>Case Nos. 13-cv-03473-ALC, 13-cv-03587-ALC, 13-cv-03944-ALC, 13-cv-04142-ALC, 13-cv-04553-ALC, 13-cv-04872-ALC, 13-cv-04938-ALC, 13-cv-05577-ALC, 13-cv-07089-ALC, 13-cv-08030-ALC, 13-cv-08151-ALC, 13-cv-08179-ALC, 13-cv-08240-ALC and 13-cv-08270-ALC. | 1:13-md-02475-ALC |

**REPLY IN SUPPORT OF TRADER PLAINTIFFS' MOTION *IN LIMINE*
TO EXCLUDE THE OPINIONS OF STATOIL'S EXPERT, DR. CULP**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................1

I. DR. CULP'S OPINION REGARDING PHYSICAL LIQUIDITY DOES NOT SATISFY FED. R. EVID. 702..................................................................................................1

II. DR. CULP'S OPINION CONCERNING PLATTS DOES NOT SATISFY FED. R. EVID. 702 ........................................................................................................................3

III. DR. CULP'S OPINION CONCERNING PHYSICAL-FUTURES RELATIONSHIPS DOES NOT SATISFY FED. R. EVID. 702. ........................................................................6

IV. DR. CULP'S UNTESTED THEORY THAT STATOIL'S MANIPULATION DID NOT DIRECTLY AFFECT *BRENT FUTURES* (AS OPPOSED TO THE *UNITED STATES* GENERALLY) IS IRRELEVANT. ..................................................................8

CONCLUSION.................................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.,*
 303 F.3d 256 (2d Cir. 2002)............................................................................................2, 7

*Campbell v. Metro Prop. & Cas. Ins. Co.,*
 239 F.3d 179 (2d Cir. 2001)..................................................................................................9

*Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co., Ltd.,*
 769 F. Supp. 2d 269 (S.D.N.Y. 2011)...................................................................................6

*In re Crude Oil Commodity Futures Litig.,*
 913 F. Supp. 2d 41 (S.D.N.Y. 2012).....................................................................................6

*Drake v. Allergan, Inc.,*
 No. 13 Civ. 234, 2014 WL 5392995 (D. Vt. Oct. 23, 2014) ................................................6

*In re Elec. Books Antitrust Litig.,*
 11 MD 2293, 2014 WL 1282298 (S.D.N.Y. Mar. 28, 2014)............................................2, 7

*Highland Capital Mgmt., L.P. v. Schneider,*
 379 F. Supp. 2d 461 (S.D.N.Y. 2005)................................................................................4, 6

*King (Marlowe) v. Commissioner of the Internal Revenue,*
 89 T.C. 445 (T.C. 1987)........................................................................................................6

*Kumho Tire Co. v. Carmichael,*
 526 U.S. 137 (1999)..........................................................................................................2, 7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
 935 F. Supp. 2d 666 (S.D.N.Y. 2013)...................................................................................9

*S.E.C. v. Bronson,*
 14 F. Supp. 3d 402 (S.D.N.Y. 2014).....................................................................................5

*In re Soybean Futures Litig.,*
 892 F. Supp. 1025 (N.D. Ill. 1995) .......................................................................................6

*United States v. Mejia,*
 545 F.3d 179 (2d Cir. 2008).............................................................................................4, 5

*United States v. Mulder,*
 273 F. 3d 91 (2d Cir. 2001)...................................................................................................3

*Virtual Countries, Inc. v. Republic of South Africa,*
 300 F. 3d 230 (2d Cir. 2002) ............................................................................................5, 6

*Zerega Ave. Realty Corp. v. Hanover Ins. Co.,*
　　No. 04 Civ. 9651, 2006 WL 1343643 (S.D.N.Y. May 17, 2006) ......................................... 3

*Zimmerman v. Chicago Bd. of Trade,*
　　360 F.3d 612 (7th Cir. 2004) ............................................................................................... 6

## Federal Statute

28 U.S.C. § 1605 ................................................................................................................................ 9

**PRELIMINARY STATEMENT**

Statoil's Response[1] fails to demonstrate how Dr. Culp's opinions, which are devoid of economic analysis, satisfy Fed. R. Evid. 702. None of Dr. Culp's opinions showing the "indirectness" of the alleged conduct's effect on Brent futures is supported by scientific testing or methodology, and all should be excluded under Fed. R. Evid. 702.

