**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

In re:                                                      1:13-md-02475 (ALC)

NORTH SEA BRENT CRUDE OIL FUTURES          [Oral Argument Requested]
LITIGATION

This document applies to:  ALL CASES.

-------------------------------------------------------------x

# MEMORANDUM IN SUPPORT OF DEFENDANT PHIBRO COMMODITIES LIMITED'S MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR LACK OF PERSONAL JURISDICTION

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Karl Stern
Pennzoil Place
711 Louisiana Street, Suite 500
Houston, Texas  77002-2721
Telephone: (713) 221 7000
Facsimile: (713) 221 7100
karlstern@quinnemanuel.com

*Attorneys for Defendant Phibro*
*Commodities Limited*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ............................................................................................................1

    A.    Phibro Commodities ................................................................................................1

    B.    Plaintiffs' Complaint................................................................................................3

ARGUMENT ..................................................................................................................................3

I.    PHIBRO COMMODITIES IS NOT SUBJECT TO THE COURT'S JURISDICTION .......................................................................................................................3

    A.    The Court Lacks General Jurisdiction over Phibro Commodities ...........................4

    B.    The Court Lacks Specific Jurisdiction over Phibro Commodities ..........................8

CONCLUSION .............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Banco Ambrosiano v. Artoc Bank & Trust Ltd.*,
    62 N.Y.2d 65 (1984) ...................................................................................................9

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    171 F.3d 779 (2d Cir. 1999).........................................................................................8

*Bensusan Rest. Corp. v. King*,
    126 F.3d 25 (2d Cir. 1997)...........................................................................................9

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014)..............................................................................1, 4, 5, 6, 7, 8

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011)............................................................................................4, 8

*Ingraham v. Carroll*,
    687 N.E.2d 1293 (1997)............................................................................................10

*J. McIntyre Machinery v. Nicastro*,
    131 S. Ct. 2780 (2011)................................................................................................9

*Nykcool A.B. v. Pac. Int'l Servs.*,
    120-c 2014 U.S. Dist. LEXIS 96007 (S.D.N.Y. July 15, 2014) .................................7

*Perkins v. Benguet Consol. Mining Co.*,
    342 U.S. 437 (1952).....................................................................................................5

*SEC v. Softpoint, Inc.*,
    No. 95 Civ. 2951, 2001 U.S. Dist. LEXIS 286 (S.D.N.Y. Jan. 18, 2001).................4

*Sonera Holding B.V., v. Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014)................................................................................3, 4, 7

*Troma Entm't. v. Centennial Pictures*,
    729 F.3d 215 (2d Cir. 2013)........................................................................................3

*Universal Trading & Inv. Co. v. Credit Suisse*,
    560 F. App'x. 52 n.1 (2d Cir. 2014) ............................................................................7

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014)............................................................................................8, 9

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000).......................................................................................6, 7

**<u>Statutes</u>**

N.Y. C.P.L.R. § 301 ...........................................................................................................................4

N.Y. C.P.L.R. § 302(a)(3) ................................................................................................................10

N.Y. C.P.L.R. § 302(2) ....................................................................................................................10

Defendant Phibro Commodities Limited ("Phibro Commodities") respectfully submits this memorandum of law in support of its motion to dismiss with prejudice the Second Amended Consolidated Class Action Complaint ("Complaint") of Kevin McDonnell, Anthony Insinga, Robert Michiels, Neil Taylor, Xavier Laurens, Atlantic Trading USA, LLC, Port 22, LLC, Aaron Schindler, White Oak Fund LP, and Prime International Trading, LTD ("Plaintiffs") for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

## PRELIMINARY STATEMENT

Plaintiffs' claims against Phibro Commodities should be dismissed for lack of personal jurisdiction. Phibro Commodities is not subject to general or specific jurisdiction in New York. As plaintiffs acknowledge, Phibro Commodities is a "United Kingdom private limited company." Complaint ¶ 45. Phibro Commodities' only offices and employees are in London; it does not have offices, employees, or property in the United States. It conducts all of its trading activities out of its London office. Accordingly, for purposes of general jurisdiction, Phibro Commodities is not "at home" in any United States forum within the meaning of *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014), rendering the exercise of jurisdiction over it inconsistent with the Due Process Clause. Further, plaintiffs do not allege any suit-related conduct by Phibro Commodities in the forum that could justify the exercise of specific jurisdiction.

