UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:

NORTH SEA BRENT CRUDE OIL FUTURES
LITIGATION

This document applies to:  ALL CASES.

-------------------------------------------------------------x

1:13-md-02475 (ALC)

**DEFENDANT MORGAN STANLEY CAPITAL GROUP, INC.'S SUPPLEMENTAL
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE
SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND THE
SECOND AMENDED CLASS ACTION COMPLAINT**

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

*Attorneys for Defendant Morgan Stanley Capital
Group, Inc.*

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ..........................................................................................................iii

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND .........................................................................................................................3

    A.    Procedural History ..................................................................................................3

    B.    Plaintiffs' Allegations Concerning MSCGI...........................................................3

    C.    Claims Asserted ......................................................................................................5

ARGUMENT ...............................................................................................................................5

I.     PLAINTIFFS' CEA CLAIMS AGAINST MSCGI SHOULD BE DISMISSED ..............5

    A.    Plaintiffs Fail To Plead With Particularity Under Rule 9(b) That MSCGI
          Manipulated The Price Of Physical Brent Crude Oil Cargoes ...............................5

          1.    Plaintiffs Fail to Allege Specific Facts Required to Support Their
               CEA Claim...............................................................................................6

               a.    Plaintiffs Have Not Alleged With Particularity that MSCGI
                    Engaged in Any Manipulative Acts..................................................6

               b.    Plaintiffs Fail to Specifically Allege the Fraud Perpetrated
                    by Each Defendant...........................................................................8

               c.    Plaintiffs Have Not Alleged With Particularity That
                    MSCGI Had the Requisite Scienter .................................................8

    B.    Plaintiffs Fail To Allege Facts That Plausibly Suggest That MSCGI
          Manipulated The Price Of Physical Brent Crude Oil Cargoes Under
          Rule 8(a)................................................................................................................10

    C.    The Trader Complaint Fails To State A Claim For Aiding And Abetting
          By MSCGI ............................................................................................................12

II.    PLAINTIFFS' SHERMAN ACT CLAIMS AGAINST MSCGI SHOULD BE
      DISMISSED ......................................................................................................................13

    A.    Plaintiffs Do Not Allege Facts That Plausibly Suggest That MSCGI Joined
          Or Participated In An Alleged Conspiracy ...........................................................14

|   | | PAGE |
|---|---|---|

B.      Plaintiffs Do Not Allege Facts That Plausibly Suggest That MSCGI Possessed Monopoly Power...................................................................................16

CONCLUSION.............................................................................................................................17

**CASES:**

*AF Gloenco Inc. v. Ushers Mach. & Tool Co.*,
    No. 1:10-cv-1128, 2011 WL 4593741 (N.D.N.Y Sept. 30, 2011)..........................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................. 2, 10-11

*BanxCorp v. Apax Partners, L.P.*,
    No. 10-cv-4769, 2011 WL 1253892 (D.N.J. Mar. 28, 2011) ........................................... 15-16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................. *passim*

*Concord Assocs., L.P. v. Entm't Props. Trust*,
    No. 12 Civ. 1667, 2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014)............................................15

*Crossword Mag., Inc. v. Times Books*,
    No. 96 CV 4550, 1997 WL 227998 (E.D.N.Y. May 5, 1997).................................................17

*E & L Consulting, Ltd. v. Doman Indus. Ltd.*,
    472 F.3d 23 (2d Cir. 2006)..................................................................................................13

*In re Amaranth Nat. Gas Commodities Litig.*,
    587 F. Supp. 2d 513 (S.D.N.Y. 2008), *subsequent determination*,
    612 F. Supp. 2d 376 (S.D.N.Y. 2009), *aff'd*,
    730 F.3d 170 (2d Cir. 2013).............................................................................................6, 7

*In re Amaranth Nat. Gas Commodities Litig.*,
    612 F. Supp. 2d 376 (S.D.N.Y. 2009), *aff'd*,
    730 F.3d 170 (2d Cir. 2013)...........................................................................................9, 12

*In re Amaranth Nat. Gas Commodities Litig.*,
    730 F.3d 170 (2d Cir. 2013)...............................................................................................12

*In re Commodity Exch., Inc. Silver Fut. & Options Trading Litig.*,
    No. 11-md-2213, 2012 WL 6700236 (S.D.N.Y. Dec. 21, 2012),
    *subsequent determination*, No. 11-md-2213, 2013 WL 1100770
    (S.D.N.Y. Mar. 18, 2013), *aff'd*, No. 13-1416-CV,
    2014 WL 1243851 (2d Cir. Mar. 27, 2014).................................................................. *passim*

*In re Commodity Exch., Inc. Silver Fut. & Options Trading Litig.*,
No. 11-md-2213, 2013 WL 1100770 (S.D.N.Y. Mar. 18, 2013), *aff'd*,
No. 13-1416-CV, 2014 WL 1243851 (2d Cir. Mar. 27, 2014)...............................16

*In re Commodity Exch., Inc. Silver Fut. & Options Trading Litig.*,
No. 13-1416-CV, 2014 WL 1243851 (2d Cir. Mar. 27, 2014)......................... 11-12

*In re Crude Oil Commodity Litig*,
No. 06 Civ. 6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007)................................. *passim*

