**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

NORTH SEA BRENT CRUDE OIL FUTURES
LITIGATION

This document applies to ALL CASES

1:13-MD-02475-ALC

**DEFENDANT PHIBRO TRADING LLC AND PHIBRO COMMODITIES LTD'S**
**AMENDED SUPPLEMENTAL MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS'**
**SECOND AMENDED CLASS ACTION COMPLAINTS**

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................1

II. ARGUMENT AND AUTHORITY ......................................................................3

    A.  Plaintiffs' Sherman Act and CEA Claims Should be Dismissed for Failure
        to State a Claim. ...........................................................................................3

        **a.  Plaintiffs Have Failed to State a Claim Against Phibro for a
            Violation of Section 1 of the Sherman Act. ...............................4**

        **b.  Neither Complaint Sufficiently Pleads the Essential Elements
            of a Sherman Act Section 2 Claim. ............................................7**

        **c.  The Trader Complaint Fails to State a Claim under the CEA. ..........8**

            i.  Plaintiffs Fail to Allege a Claim for Market Manipulation
                Against Phibro. ...............................................................9

            ii. Plaintiffs Fail to Allege a Claim for False Reporting and
                Fraud and Deceit Against Phibro. ..................................14

            iii. Plaintiffs Fail to Allege a Claim for Principal-Agent or
                Aiding and Abetting Liability Against Phibro. .............14

    B.  The Complaints' State Law Claims Should be Dismissed. .................................16

        **1.  The State Antitrust and Unfair Trade Practices Act Claims in
            the Landowner Complaint Should be Dismissed. ................................16**

        **2.  The Unjust Enrichment Claims in the Trader Complaint
            Should be Dismissed ..............................................................17**

III. CONCLUSION..................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*AF Gloenco Inc.* v. *Ushers Mach. & Tool Co.*,
   2011 U.S. Dist. LEXIS 112515 (N.D.N.Y Sept. 30, 2011) ...................................................... 8

*Amaranth II*,
   612 F. Supp. 2d 383 ..................................................................................................... 12, 15

*Amaranth III*,
   730 F.3d 183 ....................................................................................................................... 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................... 3, 4, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................... 3, 4, 5, 12

*CFTC* v. *Parnon Energy Inc.*,
   875 F. Supp. 2d 233 (S.D.N.Y. 2012) ................................................................................. 11

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ................................................................................................... 6

*Concord Assocs., L.P. v. Entm't Props. Trust*,
   No. 12 CIV. 1667 WL 1396524 (S.D.N.Y. Apr. 9, 2014)...................................................... 7

*Georgia Malone & Co.* v. *Rieder*,
   19 N.Y. 3d 511 (2012).......................................................................................................... 17

*Hinds County, Miss.* v. *Wachovia Bank, N.A.*,
   620 F. Supp. 2d 499 (S.D.N.Y. 2009) .................................................................................... 5

*Ieradi v. Mylan Labs., Inc.*,
   230 F.3d 594 (3d  Cir. 2002) ................................................................................................... 6

*In re Amaranth Nat'l Gas Comm. Litig.*,
   587 F. Supp. 2d 513 (S.D.N.Y. 2008) ............................................................................. 11, 13

*In re Commodity Exchange Inc., Silver Futures and Options Trading Litig. ("Silver II")*
   , No. 13-CV-1416, 2014 WL 1243851 (2d Cir. March 27, 2014)................................. 9, 11, 13

*In re Commodity Exchange, Inc. Silver Futures and Options Trading Litig. (Silver I)*,
   No. 11-MD-2213, 2012 WL 6700236 (S.D.N.Y. Dec. 21, 2012) ........................... 7, 10, 11, 15

*In re Crude Oil*,
   2007 WL 1946553 ........................................................................................... 8, 10, 13

*In re DDAVP Direct Purchaser Antitrust Litig.*,
   585 F.3d 677 (2d Cir. 2010) ................................................................................................ 13

*In re DiPlacido*,
   2008 WL 4831204 (C.F.T.C. Nov. 5, 2008), *aff'd* 364 App'x 657 (2d Cir. 2009) ................ 10

*In re Ind. Farm Bureau Coop. Ass'n*,
   [1982-1984 Transfer Binder] Comm. Fut. L. Rep. (CCH), 1982 WL 30249 (CFTC
   Dec. 17, 1982)) ...................................................................................................................... 11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.* (LIBOR II),
   No. 11 MD 2262 (NRB), 2013 WL 4504769 (S.D.N.Y. Aug. 23, 2013) ................................ 14

*In re Motel 6 Sec. Litig.*,
   Nos. 93 Civ. 2183 (JFK), 92 Civ. 2866 (JFK), 1997 WL 154011 (S.D.N.Y. Apr. 2,
   1997) ...................................................................................................................................... 17

*In re NAHC, Inc. Securities Litig.*,
   306 F.3d 1314 (3d Cir. 2002) ................................................................................................ 6

*In re Natural Gas Commodity Litig.*,
   358 F. Supp. 2d 344 ............................................................................................................... 10

*In re Parcel Tanker Shipping Servs. Antitrust Litig.*,
   541 F. Supp.  2d 487 (D. Conn. 2008) .................................................................................. 5

*In re Platinum & Palladium Commodities Litig.*,
   2011 U.S. Dist. LEXIS 105040 ............................................................................................. 15

*In re Rough Rice Commodity Litig.*,
   2012 WL 473091 (N.D. Ill. 2012) ......................................................................................... 10

*In re Term Comm. Cotton Fut. Litig.*,
    No. 12-cv-05126, ECF Doc. No. 80 (S.D.N.Y. Dec. 20, 2013) ....................................... 13, 15

*Jadali v. Alamance Regional Med. Ctr.*,
   225 F.R.D. 181 (M.D.N.C. 2004) ......................................................................................... 5

*Kartell* v. *Blue Shield of Massachusetts, Inc.*,
   749 F.2d 922 (1st Cir. 1984) ................................................................................................ 7

