| | |
|---|---|
| IN RE: NORTH SEA BRENT CRUDE OIL FUTURES LITIGATION<br><br>This document applies to:<br><br>Case Nos. 13-cv-03473-ALC, 13-cv-03587-ALC, 13-cv-03944-ALC, 13-cv-04142-ALC, 13-cv-04553-ALC, 13-cv-04872-ALC, 13-cv-04938-ALC, 13-cv-05577-ALC, 13-cv-07089-ALC, 13-cv-08030-ALC, 13-cv-08151-ALC, 13-cv-08179-ALC, 13-cv-08240-ALC and 13-cv-08270-ALC. | 1:13-md-02475-ALC |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MORGAN STANLEY CAPITAL GROUP, INC.'S MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND THE <u>SECOND AMENDED CLASS ACTION COMPLAINT</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..............................................................................................1

FACTS ................................................................................................................................1

ARGUMENT .......................................................................................................................3

I.     THE COMPLAINT ADEQUATELY ALLEGES CEA CLAIMS
AGAINSTMSCGI ...................................................................................................3

     A.     Plaintiffs Allege MSCGI's Manipulation of Brent Crude Oil
under Rule 8(a) .............................................................................................3

          1.     MSCGI had the ability to influence market prices .....................3

          2.     MSCGI intended to influence market prices ..............................4

              a.     February 2011 ..................................................................5

              b.     Other trading activity .....................................................6

          3.     Artificial prices existed and MSCGI caused the artificial prices.................6

     B.     Plaintiffs Allege That MSCGI Aided and Abetted Other Defendants.....................6

     C.     Plaintiffs Allege That MSCGI Participated in False Reporting..............................6

II.     THE COMPLAINT ADEQUATELY ALLEGES ANTITRUST CLAIMS
AGAINST MSCGI ..................................................................................................7

CONCLUSION..................................................................................................................7

# TABLE OF AUTHORITIES

### CASES

*In re Amaranth Natural Gas Commodities Litig.,*
   587 F. Supp. 2d 513 (S.D.N.Y. 2008)..................................................................4, 5

*ATSI Commc'ns v. Shaar Fund, Ltd.,*
   493 F.3d 87 (2d Cir. 2007)........................................................................................4

*In re Crude Oil Commodity Futures Litig.,*
   913 F. Supp. 2d 41 (S.D.N.Y. 2012).........................................................................4

*In re Daniel Shak and SHK Mgmt. LLC,*
   2013 WL 7085760 (C.F.T.C. Nov. 25, 2013)............................................................4

### STATUTES & FEDERAL RULES

Fed. R. Civ. P. 8(a) .........................................................................................................3

Fed. R. Civ. P. 9(b) .........................................................................................................3

## PRELIMINARY STATEMENT

Brent Derivative Trader Plaintiffs ("Plaintiffs") submit this brief in response to Morgan Stanley Capital Group, Inc.'s ("MSCGI's") Supplemental Memorandum of Law in Support of Its Motion to Dismiss the Second Amended Consolidated Class Action Complaint and the Second Amended Class Action Complaint ("MSCGI Br." or "Supplemental Brief") (ECF No. 332).[1] MSCGI's legal arguments are largely the same as those made in Defendants' Memorandum of Law in Support of Their Joint Motion to Dismiss, ECF No. 211 ("Defendants' Joint Memorandum"), and are generally addressed in Plaintiffs' Omnibus Brief. First, this brief responds to arguments particular to MSCGI. Second, MSCGI's Class Period trades are sufficient to satisfy the four elements of a manipulation claim. Third and finally, MSCGI has failed to raise any plausible competing inference of innocence for its suspicious Brent Crude Oil trades.

## FACTS

The Complaint alleges that MSCGI is a market leader in energy and metals trading worldwide and is an active trader in physical commodities and associated derivatives and futures. ¶42. In fact, MSCGI was one of the investors that established the ICE Exchange in order to capitalize on side-by-side trading of energy products in both futures and OTC markets. ¶138. The Complaint lays out in great detail how MSCGI's manipulative conduct helped it to achieve this objective. *See* ¶¶269-70, 283, 289, 330, 335-41, 350, 360, 364-68, 465-67.

---

[1] Unless otherwise indicated, all capitalized terms herein have the same meaning as ascribed in the Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint ("Plaintiffs' Omnibus Brief" or "Pls. Om. Br."). "Complaint" refers to the February 27, 2015 Second Amended Consolidated Class Action Complaint [ECF No. 308]. All citations to the Complaint are denoted as "¶." "Kovel Decl." refers to the Declaration of David E. Kovel in Support of Plaintiffs' Omnibus Brief filed in opposition to Defendants' Brief [ECF No. 211].

