In re:

NORTH SEA BRENT CRUDE OIL FUTURES LITIGATION         1:13-md-02475 (ALC)

This document applies to: ALL CASES.

------------------------------------------------------------x

# DEFENDANT PHIBRO TRADING LLC AND PHIBRO COMMODITIES LTD.'S AMENDED SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
## PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINTS

In addition to the reply memoranda jointly submitted on behalf of Defendants ("Defendants' Joint Reply Memoranda"),[1] Defendant Phibro Trading LLC ("Phibro Trading") and Phibro Commodities Ltd. ("Phibro Commodities") (collectively, "Phibro") submit this Amended Supplemental Reply Memorandum to address arguments unique to Phibro raised by the Trader Plaintiffs and the Landowner Plaintiff[2] in their briefing[3] responsive to Defendant Phibro Trading LLC's Amended Supplemental Memorandum of Law in Support of Its Motion to

---

[1] Specifically, Defendant Phibro Trading LLC refers to, joins in, and incorporates by reference: Defendants' Joint Reply Memorandum of Law in Support of Their Joint Motion to Dismiss the Amended Consolidated Class Action Complaint, Defendants' Joint Reply Memorandum in Support of Their Motion to Dismiss the Complaints as Exceeding the Extraterritorial Reach of U.S. Law, and Defendants' Reply in Support of Their Joint Motion to Dismiss Plaintiff Harter's Amended Class Action Complaint.

[2] The Trader Plaintiffs include Kevin McDonnell, Anthony Insinga, Robert Michiels, Neil Taylor, Aaron Schindler, Xavier Laurens, Atlantic Trading USA, LLC, Port 22, LLC, Prime International Trading, Ltd., White Oak Fund LP, all of whom purport to have traded in Brent Crude Oil futures and/or derivative contracts during the class period. Trader Compl. at ¶¶ 24-34. The Landowner Plaintiff is David Harter, who alleges that he is a landowner and leaseholder of oil-producing lands in Louisiana, and sues on behalf of himself and a proposed nationwide class of landholders and leaseholders of oil-producing land in the United States. Landowner Compl. at ¶¶ 10, 61.

[3] The Trader Plaintiffs' responsive briefing is set forth in Plaintiffs' Supplemental Memorandum of Law in Opposition to Defendant Phibro Trading LLC's and Phibro Commodities Ltd.'s Motion to Dismiss the Second Amended Consolidated Complaint (the "Trader Response") (Dkt. No. 336), and the Landowner Plaintiff's responsive briefing is set forth in David Harter's Memorandum of Law in Opposition To: Defendant Phibro Trading LLC's Supplemental Memorandum of Law in Support of Its Motion to Dismiss (the "Landowner Response") (Dkt. No. 252).

Dismiss (the "Phibro Brief") the Second Amended Class Action Complaint filed in Cause No. 1:13-cv-07443-ALC (the "Landowner Complaint") and the Second Amended Consolidated Class Action Complaint filed in Cause No. 1:13-md-02475 (the "Trader Complaint") (collectively, the "Complaints").[4]

## I. INTRODUCTION

In addition to the numerous grounds for dismissal set forth in the Defendants' joint opening briefs, Phibro detailed in the Phibro Brief a number of deficiencies in the Complaints specific to Phibro that warranted the dismissal of Plaintiffs' claims against Phibro. Phibro demonstrated:

- The Sherman Act claims fail because (1) Phibro's alleged trading activity is consistent with unilateral conduct, and inferring the existence of an antitrust conspiracy would be unreasonable; and (2) Plaintiffs have not alleged that Phibro possessed monopoly power or any facts to support the remaining elements of a Section 2 claim.

- The Trader Plaintiffs' CEA claims fail because Plaintiffs failed to allege sufficiently that (1) Phibro has any ability, standing alone, to influence the price in any markets; (2) artificial prices existed in connection with Phibro's trading activity; (3) Phibro caused the artificial prices of which Plaintiffs complain; (4) facts that would establish that Phibro specifically intended to influence market prices; (5) Phibro had a motive to engage in the purportedly manipulative trading activity; or (6) any particular futures contract transaction of Plaintiffs that was affected by Phibro's trading activity to establish actual damages.