**ARGUMENT**

**I.   Dr. Culp's Opinion Regarding Physical Liquidity does not Satisfy Fed. R. Evid. 702.**

Statoil cannot resurrect Dr. Culp's speculative and untested theory that liquidity in the physical Brent markets eliminates or mitigates price artificiality caused by its aberrant trades. Resp. 16-18. As the Opening Brief explained, Dr. Culp merely recites historical liquidity developments in the physical Brent market: the addition of oil fields, increasing the minimum number of days in which sellers may deliver Brent cargoes, and the introduction of price escalators and de-escalators. Br. 6 (citing Culp Decl. ¶¶44-46, 48, 50).[2] At the same time, he acknowledges several liquidity-reducing factors: annual physical Brent production is declining (*id*. 5-6 (citing Culp Decl. ¶44)), the Forties stream is essentially the only stream that competes (*id*. 6 (citing Culp Dep. 136:5-21)),[3] and that a single manipulative trade can impact subsequent prices (*id.* 6 (citing Culp Dep. 244:3-245:9)). In addition, Dr. Culp concedes that he has never studied – generally, or for this case – how quickly such artificiality dissipates. *Id*. (citing Culp Dep. 241:8-20). Against this backdrop, it was incumbent upon Dr. Culp to perform analytical testing that would connect his logical leap from the existence of liquidity features

---

[1] Statoil's Opposition to Plaintiffs' Motion *in Limine* to Exclude the Opinions of Dr. Culp [ECF No. 287] is referred to as "Statoil's Response" and cited as "Resp. __."

[2] The Corrected Declaration of Christopher L. Culp (ECF No. 242) is referred to as the "Culp Declaration" and cited as "Culp Decl. ¶__."

[3] The deposition of Dr. Culp is attached as Exhibit I to the Declaration of Anthony F. Fata (ECF No. 258-9).

1

(notwithstanding illiquidity developments) to the absence of artificiality, but, tellingly, he failed to undertake this testing. Br. 13-15. Similarly, Dr. Culp, by his own admission, has no experience studying how quickly artificiality in the physical Brent market dissipates. Culp Dep. 241:8-20.

Although a "minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method" might not require exclusion, exclusion is warranted "if the flaw is large enough that the expert lacks good grounds for his or her conclusions." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). Here, the flaw is sufficiently large: there is no methodology at all. But Statoil cannot merely "call an expert economist to present opinions unless those opinions are the product of the expert's rigorous application of economic methods." *In re Elec. Books Antitrust Litig.*, 11 MD 2293, 2014 WL 1282298, at *20 (S.D.N.Y. Mar. 28, 2014). Here, Statoil wants the Court to assume that because there are some liquidity features in the physical Brent market, there was no artificiality in futures or that it was somehow dissipated. But "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 157 (1999) (citation omitted).

Statoil's Response in fact **concedes** that Dr. Culp failed to rule out the possibility of Statoil manipulation in the physical market. "Plaintiffs further suggest that Dr. Culp concludes that there is 'no way to manipulate the Brent physical market. . . . Again, nowhere in his declaration does Dr. Culp offer such a definitive and far-reaching opinion." Resp. 17. "Dr. Culp never opines on whether liquidity *actually* dissipated any manipulation." *Id*. 16. In so doing, Statoil mischaracterizes Plaintiff's expert, Dr. Seyhun (Resp. 16), who opines, based on real analysis, that a manipulator can take advantage of the connection between the spot market and

the futures market by trading futures during and after periods of artificiality.  Seyhun Rpt. ¶54.[4] In contrast to Dr. Culp, Dr. Seyhun provides empirical evidence demonstrating that price changes between spot and futures are transmitted mostly one for one.  Seyhun Rpt. ¶32.

Dr. Culp's Opinion supposedly "draws on public literature and his own experience as an economist."  Resp. 17.[5]  His "public literature" includes no academic studies, consisting only of news and Platts' publications that discuss the physical market without addressing artificiality or dissipation.  Culp Decl. ¶¶ 42-51.  Dr. Culp only recites materials concerning "lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help."  *United States v. Mulder,* 273 F. 3d 91, 101 (2d Cir. 2001) (internal quotations and citations omitted).