## STATEMENT OF FACTS

### A.   Phibro Commodities

Phibro Commodities is a commodity trading company incorporated in England. Declaration of Roger Plaisted ("Plaisted Decl.") ¶ 2. It is a wholly-owned subsidiary of Phibro Trading LLC ("Phibro Trading"), an international commodities trading firm headquartered in Connecticut. *Id*. at ¶ 3. Phibro Commodities has focused primarily on liquid markets in "Brent crude oil." *Id*. at ¶ 4. Phibro Commodities is a principal only on trades involving the

1

commitment to take physical delivery or make physical delivery of oil. *Id*. at ¶ 4. All of its physical trading activities are executed and performed outside the United States. *Id*. While Phibro Commodities is not the principal on financial trades, when it has decided to use a financial trade to hedge price risk in its trading books or to trade for a profit to take advantage of opportunities it has perceived in the market, those trades are maintained on the books of Phibro Trading. *Id*. at ¶ 6. For financial trades in over-the-counter markets in London and on ICE Futures Europe, Phibro Limited, a company incorporated in England, enters the trades acting as an agent for Phibro Trading. *Id*. For financial trades in the United States, Phibro Commodities works with brokers in the United States, who arrange trades that are also entered on the books of Phibro Trading. *Id*. From time to time, the benefits of these trades that relate to physical trading strategies are transferred to Phibro Commodities through intercompany transfers. *Id*.

Phibro Commodities' offices and employees are located in London. *Id*. at ¶ 2. It has no offices, property, or employees in the United States. *Id*. It conducts its trading activities out of its office in London. *Id*. at ¶ 7. Its bank accounts are in London. *Id*. at ¶ 9. It is registered to do business in the UK, and it pays taxes in the UK. *Id*. From its formation through the date this lawsuit was filed, Phibro Commodities typically had approximately 19 employees, including a General Manager; seven traders who managed their own trading books; one market research analyst; two cargo operators who handled the logistics of trading physical cargoes of oil; four trade support staff who managed Phibro Commodities' positions, recorded profit and loss, and entered trades into Phibro Commodities' system; and four accounting and general administrative staff. *Id*. at ¶ 7.

Phibro Commodities received support for certain aspects of its business operations through employees of a Connecticut-based affiliate Phibro Services LLC ("Phibro Services").

*Id*. at ¶ 8.  Specifically, Phibro Services employees provided some legal, accounting, and risk management support to Phibro Commodities.  *Id*.  These services were provided to support Phibro Commodities' trading business in London.  *Id*.

### B. Plaintiffs' Complaint

Alleging a 12-year conspiracy to manipulate Brent crude oil prices, Plaintiffs' Complaint alleges, *inter alia*, that Defendants violated the Clayton Act, the Commodity Exchange Act, and the Sherman Act.  Complaint ¶¶ 1-3, 19.  Plaintiffs claim that Defendants manipulated the price assessments published by Platts by entering into false, manipulative, or misleading transactions.  *Id*. at ¶¶ 8-9. Two Phibro-affiliated entities are named as Defendants in the Complaint: Phibro Commodities and Phibro Trading.  *Id*. at ¶ 45.  As to Phibro Commodities and Phibro Trading, Plaintiffs specifically allege only a handful of physical trades of oil in London.  The Complaint does not allege any Phibro Commodities or Phibro Trading activity in the United States as giving rise to Plaintiffs' claims.

## ARGUMENT

### I. PHIBRO COMMODITIES IS NOT SUBJECT TO THE COURT'S JURISDICTION

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the defendant.  *Troma Entm't. v. Centennial Pictures,* 729 F.3d 215, 217 (2d Cir. 2013) (internal citation omitted).  A determination of whether a foreign defendant is subject to personal jurisdiction requires "a two-step inquiry."  *Sonera Holding B.V., v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014).  First, the Court must determine "whether the defendant is subject to jurisdiction under the law of the forum state—here, New York.  Second, [the Court must] consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the

3

United States Constitution."[1]  *Id.*  There are two types of jurisdiction: general (all-purpose) jurisdiction, and specific (case-linked) jurisdiction.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).