*In re DDAVP Direct Purchaser Antitrust Litig.*,
585 F.3d 677 (2d Cir. 2010)......................................................................................9

*In re DiPlacido*,
Dkt. No. 01-23, 2008 WL 4831204 (C.F.T.C. Nov. 5, 2008), *aff'd as modified*,
364 F. App'x 657 (2d Cir. 2009) (Summary Order)..............................................10

*In re Elevator Antitrust Litig.*,
502 F.3d 47 (2d Cir. 2007)..............................................................................2, 14, 15

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
935 F. Supp. 2d 666 (S.D.N.Y. 2013), *cert. granted*,
No. 13-1174, 2014 WL 1234644 (U.S. June 30, 2014)......................................... 8-9

*In re Nat. Gas Commodity Litig.*,
337 F. Supp. 2d 498 (S.D.N.Y. 2004)........................................................................5

*In re Parcel Tanker Shipping Servs. Antitrust Litig.*,
541 F. Supp. 2d 487 (D. Conn. 2008).....................................................................14

*In re Platinum & Palladium Commodities Litig.*,
828 F. Supp. 2d 588 (S.D.N.Y. 2011).....................................................................12

*In re Rough Rice Commodity Litig.*,
No. 11 C 618, 2012 WL 473091 (N.D. Ill. Feb. 9, 2012).......................................10

*Kolbeck v. LIT Am., Inc.*,
923 F. Supp. 557 (S.D.N.Y. 1996), *aff'd*,
152 F.3d 918 (2d Cir. 1998).......................................................................................8

*Krause v. Forex Exch. Mkt., Inc.*,
356 F. Supp. 2d 332 (S.D.N.Y. 2005).....................................................................12

*Mayor & City Council of Balt., Md. v. Citigroup, Inc.*,
709 F.3d 129 (2d Cir. 2013)......................................................................................15

*PepsiCo, Inc. v. Coca-Cola Co.*,
315 F.3d 101 (2d Cir. 2000)................................................................................ 16-17

*Santa Fe Indus., Inc. v. Green,*
    430 U.S. 462 (1977) ................................................................................6

*TechRes. Inc. v. Delta Controls Inc.,*
    No. 13 Civ. 752, 2014 WL 1325914 (S.D.N.Y. Mar. 31, 2014) ...........................16

*Three Crown Ltd. P'ship v. Caxton Corp.,*
    817 F. Supp. 1033 (S.D.N.Y. 1993) ..................................................................8

*Tops Mkts., Inc. v. Quality Mkts., Inc.,*
    142 F.3d 90 (2d Cir. 1998) ............................................................................17

*U.S. C.F.T.C. v. Parnon Energy, Inc.,*
    875 F. Supp. 2d 233 (S.D.N.Y. 2012) .........................................................10, 11

*U.S. v. Radley,*
    632 F.3d 177 (5th Cir. 2011) .......................................................................6-7

*Verizon Commc'ns v. Law Offices of Curtis V. Trinko, LLP,*
    540 U.S. 398 (2004) ....................................................................................13

## STATUTES & OTHER AUTHORITIES:

7 U.S.C. § 9(1) ...............................................................................................12

Morgan Stanley Capital Group, Inc. ("MSCGI") joins the memoranda of law jointly submitted on behalf of all Defendants[1], and respectfully submits this supplemental memorandum of law in support of its motion to dismiss the Second Amended Consolidated Class Action Complaint filed in Case No. 13-md-02475, Docket No. 308 ("Trader Complaint" or "Trader Compl.")[2] and the Second Amended Class Action Complaint in Case No. 1:13-cv-07443-ALC, (the "Landowner Complaint" or "Landowner Compl.")[3] (collectively, the "Complaints") pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6).

## PRELIMINARY STATEMENT

As described in the Joint Briefs, the Complaints implausibly assert that Defendants[4] engaged in a global conspiracy to manipulate the price of physical Brent Crude Oil cargoes over a twelve year period based on conclusory assertions and deeply flawed legal theories under the Commodity Exchange Act ("CEA"), Sherman Act, and certain causes of action under state law. There are no allegations of wrongdoing against MSCGI exclusive of a few purely conclusory

---

[1]  Specifically, Defendants' Joint Brief in Support of Their Motion to Dismiss Plaintiff Harter's Amended Class Action Complaint (Case No. 1:13-cv-07443-ALC) (the "Joint Landowner Brief"), Defendants' Joint Brief in Support of Their Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint (Case No. 1:13-md-02475-ALC) (the "Joint Trader Brief"), and Defendants' Joint Brief in Support of Their Motion to Dismiss the Complaints as Exceeding the Extraterritorial Reach of U.S. Law (Case Nos. 1:13-cv-07443-ALC; 1:13-cv-02465-ALC), collectively, the "Joint Briefs."

[2]  The Trader Complaint applies to Case Nos. 1:13-cv-03473-ALC, 1:13-cv-03587-ALC, 1:13-cv-03944-ALC, 1:13-cv-04142-ALC, 1:13-cv-04553-ALC, 1:13-cv-04872-ALC, 1:13-cv-04938-ALC, 1:13-cv-05577-ALC, 1:13-cv-07089-ALC, 1:13-cv-08030-ALC, 1:13-cv-08151-ALC, 1:13-cv-08179-ALC, 1:13-cv-08240-ALC and 1:13-cv-08270-ALC.