*Kolari v. New York-Presbyterian Hosp.*,
   455 F.3d 118 (2d Cir. 2006) .................................................................................................. 16

*Krause*, 356 F. Supp. 2d at 338 ................................................................................................. 15

*N. J. Carpenters Health Fund v. Royal Bank of Scot. Group, PLC*,
   709 F.3d 109 (2d Cir. 2013) .................................................................................................. 6

*Ridge at Red Hawk, L.L.C. v. Schneider*,
   493 F.3d 1174 (10th Cir. 2007 ) ........................................................................ 4

*RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*,
   661 F. Supp. 2d 218 (E.D.N.Y. 2009), *aff'd*, 391 Fed. App'x 59 (2d Cir. 2010) .................. 5, 8

*Sperry v. Crompon Corp.*,
   8 N.Y. 3d 204 (2007) ........................................................................ 17

*Techreserves Inc.* v. *Delta Controls, Inc.*,
   2014 U.S. Dist. LEXIS 47080 (S.D.N.Y. Mar. 31, 2014) ........................................ 8

*Verizon Comms. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) ........................................................................ 7

*Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*,
   857 F.2d 55 (2d Cir. 1988) ................................................................ 7

*Westchester Radiological Assoc. P.C.* v. *Empire Blue Cross and Blue Shield, Inc.*,
   659 F. Supp. 132 (S.D.N.Y. 1987) ........................................................ 7

**Statutes**

15 U.S.C. § 1 ................................................................................. 4

28 U.S.C. § 1367 ............................................................................ 16

7 U.S.C. §§ 13(a)(2) ........................................................................ 8

7 U.S.C. §§ 9(1) ............................................................................ 8

**Federal Cases**

Fed. R. Civ. P. 12(b)(6) ................................................................. 3, 6

Fed. R. Civ. P. 8(a) .................................................................... 12, 13

Fed. R. Civ. P. 9(b) .................................................................... 13, 15

In addition to the memoranda of law submitted on behalf of Defendants jointly ("Defendants' Joint Memoranda")[1], Defendants Phibro Trading LLC ("Phibro Trading") and Phibro Commodities Ltd. ("Phibro Commodities") (collectively, "Phibro") submit this Amended Memorandum of Law in Support of their Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Second Amended Class Action Complaint ("Landowner Complaint") filed in Cause No. 1:13-cv-07443-ALC (the "Landowner Case") and the Second Amended Consolidated Class Action Complaint ("Trader Complaint") filed in Cause No. 1:13-md-02475 (the "Trader Case") (the Landowner Complaint and Trader Complaint are collectively referred to as the "Complaints") to address matters unique to Phibro which necessitate dismissal.[2]

## I.    INTRODUCTION

As Defendants' Joint Memoranda demonstrate, the Complaints are nothing more than a weak attempt to cobble together claims from routine, publicly reported trading activity and bald conclusory assertions, which Plaintiffs undertook after the announcement of inquiries by the European Commission, the U.K. Serious Fraud Office, and the Federal Trade Commission. While the arguments in Defendants' Joint Memoranda support dismissal of all Defendants,

---

[1]    Defendants' Joint Memoranda refers to Defendants' Joint Memorandum in Support of Their Motion to Dismiss Plaintiff Harter's Amended Class Action Complaint (Cause No. 1:13 cv-07443-ALC, Dkt. No. 219), Defendants' Joint Memorandum in Support of Their Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint (Cause No. 1:13-md-02475, Dkt. No. 211), and Defendants' Joint Memorandum in Support of Their Motion to Dismiss the Complaints as Exceeding the Extraterritorial Reach of U.S. Law Cause No. 1:13-md-02475, Dkt. No. 201).

[2]    On July 28, 2014, Phibro Trading filed its notice of motion to dismiss the pending complaints filed in the Landowner Case and the Trader Case (Dkt. No. 223) and its Memorandum of Law in Support of Its Motion to Dismiss Plaintiffs' Amended Class Action Complaints ("Original Phibro Brief") (Dkt. No. 224).  At that time, Phibro Commodities had not been named as a defendant.  Pursuant to the February 26, 2015 Stipulation and Order (Dkt. No. 307), Plaintiffs in the Trader Case amended their complaint to add Phibro Commodities and certain other defendants.  Other than adding these new defendants, there were no substantive changes to the complaint.  A similar stipulation is being filed in the Landowner Case, pursuant to which Plaintiff will amend to add Phibro Commodities as a defendant in that case.  Phibro is required to amend its briefing to address the amended Landowner Complaint before it is filed, and for purposes of this motion Phibro has relied on a draft version expected to be filed. The prior motions and briefing apply to the Trader Complaint and Landowner Complaint, and Phibro files this amended memorandum of law to take into account the addition of Phibro Commodities as a defendant.  As with the Original Phibro Brief, Phibro joins and incorporates by reference Defendants' Joint Memoranda.

including Phibro, there are additional reasons Phibro, which was not even a subject of the investigative inquiries which prompted the filing of the Complaints, should be dismissed.

In the Complaints, Plaintiffs mention Phibro only a handful of times. In all but one instance, Plaintiffs simply mention that Phibro Commodities engaged in trading transactions without making any allegation that those transactions were improper. For example, Plaintiffs describe a trade between Phibro Commodities and Shell on February 24, 2011. While Plaintiffs attempt inadequately to allege that Shell entered the trade for manipulative purposes, with respect to Phibro, Plaintiffs make no allegation that Phibro Commodities' participation in the transaction was improper. Plaintiffs allege nothing more than that Phibro Commodities was Shell's counter party in this transaction. Similarly, Plaintiffs include Phibro Commodities in charts showing the number of trades various market participants engaged in on five days in 2010 and 2011.[3] Phibro Commodities was included in those charts solely as factual background for Plaintiffs' claims against other Defendants. Plaintiffs make no allegation suggesting that any of the Phibro Commodities trades reflected in these charts were improper. In fact, Plaintiffs allege no facts showing volumes, prices, or other details regarding these transactions.