Plaintiffs also describe MSCGI's role in manipulative suppression of Dated Brent during June 2010. ¶¶269-89. For example, on June 15, 2010, MSCGI and Hetco entered into a trade at the far spectrum of the assessment period. ¶269. This collusive trade, combined with another staggered trade from Shell International Trading and Shipping Company Limited ("STASCO") to Statoil, weakened Forties, thereby suppressing the Dated Brent quote. *Id.*

Plaintiffs further describe MSCGI's extensive involvement in manipulating the CFD and Dated Brent Crude market in February 2011. ¶¶319-68. As described in the Complaint, STASCO had a large short position in the CFD pricing at the end of February 2011 (and likely also the futures markets). ¶¶319, 330. To protect its short positions, STASCO engaged in trading activity designed to drive CFD and Dated Brent Crude prices down. ¶¶319, 330-334. The Complaint alleges that MSCGI's concerted trading activity with STASCO helped to drive CFD and Dated Brent Crude prices down. ¶¶330, 335. On February 15, 2011, STASCO and MSCGI engaged in an economically "inexplicable" trade whereby they caused a "temporary price spike," which is indicative of manipulative activity. ¶¶335-36.

On February 21, 2011, STASCO's short CFD position began pricing. ¶337. On that same day, STASCO placed four spoof orders by offering cargoes for the nearby loading dates at cheap prices in an obvious attempt to move the market down. *Id.* The timing of STASCO's orders made it very difficult for buyers to execute trades on STASCO's offers, since it was close to impossible to obtain freight for cargo transportation on such a short notice. *Id.* MSCGI, nonetheless, purportedly was able to buy one of STASCO's orders. ¶¶337-38, 364-65. MSCGI's execution on this difficult offer is indicative that the "trade between MSCGI and STASCO was prearranged to set a low price for Dated Brent." ¶¶338, 341; *see also* ¶340 (to execute this difficult trade MSCGI either had real freight pre-arranged or was engaging in an

effective wash trade). MSCGI likely also had a short position and had coincident interests in supporting STASCO's position. ¶339. In any event, STASCO and MSCGI's February 21, 2011 manipulation of the market downward was successful. ¶¶338, 360, 368.

## ARGUMENT

## I. THE COMPLAINT ADEQUATELY ALLEGES CEA CLAIMS AGAINST MSCGI

### A. Plaintiffs Allege MSCGI's Manipulation of Brent Crude Oil under Rule 8(a)

As set forth in Plaintiffs' Omnibus Brief at Argument Section II.A, the manipulation claim against Defendants, including MSCGI, need only satisfy the Rule 8(a) "short and plain" statement pleading standard. The manipulation claim against MSCGI is based on the uneconomical timing and large volume of trades in February 2011 and generally throughout periods of extreme manipulation. Therefore, the manipulation claim against MSCGI is not subject to the heightened pleading standards of Rule 9(b) that govern the false reporting claims. Here, the Complaint's allegations are more than sufficient to give MSCGI "fair notice" of Plaintiffs' claims. Even if Rule 9(b) applied, the Complaint pleads manipulation against MSCGI with sufficient particularity.

#### 1. MSCGI had the ability to influence market prices

As discussed above, MSCGI has a broad commodities business and stands out among trading firms in that it is equipped to take physical deliveries of crude oil and other commodities. The Complaint alleges that MSCGI is a "market leader" in energy trading, ¶¶42, 465-67, and helped to establish Brent Crude derivative trading on ICE. ¶138.

Relying primarily on the Defendants' Joint Memorandum and a single footnote, MSCGI Br. at 10 n.5, MSCGI argues that Plaintiffs have not alleged facts demonstrating that MSCGI had the ability to influence market prices. These arguments are addressed in Plaintiffs' Omnibus Brief. However, as to MSCGI, Plaintiffs specifically allege that MSCGI engaged in trading

3

activity during periods of known manipulation, ¶¶269-70, 283, 289, 309, 330, and that MSCGI participated in trades during periods when Platts' benchmarks were particularly susceptible to manipulation and were in fact manipulated by MSCGI's trades. ¶¶269-70 (describing how June 15, 2010 trade with Hetco weakened Forties and thereby the Dated Brent); ¶¶330-41 (describing how MSCGI acted as a counter-party in STASCO's manipulative trading, thereby influencing the prices in the MOC window). Thus, Plaintiffs have alleged specific trades demonstrating that MSCGI had the ability to influence market prices.