- The Landowner Plaintiff's state law claims fail, among other reasons, because (1) the Landowner Plaintiff does not allege that Phibro engaged in *any* conduct in *any* state within the United States as required by many of the statutes invoked; (2) the state antitrust claims suffer from the same deficiencies as the federal antitrust claims; and (3) several of the Landowner Plaintiff's state law claims are barred by applicable statutes of limitations.

---

[4] As set forth in the Phibro Brief, this amended briefing is filed in order to address the addition of Phibro Commodities as a defendant in these cases. The Trader Plaintiffs have already amended their complaint to add Phibro Commodities, and it is anticipated that the Landowner Plaintiffs will amend in the near future. This reply is intended to address the pending complaints at the time the motions are considered by the Court.

- The Trader Plaintiffs' unjust enrichment claim fails because Plaintiffs failed to allege any type of relationship with Phibro.

In their respective responses, Plaintiffs make only two arguments: that Phibro intentionally influenced market prices through trades during the market-on-close window; and that Plaintiffs can allege damages. These two arguments do not address most of the bases for dismissal set forth in the Phibro Brief, and dismissal is appropriate on the bases Plaintiffs chose to ignore. Moreover, as discussed below, the two arguments Plaintiffs chose to make in their responses are wholly without merit.

## II. ARGUMENT AND AUTHORITIES

### A. Plaintiffs' Claim that Phibro Intentionally Engaged in Manipulation is Based on Conclusory Assertions, Not Allegations of Fact.

Plaintiffs' claim that Phibro participated in a complex, years-long conspiracy is based entirely on the following factual allegation:[5] on September 17, 2012, Phibro Commodities purchased a cargo of Forties crude oil, and the next day Phibro Commodities offered to sell that same cargo at a lower price. This buy one day and offer to sell the next is consistent with routine, legitimate trading activity and does not support a conclusion that there was anything improper about the activity, much less that Phibro participated in a 12-year conspiracy.

In an effort to overcome the absence of factual allegations against Phibro, Plaintiffs try to dress up the claim with conclusory characterizations of the trading activity alleged. For example, Plaintiffs characterize Phibro Commodities' single purchase and offer to sell as a "pattern of trades" designed to manipulate Dated Brent upwards and then, a day later, manipulate it

---

[5] The Phibro Brief details the few other times Phibro is mentioned in the Complaints; however, these instances do not allege any wrongful conduct. Phibro appears to have been included for the purpose of providing factual background in a failed attempt to state claims against the other Defendants.

3

downwards.[6] Dkt. 245 at 2. Of course, a single purchase and offer is hardly a "pattern of trades." Plaintiffs also characterize Phibro's trading as "spoofing" and "wash trades,'" *id.* at 2, yet Plaintiffs allege no facts that would support those conclusory assertions. As to spoofing, the practice of bidding or offering with the intent to cancel the bid, Plaintiffs fail to allege that Phibro Commodities ever cancelled or intended to cancel its September 18, 2012 offer. And the facts Plaintiffs allege with respect to Phibro Commodities' trading are inconsistent with a conclusion that Phibro engaged in any wash trades. A wash trade involves buying and selling a cargo for the same price. Here, Plaintiffs allege that Phibro Commodities bought at one price and then offered to sell at a lower price. That is not a wash trade. Dkt. 166 ¶ 73.

Plaintiffs go on to assert that Phibro Commodities' September 18 offer was "puk[ing]" a trade into the market in an attempt to sell its position at a price "substantially lower" than the price at which Phibro Commodities bought the cargo the previous day. There is no basis to assert that a price reduced to minus $0.25 was "substantially lower" than the purchase price or, most notably, that the offer price was inconsistent with market conditions that existed at the time. As Plaintiffs admit in the Trader Response, even at the price Phibro Commodities offered, "Phibro Commodities could not secure any bids." Dkt. 245 at 2. And, the minus $0.25 Phibro Commodities price reported by Platts on which Plaintiffs rely is not even the price Phibro Commodities initially offered. Phibro Commodities initially offered at plus $0.15 and slowly reduced the price over time as each offer failed to attract interested buyers. *See* Phibro_Ex. B, ICIS World Crude Report, Sept. 18, 2012 ("In open market trading, Phibro offered the 3-5 October Forties that it bought on Monday, starting at Dtd plus 15 cents and working down to Dtd

---

[6] The Landowner Complaint borrows heavily from the Trader Complaint's allegations, but focuses only on alleged downward suppression of Brent Crude Oil prices.

less 25 cents, but without attracting any buying interest").[7] This price reduction complied with Platts Rules regarding incrementality in the MOC Window.[8] Whether considering only the final price Plaintiffs rely on or the series of prices at which Phibro Commodities initially offered the cargo, the fact that no buyer accepted the offers leads to the conclusion that the price at issue was above market and not that it was so wildly below market that it could be deemed uneconomic or manipulative.