## II.    Dr. Culp's Opinion Concerning Platts does not Satisfy Fed. R. Evid. 702.

Statoil also cannot resurrect Dr. Culp's opinion that Platts would have excluded Statoil's aberrant trades from its final price assessments.  Resp. 18-21.  This opinion is based solely on Dr. Culp's self-serving recitation of select portions of Platts' documents.  Br. 15-18.  Dr. Culp acknowledged that he has no personal knowledge of or professional experience concerning whether Platts removes aberrant trades.  Culp Dep. 44:5-11, 44:18-21.  Nor does he know if Platts ever investigated Statoil or other MOC participants for making manipulative reports.  *Id*. 49:14-51:15.  Further, Dr. Culp performed no analysis to determine whether Statoil's alleged misconduct affected Platts' assessments.  *Id*. 23:5-15, 28:4-15, 44:5-46:20.  And he conceded

---

[4] The Rebuttal Report of Dr. H. Nejat Seyhun [ECF No. 261] is referred to as the "Seyhun Report" and cited as "Seyhun Rpt. ¶__."

[5] Statoil relies on *Zerega Ave. Realty Corp. v. Hanover Ins. Co.*, No. 04 Civ. 9651, 2006 WL 1343643, at *4 (S.D.N.Y. May 17, 2006), for the proposition that "educational background" and "experience" is a "reliable methodology" for forming opinions.  In *Zerega* however, the expert engineer had personally observed plaintiff's marine facility both before and after a barge accident that led to the lawsuit. The court allowed him to testify concerning the cause of the damage to the marine facility based on his "education as an engineer and his hands-on experience designing and inspecting marine facilities, **as well as his pre-and post-injury observations of the plaintiffs' marine structure**, which is the subject of the instant action." *Id*. (emphasis added).  Here, Dr. Culp does not claim to have observed market artificiality in real-time and did not study it for this case.

that the Platts' statements on which he relied were inherently self-serving: "it's their attempt to say here's why what we do is good." *Id*. 232:15-17.  Dr. Culp also testified that it is possible that Statoil's manipulative trades affected Platts' final price assessment.  *Id.* 31:22-32:20 (spoofs); 35:16-24, 39:11-40:7 (shams); 41:22-42:17 (washes).

An expert cannot "simply rehash[] otherwise admissible evidence about which he has no personal knowledge." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468-69 (S.D.N.Y. 2005) (expert opinions that simply re-stated record evidence ruled inadmissible).  The expert has to add something.  "Otherwise, the expert is simply 'repeating hearsay evidence without applying any expertise whatsoever . . . ." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (expert opinions that simply rehashed witness interviews ruled inadmissible).  The Court is just as well-situated to draw its own conclusions about the Platts publications.

In an attempt at misdirection, Statoil claims that Dr. Culp's selective parroting of Platts' publication is acceptable because Plaintiffs' experts rely on these same materials.  Resp. 15-16 (citing Osterwald Report ¶28; Seyhun Rpt. ¶¶27, 30).  Not so.  The quoted paragraphs of the Seyhun Report demonstrate the direct relationship between Platts' physical Brent price assessments and Brent futures prices and do not speak to Platts' processes.  Seyhun Rpt. ¶¶27, 30.  The Osterwald Report demonstrates that certain defendants "dominated" the MOC process during certain periods.  Osterwald Rpt. ¶28.  In fact, Mr. Osterwald opined that Platts does **not** rule out aberrant trades based on his personal observations (*Id*. ¶23) and analysis of the Platts MOC process.[6]

Statoil concedes that Dr. Culp did not "unequivocally declare[] that 'Platts removed aberrant trades from its final price assessments.'"  Resp. 18.  "Nowhere in his declaration does

---

[6] Statoil's argument that "Plaintiffs' own expert, Mr. Osterwald, agrees that Platts has the ability to ignore aberrant trades and may do so in some circumstances," Resp. 19, is a distortion.

Dr. Culp opine that Platts in fact removed any allegedly aberrant trades from its final price assessment." *Id*. "Dr. Culp instead says that Platts could do so, would have economic incentives to do so, and that doing so would have mitigated or eliminated any price distortion." *Id*. at 18-19 (citing Culp Decl. ¶62). Conjecture of this sort is unavailing in the absence of any study.