As set forth in detail below, Plaintiffs have failed to make the required showing of general or specific jurisdiction over Phibro Commodities.

### A.   The Court Lacks General Jurisdiction over Phibro Commodities

New York's long-arm statute confers general jurisdiction "where a company has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted."  *Sonera*, 750 F.3d at 224 (citing N.Y. C.P.L.R. § 301).  However, general jurisdiction only comports with due process when a corporation's contacts with a state "are so continuous and systematic as to render [it] essentially at home in the forum state."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).  Absent exceptional circumstances (not present here), the paradigm for the exercise of general jurisdiction over a corporation are the place of incorporation and the principal place of business.  *Id.* at 760.  There is no dispute that Phibro Commodities is incorporated in England and that its offices and all of its employees are in London.  Plaisted Decl. ¶ 2.  These facts alone render Phibro Commodities outside the purview of the Court's jurisdiction.

The *Daimler* Court made clear that even a company's "engage[ment] in a substantial, continuous, and systematic course of business" in a forum is insufficient to render it "at home" there.  *Daimler*, 134 S. Ct. at 760-61.  Rather, in order to rise to the level of the "exceptional

---

[1]  Because this is a federal question case, where federal law provides for nationwide service of process, "[t]he constitutionality of *in personam* jurisdiction . . . is to be determined by national, rather than local contacts."  *SEC v. Softpoint, Inc.*, No. 95 Civ. 2951, 2001 U.S. Dist. LEXIS 286, at *15 (S.D.N.Y. Jan. 18, 2001).  The Court should, therefore, consider Phibro Commodities' contacts with the United States as a whole in determining whether personal jurisdiction is constitutionally available.

case" subjecting a corporation to general jurisdiction in a place other than its principal place of business or place of incorporation, the corporation's affiliations with the forum state must be "so continuous and systematic as to render it essentially at home" there.[2]  *Id*. at 761 (internal citation omitted).  Accordingly, "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." *Id*. at 762 n.20 (internal citation omitted).  It, instead, "calls for an appraisal of a corporation's activities in their entirety, nationwide, and worldwide." *Id*.  Indeed, "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id*.

The Supreme Court's decision in *Daimler* demonstrates just how extensive a company's contacts must be with the forum to establish general jurisdiction.  In *Daimler,* the Supreme Court considered whether defendant, a German company with its principal place of business in Germany, was subject to general jurisdiction in California based on the contacts of its subsidiary, Mercedes-Benz USA, LLC ("MBUSA"). *Id*. at 750-51. MBUSA had numerous contacts with California, including multiple facilities, showrooms, and a regional office. *Id.* at 752.  MBUSA was also the largest supplier of luxury vehicles to the California market, and its sales to California accounted for 2.4% of Daimler's worldwide sales. *Id.*  Despite these significant contacts, the Supreme Court held that—even if these contacts were properly imputed to Daimler—there would still be no basis to subject Daimler to general jurisdiction in California. *Id.* at 760.  The Supreme Court recognized that subjecting Daimler to general jurisdiction based on such contacts would effectively subject the company to general jurisdiction "in every other State in which MBUSA's sales are sizable," a precedent that would deprive out-of-state

---

[2]  The one example the *Daimler* Court gave of an exceptional case was *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), in which a corporation temporarily moved its offices to the United States and conducted all affairs from the United States due to wartime occupation of the corporation's home country.

defendants of the ability "to structure their primary conduct with some minimum assurances as to where that conduct will and will not render them liable to suit." *Id.* at 761-62 (internal citation omitted).

Applying the above standards, it is clear that Phibro Commodities' contacts with the United States are insufficient to make it "at home" in the United States. Phibro Commodities is incorporated in England. Plaisted Decl. ¶ 2. Its offices, employees, and bank accounts are located in London. *Id*. at ¶¶ 2, 9. It conducts its trading activities out of its office in London. *Id*. ¶ 7. It does not have any offices, employees, or bank accounts in the United States. *Id*. ¶ 2, 9. Nor does it own property or file taxes in the United States, and it is not registered to do business in the United States. *Id*. ¶ 2, 9.