[3] MSCGI is required to file this motion prior to Plaintiff David Harter's filing of the Second Amended Class Action Complaint. Accordingly, for purposes of this motion, MSCGI has relied on the draft version of the Second Amended Class Action Complaint expected to be filed.

[4]  The term "Defendants" collectively refers to BP p.l.c., BP America Inc., BP Corporation North America, Inc., Royal Dutch Shell plc, Shell Trading US Company, Statoil ASA, Statoil US Holdings, Inc., MSCGI, Phibro Trading LLC, Vitol, S.A., Vitol, Inc., Mercuria Energy Trading, Inc., Mercuria Energy Trading S.A., Hess Energy Trading Company, LLC ("Hetco"), Trafigura Beheer B.V. and Trafigura AG.

allegations and impermissible group pleading referring to "Defendants." For the reasons set forth therein, the claims against MSCGI should be dismissed in their entirety.

The Complaints barely mention MSCGI at all. Stripped of its conclusory allegations, the sprawling 194 page, 598 paragraph Trader Complaint, asserts only that MSCGI purchased or sold oil cargoes on three occasions. In each of those instances, however, the Trader Complaint asserts that MSCGI acted in an economically rational manner – allegedly buying at a low price in two transactions and selling at a high price in the other. The Landowner Complaint, covering 87 pages and 344 paragraphs, is even more anemic in its allegations against MSCGI. It includes only one of the three transactions described in the Trader Complaint.

Beyond these three economically rational transactions, which under well-settled law cannot provide the basis for a cause of action, there are no other substantive allegations against MSCGI in either Complaint. Instead, both Complaints suffer from the same infirmities, which generally fall into two categories.

- Conclusory assertions that are insufficient under either the heightened pleading standard of Rule 9(b), which applies to Plaintiffs' CEA claims, or Rule 8(a), which applies to Plaintiffs' Sherman Act Claims. *See, e.g.*, *In re Crude Oil Commodity Litig*, No. 06 Civ. 6677, 2007 WL 1946553, at *7-8 (S.D.N.Y. June 28, 2007) (dismissing CEA claim where plaintiffs failed to satisfy Rule 9(b)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("conclusory statements . . . do not suffice" under Rule 8(a)) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

- Undifferentiated allegations against the "Defendants" as a group that fail to identify any specific wrongdoing on the part of MSCGI. *E.g.*, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (dismissing claim where it failed to specify "'particular activities by [a] particular defendant'") (citation omitted).

Neither Complaint pleads sufficient allegations against MSCGI to establish a plausible inference of wrongdoing by MSCGI, and the Complaints therefore should be dismissed.

## BACKGROUND

### A.  Procedural History

In May 2013, the European Commission ("EC") carried out unannounced inspections of several companies in connection with "concerns that the companies may have colluded in reporting distorted prices to a price reporting agency to manipulate the published prices for a number of oil and biofuel products."  Trader Compl. ¶ 14.  MSCGI was not a part of the EC's investigation.

Shortly thereafter, a series of putative class actions were filed against BP, Royal Dutch Shell and Statoil, alleging price fixing and price manipulation in violation of the Sherman Act and the CEA.  It was only in a series of subsequent class actions filed in October and November of 2013 that MSCGI's parent corporation, Morgan Stanley, and other additional market participants were named as defendants for the first time.  MSCGI was not named as a party at that time.  By order of this Court on February 27, 2015, MSCGI was substituted for Morgan Stanley. ECF No. 307.

### B.  Plaintiffs' Allegations Concerning MSCGI

The Trader Complaint's only allegations concerning MSCGI's conduct relate to three over-the-counter ("OTC") transactions, and the Landowner Complaint to only one of those:

June 15, 2010 Hetco Trade:  The Trader Complaint asserts that various Defendants, not including MSCGI, were responsible for manipulating the price of Dated Brent in June 2010. Trader Compl. ¶¶ 251-77.  In the context of these allegations, the Trader Complaint makes a single reference to a MSCGI trade with Hetco on June 15, 2010. *Id.* ¶¶ 269-70. Plaintiffs assert that this trade was intended to weaken the price of the Forties grade of crude oil, but do not provide any supporting allegations. *Id.* ¶ 269.  The only fact alleged with regard to MSCGI's

participation in this trade is that it bought a cargo from Hetco "at the far dates of the assessment period." *Id.*

February 15, 2011 STASCO Trade:  The Trader Complaint alleges that on February 15, 2011, MSCGI sold a cargo to Shell International Trading and Shipping Company Limited ("STASCO").  Trader Compl. ¶ 335.  Plaintiffs then assert that this price was reported to be "significantly above the market." *Id.*  The Trader Complaint alleges no additional facts relating to MSCGI's participation in this trade. *Id.* ¶¶ 335-36.

February 21, 2011 Shell Trade:  Both Complaints allege that on February 21, 2011, STASCO offered four Forties cargoes at a price alleged to be below market and that MSCGI bought one of the cargoes.  Trader Compl. ¶ 338; Landowner Compl. ¶¶ 122-25.  The Complaints speculate that STASCO and MSCGI must have either pre-arranged freight or had an agreement to enter into a wash trade in either dated Brent or another market (Trader Compl. ¶ 340; Landowner Compl. ¶ 124) but do not allege any facts to support either theory.  Plaintiffs do not offer a single conversation, document or meeting to support the conclusory assertion that MSCGI was acting "in collusion with STASCO."