The only specific Phibro conduct alleged to be wrongful in the Complaints is Phibro Commodities' alleged purchase of a cargo of Forties crude oil from BP in September 2012 followed by an attempt the next day to sell that same cargo at a price that was lower than the original purchase price.  According to Plaintiffs, this activity indicates that Phibro was engaged

---

[3]   Phibro is mentioned in charts related to trading activity on June 15, 2010 (Trader Compl. ¶ 273), January 13, 2011  (Trader Compl. ¶ 283 ), January 14, 2011  (Trader Compl. ¶¶ 289, 293), January 2011 generally (Landowner Compl. ¶ 112 (¶ 111 in the anticipated amended complaint adding Phibro Commodities), Trader Compl. ¶ 309 ), and February 24, 2011  (Trader Compl. ¶ 352). In one of the charts, Plaintiffs merely state that Phibro Commodities engaged in no sales and no purchases on January 13, 2011.  (Trader Compl. ¶ 283).

in a scheme to manipulate Dated Brent upwards and then, a day later, manipulate it downwards.[4] However, the Complaints lack the factual allegations necessary to support such a theory. Relying entirely on conclusory assertions, Plaintiffs allege no facts that would support an inference that these trades were anything other than the type of legitimate trading activity that occurs in various markets throughout the world on a daily basis.  Plaintiffs' allegations lack the factual support necessary to establish that, among other things: (i) Phibro had the ability to manipulate the market; (ii) these trades in fact impacted the subject market pricing; (iii) Phibro had any intent, much less a motive, to manipulate prices up one day and down the next; and (iv) there was any contact or communication between Phibro and any other Defendant that would suggest any common purpose or coordination. The threadbare facts Plaintiffs have alleged with respect to Phibro state no claim upon which relief can be granted against Phibro, and all claims against Phibro should be dismissed.

## II.    ARGUMENT AND AUTHORITY

### A.    Plaintiffs' Sherman Act and CEA Claims Should be Dismissed for Failure to State a Claim.

The Supreme Court held in *Twombly* and *Iqbal* that a viable complaint must allege facts that, if proven, would establish a "plausible" claim for relief.[5]  A complaint that does nothing more than show a claim for relief is "possible" or "conceivable" is insufficient, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, such a complaint should be dismissed.[6]  A claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Thus, it

---

[4]    The Landowner Complaint borrows heavily from the Trader Complaint's allegations, but focuses only on alleged downward suppression of Brent Crude Oil prices.

[5]    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (courts must be able to "infer more than the mere possibility of misconduct").

[6]    *Iqbal*, 556 U.S. at 680.

follows that where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the plaintiff is entitled to relief.[7]

The Supreme Court has also made clear that "a plaintiff armed with nothing more than conclusions" does not satisfy the pleading requirements of the Federal Rules of Civil Procedure, and courts need not consider allegations that are mere legal conclusions because "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice."[8]  As a result, conclusory allegations are to be disregarded for purposes of determining if the complaint states a claim for relief.[9]  For the reasons set forth below, Plaintiffs have failed to satisfy the standards set forth in both *Twombly* and *Iqbal* with respect to their Sherman Act and CEA claims.[10]

### a. Plaintiffs Have Failed to State a Claim Against Phibro for a Violation of Section 1 of the Sherman Act.

Section 1 of the Sherman Act prohibits "unreasonable restraints of trade . . . effected by a contract, combination, or conspiracy."[11]  The "crucial question" under Section 1 is thus, whether the "challenged anticompetitive conduct stems from independent decision or from an agreement, tacit or express."[12]

Here, the Complaints make the perfunctory assertion that "Defendants" entered into a contract, combination or conspiracy in restraint of trade in violation of Section 1 of the Sherman

---

[7]   *See Iqbal*, 556 U.S. at 678-79); *see also Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007 )("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.").

[8]   *Iqbal*, 556 U.S. at 678-79.

[9]   *Id*. at 679.

[10]   The Landowner Complaint does not assert any claims pursuant to the CEA.  As a result, Phibro's discussion of Plaintiffs' CEA claims relates entirely to the Trader Complaint.

[11]   15 U.S.C. § 1.

[12]   *Twombly*, 550 U.S. at 553 (internal quotation marks omitted).

Act.[13]   However, following the dictates set forth in *Twombly,* Courts have specifically rejected such undifferentiated pleading against a group of defendants as insufficient.[14]

Additionally, the Complaints lack any factual allegations supporting an inference, much less a reasonable inference, that Phibro had any agreement to unreasonably restrain trade. The only allegations in the Complaints that specifically relate to Phibro's supposed participation in a purported conspiracy consist of the vague allegation that:

> The following day [after Phibro Commodities bought the cargo from BP], September 18, 2012, Phibro Commodities, *with the help of other market participants,* drove the market downward by offering in the MOC the very same cargo that it bought the day before at minus $0.25 below North Sea Dated Strip, a full $0.30 below its purported purchase price 24-hours earlier.[15]

Notably missing from this allegation are any facts related to who these other "market participants" were, what these "market participants" actually did to help Phibro, whether these other "market participants" were knowingly aiding Phibro in its purported scheme, and whether Phibro requested their assistance or otherwise communicated with them.   Without this information, Plaintiffs cannot state a claim under Section 1.[16]

Additionally, the fact that Phibro Commodities offered the BP-sourced cargo at a price lower than the price at which it purchased the cargo does not support a reasonable inference of

---

[13]   Trader Compl. at ¶ 570; Landowner Compl. at ¶ 265.

[14]   *Hinds County, Miss.* v. *Wachovia Bank, N.A.*, 620 F. Supp. 2d 499, 512-16 (S.D.N.Y. 2009) (requiring "specific factual averment of involvement" for each defendant); *In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 541 F. Supp.  2d 487, 491-92 (D. Conn. 2008) ("[The] lack of specifics with respect to the acts of a particular defendant… renders the complaint inadequate").