### 2. MSCGI intended to influence market prices

MSCGI summarily disputes that it had the specific intent to manipulate Brent Crude Oil prices because "a generalized profit motive" is insufficient to show intent. MSCGI Br. at 9. However, motive is also only one method of establishing specific intent. *See* Plaintiffs' Omnibus Br. at Argument Section II.D. Specific intent can also be adequately pled by "alleging facts. . . . constituting strong circumstantial evidence of conscious misbehavior or recklessness." *See In re Amaranth Natural Gas Commodities Litig.,* 587 F. Supp. 2d 513, 530 (S.D.N.Y. 2008) (citing *ATSI Commc'ns v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir. 2007)). In particular, the Complaint details one series of uneconomic transactions that provides strong circumstantial evidence of MSCGI's conscious misbehavior or recklessness. *In re Daniel Shak and SHK Mgmt. LLC,* Comm. Fut. L. Rep. (CCH) P 32878, 2013 WL 7085760, at *6 (C.F.T.C. Nov. 25, 2013) ("[I]ntent to affect the prices of WTI futures contracts, including the settlement prices, can be inferred from the objective and circumstantial evidence of [] trading strategy . . . including the uneconomic acts of aggressively buying WTI futures contracts at increasingly higher prices both before and during the Close."); *In re Crude Oil Commodity Futures Litig.*, 913 F. Supp. 2d 41, 58 (S.D.N.Y. 2012) ("Specific intent can be plausibly inferred from . . . [defendant's] uneconomic decision to hold its physical WTI through the cash window").

Moreover, the inference that MSCGI sought to benefit from manipulating Brent prices through uneconomic activity is far stronger than MSCGI's implausible narrative on innocence. *See Amaranth*, 587 F. Supp. 2d at 535-36.

  a. <u>February 2011</u>

The Complaint states that STASCO had a very large short CFD position coming into the end of February 2011 that would have significantly benefited by maintaining a low price in Dated Brent and other markets on the pricing dates for those nearby CFD positions. ¶¶330-34. MSCGI followed STASCO's trading position throughout February 2011 and consistently helped STASCO set prices during the MOC window. ¶335. Notably, on February 15, 2011, STASCO bought a cargo for Forties from MSCGI at minus $0.05 per barrel to the North Sea Dated Strip, which set the price for Dated Brent on that day. *Id.* The trade was not economically sound and other traders were baffled by it. ¶¶335-36.

Just a few days later, on February 21, 2011 – when STASCO's short CFD position began pricing – STASCO put orders into the market on close by offering four cargoes. ¶337. Despite the fact that these cargoes were almost impossible for buyers to execute because of the nearby loading dates, MSCGI was able to make a purchase that successfully drove the Forties assessment lower than it otherwise would have been. ¶338-41, 360-68. This allowed STASCO to obtain a very low (and presumably profitable) price for its short CFD position. ¶338.

The proximity of these trades and the specific circumstances under which the trades occurred is indicative of collusion. *Amaranth*, 587 F. Supp. 2d at 530. For example, to execute the trade on February 21, 2011, MSCGI either had to have real freight pre-arranged or an agreement to transact an effective wash trade. ¶340. Further, the timing of the February 15 trades during periods where they would have an impact on the reported prices is indicative of manipulative activity. ¶335 (timing of February 15 trade set the price for Dated Brent on that

5

day), ¶338 (timing of February 21 trade allowed STASCO to obtain a very low price for its short CFD position), ¶¶340-41, 360 (trade was designed so that only MSCGI could make purchase); ¶365 (MSCGI's trades allowed STASCO to pressure nearby CFD and Dated Brent prices to advantage STASCO's nearby CFD book).

b.  Other trading activity

MSCGI also fails to note it engaged in trading during periods of known manipulative activity. Such trading during periods of known manipulation – combined with the specific incidents discussed above – raises an inference that MSCGI participated in manipulative trading conduct throughout the Class Period.

3.  **Artificial prices existed and MSCGI caused the artificial prices**

The Complaint alleges many specific days that artificial prices existed and further alleges two days where MSCGI's trading activity led to artificial prices – February 15 and 21, 2011. *See* ¶335 (February 15 transaction set price for Dated Brent on that day), ¶338 (February 21 transaction influenced Platts assessment).