In the end, Plaintiffs' colorful language and conclusory assertions do not establish any impropriety on which causes of action against Phibro could be based. Labels and conclusions are not sufficient to stave off dismissal. *See Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) ("pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth"; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions. . .").

### B. Plaintiffs Fail to Allege Actual Damages.

Here, as in *LIBOR II*,[9] Plaintiffs fail to point to any futures contracts they may have entered into in September 2012 that were affected by Phibro's allegedly artificial prices. The absence of any such allegation is fatal to their CEA claims.[10]

---

[7] Plaintiffs argue that the ICIS World Crude Report should not be considered at the Rule 12(b)(6) stage, because, according to Plaintiffs, it is a "subscription-based publication of limited distribution" that is "one private entity's description of another private entity." Dkt. 245 at 203. As explained in the Phibro Brief, the Court may properly refer to the report (1) because it is a publicly available document of which the Court may take judicial notice, and alternatively, (2) because it is integral to the Plaintiffs' Complaints. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (in deciding a Rule 12(b)(6) motion, court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that either are in the plaintiff's possession or were known to the plaintiff when she brought suit, or matters of which judicial notice may be taken).

[8] *See* Exhibit ETB_F (Cause No. 1:13-md-02475, Dkt. No. 202-6) ("There are . . . strict standards defining the increment levels for each bid or offer to ensure orderly price formation, to avoid a scenario in which a market might be 'gapped' higher or lower.").

[9] *In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*LIBOR II*), 962 F. Supp. 2d. 606, 621 (S.D.N.Y. 2013) ("[d]espite the fact that plaintiffs indisputably have access to their own Eurodollar futures contract trading records, the PSAC is devoid of any references to particular Eurodollar contracts").

Plaintiffs attempt to distinguish *LIBOR II*, claiming Plaintiffs are not required to show actual damages because they have alleged "persistent suppression" as opposed to "sporadic trader manipulation." Dkt. 245 at 3 (citing Dkt. 253 at 37, n.32). This is a mischaracterization of Plaintiffs' own allegations against Phibro. Plaintiffs contend that Phibro "created ***upward*** pressure" on September 17, 2012, and "drove the market ***downward***" on the next day. Dkt. 166 ¶¶ 395-96. Because Plaintiffs have alleged discrete, episodic trader activity, all occurring within a 24-hour period, Plaintiffs should be required to show actual damages. Bare allegations that Plaintiffs were "net purchasers" or "net sellers" on those dates do not satisfy the requirements of *LIBOR II*, which requires reference to specific contracts affected.

### III. CONCLUSION

Because Plaintiffs have not and cannot overcome the many grounds for dismissal put forth by Phibro, Phibro respectfully requests that the Court dismiss with prejudice Plaintiffs' claims as to Phibro, and award such other and further relief as the Court deems appropriate.

Dated: March 31, 2015.

    Respectfully submitted,

    **QUINN EMANUEL URQUHART & SULLIVAN L.L.P.**
    By: */s/ Karl S. Stern*

    Karl S. Stern
    711 Louisiana Street, Suite 500
    Houston, Texas 77002
    Tel 713.221.7171
    E-mail karlstern@quinnemanuel.com

    **Attorneys for Defendants**
    **Phibro Trading LLC and**
    **Phibro Commodities Ltd.**

---

[10] *Id.* at 622 (in order to state a CEA claim, plaintiffs must "allege that they engaged in a transaction at a time during which prices were artificial as a result of defendants' alleged trader-based manipulative conduct, and that the artificiality was adverse to their position").

## **CERTIFICATE OF SERVICE**

       I hereby certify that on March 31, 2105, a copy of the foregoing was filed electronically and sent by e-mail to all parties who have appeared by operation of this Court's electronic filing system. Parties may access this filing through the court's CM/ECF System.

                                                            */s/ Karl S. Stern*
                                                            Karl S. Stern

US 3094438v.2