Statoil is in error that "Dr. Culp does not seek to, nor is he required to, show whether Platt[s'] price assessments would have been different *but-for* Statoil's alleged manipulative Brent physical trades. It is Plaintiffs who have the burden to make such allegations, yet [they] have entirely failed to do so in this action." Resp. 19. To the contrary, although Plaintiffs sufficiently pled jurisdiction and were not required to plead around Statoil's FSIA defense,[7] the gravamen of the Complaint is that Platts' price assessments would have been different but for Statoil's aberrant reports. *See*, *e.g.*, CAC ¶¶8, 17, 270-71.[8]

Statoil wrongly argues that Dr. Culp's opinion concerning Platts' removal of aberrant trades "need not be based on personal knowledge," and nor is he required to "have actually collected the data on which [he bases] his conclusions in order to be credible." Resp. 20. Dr. Culp was required to do something more than simply selectively quote from Platts' public statements, which the Court can independently assess. *See Mejia*, 545 F.3d at 197 (expert opinions that simply rehashed witness interviews ruled inadmissible); *Highland Capital Mgmt.*,

---

[7] *See S.E.C. v. Bronson*, 14 F. Supp. 3d 402, 411 (S.D.N.Y. 2014). *Twombly* "did not revise the allocation of burdens concerning affirmative defenses," and "[c]omplaints need not anticipate, and attempt to plead around, potential affirmative defenses" (citations and internal quotations omitted)). Under the FSIA, it is the defendant that must first present a *prima facie* case that it is a foreign sovereign, or is an instrumentality thereof. *Virtual Countries, Inc. v. Republic of South Africa*, 300 F. 3d 230, 241 (2d Cir. 2002) (citations omitted).

[8] The Trader Plaintiffs' Amended Consolidated Class Action Complaint [ECF No. 166] is referred to as the "Complaint" and cited as "CAC ¶__."

379 F. Supp. 2d at 468-69 (expert opinions that simply re-stated record evidence ruled inadmissible).[9]

Statoil suggests that Plaintiffs' only criticism of Dr. Culp is that he reviewed certain Platts' publications but ignored others. Resp. 21. It is true that he repeats Platts' self-serving statements and ignores text in the same documents that directly contradict his opinions. In particular, Dr. Culp's quotes make it clear that Platts only "occasionally" conducts secondary checks on trades and "cannot make any guaranty . . . about how and whether market information received and published but not fully adhering to its defined methodology will be incorporated into its final assessments." Br. 14 (quoting Fata Decl. Ex. D (Platts 2010 publication) at 3, 4)). [10]

## III. Dr. Culp's Opinion Concerning Physical-Futures Relationships does not Satisfy Fed. R. Evid. 702.

Statoil cannot defend Dr. Culp's failure to test his novel theory that physical prices do not directly affect futures prices (Resp. 22-23), which contradicts the established principle that spot and futures prices converge.[11] Plaintiffs detail the many ways in which Brent futures and physical markets are interrelated. Br. 9-10 (explaining these mechanisms in detail). These relationships equal a "direct effect." *See Virtual Countries*, 300 F. 3d at 237 ("'[A]n effect is

---

[9] Statoil's reliance on *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co., Ltd.*, 769 F. Supp. 2d 269 (S.D.N.Y. 2011), for this proposition is misplaced. There, the experts did not make "conclusory assertions based on insufficient facts, but rather have made limited assertions tied directly to the limited evidence they have available to them." *Id*. at 285. Here, by contrast, Dr. Culp performed no analysis.

[10] Statoil's reliance on *Drake v. Allergan, Inc.*, No. 13 Civ. 234, 2014 WL 5392995 (D. Vt. Oct. 23, 2014), is misplaced. There, the court determined that one expert's testimony was sufficiently reliable because it was based on his "own extensive clinical experience and the scientific literature he reviewed." *Id*. at *3. Here, Dr. Culp has no "clinical" or personal experience with Platts' MOC process, and the literature he relied upon was, by his own admission, Platts' self-serving statements (Culp Dep. 232:15-17), not "scientific literature."