It makes no difference that Phibro Commodities' parent Phibro Trading and affiliate Phibro Services are in the United States (headquartered in Connecticut). *Id*. at ¶¶ 3, 8. As set forth above, Phibro Commodities causes certain trades to be executed for its benefit through Phibro Trading, and Phibro Services provides some support for certain aspects of Phibro Commodities' business operations, including some legal, accounting, and risk management support. *Id*. at ¶¶ 6, 8. But this does not make Phibro Commodities "at home" in the United States, giving rise to general jurisdiction there.

As an initial matter, there is no basis to impute Phibro Trading or Phibro Services' contacts on Phibro Commodities. First, it would not be appropriate to impute Phibro Trading or Phibro Services' contacts using an agency theory like that espoused in *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000), which focuses on the importance of the forum-state affiliate's services to the defendant. The *Daimler* Court expressed doubts as to the usefulness of such an analysis, noting that it "stacks the decks, for it will always yield a pro-

jurisdiction answer," creating an outcome that would "sweep beyond even the sprawling view of general jurisdiction [it] rejected in Goodyear." *Id*. at 759-60.

Second, imputing Phibro Trading or Phibro Services' contacts on Phibro Commodities using an alter ego theory would also be inappropriate. "In order to plead adequately that one entity is the alter ego of another for jurisdictional purposes, the plaintiff must plead that the allegedly controlled entity was a shell for the allegedly controlling party[.]" *Nykcool A.B. v. Pac. Int'l Servs*., 120-cv-5754, 2014 U.S. Dist. LEXIS 96007, at *16 (S.D.N.Y. July 15, 2014) (internal citation omitted).[3]  Plaintiffs have made no such effort here.

Further, under *Daimler*, even if Phibro Trading or Phibro Services' contacts with the United States could be imputed to Phibro Commodities (which they cannot), the relevant inquiry would be whether Phibro Trading or Phibro Services' contacts with the forum "shift [Phibro Commodities'] primary place of business (or place of incorporation) away from" its home country.  *Sonera*, 750 F.3d at 226.  Here, imputation would lead to no such shift.  Importantly, the execution of certain financial trades through Phibro Trading and Phibro Services' activities in the United States for Phibro Commodities pale in comparison to the significant presence of MBUSA the Daimler Court found insufficient to give rise to general jurisdiction (including multiple facilities, showrooms, a regional office, and a position as the largest supplier of luxury vehicles to the California market).  If MBUSA's activities were not sufficient to confer jurisdiction on Daimler, Phibro Services and Phibro Trading's activities cannot do so in this case. As is clear from *Daimler*, general jurisdiction does not arise in every place a company "engages

---

[3]  *See also Universal Trading & Inv. Co. v. Credit Suisse*, 560 F. App'x. 52, 55 n.1 (2d Cir. 2014) ("[A] parent company's control over a subsidiary is generally not enough to subject the subsidiary to suit in New York courts, and jurisdiction is only proper when the activities of the parent show a disregard for the separate corporate existence of the subsidiary.") (internal citation omitted).

7

in a substantial, continuous, and systematic course of business." *Daimler*, 134 S. Ct. at 760-61. It arises only where a company is "at home." *Id*.

Phibro Commodities is "at home" in London. As set forth above, all of Phibro Commodities' offices and employees are in the UK; it pays taxes in the UK; it is registered to do business in the UK; all of its trading activities are performed out of its London office. Plaisted Decl. ¶¶ 2, 7, 9. Therefore, "apprais[ing Phibro Commodities'] . . . activities in their entirety, nationwide, and worldwide" leads to the conclusion that Phibro Commodities is "at home" outside of the United States, notwithstanding Phibro Trading and Phibro Services' contacts with the United States. *Daimler*, 134 S. Ct. at 762 n.20.