In each of these transactions, MSCGI is alleged to have either bought at a low price or sold at a high price.  It is not alleged what Plaintiffs mean by a trade at a "low" or "high" price. Nor do they allege to what the prices of MSCGI's trades are being compared.   Plaintiffs do not refer to any index or any other objective measure.  Thus, Plaintiffs' conclusory allegations of price are so ambiguous as to be meaningless. However, even if the Court attributes some meaning to the assertion, without a well-pled allegation of a pre-arranged off market trade (which there is not), there is nothing improper about MSCGI purchasing at a low price or selling at a high price.  As explained below, such transactions, if they happened, would be consistent

with normal business behavior and would not support a claim that MSCGI was engaged in manipulative behavior or acting as part of an illegal conspiracy.

### C.   Claims Asserted

The Trader Complaint asserts claims against every Defendant, including MSCGI, for violation of (i) the Commodity Exchange Act; (ii) Sections 1 and 2 of the Sherman Act; and (iii) common law principles of unjust enrichment. The Landowner Complaint asserts claims against every Defendant, including MSCGI, for violation of Sections 1 and 2 of the Sherman Act, and various state antitrust and unfair competition statutes.

## ARGUMENT

## I.   PLAINTIFFS' CEA CLAIMS AGAINST MSCGI SHOULD BE DISMISSED[5]

### A.   Plaintiffs Fail To Plead With Particularity Under Rule 9(b) That MSCGI Manipulated The Price Of Physical Brent Crude Oil Cargoes

For the reasons set forth in the Joint Trader Brief, the CEA claims sound in fraud and therefore Plaintiffs must plead facts with particularity demonstrating that MSCGI manipulated the price of physical Brent Crude Oil cargoes. Plaintiffs must specify "'what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue.'" *In re Crude Oil*, 2007 WL 1946553, at *6 (citation omitted). Further, Plaintiffs are required to allege specific facts that give rise to a strong inference of fraudulent intent. *Id.* at *7. Plaintiffs fail to meet this heavy

---

[5]   As explained in the Joint Trader Brief, CEA claims that are based on conduct occurring before October 4, 2011 (for defendants first added to the action in the complaint filed on October 4, 2013, as was Morgan Stanley) are time barred. Here, the three transactions described in the Trader Complaint all fall outside the applicable statute of limitations. Plaintiffs' attempt to circumvent this obvious defect in their claims by asserting fraudulent concealment is unavailing. Plaintiffs have not alleged, as required, that (i) defendants "concealed the existence of the CEA violation" (or their conduct was self-concealing), and (ii) plaintiffs' "continuing ignorance as to the claim was not a result of a lack of due diligence." *In re Nat. Gas Commodity Litig.*, 337 F. Supp. 2d 498, 513 (S.D.N.Y. 2004). Indeed, Plaintiffs' allegations against Morgan Stanley are based on information publicly available from Platts not later than February 22, 2011. Thus, any CEA claims against Morgan Stanley are time-barred.

pleading burden. In particular, they: (1) do not allege facts showing manipulative acts by MSCGI; (2) use impermissible group pleading to make undifferentiated allegations against all Defendants in support of the CEA claim; and (3) do not adequately allege that MSCGI specifically intended to cause an artificial price in physical Brent Crude Oil cargoes.

1.    **Plaintiffs Fail to Allege Specific Facts Required to Support Their CEA Claim**

    a.    **Plaintiffs Have Not Alleged With Particularity that MSCGI Engaged in Any Manipulative Acts**

The only factual allegations in the Trader Complaint relating to MSCGI concern three trades in which MSCGI purportedly participated in 2010 and 2011. However, the Plaintiffs' allegations demonstrate nothing more than that MSCGI acted in its economic self-interest by buying physical Brent Crude Oil cargoes at low prices or selling at a high price. Such allegations do not set forth a viable claim for commodities manipulation. On the contrary, "[t]he laws that forbid market manipulation should not encroach on legitimate economic decisions lest they discourage the very activity that underlies the integrity of the markets they seek to protect." *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 534-35 (S.D.N.Y. 2008) ("*Amaranth I*") (dismissing CEA claim on motion to dismiss where plaintiff merely alleged that otherwise legitimate transactions were intended to manipulate the market), *subsequent determination*, 612 F. Supp. 2d 376 (S.D.N.Y. 2009) ("*Amaranth II*"), *aff'd*, 730 F.3d 170 (2d Cir. 2013) ("*Amaranth III*").

Nor do the transactions in which MSCGI is alleged to have participated have any earmarks of manipulative trading. Under well-established case law, including landmark Supreme Court opinions, only intrinsically misleading trading can constitute manipulation. *See Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977) (manipulation is "'virtually a term of art'" and refers to inherently misleading practices) (citation omitted); *see also U.S. v. Radley*,

632 F.3d 177, 183-84 (5th Cir. 2011) (rejecting an argument that defendants engaged in manipulation in violation of the CEA where the transactions were "bona fide" and "real"). Here, there are no allegations of inherently misleading transactions, and the meager factual allegations against MSCGI are insufficient on their face to satisfy Plaintiffs' heavy pleading burden.