[15]   Trader Compl. at ¶ 397; Landowner Compl. at ¶ 130 (¶ 129 in the anticipated amended complaint adding Phibro Commodities) (emphasis added).

[16]   In order to state a claim for antitrust conspiracy under Section 1, Plaintiffs must go beyond bare allegations and provide basic details regarding the alleged agreement, including, among other things, the identity of the alleged participants and when the conspiracy was formed. *RxUSA Wholesale, Inc. v. Alcon Labs., Inc*., 661 F. Supp. 2d 218, 231 (E.D.N.Y. 2009), *aff'd*, 391 Fed. App'x 59 (2d Cir. 2010) (plaintiffs failed to state a claim for Section 1 conspiracy where the complaint offered no facts that would indicate the existence of an illegal agreement, such as "when the alleged conspiracy began, where it occurred, or what statements the . . . [d]efendants made to one another"); *see* also *Jadali v. Alamance Regional Med. Ctr*., 225 F.R.D. 181, 186 (M.D.N.C. 2004) (Plaintiff failed to state a claim for Sherman Act conspiracy and was not entitled to leave to amend his complaint where he failed to provide any details of the alleged conspiracy, name participants, or describe how or when the conspiracy formed).

manipulative or anticompetitive intent. There are many legitimate reasons a trading company like Phibro Commodities might transact in this manner. For example, Phibro Commodities may have misjudged market conditions at the time it bought the cargo and paid too much or the market may have moved against Phibro Commodities such that a trading position that appeared favorable on one day became unfavorable the next. Other than unsupported conclusory assertions, Plaintiffs allege no facts that would suggest the price at which Phibro Commodities offered the cargo was out of line with market conditions. In fact, the minus $0.25 price offered by Phibro Commodities and reported by Platts (upon which Plaintiffs rely) is not the price Phibro Commodities initially offered.  Phibro Commodities initially offered the cargo at plus $0.15 above North Sea Dated Strip and slowly reduced the price over time as each offer failed to attract interested buyers.[17]  The fact that there were no buyers at these steadily declining offers supports an inference that the offering prices were too high, not artificially low. At bottom, Plaintiff's sole allegation that Phibro engaged in an antitrust conspiracy to manipulate the market for Brent Crude Oil simply "show[s] only that [a defendant] was engaged in some level of ordinary market

---

[17]     *See* Phibro_Ex. B, <u>ICIS World Crude Report</u>, Sept. 18, 2012 ("In open market trading, Phibro offered the 3-5 October Forties that it bought on Monday, starting at Dtd plus 15 cents and working down to Dtd less 25 cents, but without attracting any buying interest").The Court may refer to the <u>ICIS World Crude Report</u> at the 12(b)(6) stage because (1) because it is a publicly available document of which the Court may take judicial notice, and alternatively (2) because it is integral to the Plaintiffs' Complaints.  In deciding a Rule 12(b)(6) motion, the court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that either are in the plaintiff's possession or were known to the plaintiff when she brought suit, or matters of which judicial notice may be taken. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002).  Courts may take judicial notice of publicly available pricing or market reports, such as the ICIS World Crude Report.  *See In re NAHC, Inc. Securities Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (taking judicial notice of stock price data compiled by Dow Jones News service); *Ieradi v. Mylan Labs., Inc*., 230 F.3d 594, 600 n. 3 (3d  Cir. 2002) (judicial notice of stock prices reported by Quotron Chart Services).   The ICIS World Crude Report may similarly be analogized to a newspaper article or press release, of which the Court may also take judicial notice.  *See, e.g., N. J. Carpenters Health Fund v. Royal Bank of Scot. Group, PLC,* 709 F.3d 109, 126–27 & n. 11 (2d Cir. 2013) (taking judicial notice of newspaper articles). Alternatively, *"*[f]or purposes of [Rule 12(b)], the court may  consider [a document] where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.*" Chambers,* 282 F.3d at 152-53 (internal quotation marks and citations omitted). The <u>ICIS World Crude Report</u> is integral to the Plaintiffs' Complaints because it forms the basis of the central, and indeed only, allegation of wrongdoing on Phibro's part.

activity."[18]  This type of activity "is neither *per se* illegal nor an unreasonable restraint of trade under Section 1."[19]

In sum, Plaintiffs' Section 1 claims must fail because there are simply no factually supported allegations that Phibro agreed to engage in anticompetitive conduct with any of the other defendants, and Phibro's conduct, as alleged by Plaintiffs, is just as consistent with unilateral conduct as it is an antitrust conspiracy.

> **b.      Neither Complaint Sufficiently Pleads the Essential Elements of a Sherman Act Section 2 Claim.**

Plaintiffs have also alleged that "Defendants" monopolized and conspired to monopolize the Brent crude oil market.[20]  A claim for monopolization under Section 2 of the Sherman Act requires a plaintiff to plausibly allege that (1) a defendant possesses monopoly power in a relevant market, and (2) has maintained, acquired or enhanced that power through exclusionary conduct.[21]  Additionally, a claim for conspiracy to monopolize under Section 2 imposes on claimants an additional burden to allege facts giving rise to a plausible inference of (1) a combination or conspiracy among defendants, (2) an overt act in furtherance of the conspiracy, and (3) specific intent to monopolize.[22]

Plaintiffs' Section 2 claims should be dismissed because Plaintiffs have not alleged that Phibro possesses monopoly power in a relevant market.  In fact, Plaintiffs have made no attempt

---

[18]    *Silver I*, 2012 WL 6700236, at *19.