B.  **Plaintiffs Allege That MSCGI Aided and Abetted Other Defendants**

The Complaint specifically alleges that MSCGI aided and abetted market manipulations in February 2011, through systematic suppression of Brent Crude Oil prices by Shell. ¶¶319-68. The Complaint alleges that MSCGI's February 15 and 21, 2011 trades with STASCO were collusive, and furthered STASCO's objective to manipulate and/or depress prices. As discussed above, the specific circumstances of these trades leads to a reasonable inference that the trades were the result of collusive activity rather than normal business behavior.

C.  **Plaintiffs Allege That MSCGI Participated in False Reporting**

As discussed in Plaintiffs' Omnibus Brief at Argument Section II.C, false reporting has been actionable manipulative conduct since well before the August 15, 2011 enactment of the

6

Dodd-Frank Act. MSCGI's conduct in February 2011 violates the CEA's pre-Dodd-Frank prohibition on false reporting. The Complaint alleges that MSCGI's manipulative trading caused Platts to report inaccurate Brent prices.

## II.   THE COMPLAINT ADEQUATELY ALLEGES ANTITRUST CLAIMS AGAINST MSCGI

Defendants' arguments against antitrust liability are addressed in Plaintiffs' Omnibus Brief at Argument Section V, where plaintiffs demonstrate that they have incurred antitrust injury due to MSCGI's conduct. MSCGI's claim in particular that it did not possess monopoly power is easily dispatched. *See* Pls.' Om. Br. at Argument Section V.E. The Complaint describes how each and every Defendant could – and did – use its superior market knowledge and market position to dominate the MOC to its advantage. It explicitly describes the multiple instances of Dated Brent price suppression and price inflation that allowed Defendants to control prices in the market for Brent Crude Oil-based derivatives contracts, including future and other derivative contracts. MSCGI is no different from other Defendants in this regard.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that MSCGI's Motion to Dismiss the Second Amended Consolidated Class Action Complaint be denied.

DATED: March 31, 2015

**KIRBY McINERNEY LLP**

 /s/ *David E. Kovel*
David E. Kovel
Lauren Wagner Pederson, Of Counsel
Andrew M. McNeela
Thomas W. Elrod
dkovel@kmllp.com
lpederson@kmllp.com
amcneela@kmllp.com
telrod@kmllp.com
825 Third Avenue, 16th Floor
New York, New York 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540

*Interim Lead Counsel for the Brent Derivative Trader Plaintiffs and Proposed Class*

**BERGER & MONTAGUE, P.C**
Merrill G Davidoff
Michael Dell'Angelo
Candice J. Enders
mdavidoff@bm.net
mdellangelo@bm.net
cenders@bm.net
1622 Locust Street
Philadelphia , PA 19103
Telephone: (215) 875-3084
Facsimile: (215) 875-4604

**GLANCY BINKOW & GOLDBERG LLP**
Brian Philip Murray
Lee Albert
Lionel Z. Glancy
bmurray@glancylaw.com
lalbert@glancylaw.com
lglancy@glancylaw.com
122 East 42nd Street, Suite 2920
New York, NY 10168
Telephone: (212) 682-5340
Facsimile: (212) 884-0988

**LIEFF, CABRASER, HEIMANN & BERNSTEIN,LLP**
Steven E. Fineman
Douglas Ian Cuthbertson
sfineman@lchb.com
dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500

Eric B. Fastiff
Brendan P. Glackin
efastiff@lchb.com
bglackin@lchb.com
275 Battery Street 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000

**MOTLEY RICE LLC**
Michael M. Buchman
John Andrew Ioannou
David P. Abel
jioannou@motleyrice.com
mbuchman@motleyrice.com
dabel@motleyrice.com
600 Third Avenue, 21st Floor
New York, NY 10016
Telephone: (212) 577-0051
Facsimile: (212) 577-0054

**LOWEY DANNENBERG COHEN &HART**
Vincent Briganti
Geoffrey M. Horn
vbriganti@lowey.com
ghorn@lowey.com
One North Broadway
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes
bclobes@caffertyclobes.com
1101 Market Street, Suite 2650
Philadelphia, PA 19107
Telephone: (215) 864-2800
Facsimile: (215) 864-2810

Anthony F. Fata
Daniel O. Herrera
afata@caffertyclobes.com
dherrera@caffertyclobes.com
30 N. LaSalle, Suite 3200
Chicago, Illinois 60602
Telephone: (312) 782-4880
Facsimile: (312) 782-4485

*Additional Counsel for Plaintiffs and Proposed Class*