[11] *In re Crude Oil Commodity Futures Litig.*, 913 F. Supp. 2d 41, 52 (S.D.N.Y. 2012) ("futures and physical WTI markets converge as the expiration date of a futures contract approaches"); *In re Soybean Futures Litig.*, 892 F. Supp. 1025, 1056 n.33 (N.D. Ill. 1995) ("cash and futures prices tend to converge as the delivery date approaches; thus, they become readily substitutable for each other."); *King (Marlowe) v. Commissioner of the Internal Revenue*, 89 T.C. 445, 453 (T.C. 1987) ("a physical position which is 60 days from the delivery month, by virtue of being deliverable in 60 days, converges to the same price as that futures contract."); *Zimmerman v. Chicago Bd. of Trade*, 360 F.3d 612, 622 (7th Cir. 2004) ("the price of the futures contract resulted from normal market forces, was convergent with the July cash prices and was consistent with historical pricing trends and data.")

direct if it follows as an *immediate* consequence of the defendant's activity."). Nothing intervenes between distorted physical prices and distorted futures prices.

Dr. Culp admitted that it was possible to conduct such testing, but he did not do it. Culp Dep. 78:12-79:4. The Court is not obligated to accept his untested speculation as true. There are "scientific tools to study relationships between . . . markets, and to confirm causality." *In re Elec. Books Antitrust Litig.*, 2014 WL 1282298, at *18. "An economist who wished to measure the effect of an act on the market "would undertake an examination of that market and perform a study," and not leave "too great an 'analytical gap'" between the facts and the conclusion. *Id*. at *17; *Amorgianos,* 303 F.3d at 266. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire*, 526 U.S. at 157 (citation omitted). Platts, in fact, contradicts his *ipse dixit*, describing the direct relationship between its assessments and futures prices. "Futures settlements are often tied to spot market Platts covers," and "Derivatives 'price out' against Platts spot price assessments or futures settlements."[12] "Platts daily spot price assessments are used by … futures exchanges." Fata Decl. Ex. D (Platts 2010 Publication) at 2.

Statoil now concedes that Dr. Culp did not opine that "Statoil-manipulated Brent prices did not affect Brent futures." Resp. 22. "Dr. Culp never offers such an opinion." *Id*. Accordingly, Statoil acknowledges that Dr. Culp leaves open the question of whether Statoil's manipulation of the Brent physical prices directly affected Brent futures. Statoil insists that Dr. Culp "explained how any effect on futures prices would be indirect . . . ." *Id*. However, Dr. Culp never tested for the absence of directness – he just "says" the relationship is indirect. Also, Statoil does not grapple with the particular mechanisms (*e.g.*, cost-of-carry, particular contracts

---

[12] Platts Oil Benchmarks & Price Assessment Methodology, October 4, 2012 – London, at 7 available at: fas.gov.ru/netcat_files/410/523/PLATTS.pptx. This Platts' presentation also was referred to in the Opening Br. at 18, and a copy is attached to the Supplemental Declaration of Anthony Fata at Ex. J, filed herewith.

that settle to Brent physical prices and overlap around expiries) in the Brent market that make futures directly reflect physical prices.  Resp. 22.  Dr. Culp does not even know whether Statoil engaged in Brent futures trading – conduct that would directly affect futures prices.  Culp Dep. 164:22-25, 165:5.

Instead, Statoil argues that Dr. Culp did perform economic testing that undermines the studies in the Complaint concerning double reversals.  Resp. 22-23.  According to Statoil, Dr. Culp's test shows that "repeating the same Plaintiff-style analysis for the 7:30-8:00pm window shows the same declining MOC window price trend and so-called double reversal," which means "Plaintiffs' inference that there must be [a] close relation between the Brent Physical market and the Brent futures market that is unique to the MOC window is demonstrably false."  Resp. 23 (quoting Culp Decl. ¶¶97, 98).  His limited studies go to the question of whether there was manipulation (which he already is assuming existed, according to his declaration), and not to whether physical prices directly affect futures prices.[13]

## IV. Dr. Culp's Untested Theory that Statoil's Manipulation did not Directly Affect *Brent Futures* (as opposed to the *United States* Generally) is Irrelevant.

Statoil fails to explain how Dr. Culp's theory that Statoil's manipulation indirectly affected Brent futures is relevant to the inquiry of whether it affected the United States.  Resp.