### B. The Court Lacks Specific Jurisdiction over Phibro Commodities

Plaintiffs also fail to meet their burden of demonstrating that the Court has specific jurisdiction over Phibro Commodities. Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy[.]" *Goodyear,* 131 S. Ct. at 2851 (internal citation omitted). In order to meet their burden of demonstrating specific jurisdiction over Phibro Commodities, Plaintiffs must satisfy both the requirements of the New York Long-Arm Statute, N.Y. C.P.L.R. § 302(a), and the requirements of the Due Process Clause of the United States Constitution. *See, e.g., Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir. 1999). With respect to the latter, the Due Process Clause requires that a defendant has certain "minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore,* 134 S. Ct. 1115, 1121 (2014) (internal citation omitted). Recently, the Supreme Court confirmed that "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum and the litigation. . . . For a State to

8

exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* (internal citation omitted).

Here, Plaintiffs' allegations do not come close to showing the minimum contacts necessary to satisfy the Due Process Clause. The Complaint does not allege any conduct by Phibro Commodities relating to Plaintiffs' causes of action sufficient to justify the exercise of specific jurisdiction over Phibro Commodities. The limited contact Plaintiffs allege Phibro Commodities had with the United States is completely unrelated to Plaintiffs' claims. Plaintiffs allege only one contact between Phibro Commodities and the United States: that Phibro Commodities and its parent Phibro Trading (which is organized under the laws of Delaware and headquartered in Connecticut) share employees. Complaint ¶ 45. Even if this allegation were accurate,[4] Plaintiffs' lawsuit clearly does not "aris[e] out of or relate to" that contact. *J. McIntyre Machinery v. Nicastro*, 131 S. Ct. 2780, 2787-88 (2011).

Finally, even if Plaintiffs could be said to have satisfied the requirements of due process (which they cannot), Plaintiffs have failed to demonstrate that specific jurisdiction is proper under the New York Long-Arm Statute, N.Y. C.P.L.R. § 302(a). *See Bensusan Rest. Corp. v. King,* 126 F.3d 25, 27 (2d Cir. 1997) (specific jurisdiction must satisfy both the New York Long-Arm statute and due process). The requirements of the New York Long-Arm Statute have been described as more stringent than those associated with the Due Process Clause. *See Banco Ambrosiano v. Artoc Bank & Trust Ltd.,* 62 N.Y.2d 65, 71 (1984) ("CPLR 302 does not go as far as is constitutionally permissible. Thus, a situation can occur in which the necessary contacts to satisfy due process are present, but in personam jurisdiction will not be obtained in this State

---

[4] As set forth in the Plaisted Declaration, Phibro Commodities does not share employees with its parent Phibro Trading. It does, however, rely on certain employees of its Connecticut affiliate Phibro Services. Plaisted Decl. ¶¶ 3, 8.

9

because the statute does not authorize it."); *Ingraham v. Carroll,* 687 N.E.2d 1293, 1295 (1997) (describing requirements of New York Long-Arm statute as "more stringent" than those of due process).

In particular, jurisdiction under the New York Long-Arm Statute exists only where a plaintiff demonstrates that the asserted causes of action relate to certain enumerated acts, including (1) the transaction of business by defendant in the State, (2) the commission of a tortious act by defendant within the State, (3) the commission of a tortious act by defendant outside the State causing injury to a person in the state,[5] or (4) defendant's ownership, possession, or use of real property in the State. N.Y. C.P.L.R. § 302(a). As the Complaint is devoid of any alleged connection between conduct by Phibro Commodities directed toward New York and Plaintiffs' claims, Plaintiffs plainly fail to satisfy these requirements. For this additional reason, Plaintiffs have failed to meet their burden of demonstrating specific jurisdiction.

## CONCLUSION

For the reasons set forth above, Phibro Commodities respectfully requests that the Court grant its motion to dismiss all claims asserted by Plaintiffs against it in their entirety and with prejudice.

---

[5] In this instance, plaintiff must also demonstrate that defendant (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. N.Y. C.P.L.R. § 302(a)(3).

| | | |
|---|---|---|
| Dated: | Houston, Texas<br>March 27, 2015 | QUINN EMANUEL URQUHART<br>& SULLIVAN, LLP |

*/s/ Karl S. Stern*
Karl S. Stern
Pennzoil Place
711 Louisiana Street, Suite 500
Houston, Texas  77002-2721
Telephone: (713) 221 7000
Facsimile: (713) 221 7100
karlstern@quinnemanuel.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this 27th day of March, 2015.  Any other counsel of record will be served by facsimile transmission and/or first class mail.