The Trader Complaint offers only unsupported and wholly conclusory assertions of purported manipulation:

- the June 15, 2010 trade was "designed to weaken the price of Forties" (Trader Compl. ¶ 269);

- that the February 15, 2011 trade "must have been designed to benefit prompt pricing by either STASCO or MSCGI" (*id.* ¶ 335); and

- the February 21, 2011 trade was prearranged to "advantage" MSCGI, or *may* have been a wash trade (*id.* ¶¶ 338, 340, 368).

Such "wholly speculative and conclusory" assertions are patently insufficient to satisfy Plaintiffs' burden to plead with particularity under Rule (9)(b). *In re Crude Oil*, 2007 WL 1946553, at *6. Here, as in *Crude Oil*, "plaintiffs cannot point to a specific instance in which defendants engaged in a manipulative manner, and instead rely on conclusory statements about actions defendants allegedly took to further their scheme." *Id.* at *7 (dismissing CEA claim where the complaint was "replete with innuendo and devoid of detail").

Nor are conclusory assertions that MSCGI "assist[ed]," "followed," or "helped" STASCO" (Trader Compl. ¶¶ 335, 365) entitled to any weight when there is no factual basis provided to support them. *In re Commodity Exch., Inc. Silver Fut. & Options Trading Litig.*, No. 11-md-2213, 2012 WL 6700236, at *8 (S.D.N.Y. Dec. 21, 2012) ("*Commodity Exch. I*") (legal conclusions, deductions, or opinions couched as factual allegations are not to be accorded presumption of truthfulness) (*citing Amaranth I*, 587 F. Supp. 2d at 528), *subsequent determination*, No. 11-md-2213, 2013 WL 1100770 (S.D.N.Y. Mar. 18, 2013) ("*Commodity*

*Exch. II*"), *aff'd*, No. 13-1416-CV, 2014 WL 1243851 (2d Cir. Mar. 27, 2014) ("*Commodity Exch. III*"). Likewise, "[b]road allegations . . . that some defendants are guilty because of their association with others [which] do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b)." *Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557, 569 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998). In the absence of well-pled allegations of manipulative acts, the CEA claims against MSCGI should be dismissed.

### b. Plaintiffs Fail to Specifically Allege the Fraud Perpetrated by Each Defendant

Not only are Plaintiffs' assertions against MSCGI wholly conclusory, they are also improper because they do not differentiate between MSCGI's alleged conduct and that of the other Defendants. The Trader Complaint fails to allege with specificity "the fraud perpetrated by each defendant." *In re Crude Oil*, 2007 WL 1946553, at *6 (dismissing CEA manipulation claim where plaintiffs were unable to "point to one specific instance" where defendants engaged in manipulative conduct). Yet, rather than plead specific facts against MSCGI, the Trader Complaint continuously and improperly uses group pleading in making allegations relating to Defendants. *E.g.*, Trader Compl. ¶¶ 421-47, 497-522. These are precisely the type of allegations that courts in this District have repeatedly held are insufficient to satisfy Rule 9(b)'s particularity requirement. *See, e.g.*, *Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033, 1040 (S.D.N.Y. 1993). The same result is warranted here. *See Kolbeck*, 923 F. Supp. at 569.

### c. Plaintiffs Have Not Alleged With Particularity That MSCGI Had the Requisite Scienter

The deficiencies in the Trader Complaint's allegations against MSCGI are especially glaring with respect to the requirement of scienter. As explained in the Joint Trader Brief, to state a claim for manipulation, Plaintiffs must plead factual allegations that give rise to a "strong inference" of scienter "'either (a) by alleging facts to show that defendants had both motive and

opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 714 (S.D.N.Y. 2013) (*quoting In re Crude Oil*, 2007 WL 1946553, at *8), *cert. granted*, No. 13-1174, 2014 WL 1234644 (U.S. June 30, 2014). As explained below, Plaintiffs fail to satisfy the first standard, and do not attempt to meet the second standard.

In order to show motive and opportunity, Plaintiffs must adequately allege that MSCGI would receive "a concrete and personal benefit . . . from the fraud.'" *Amaranth II*, 612 F. Supp. 2d at 383. However, there are no such allegations whatsoever against MSCGI in the Trader Complaint. In fact, while the Trader Complaint makes some allegations (albeit inadequate) concerning other defendants' supposed motive, MSCGI is conspicuously absent from those allegations. *E.g.*, Trader Compl. ¶¶ 534, 537-38.

To be sure, Plaintiffs do assert a one-size-fits-all allegation that the "Defendants" were motivated to enhance the value of their financial, derivative or physical positions and to improve the price of purchase or sale obligations. Trader Compl. ¶ 533. However, the Second Circuit requires that plaintiffs "provid[e] a factual basis for scienter *for each defendant*." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2010) (emphasis added). In addition, Plaintiffs do not allege a single fact to support their theory that MSCGI ever held any positions that could benefit from this purportedly manipulative behavior. Moreover, even if the Court were to ignore the group pleading deficiency, it is well-settled that allegations of a generalized profit motive that "could be imputed to any corporation with a large market presence in any commodity market" are "insufficient to show intent" under the CEA. *In re Crude Oil*,

2007 WL 1946553, at *8. Accordingly, the CEA claim should be dismissed for failure to adequately allege MSCGI possessed a specific intent to manipulate.[6]

### B. Plaintiffs Fail To Allege Facts That Plausibly Suggest That MSCGI Manipulated The Price Of Physical Brent Crude Oil Cargoes Under Rule 8(a)

Even if the Rule 8(a) pleading standard applied to Plaintiffs' CEA claim, Plaintiffs' allegations against MSCGI still fail. Under *Twombly*, a complaint must contain enough facts to state a claim for relief that is plausible on its face. 550 U.S. at 555-56. The plausibility standard is not met "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," and the existence of other "more likely explanations" must be considered in determining whether a claim is plausible. *Iqbal*, 556 U.S. at 679, 681.