[19]    *Westchester Radiological Assoc. P.C.* v. *Empire Blue Cross and Blue Shield, Inc.*, 659 F. Supp. 132, 135 (S.D.N.Y. 1987); *Concord Assocs., L.P. v. Entm't Props. Trust*, No. 12 CIV. 1667, 2014 WL 1396524, at *23 (S.D.N.Y. Apr. 9, 2014) (finding that where actions described in the complaint are "doctrinally consistent with lawful conduct" that is "Just as consistent with an alternative, lawful explanation of events," the claim is "too speculative and conclusory to survive a motion to dismiss"); *see also Kartell* v. *Blue Shield of Massachusetts, Inc.*, 749 F.2d 922, 924 (1st Cir. 1984) ("The negotiation of prices between buyers and sellers is not a restraint of trade.").

[20]    Trader Compl. at ¶ 581; Landowner Compl. at ¶ 276 (¶ 275 in the anticipated amended complaint adding Phibro Commodities).

[21]    *Verizon Comms. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

[22]    *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 74 (2d Cir. 1988).

to quantify Phibro's market share. This failure, standing alone, is sufficient to warrant dismissal of Plaintiffs' Section 2 claims against Phibro.[23]

Moreover, Plaintiffs' conspiracy to monopolize claims should be dismissed for the additional reason that Plaintiffs have alleged no facts from which it could reasonably be inferred that Phibro conspired with any other entities to monopolize the relevant market, that Phibro committed any acts in furtherance of any such conspiracy, or that Phibro possessed the specific intent to monopolize.  As a result, Plaintiffs have failed to state a claim for relief and their conspiracy to monopolize claims should be dismissed.

### c.   The Trader Complaint Fails to State a Claim under the CEA.

The first four claims in the Trader Complaint relate to purported violations of the CEA, which prohibits manipulation of the price of any commodity or commodity future.[24]  Plaintiffs' claims each sound in fraud and thus, Plaintiffs are required to plead facts supporting those claims with particularity.[25]  Specifically, Plaintiffs must allege "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue."[26]  In addition to the reasons set forth in Defendants' Joint Memoranda, the Trader Complaint contains no allegations that would support any of Plaintiffs' CEA claims against Phibro.

---

[23]   *Techreserves Inc.* v. *Delta Controls, Inc.*, 2014 U.S. Dist. LEXIS 47080, at *22-23 (S.D.N.Y. Mar. 31, 2014); *see also, e.g.*, *AF Gloenco Inc.* v. *Ushers Mach. & Tool Co.*, 2011 U.S. Dist. LEXIS 112515, at *8 (N.D.N.Y Sept. 30, 2011) ("Because no facts relating to Gloenco's market share or barriers to entry to the market are adduced, Ushers has failed to plead a plausible claim" under Section 2); *RxUSA Wholesale, Inc.*, 661 F. Supp. 2d  at 234 ("[T]his failure to allege the individual market share of each PWD is fatal to Plaintiff's Section 2 claims").

[24]   *See* 7 U.S.C. §§ 9(1), 13(a)(2).

[25]   *See* Defendants' Joint Memorandum in Support of Their Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint (Cause No. 1:13-md-02475, Dkt. No. 211) at 12-13.

[26]   *In re Crude Oil Comm. Litig.*, No. 06 Civ. 6677, 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007) (citation omitted)

### i.     Plaintiffs Fail to Allege a Claim for Market Manipulation Against Phibro.

A claim for market manipulation under the CEA requires Plaintiffs to allege that (1) Phibro had the ability to influence market prices; (2) artificial prices existed; (3) Phibro caused the artificial price; and (4) Phibro specifically intended to cause the artificial price.[27] However, Plaintiffs have failed to allege any facts necessary to support this claim.

First, Plaintiffs have failed to satisfy the threshold requirement of alleging that Phibro had the ability to influence the futures prices Plaintiffs claim were manipulated.  Plaintiffs' only allegations related to Phibro's role in the Brent crude oil market are that Phibro "is an international commodities trading firm" that "engages in energy trading primarily in liquid markets over exchanges, in addition to over-the-counter physical, swaps, and options markets."[28] Plaintiffs do not allege that Phibro has any ability, standing alone, to influence the price in any of these markets.[29]  As detailed in Defendants' Joint Memoranda, the Dated Brent Assessment at issue is determined by a broad range of physical and derivative Brent trades after Platts exercises its independent judgment and is not linked to the futures prices Plaintiffs claim were affected.[30] Under these circumstances, Plaintiffs have alleged no facts from which it could be inferred that Phibro could influence the market prices at issue.

Second, Plaintiffs have failed to sufficiently plead that artificial prices existed in connection with Phibro's trading activity.   As explained in Defendants' joint brief, "the

---

[27]   *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666 (S.D.N.Y. 2013); *In re Commodity Exchange Inc., Silver Futures and Options Trading Litig. ("Silver II")*, No. 13-CV-1416, 2014 WL 1243851, at *1-2 (2d Cir. March 27, 2014).

[28]   Trader Compl. at ¶ 45.

[29]   Plaintiffs' failure to allege Phibro's ability to influence prices is even more startling given the fact that Plaintiffs have alleged that other Defendants possessed a "dominant position" in the Brent market or had the ability to manipulate Dated Brent prices.  *See, e.g.,* Trader Compl. at ¶¶ 8, 330, 359.

[30]   Trader Compl. at ¶ 87.

allegation of unusual market prices, without more, is insufficient to establish artificial prices, as a matter of law."[31]  Plaintiffs do not assert that the prices at which Phibro Commodities purchased the cargo on September 17 or offered the cargo on September 18 were unusual or otherwise artificial.   They only allege that Phibro Commodities "created upward pressure when it purchased [the] Forties cargo . . .  for $0.05 plus North Sea Dated Strip" on September 17, 2012, and "drove the market downward by offering in the MOC the very same cargo that it bought the day before at minus $0.25 below North Sea Dated Strip."  (Trader Compl. ¶¶ 395-96).  The fact that prices change from one day to the next is entirely consistent with normal market activity, and nothing in these allegations, taken as true, would support a finding of artificiality.