---

[13] Dr. Culp's critique of Plaintiffs' study is deeply flawed because it assumes that Plaintiffs have only demonstrated a decline in mean returns during the 30-minute MOC.  Culp. Depo 268:17-270:10, 271:15-272:14.  However, Plaintiffs have demonstrated patterns of double reversals based on conditional correlations.  CAC ¶¶236-37, 239, 242.  These allegations show that conditional on a reversal during the MOC period, there is an opposite reversal after the MOC period.  Regardless of the mean returns, if prices increase between say 3:30p.m. and 4:00p.m. and then prices reverse between 4:00p.m. and 4:30p.m., evidence shows that it is likely to reverse again between 4:30p.m. and 5p.m.  This is what is meant by double reversal.  Dr. Culp does not employ a conditional correlation analysis in his critique and thus never conducted an equivalent double-reversal study.  Instead, he only showed that the mean return to Brent price is lower than otherwise not only during the MOC period but also during the period between 9a.m. to 9:30a.m. and the period between 7:30p.m. to 8p.m.  But even if Dr. Culp's evidence on mean returns shows additional periods of manipulation, this hardly constitutes exculpatory evidence for the Defendants.  As Dr. Seyhun's analysis indicates, these additional periods are also characterized as high liquidity periods.  Seyhun Rpt. ¶¶58-59.  Dr. Seyhun also points out that manipulators have incentives to hide behind liquidity provided by the market during these times.  Hence, if anything, Dr. Culp's evidence represents additional culpable manipulation by the Defendants.

23-24.  Under the third clause of Section 1605(a)(2), 28 U.S.C. §1605(a)(2), the inquiry is whether a defendant's conduct had a direct effect on the United States – not whether it had a direct effect on particular markets or the plaintiffs.  *See* Br. 21.  Because Dr. Culp did not address the broader, pertinent inquiry, his opinions are irrelevant and should be excluded under Fed. R. Evid. 401, 402 and 403.  *See Campbell v. Metro Prop. & Cas. Ins. Co.*, 239 F.3d 179, 184 (2d Cir. 2001) (in performing its gatekeeping function, "the trial court must determine whether the proffered expert testimony is relevant, *i.e.*, whether it 'has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'").

Preliminarily, Dr. Culp offers no opinions relevant to the FSIA questions under the first two clauses of Section 1605(a)(2), *i.e.*, whether Statoil engaged in commercial activity or acts in the United States on which the Trader Plaintiffs' claims are predicated.  Statoil concedes this point, but attempts to argue that Dr. Culp's failure to consider Statoil's manipulative trades on NYMEX and ICE is a product of the Complaint's failure to allege such futures trading.  Resp. 23.  The Complaint has no such shortcoming.  *See* CAC ¶474 ("Statoil . . . acknowledges that it trades crude oil and refined oil derivatives on ICE and NYMEX."); ¶ 543 ("Defendants [including Statoil] traded substantial volumes of Brent Crude Oil futures and other exchange-based derivatives tied to Brent Crude Oil," "knew, as sophisticated market participants, that the information they provided to Platts directly impacted the prices of Brent Crude Oil futures contracts and other Brent Crude Oil derivatives traded in the U.S.," and their "manipulation had the effect of benefitting Defendants' positions in the Brent Crude Oil futures" markets.).[14]

---

[14] Plaintiffs were not required to allege specific futures trades as "they could not reasonably be expected to do so at this stage of the litigation" because it "is not a matter of public knowledge." *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 716 (S.D.N.Y. 2013).

Applied to the third clause of the Section 1605(a)(2), Dr. Culp's testimony supports that Statoil's foreign commercial activities had a direct effect on the United States.  Brent is imported to the United States and refined into gasoline and heating oil (Culp Dep. 170:4-13, 183:4-17, 190:3-16).  When Brent prices are cheap relative to domestic oil, more Brent is imported. *Id*. 179:8-20, 183:4-17.  Moreover, physical Brent trading provides the basis for pricing 70-80 percent of the world's crude oil, including in the United States.  *Id*. 285:2-11.  There can be no question that manipulation of physical Brent directly affects U.S. physical Brent imports.

Statoil re-writes Dr. Culp's Declaration when it argues that he "assesses whether the alleged manipulation of the Platts Dated Brent assessment would have a direct effect on the United States – *i.e.*, whether any U.S. effects would occur as an immediate consequence of Defendants' alleged conduct" including impacts on "U.S. physical oil markets."  Resp. 13-14 (citing Culp Decl. ¶¶2, 41).  The entire thrust of Dr. Culp's opinion, however, is trained solely on whether Statoil's manipulation had a direct effect on Brent futures:  "I conclude that the conduct alleged in the Complaints would *not* have had a direct effect **on Brent- or WTI-based exchange contract markets** or U.S. land and lease holdings based on Brent or WTI prices."  Culp. Decl. ¶118 (emphasis added).[15]

## CONCLUSION

For reasons explained above and in the Opening Brief, Dr. Culp's opinions should be excluded in their entirety.