*/s/ Karl S. Stern*
Karl S. Stern

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

In re:

NORTH SEA BRENT CRUDE OIL FUTURES                 1:13-md-02475 (ALC)
LITIGATION

This document applies to:  ALL CASES.

------------------------------------------------------------x


**DECLARATION OF ROGER PLAISTED**

Roger Plaisted hereby declares:

    1.   I am General Manager at Phibro Commodities Limited ("Phibro Commodities") in London and have served in that capacity since 1st January 2010. I have personal knowledge of the facts set forth in this declaration, which are known to me to be true and correct.

    2.   Phibro Commodities is a company incorporated in England.  Its offices and all employees are located in London. It has no offices, property or employees in the United States.

    3.   Phibro Commodities is a wholly-owned subsidiary of Phibro Trading LLC ("Phibro Trading"), an international commodities trading firm. Phibro Trading has been headquartered since its formation on October 2, 2009 in Westport, Connecticut.

    4.   Phibro Commodities is a principal only on trades involving the commitment to take physical delivery or make physical delivery of oil.  Phibro Commodities has focused primarily on liquid markets in "Brent crude oil" comprised of the following grades produced from fields in the North Sea: Brent, Forties, Oseberg, and Ekofisk ("BFOE"). We have also traded actively in liquid markets for Dubai/Oman crudes.  Our main counterparties are major oil companies, financial institutions, refineries, petrochemical companies, and large trading companies. All of our physical trading activities are executed and performed outside the United States.

1

5. While Phibro Commodities is a principal only on physical oil trades, the same persons who trade for Phibro Commodities manage a book of trades that includes the indirect benefits of futures contracts and other derivatives that typically settle financially. Futures and other derivatives may be used for price discovery, to hedge price exposure of physical commodities, and to trade for profit.  Futures contracts are standardized agreements to buy or sell a commodity at a date in the future that are traded on exchanges such as ICE Futures Europe (ICE), the Dubai Mercantile Exchange (DME) and the New York Mercantile Exchange (NYMEX) division of the Chicago Mercantile Exchange.  Other derivative contracts are non-standard, negotiated transactions traded in the over-the counter swaps and options markets.

6. Unlike physical trades, Phibro Commodities is not the principal on financial trades. When we have decided to use a financial trade to hedge price risk in our trading book or to trade for a profit to take advantage of opportunities we have perceived in the market, those trades are maintained on the books of Phibro Trading.  For trades in over-the-counter markets in London and for trades on ICE, Phibro Limited, a company incorporated in England, enters the trades acting as an agent for Phibro Trading. For financial trades in the United States, Phibro Commodities works with brokers in the United States, who arrange trades that are also entered on the books of Phibro Trading.  From time to time, the benefits of those of these trades that relate to physical trading strategies are transferred to Phibro Commodities through intercompany transfers.

7. Phibro Commodities conducts its trading activities out of its office in London. From its formation through the date this suit was filed, Phibro Commodities typically had approximately 19 employees.  These included: me as the General Manager; seven traders who managed their own trading books; one market research analyst; two cargo operators who handled

the logistics of trading physical cargoes of oil; four trade support staff who managed our positions, recorded profit and loss, and entered trades into our system; and four accounting and general administrative staff.

8. Phibro Commodities did rely on certain persons located in Westport, Connecticut who are employees of its affiliate, Phibro Services LLC, for support of certain aspects of its business operations. Specifically, Phibro employees located in Westport, Connecticut provided some legal, accounting, and risk management support to Phibro Commodities. These services were provided to support Phibro Commodities' trading business in London.

9. As stated in point three above, Phibro Commodities has had no offices, property or employees in New York or elsewhere in the United States. Phibro Commodities has had no bank accounts in the United States, has not been registered to do business in the United States, and has filed no taxes in the United States. Phibro Commodities' bank accounts have been maintained in London. It is registered to do business in the UK and pays taxes in the UK. It has held its assets and generated its revenue through trading activities in the UK.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in London on 27th March 2015.

Roger Plaisted