As described above, beyond MSCGI's participation in three economically rational transactions, Plaintiffs allege only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice" under Rule 8(a). *Id.* at 678

---

[6] In addition to deficiencies in the CEA claims set forth above and in Defendants' Joint Trader Brief, Plaintiffs have not alleged that artificial prices existed or were caused on the three dates that MSCGI traded. Plaintiffs allege that MSCGI's purchase of a cargo on June 15, 2010 at a low price "weakened Forties" (Trader Compl. ¶ 269), that MSCGI sold a cargo to STASCO on February 15, 2011 at a price "significantly above the market" (*id.* ¶ 335) and that its February 21, 2011 purchase was at "a low price." *Id.* ¶ 338. But Plaintiffs have not alleged that these prices "'d[o] not reflect basic forces of supply and demand.'" *U.S. C.F.T.C. v. Parnon Energy, Inc.*, 875 F. Supp. 2d 233, 247 (S.D.N.Y. 2012) (citation omitted). At most, Plaintiffs have alleged "unusual prices" however, "without more, [such assertions are] insufficient to establish artificial prices, as a matter of law." *In re Rough Rice Commodity Litig.*, No. 11 C 618, 2012 WL 473091, at *6 (N.D. Ill. Feb. 9, 2012); *Commodity Exch. I*, 2012 WL 6700236, at *16; *In re DiPlacido*, Dkt. No. 01-23, 2008 WL 4831204, at *30 (C.F.T.C. Nov. 5, 2008) ("[A] statistically unusual high (or low) price will not on that basis alone be deemed artificial"), *aff'd as modified*, 364 F. App'x 657, 661-62 (2d Cir. 2009) (Summary Order). Further, Plaintiffs fail to allege that MSCGI had the ability to influence market prices. The only allegations in the Trader Complaint regarding the role of MSCGI are that it is active in trading physical commodities, derivatives and futures. Trader Compl. ¶¶ 42; 465. Other than this generic summary of MSCGI's business, Plaintiffs do not allege that MSCGI had the ability to influence prices of physical Brent Crude Oil prices.

(*citing Twombly*, 550 U.S. at 555).[7]  Moreover, the "more likely explanation" for MSCGI's behavior in the three transactions is that it was acting in a commercially reasonable manner by selling at a price the Trader Complaint now labels in hindsight as high or buying at prices Trader Complaint now labels as low.  *Id.* at 680-81.  Because the Complaint against MSCGI "tende[rs] 'naked assertions' devoid of 'further factual enhancement,'" the CEA claim should be dismissed even if the Court were to decide to apply Rule 8(a).  *Id.* at 678 (*quoting Twombly*, 550 U.S. at 557).

Plaintiffs' inability to plead scienter, which is fatal to their CEA claim under Rule 9(b), fares no better under Rule 8(a).  Under Rule 8(a), courts require "specific factual allegations" that a defendant "'acted (or failed to act) with the purpose or conscious object of causing or effecting a price or price trend in the market that did not reflect the legitimate forces of supply and demand.'"  *Parnon Energy*, 875 F. Supp. 2d at 249 (citation omitted).  To satisfy this standard, plaintiffs must plead "factual allegations showing that [defendant] took specific actions which exhibited an actual intent to bring about [or] engage in" transactions to "manipulate market prices."  *Commodity Exch. I*, 2012 WL 6700236, at *10 (dismissing intent allegations that were "conclusory and speculative").  As described above, Plaintiffs only substantive allegations against MSCGI are that it participated in three trades which are easily explained as normal economic transactions.  These assertions are woefully insufficient to establish manipulative intent even under Rule 8(a) and are, in fact, far less than allegations that have previously been held insufficient in this district.  *See Commodity Exch. III*, 2014 WL 1243851, at *2 (plaintiffs' suggestion that "[defendant]'s large short position in silver futures incentivized

---
[7]  *E.g.*, Trader Compl. ¶ 269 (the Hetco transaction was "designed to weaken the price of Forties"); *id.* ¶ 368 (the STASCO transaction enabled STASCO and MSCGI "to game the Platts system" and "advantage themselves by creating artificial prices").

[defendant] to depress prices" was insufficient to plead scienter under Rule 8(a) because "this 'incentive' could just as easily be imputed to any company with a large market presence in any commodity market") (citation omitted).[8]

### C. The Trader Complaint Fails To State A Claim For Aiding And Abetting By MSCGI

To state a claim for aiding and abetting CEA manipulation, a plaintiff must plead facts sufficient to show that a defendant "(1) had knowledge of a principal's intent to manipulate the market and intended to assist with the manipulation, and (2) performed an act in furtherance of the manipulation." *Amaranth II*, 612 F. Supp. 2d at 389. The elements of this claim must be pled with particularity under Rule 9(b). *Krause v. Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332, 338 (S.D.N.Y. 2005).