Third, Plaintiffs have failed to allege that Phibro caused the artificial prices of which Plaintiffs complain.  "The causation element [of a market manipulation claim] requires that a defendant be the proximate cause of the price artificiality."[32]  Thus, Plaintiffs "must specify 'what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue.'"[33]  Here, Plaintiffs asserts that the "Defendants" caused artificial prices of both physical Brent crude oil and Platts' Dated Brent Assessment, and that these artificial prices had the effect of causing artificial prices for Brent futures and derivatives.  Other than the September 2012 offer of Phibro Commodities' BP-sourced cargo, Plaintiffs do not allege a single act by Phibro that Plaintiffs claim had any impact on the subject prices.

---

[31] *See* Defendants' Joint Memorandum in Support of Their Motion to Dismiss the Trader Complaint (Dkt. 211) at 16 (citing *In re Rough Rice Commodity Litig.*, 2012 WL 473091, at *6 (N.D. Ill. 2012); *In re Commodity Exchange, Inc. Silver Futures and Options Trading Litig. (Silver I)*, No. 11-MD-2213, 2012 WL 6700236, *16 (S.D.N.Y. Dec. 21, 2012); *In re DiPlacido*, 2008 WL 4831204, at *87 (C.F.T.C. Nov. 5, 2008), *aff'd* 364 App'x 657, 661-62 (2d Cir. 2009) ("[A] statistically unusual high (or low) price will not on that basis alone be deemed artificial.")).

[32]   *In re Commodity Exchange, Inc. Silver Futures and Options Trading Litig. (Silver I)*, No. 11-MD-2213, 2012 WL 6700236, *16 (S.D.N.Y. Dec. 21, 2012).

[33]   *In re Crude Oil Commodity Litig.*, 2007 U.S. Dist. LEXIS 47902, at *17 (citing *In re Natural Gas Commodity Litig.*, 358 F. Supp. 2d at 344).

With respect to Phibro Commodities' alleged purchase of cargo on September 17, 2012, Plaintiffs fail to allege how the purchase contributed to an artificial Dated Brent Assessment, and indeed do not even allege what the Dated Brent Assessment was on that day.  With respect to the Phibro Commodities offer on September 18, as discussed fully in Defendants' Joint Memoranda, the Trader Complaint failed to allege facts establishing a causal connection between such an offer in the MOC Window and the Dated Brent Assessment, which is based on multiple inputs and Platts' independent judgment.  And as discussed in Defendants' Joint Memoranda, Plaintiffs cannot establish a causal link between the futures pricing they claim was ultimately manipulated because that pricing is derived from inputs other than the Dated Brent Assessment.  Because, Plaintiffs have not made a single allegation that Phibro caused artificial prices (or possessed the power to do so),  Plaintiffs' market manipulation claim should be dismissed.

Fourth, Plaintiffs have failed to plead facts that would establish that Phibro specifically intended to influence market prices.  Market manipulation under the CEA is a specific intent cause of action.[34]   As a result, Plaintiffs must do more than make "vague allegations of 'uneconomic conduct,'"[35] and instead must allege that causing an artificial price was "the purpose or conscious object" of the act.[36]  Additionally, Plaintiffs must "do more than merely allege that a transaction that appears legitimate was intended to manipulate the market"; rather, the factual allegations in the complaint must give rise to a 'strong inference' . . . that manipulation was the dominant purpose of the transaction."[37]  Finally, Plaintiffs must allege that Phibro was to receive

---

[34]   *Silver I*, 2012 WL 6700236, at *10.

[35]   *Silver II*, 2014 WL 1243851, at *2.

[36]   *In re Cotton Futures*, No. 12-CV-5126, at *28 (quoting *In re Ind. Farm Bureau Coop. Ass'n*, [1982-1984 Transfer Binder] Comm. Fut. L. Rep. (CCH), 1982 WL 30249, at *7 (CFTC Dec. 17, 1982)); *see also CFTC* v. *Parnon Energy Inc.*, 875 F. Supp. 2d 233, 249 (S.D.N.Y. 2012) (same)).

[37]   *Amaranth I*, 587 F. Supp. 2d at 535-36.

"a concrete and personal benefit . . . from the fraud."[38]  Plaintiffs' allegations as to Phibro fail to satisfy these standards.[39]

As discussed above, the Trader Complaint's sole allegations related to Phibro are that Phibro Commodities purchased a cargo of Brent Crude Oil from BP in September 2012 and then, the next day, attempted to sell that same cargo at a price that was lower than the original purchase price.  Plaintiffs then make the conclusory assertion that this activity is somehow indicative of Phibro's intent to manipulate the market both upward and downward and invite the Court to infer specific intent from Phibro's allegedly uneconomic conduct, arguing that "Phibro Commodities was not acting rationally by offering the cargo it had just bought.  Rather, Phibro Commodities deliberately was signaling to market participants that the market was heading lower."[40]

As discussed above, buying a commodity on one day and offering to sell it the next day is neither irrational nor manipulative as a matter of course.  The decision to sell may reflect Phibro Commodities' realization that the original trade was based on a misjudgment of market conditions or direction or in reaction to the market moving against Phibro Commodities' position. A decision to unwind a trading position does not make the original trade or the effort to unwind the position manipulative, and it certainly does not give rise to the inference that Phibro

---

[38]   *Amaranth II*, 612 F. Supp. 2d at 383.

[39]   Even if the Rule 8(a) pleading standard applied to Plaintiffs' CEA claim (it does not), Plaintiffs' allegations against are wholly inadequate under that standard as well. The Supreme Court's decision in *Twombly* requires a complaint contain enough facts to state a claim for relief that is plausible on its face. Beyond Phibro Commodities' participation in a single economically rational transaction,  Plaintiffs allege only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice" under Rule 8(a).  *Id.* (*citing Twombly*, 550 U.S. at 555).  *Id.* at 679.