---

[15] Statoil argues that Plaintiffs' "direct effect" theory is tethered exclusively to Statoil's effect on NYMEX and ICE futures.  Resp. 23.  But the Complaint clearly alleges that Statoil imported millions of barrels of Dated Brent oil cargoes into the U.S. during the Class Period.  CAC ¶¶ 477, 491, 494.

DATED:  December 12, 2014

Respectfully Submitted,

**KIRBY McINERNEY LLP**

 /s/ *David E. Kovel*
David E. Kovel
Lauren Wagner Pederson, Of Counsel
Andrew M. McNeela
Thomas W. Elrod
dkovel@kmllp.com
lpederson@kmllp.com
amcneela@kmllp.com
telrod@kmllp.com
825 Third Avenue, 16th Floor
New York, New York  10022
Telephone:  (212) 371-6600
Facsimile:  (212) 751-2540

*Interim Lead Counsel for the Brent Derivative Trader Plaintiffs and Proposed Class*

| | |
|---|---|
| **BERGER & MONTAGUE, P.C** <br> Merrill G Davidoff <br> Michael Dell'Angelo <br> Candice J. Enders <br> mdavidoff@bm.net <br> mdellangelo@bm.net <br> cenders@bm.net <br> 1622 Locust Street <br> Philadelphia, PA  19103 <br> Telephone:  (215) 875-3084 <br> Facsimile:  (215) 875-4604 | **MOTLEY RICE LLC** <br> Michael M. Buchman <br> John Andrew Ioannou <br> David P. Abel <br> jioannou@motleyrice.com <br> mbuchman@motleyrice.com <br> dabel@motleyrice.com <br> 600 Third Avenue, 21st Floor <br> New York, NY  10016 <br> Telephone:  (212) 577-0051 <br> Facsimile: (212) 577-0054 |
| **GLANCY BINKOW & GOLDBERG LLP** <br> Brian Philip Murray <br> Lee Albert <br> Lionel Z. Glancy <br> bmurray@glancylaw.com <br> lalbert@glancylaw.com <br> lglancy@glancylaw.com <br> 122 East 42nd Street, Suite 2920 <br> New York, NY  10168 <br> Telephone:  (212) 682-5340 <br> Facsimile:  (212) 884-0988 | **LOWEY DANNENBERG COHEN &HART** <br> Vincent Briganti <br> Geoffrey M. Horn <br> vbriganti@lowey.com <br> ghorn@lowey.com <br> One North Broadway <br> White Plains, NY  10601 <br> Telephone:  (914) 997-0500 <br> Facsimile:  (914) 997-0035 |
| **LIEFF, CABRASER, HEIMANN & BERNSTEIN,LLP** <br> Steven E. Fineman <br> Douglas Ian Cuthbertson <br> sfineman@lchb.com <br> dcuthbertson@lchb.com <br> 250 Hudson Street, 8th Floor <br> New York, NY  10013 <br> Telephone:  (212) 355-9500 <br><br> Eric B. Fastiff <br> Brendan P. Glackin <br> efastiff@lchb.com <br> bglackin@lchb.com <br> 275 Battery Street 29th Floor <br> San Francisco , CA  94111-3339 <br> Telephone:  (415) 956-1000 | **CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP** <br> Bryan L. Clobes <br> bclobes@caffertyclobes.com <br> 1101 Market Street, Suite 2650 <br> Philadelphia, PA  19107 <br> Telephone:  (215) 864-2800 <br> Facsimile:  (215) 864-2810 <br><br> Anthony F. Fata <br> Daniel O. Herrera <br> afata@caffertyclobes.com <br> dherrera@caffertyclobes.com <br> 30 N. LaSalle, Suite 3200 <br> Chicago, IL  60602 <br> Telephone:  (312) 782-4880 <br> Facsimile:  (312) 782-4485 |

*Additional Counsel for Plaintiffs and Proposed Class*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was forwarded to all counsel of record through the Court's ECF system on December 12, 2014.

 /s/ David E. Kovel  
David E. Kovel