As a threshold matter, as explained in the Joint Trader Brief, the aiding and abetting claim should be dismissed because Plaintiffs have not adequately alleged their underlying claims. *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 599 (S.D.N.Y. 2011) (where complaint "fails to allege the requisite intent of any primary actor, there can be no aiding and abetting liability as a matter of law").

However, even if Plaintiffs had pled an underlying CEA violation, their aiding and abetting claim should be dismissed for failure to allege MSCGI's "knowledge of the primary violation and an intent to assist it." *Amaranth III*, 730 F.3d at 183. Plaintiffs merely assert that in connection with the February transactions, "MSCGI followed STASCO's trading and helped STASCO set the price in the MOC window." Trader Compl. ¶ 335. Putting aside the ambiguity

---

[8]   As explained in the Joint Trader Brief, Section 6(c)(1) of the CEA, 7 U.S.C. § 9(1), only became effective on August 15, 2011. Here, there are no allegations relating to MSCGI after February 21, 2011. Therefore, the CEA Section 6(c)(1) claim for false reporting must be dismissed as to MSCGI. Even if the statute was applicable, the Trader Complaint does not contain any allegations that MSCGI ever submitted a report to Platts containing false information or reported a trade that did not occur.

of what Plaintiffs mean by "following" (presumably watching the market, which is a traders' responsibility), the only fact alleged is that MSCGI purchased one cargo from STASCO at what is alleged to be an attractive price. This statement in no way supports an inference against MSCGI of either a primary or a secondary violation. Nothing else is alleged that conceivably relates to an aiding and abetting violation against MSCGI. Thus, the Trader Complaint lacks any particularized facts demonstrating MSCGI's knowledge or intent, let alone actions with respect to whatever STASCO was doing in the market. Plaintiffs' bare speculation is obviously insufficient to state a claim for aiding and abetting. *See Commodity Exch. I*, 2012 WL 6700236, at *19 (dismissing aiding and abetting claim where complaint alleged nothing more than market activity).

## II. PLAINTIFFS' SHERMAN ACT CLAIMS AGAINST MSCGI SHOULD BE DISMISSED

The Complaints also assert claims against MSCGI under Sections 1 and 2 of the Sherman Act based on the very same allegations that purportedly support the CEA claims. "A violation of Section 1 generally requires a combination or other form of concerted action between two legally distinct entities resulting in an unreasonable restraint on trade." *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 29 (2d Cir. 2006). A violation of Section 2 requires plausible allegations that a defendant (i) possesses monopoly power in a relevant market, and (ii) has maintained, acquired or enhanced that power through exclusionary conduct. *Verizon Commc'ns v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). As demonstrated in the Joint Briefs, Plaintiffs' Section 1 and 2 Sherman Act claims fail in numerous respects against all Defendants, including MSCGI, and should be dismissed for the reasons stated there. As discussed below, Plaintiffs' Section 1 claim should also be dismissed specifically as to MSCGI because there are no plausible allegations against MSCGI of an agreement to restrain trade.

Plaintiffs' Section 2 claim should likewise be dismissed against MSCGI because there are no allegations that MSCGI possessed monopoly power or otherwise engaged in anticompetitive conduct.

### A. Plaintiffs Do Not Allege Facts That Plausibly Suggest That MSCGI Joined Or Participated In An Alleged Conspiracy

A complaint asserting a violation of Section 1 of the Sherman Act must allege "enough factual matter" to provide "plausible grounds" upon which to infer that a defendant entered into an agreement to restrain trade or commerce. *Twombly*, 550 U.S. at 556. Conclusory allegations of agreement will not suffice; rather, a Plaintiff must allege sufficient facts as to ***each*** defendant to illustrate plausibly that each defendant joined and participated in the alleged conspiracy. *See In re Elevator Antitrust*, 502 F.3d at 50-51; *In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 541 F. Supp. 2d 487, 491 (D. Conn. 2008) (finding a complaint inadequate that "alleges general conspiratorial activity without reference to specific actions by a particular defendant at a particular time").[9] The Complaints fall far short of this standard.

Indeed, Plaintiffs' conclusory assertion that MSCGI joined and participated in an alleged conspiracy is not supported by any "*factual matter*" at all, let alone sufficient facts "to suggest that an agreement was made" by MSCGI. *Twombly*, 550 U.S. at 556; *see In re Elevator Antitrust*, 502 F.3d at 50-51 (same). The Complaints do not reference or otherwise reflect a single communication or meeting between MSCGI and any other defendant about the price of physical Brent Crude Oil cargoes. Instead, Plaintiffs offer only unsupported, conclusory

---

[9]  *See also Twombly*, 550 U.S. at 565 n.10 (noting that "a defendant seeking to respond to plaintiffs' conclusory allegations in the § 1 context would have little idea where to begin" where the "pleadings mentioned no specific time, place, or person involved in the alleged conspiracies" and "furnish[ed] no clue as to which of the four [defendants] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place").