[40]   Trader Compl. ¶ 397

was acting with the intent of causing artificial price fluctuations within the market, as opposed to responding to market opportunities and conditions presented during the day.[41]

Additionally, there are no allegations whatsoever as to Phibro's motive in engaging in this purportedly manipulative trading activity.  Instead, Plaintiffs assert a catch-all allegation that the "Defendants" were motivated to enhance the value of their financial, derivative or physical positions and to improve the price of purchase or sale obligations.[42] However, this allegation violates the Second Circuit's requirement that plaintiffs "provid[e] a factual basis for scienter for each defendant."[43]  Moreover, even if the Court were to ignore the group pleading deficiency, it is well-settled that allegations of a generalized profit motive that "could be imputed to any corporation with a large market presence in any commodity market" are  "insufficient to show intent" under the CEA.[44]

Finally, Plaintiffs' Complaint is devoid of any  references to particular futures contracts that were affected by the alleged manipulation.  Here, as in *LIBOR II*, Plaintiffs fail to allege

---

[41]   *In re Commodity Exch., Inc., Silver Futures & Options Trading Litig.*, 11 Md. 2213 (RPP), 2012 WL 6700236, at *51 (S.D.N.Y. Dec. 21, 2012);  *see also In re Amaranth Nat'l Gas Comm. Litig.*, 587 F. Supp. 2d 513 (534-35) (S.D.N.Y. 2008) ("[t]he laws that forbid market manipulation should not encroach on legitimate economic decisions lest they discourage the very activity that underlies the integrity of the markets they seek to protect");

[42]   Trader Compl. ¶ 533.

[43]   *See In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2010) (emphasis added).

[44]   *In re Crude Oil*, 2007 WL 1946553, at *8. Plaintiffs inability to properly plead scienter, which is fatal to their CEA claim under Rule 9(b), fares no better under Rule 8(a).  Under Rule 8(a), courts require "specific factual allegations" that a defendant "acted or failed to act with the purpose or conscious object of causing or affecting a price or price trend in the market that did not reflect the legitimate forces of supply and demand."  *In re Term Comm. Cotton Fut. Litig.*, No. 12-cv-05126, ECF Doc. No. 80 (S.D.N.Y. Dec. 20, 2013) (same).  To satisfy this standard, plaintiffs must plead "factual allegations showing that [defendant] took specific actions which exhibited an actual intent to bring about [or] engage in" transactions to "manipulate market prices."  *In re Comm. Exch. Inc. Silver Fut. & Options Trading Litig.*, No. 11 Md. 2213, 2012 WL 6700236, at *10 (S.D.N.Y. Dec. 21, 2012) (dismissing intent allegations that were "conclusory and speculative").  Plaintiffs' only substantive allegations against Phibro are that it participated in a single trade which is easily explained as a normal economic transaction.  Thus, Plaintiffs' allegations are also  insufficient to establish manipulative intent under the less stringent standard of Rule 8(a).

"actual damages."[45]  Despite the Trader Plaintiffs' access to their own futures contract trading records, the Complaint is devoid of any references to particular futures contracts entered into on or near September 17, 2012 and September 18, 2012, let alone futures contracts affected by the allegedly artificial prices.

For the foregoing reasons, Plaintiffs' market manipulation claim under the CEA against Phibro should be dismissed.

### ii.    Plaintiffs Fail to Allege a Claim for False Reporting and Fraud and Deceit Against Phibro.

Plaintiffs also assert a claim of manipulation by false reporting and fraud and deceit.  The elements of a false reporting claim are: the intentional or reckless (i) delivery for transmission, (ii) of "a false or misleading or inaccurate report" tending to "affect the price of any commodity in interstate commerce," (iii) with knowledge or reckless disregard for the false, misleading or inaccurate nature of the report.    This claim must fail because Plaintiffs have failed to allege Phibro delivered or caused to be delivered *any* report regarding Brent crude oil, let alone a false or misleading one.  As a result, Plaintiffs' false reporting claim should be dismissed on this basis alone.[46]

### iii.    Plaintiffs Fail to Allege a Claim for Principal-Agent or Aiding and Abetting Liability Against Phibro.

Plaintiffs' final CEA claims are derivative claims for principal-agent and aiding and abetting liability under the CEA.   As a threshold matter, Plaintiffs' claims of principal-agent and

---

[45]  *In re LIBOR-Based Fin. Instruments Antitrust Litig.* (LIBOR II), No. 11 MD 2262 (NRB), 2013 WL 4504769 (S.D.N.Y. Aug. 23, 2013) ("[d]espite the fact that plaintiffs indisputably have access to their own Eurodollar futures contract trading records, the PSAC is devoid of any references to particular Eurodollar contracts").

[46]   Additionally, as discussed in Defendants' Joint Motion to Dismiss (Dkt. No. 211),  to the extent Plaintiffs have alleged that Phibro engaged in false reporting prior to August 15, 2011, such claim fails because a cause of action for false reporting under the CEA did not exist until August 15, 2011.

aiding and abetting liability are fatally flawed as there can be no aiding and abetting or principal-agent liability where, as here, Plaintiffs fail to adequately plead the underlying claim.[47]

Additionally, Plaintiffs have provided no factually supported allegations related to either of these theories. First, with respect to its principal-agent theory of liability, Plaintiffs do not allege any facts suggesting that Phibro was employed as an agent or controlled by any other Defendant, and for this reason alone, this claim should be dismissed.[48]   Second, the elements of a claim for aiding and abetting CEA manipulation are that a defendant "(1) had knowledge of a principal's intent to manipulate the market and intended to assist with the manipulation, and (2) performed an act in furtherance of the manipulation."[49]   No fact alleged in the Trader Complaint supports an inference that Phibro knew of another Defendant's intent to manipulate the market and intended to assist in the manipulation or performed any acts in furtherance thereof.[50]   Instead, Plaintiffs have merely alleged that Phibro Commodities purchased Forties cargo from BP and that it offered that same cargo for sale the following day.  The mere fact that a party bought from or attempted to sell to another party does not support the existence of an intentional act to further manipulation.[51]   As a result, this claim should be dismissed.