assertions that a trade was "collusive" (Trader Compl. ¶ 269) or that STASCO "collu[ded]" with Morgan Stanley. *Id.* ¶ 336; Landowner Compl. ¶¶ 123-24. These allegations are classic examples of inadequate, "wholly conclusory" pleading. *See Mayor & City Council of Balt., Md. v. Citigroup, Inc.*, 709 F.3d 129, 135-36 (2d Cir. 2013); *Commodity Exch. I*, 2012 WL 6700236 at *11, *20 (dismissing Sherman Action Section 1 claim in manipulation case where complaint contained no references to specific communications about any specific plan to cause artificial prices). The only specific allegations against MSCGI relate to ordinary business activity. Where, as here, the actions described in the complaint are """doctrinally consistent with lawful conduct""" that is "'just as consistent with an alternative, lawful explanation of events'" – *i.e.*, independent, rational business reactions to marketplace opportunities – the claim is "'too speculative and conclusory' to survive a motion to dismiss." *Concord Assocs., L.P. v. Entm't Props. Trust*, No. 12 Civ. 1667, 2014 WL 1396524, at *23 (S.D.N.Y. Apr. 9, 2014) (citations omitted).

In addition, where multiple defendants are alleged to have engaged in a conspiracy, the complaint must specify "'particular activities by a particular defendant.'" *In re Elevator Antitrust*, 502 F.3d at 50-51 (citation omitted); *see Concord Assocs.*, 2014 WL 1396524, at *25 ("'[c]onclusory, collective language is too convenient, too undisciplined, and too unfocused in light of exposures to litigation expense and disruption (even without ultimate liability) that are so great in antitrust . . . cases'") (citation omitted). But the Complaints provide no such specifics. Instead, they merely parrot the underlying language of the relevant statute. Trader Compl. ¶ 570; Landowner Compl. ¶ 265 ("Defendants . . . entered into a contract, combination or conspiracy in restraint of trade"). Such pleading in "'global terms'" falls far short of the "'specific allegations that would tie each particular defendant to the conspiracy'" that is needed to state a claim under

Section 1.  *BanxCorp v. Apax Partners, L.P.*, No. 10-cv-4769, 2011 WL 1253892, at *4 (D.N.J. Mar. 28, 2011) (citation omitted).  Plaintiffs' antitrust claim should be dismissed.

### B.     Plaintiffs Do Not Allege Facts That Plausibly Suggest That MSCGI Possessed Monopoly Power

To state a claim under Section 2 of the Sherman Act, Plaintiffs must demonstrate, among other things, that MSCGI possessed monopoly power and engaged in anticompetitive conduct. To show monopoly power, Plaintiffs must allege plausible facts demonstrating that MSCGI possessed market share sufficient to establish monopoly power in the relevant market.  *TechRes. Inc. v. Delta Controls Inc.*, No. 13 Civ. 752, 2014 WL 1325914, at *6 (S.D.N.Y. Mar. 31, 2014). Here, Plaintiffs have not even tried to allege a theory as to how MSCGI possessed monopoly power, much less include an allegation concerning MSCGI's share in any relevant market.  On that ground alone, dismissal of the Section 2 claim is warranted.  *Id.*; *AF Gloenco Inc. v. Ushers Mach. & Tool Co.*, No. 1:10-cv-1128, 2011 WL 4593741, at *3 (N.D.N.Y Sept. 30, 2011) ("Because no facts relating to Gloenco's market share or barriers to entry to the market are adduced, Ushers has failed to plead a plausible claim" under Section 2).

Even if Plaintiffs had pled that MSCGI possessed monopoly power, Plaintiffs do not ever allege how the three arms-length transactions in which MSCGI is alleged to have participated were somehow anticompetitive.  *See Commodity Exch. II*, 2013 WL 1100770, at *6 (dismissing Sherman Act Section 2 claim where complaint contained no factual allegations explaining how JP Morgan's apparently legitimate transactions were made for illegitimate or anticompetitive reasons).  "The pertinent inquiry in a monopolization claim . . . is whether the defendant has engaged in improper conduct that has or is likely to have the effect of controlling prices or excluding competition, thus creating or maintaining market power."  *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 108 (2d Cir. 2000).  Again, the analysis is straight-forward:  as described

above, Plaintiffs make only conclusory assertions and fail to allege "direc[t] . . . evidence of the control of prices or the exclusion of competition" by MSCGI.  *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 98 (2d Cir. 1998); *Crossword Mag., Inc. v. Times Books*, No. 96 CV 4550, 1997 WL 227998, at *2 (E.D.N.Y. May 5, 1997) ("conclusory statements asserting monopoly power do not suffice to withstand a motion to dismiss").  Thus, Plaintiffs' Section 2 Sherman Act claims against MSCGI should be dismissed.

## **CONCLUSION**

For all of these reasons, and those set forth in the Joint Briefs, the Court should grant the motion brought by defendant MSCGI and dismiss the claims against MSCGI in the Complaints with prejudice.

Dated:  March 31, 2015
        New York, New York

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

By:  _____/s/ Gregory A. Markel_____
                Gregory A. Markel

One World Financial Center
New York, NY 10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666

Anthony M. Mansfield
Brian D. Wallach
700 Sixth Street, N.W.
Washington, D.C. 20001
Telephone:  (202) 862-2321
Facsimile:  (202) 862-2400

*Attorneys for Defendant Morgan Stanley Capital Group, Inc.*