---

[47]   *In re Platinum & Palladium Commodities Litig.*, 2011 U.S. Dist. LEXIS 105040, at *24 (where complaint "fails to allege the requisite intent of any primary actor, there can be no aiding and abetting liability as a matter of law.").

[48]   *See Amaranth II*, 612 F. Supp. 2d at 394 (dismissing principal-agent claim "in the absence of any allegations that [defendant holding company] granted [majority-owned subsidiary] the authority to act on its behalf, [subsidiary] agreed, and [holding company] controlled [subsidiary]").

[49]   *Amaranth II*, 612 F. Supp. 2d at 389.

[50]   *In re Cotton Futures*, No. 12-CV-5126, at *33-34 (quoting *Amaranth III*, 730 F.3d at 183) ("aiding and abetting requires knowledge of the primary violation and an intent to assist it"); *Krause*, 356 F. Supp. 2d at 338 (Rule 9(b) applies to claim for aiding and abetting).

[51]   *See Silver* I, 2012 WL 6700236, at *19 (dismissing aiding and abetting claim where complaint alleged nothing more than market activity).

**B.      The Complaints' State Law Claims Should be Dismissed.**

In addition to their federal law claims, Plaintiffs have also asserted various state law claims against Phibro.  For example, in the Landowner Complaint, Plaintiff asserts that he is entitled to relief under the unfair trade practices statutes and antitrust statutes of 29 various states while in the Trader Complaint, Plaintiffs seek to recover under a claim of unjust enrichment. Because Phibro is entitled to dismissal of all federal claims asserted in the Complaints, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.[52]  However, in the event that the Court exercises jurisdiction over Plaintiffs' state law claims, those claims should be dismissed for failure to state a claim.

**1.      The State Antitrust and Unfair Trade Practices Act Claims in the Landowner Complaint Should be Dismissed.**

The Landowner Complaint fails to sufficiently plead facts as to Phibro to support the elements of the 27 state unfair trade practices statutes and 27 state antitrust statutes upon which Plaintiff relies. Frist, many of these statutes require some part of the unlawful conduct or injury to occur within that state.  The Landowner Complaint does not allege that Phibro engaged in any conduct, let alone any unlawful conduct, in any state within the United States, much less those states listed in the Landowner Complaint.    Second, as discussed in greater detail in the Defendants' Joint Memoranda, each of these claims should also be dismissed because (1) Plaintiff lacks constitutional standing to bring claims under the laws of any state other than Louisiana, (2) Plaintiff's claims other than those brought under Louisiana law are barred by the dormant Commerce Clause, (3) the state antitrust laws invoked must be construed consistent with federal antitrust laws and those claims fail for the same reasons that Plaintiff's federal

---

[52]   Under 28 U.S.C. § 1367, "district courts may decline to exercise supplemental jurisdiction over a [state law claim] if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 222 (2d Cir. 2006).

claims fail,  and (4) several of Plaintiff's state law claims are barred by applicable statutes of limitations.

### 2. The Unjust Enrichment Claims in the Trader Complaint Should be Dismissed

As noted above, in the Trader Complaint, Plaintiffs have asserted a claim for unjust enrichment.[53]  In order to sufficiently plead unjust enrichment under New York law, a plaintiff must allege that "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."[54]  Unjust enrichment requires "some type of direct dealing, or actual, substantive relationship" between the plaintiff and defendant."[55]  In this case, Plaintiffs have not alleged the existence of any type of relationship between Phibro and Plaintiffs, much less the type of relationship that would support an unjust enrichment claim and, for that reason alone, Plaintiffs' claim should be dismissed.  Additionally, Plaintiffs have also failed to allege how Phibro's alleged conduct resulted in it receiving any benefit at Plaintiffs' expense.[56]  For these reasons, Plaintiffs' unjust enrichment claim should be dismissed.

### III.   CONCLUSION

For the reasons set forth herein and in Defendants' Joint Memorandum in Support of Their Motion to Dismiss Plaintiff Harter's Amended Class Action Complaint (Cause No. 1:13-cv-07443-ALC, Dkt. No. 219), Defendants' Joint Memorandum in Support of Their Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint (Cause No. 1:13-md-02475,

---

[53]   The Trader Complaint does identify which state's common law it seeks to apply to this claim and, as a result, Phibro has assumed that Plaintiffs seek to invoke New York law.

[54]   *Georgia Malone & Co.* v. *Rieder*, 19 N.Y. 3d 511, 516 (2012).

[55]   *In re Motel 6 Sec. Litig.*, Nos. 93 Civ. 2183 (JFK), 92 Civ. 2866 (JFK), 1997 WL 154011, at *7 (S.D.N.Y. Apr. 2, 1997), that is not "too attenuated," *Sperry v. Crompon Corp.*, 8 N.Y. 3d 204, 215-16 (2007).

[56]   *Georgia Malone & Co.* v. *Rieder*, 19 N.Y. 3d 511, 516 (2012).

Dkt. No. 211), and Defendants' Joint Memorandum in Support of Their Motion to Dismiss the Complaints as Exceeding the Extraterritorial Reach of U.S. Law Cause No. 1:13-md-02475, Dkt. No. 201), Phibro respectfully requests that the Court dismiss with prejudice Plaintiffs' claims as to Phibro, and award such other and further relief as the Court deems appropriate.

Dated: March 31, 2015

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

By: _/s/ Karl S. Stern_____

Karl S. Stern
711 Louisiana Street, Suite 500
Houston, Texas 77002
Tel +1.713.221.7171
E-mail karlstern@quinnemanuel.com

**Attorney for Defendants
Phibro Trading LLC and Phibro
Commodities, Ltd.**

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2015, a copy of the foregoing was filed electronically and sent by e-mail to all parties who have appeared by operation of this Court's electronic filing system. Parties may access this filing through the court's CM/ECF System.

_/s/ Karl S. Stern_____
Karl S. Stern