**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

In re:

NORTH SEA BRENT CRUDE OIL FUTURES          1:13-md-02475 (ALC)
LITIGATION

This document applies to:

1:13-cv-03473-ALC, 1:13-cv-03587-ALC,
1:13-cv-03944-ALC, 1:13-cv-04142-ALC,
1:13-cv-04553-ALC, 1:13-cv-04872-ALC,
1:13-cv-04938-ALC, 1:13-cv-05577-ALC,
1:13-cv-07089-ALC, 1:13-cv-08030-ALC,
1:13-cv-08151-ALC, 1:13-cv-08179-ALC,
1:13-cv-08240-ALC 1:13-cv-08270-ALC.

-----------------------------------------------------------x

---

**SUPPLEMENTAL MEMORANDUM OF LAW OF DEFENDANTS**
**SHELL INTERNATIONAL TRADING AND SHIPPING COMPANY LIMITED AND**
**SHELL TRADING (US) COMPANY IN SUPPORT OF THEIR MOTION TO DISMISS**
**THE SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

---

Willard K. Tom                          Steven A. Reed
J. Clayton Everett, Jr.                  R. Brendan Fee
MORGAN, LEWIS & BOCKIUS LLP              Dana E. Becker
1111 Pennsylvania Avenue, NW             MORGAN, LEWIS & BOCKIUS LLP
Washington, D.C. 20004                   1701 Market Street
Telephone:  (202) 739-3000              Philadelphia, PA 19103-2921
Facsimile:  (202) 739-3001              Telephone:  (215) 963-5000
wtom@morganlewis.com                     Facsimile:  (215) 963-5001
jeverett@morganlewis.com                 sreed@morganlewis.com
                                         bfee@morganlewis.com
                                         dana.becker@morganlewis.com


*Counsel for Defendants*
**Shell International Trading and Shipping Company Limited**
**and Shell Trading (US) Company**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   FACTUAL BACKGROUND .......................................................................................... 2

III.  ARGUMENT .................................................................................................................. 4

    A.    The Complaint Fails to State a Claim Against STUSCO or STASCO ................. 4

        1.    STUSCO ...................................................................................................... 5

        2.    STASCO ...................................................................................................... 8

    B.    STASCO Is Not Subject to the Court's Jurisdiction ............................................ 9

        1.    STASCO Is Not "At Home" in the United States and Thus Is Not
            Subject to General Jurisdiction ................................................................ 10

        2.    STASCO Does Not Have Sufficient United States Contacts
            Related to This Action to Subject It to Specific Jurisdiction ................... 12

IV.   CONCLUSION ............................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................5, 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................4, 5, 8

*Beydoun v. Wataniya Restaurants Holding, Q.S.C.*,
    768 F.3d 499 (6th Cir. 2014) ...............................................................................................14

*Calder v. Jones*,
    465 U.S. 783 (1984)........................................................................................................14, 15

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2013) ...............................................................................................10, 11, 12

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d. Cir. 1987)...............................................................................................5

*Georgia Malone & Co. v. Rieder*,
    19 N.Y.3d 511 (2012) .....................................................................................................7, 9

*Goodyear Dunlop Tires Ops. S.A. v. Brown*,
    564 U.S. ----, 131 S. Ct. 2846 (2011) ......................................................................10, 11, 13

*Hinds County, Miss. v. Wachovia Bank, N.A.*,
    620 F. Supp. 2d 499 (S.D.N.Y. 2009).................................................................................4

*In re Aluminum Warehousing Antitrust Litig.*,
    No. 13-md-2481, 2015 WL 892255 (S.D.N.Y. Mar. 3, 2015) .............................................13

*In re Aluminum Warehousing Antitrust Litig.*,
    No. 13-md-2481, 2015 WL 1344429 (S.D.N.Y. Mar. 23, 2015) .....................................2, 4, 8

*In re Amaranth Natural Gas Commodities Litig.*,
    730 F.3d 170 (2d. Cir. 2013)..............................................................................................6, 8

*In re Chocolate Confectionary Antitrust Litig.*,
    602 F. Supp. 2d 538 (M.D. Pa. Mar. 4, 2009) ....................................................................15

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    935 F. Supp. 2d 666 (S.D.N.Y. 2013)................................................................................7, 9

*In re Roman Catholic Diocese*,
745 F.3d 30 (2d Cir. 2014).................................................................................11

*In re Terrorist Attacks on Sept. 11, 2001*,
718 F. Supp. 2d 456 (S.D.N.Y. 2010)................................................................15

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) ............................................................................4

*Leasco Data Processing Equipment v. Maxwell*,
468 F.2d 1326 (2d Cir. 1972)..............................................................................15

*Lorely Fin (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*,
No. 12 Civ. 3723, 2013 WL 1294668 (S.D.N.Y. Mar. 28, 2013) .........................14

*Mayor & City Council of Baltimore v. Citigroup, Inc.*,
709 F.3d 129 (2d Cir. 2013)..............................................................................6, 9

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)................................................................................10

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*,
No. 12 Civ. 2837, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012)..........................5, 6

*Perkins v. Benguet Consol. Mining Co.*,
342 U.S. 437 (1952)..........................................................................................11

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
307 F.3d 117 (2d Cir. 2007)................................................................................9

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*,
No. 08 Civ. 42, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011).............................1, 8

*SEC v. Softpoint, Inc.*,
No. 95 Civ. 2951, 2001 WL 43611 (S.D.N.Y. Jan. 18, 2001).............................10

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
750 F.3d 221 (2d Cir. 2014)..........................................................................11, 12

*Tamam v. Fransabank Sal*,
677 F. Supp. 2d 720 (S.D.N.Y. 2010)................................................................10

*Walden v. Fiore*,
571 U.S. ----, 134 S.Ct. 1115 (2014) ..............................................................12, 14

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)..........................................................................................10

**FEDERAL RULES**

Rule 12(b)(2)..................................................................................................................9, 10, 14, 15

Rule 12(b)(6)...................................................................................................................4, 8, 9, 15

## I.  INTRODUCTION

As set forth in Defendants' Memorandum of Law in Support of Their Joint Motion To Dismiss the Amended Consolidated Class Action Complaint (the "Joint Trader Memo") and their Memorandum of Law in Support of Their Joint Motion to Dismiss the Complaints as Exceeding the Extraterritorial Reach of U.S. Law (the "Extraterritoriality Memo") as well as the associated reply memoranda, the Second Amended Consolidated Class Action Complaint ("Complaint" or "Compl.") (Dkt. 308) is deficient and should be dismissed as to all Defendants.[1]  Defendants Shell International Trading and Shipping Company Limited ("STASCO") and Shell Trading (US) Company ("STUSCO") submit this supplemental motion to address the additional, independent defects that doom the Complaint as to them.

First, the Complaint fails to allege facts making it plausible to believe that either STUSCO or STASCO violated U.S. law or harmed Plaintiffs.  The Complaint is virtually devoid of allegations about STUSCO and apparently seeks to include it in this lawsuit based solely on its corporate affiliations.  Liability, however, cannot be based on corporate affiliation alone.  Instead, Plaintiffs must allege facts establishing the "direct and independent participation [of each defendant] in the alleged conspiracy."  *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08 Civ. 42, 2011 WL 7053807, at *15 (E.D.N.Y. Jan. 4, 2011).  Plaintiffs have not done so as to STUSCO, and their claims against STUSCO therefore should be dismissed as a matter of law.  As to STASCO, Plaintiffs make various generalized allegations about its purported trading activity, but the Complaint alleges nothing more than unsupported conclusions concerning STASCO's supposed manipulation of prices with respect to over-the-

---

[1]  Pursuant to the February 26, 2015 Stipulation and Order (Dkt. 307), Plaintiffs have amended their previous complaint to, *inter alia*, substitute STASCO for Royal Dutch Shell, plc ("RDS") as a Defendant in the action without making other substantive changes to their allegations.  In accordance with the Stipulation and Order and the parties' agreement, the Joint Trader Memo, the Extraterritoriality Memo, and the associated reply memoranda apply to the newly filed Complaint, and are incorporated herein by reference.

counter physical Brent crude oil and derivatives transactions.  In evaluating the sufficiency of a complaint, "mere conclusory statements" are not to be credited.  *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481, 2015 WL 1344429, at *1 (S.D.N.Y. Mar. 23, 2015).  Because there are no well-pleaded factual allegations as to STASCO's involvement in the conduct that forms the basis for Plaintiffs' claims, the Complaint should be dismissed as to STASCO.

Second, the Complaint fails to allege facts establishing a *prima facie* basis for the exercise of personal jurisdiction over STASCO under either a general or specific jurisdiction theory.  As demonstrated by the Declaration of Armand Lumens (hereinafter, "Lumens Decl."), STASCO is a UK limited corporation with its principal place of business in London, England, and thus is not "at home" in the United States for purposes of general jurisdiction.  Plaintiffs are also incapable of establishing "specific jurisdiction" over STASCO.  The only STASCO contacts with the United States alleged in the Complaint are that STASCO (1) operates in the United States, and (2) imports Brent crude oil into the United States.  Compl. ¶ 35.  Contrary to Plaintiffs' baseless allegation, STASCO does not operate in the United States and has not imported Brent, Forties, Oseberg or Ekofisk cargoes into the United States.  Lumens Decl. ¶¶ 5-12.  And, even if Plaintiffs' allegations were true, the limited contacts alleged as to STASCO are plainly insufficient to provide a constitutionally adequate basis for the exercise of personal jurisdiction under a specific jurisdiction theory because they are unrelated to the claims asserted.

## II.     FACTUAL BACKGROUND

The Complaint alleges, *inter alia*, that Defendants conspired to manipulate prices with respect to physical Brent crude oil and certain derivatives transactions reported to Platts, an industry publication, in Europe.  *See* Compl. ¶ 2.  As described more fully in the Joint Trader Memo, Platts publishes a daily assessment of spot prices for Brent crude oil based on, among other things, its analysis of reported bids, offers, and transactions.  *Id.* ¶¶ 6-7.  Plaintiffs claim

2

that Defendants manipulated the price assessments published by Platts by false, manipulative or misleading reporting of transactions. *Id.* ¶¶ 8-9. The Complaint alleges that Platts-published prices for Brent crude oil are linked to the prices of the various financial derivatives Plaintiffs supposedly traded. *Id.* ¶ 5. Claims are asserted under the Commodity Exchange Act ("CEA"), the Sherman Act, and for common law unjust enrichment. The Complaint refers to "Shell" as "wholly owned or closely held subsidiaries of" RDS, a Netherlands company, and it names two RDS-affiliated entities as defendants: STUSCO and STASCO. *Id.* ¶¶ 35-36.

STUSCO is an indirect subsidiary of RDS, headquartered in the United States. *Id.* ¶ 36. The Complaint alleges that it is engaged in trading activities in the United States. *Id.* According to the Complaint, those trading activities include "execut[ing] and mak[ing] markets for Brent Crude Oil product derivatives[.]" *Id.* The Complaint does not allege, however, that STUSCO manipulated prices with respect to over-the-counter physical Brent crude oil and derivatives transactions or engaged in any of the activities related to trades in physical Brent crude oil that Plaintiffs allege were manipulative and anticompetitive. Indeed, the Complaint does not allege *any facts whatsoever* concerning STUSCO's price reporting practices or any trading activity by STUSCO, much less any supposedly "manipulative" trading activity with respect to over-the-counter physical Brent crude oil and derivatives transactions.

STASCO, which is incorporated separately from RDS, is a limited company headquartered in London, England. Lumens Decl. ¶ 3. Plaintiffs allege (inaccurately) that STASCO "operates in the U.S., including in Houston, Texas [and] imports Brent Crude Oil into the U.S." Compl. ¶ 35. No other STASCO contacts with the United States are alleged.

STASCO is not registered to do business in the United States and maintains no agent for transaction of business in the United States. Lumens Decl. ¶¶ 6-7. It neither owns nor leases any

real property in the United States and it does not maintain an office or mailing address in the United States.  *Id.* ¶¶ 8-9.  Nor has STASCO imported Brent, Forties, Oseberg or Ekofisk cargoes into the United States.  *Id.* ¶ 5.

Although the Complaint makes certain allegations about STASCO's price reporting practices and Brent crude oil transactions in which STASCO was a counterparty during four months of the purported thirteen-year class period, it alleges nothing more than unsupported conclusions concerning STASCO's ability or intent to manipulate prices with respect to over-the-counter physical Brent crude oil and derivatives transactions.

**III.  ARGUMENT**

**A.    The Complaint Fails to State a Claim Against STUSCO or STASCO**

Dismissal pursuant to Rule 12(b)(6) is appropriate if the Complaint fails to allege "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In order to avoid dismissal in an antitrust conspiracy case, the Complaint must "answer the basic questions:  who, did what, to whom (or with whom), where and when?"  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).  In other words, Plaintiffs must allege specific facts establishing the involvement of each defendant in the alleged conspiracy.  *See Hinds County, Miss. v. Wachovia Bank, N.A.*, 620 F. Supp. 2d 499, 512-16 (S.D.N.Y. 2009) (dismissing antitrust complaint because there was no "specific factual averment of involvement" by each defendant in the alleged conspiracy); *see also In re Aluminum*, 2015 WL 1344429, at *3 (dismissing federal and state antitrust claims as to certain defendants where "the claims as to them are based solely on corporate proximity").

The same is true for claims, such as those asserted by Plaintiffs under the CEA, that sound in fraud:  "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."

*DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d. Cir. 1987).  The "failure to isolate the key allegations against each defendant supports dismissal under the standards set forth in *Twombly* and *Iqbal*."  *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12 Civ. 2837, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012).

Plaintiffs fail to allege a plausible basis to infer that either STUSCO or STASCO participated in the conspiracy alleged in the Complaint or otherwise violated the law.

**1.     STUSCO**

Plaintiffs' allegations relating to STUSCO are confined to ten paragraphs of the Complaint, alleging that STUSCO:

(a)     is a U.S. company, the parent company of which is RDS, that is engaged in the "buying, selling and transport of various grades of crude oil as well as trading oil futures contracts" (*id.* ¶¶ 36, 471);

(b)     together with Shell Energy North America (US), L.P. are "the North American commodity trading arm of Shell known as 'Shell Trading'" (*id.* ¶ 470);

(c)     is "fully aware of the overall company's position and outlook on the volatility of Brent" (*id.* ¶ 472);

(d)     "participate[s] in decision making on the overall world-wide exposure to Brent Crude Oil prices" (*id.*);

(e)     "managed Shell's overall risk to its physical financial positions" (*id.* ¶ 473);

(f)     traded "Brent Crude futures and other derivatives" (*id.*);

(g)     has, and has certain affiliates, that "imported significant amounts of crude oil, the price of which was directly and inextricably tied to the Dated Brent" (*id.* ¶ 491);

(h)     has, and has certain affiliates, that "imported Dated Brent priced cargoes" during June 2010, January and February 2011, September 2012, and the months immediately thereafter (*id.* ¶¶ 494-96); and

(i)     employed one or more futures traders whose alleged conduct resulted in the assessment of civil penalties "for execution of non-competitive

5

prearranged futures trades in crude oil on NYMEX" in an entirely different context (*id.* ¶ 457(f)).

What the Complaint fails to allege in any of its 598 paragraphs, however, is that STUSCO ever (a) engaged in any conduct designed to manipulate prices with respect to over-the-counter physical Brent crude oil and derivatives transactions, (b) was involved in any of the particular activities that Plaintiffs allege were manipulative, (c) conspired with any other entity, or (d) reported Brent crude oil prices (false or otherwise) to Platts.

The Complaint's sparse allegations relating to STUSCO are plainly insufficient to state a claim against it.  To establish market manipulation in violation of the CEA, Plaintiffs must allege and ultimately prove (1) that the defendant had the ability to influence market prices, (2) the existence of an artificial price, (3) that defendant caused the artificial price, and (4) that the defendant specifically intended to do so.  *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 173 (2d. Cir. 2013).  Yet, the Complaint does not allege any facts that would permit the inference that STUSCO had the "ability to influence market prices" for physical Brent crude oil or derivatives by reporting false or misleading information to Platts (the gravamen of Plaintiffs' claims) given that there are no allegations that STUSCO ever reported any information about prices for physical Brent or related derivatives to Platts.  The Complaint is also bereft of allegations that STUSCO "intended" to manipulate prices or that it in any way "caused artificial prices" for physical Brent crude oil or Brent derivatives.

Nor have Plaintiffs done any better with regard to their antitrust claims.  In any antitrust conspiracy case the "crucial question" is "whether the challenged conduct stems from an independent decision or from an agreement, tacit or express."  *Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (internal quotation marks omitted).  Here, there are no allegations that STUSCO acted in concert with any of the other

Defendants to manipulate Platts' Brent crude assessment, and no facts that would make it plausible to believe that STUSCO could or would have entered into such an agreement.  For these and the other reasons set forth in the Joint Trader Memo (Section II), Plaintiffs have failed to state any claims under the Sherman Act as to STUSCO.

There are also no allegations that STUSCO (a) was enriched by the purported scheme alleged in the Complaint, (b) that STUSCO benefited in any way at the expense of the Plaintiffs in this case, or (c) that STUSCO had any contractual or other relationship with any of the Plaintiffs relevant to the claims asserted in this case.  As such, Plaintiffs have provided no plausible basis for asserting a claim for unjust enrichment against STUSCO.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 737 (S.D.N.Y. 2013) ("Given that unjust enrichment is a claim in quasi-contract, it requires some relationship between plaintiff and defendant[.]"); *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (requiring for an unjust enrichment claim that the defendant receive a benefit at the expense of plaintiffs); *see also* Section III of the Joint Trader Memo.

Plaintiffs essentially ask the Court to infer that STUSCO violated the law because it allegedly engaged in some trading of Brent crude oil financial derivatives, as part of "Shell Trading," and is affiliated with other Shell entities involved in crude oil trading.  None of those three factors, either individually or taken together, provide a sufficient basis for allowing the claims against STUSCO to proceed.  Indeed, if trading in Brent crude financial derivatives were a sufficient basis for inferring liability, then all of the named Plaintiffs would be subject to the same inference.  Nor is it sufficient that STUSCO is part of "Shell's" commodity trading business in North America and is affiliated with other "Shell" entities involved in crude oil trading.  "The argument that [] grouped defendants joined the alleged conspiracies through their

7

corporate affiliation is precisely the sort of 'legal conclusion couched as a factual allegation' that *Twombly* and *Iqbal* deemed insufficient to state a claim." *Precision Assocs., Inc.*, 2011 WL 7053807, at *15; *see In re Aluminum*, 2015 WL 1344429, at *2 ("corporate affiliation does not alter [the] pleading requirement").  STUSCO should be dismissed pursuant to Rule 12(b)(6).

### 2.    STASCO

The allegations as to STASCO are similarly defective.  While the Complaint alleges that STASCO engaged in certain trading and price reporting activity related to over-the-counter physical Brent crude oil and derivatives during four months of the purported thirteen-year class period, it simply concludes that STASCO's conduct was intended to and had the effect of manipulating prices.  *See, e.g.*, Compl. ¶¶ 253, 274, 306, 319, 330, 337-45, 368, 389, 398-99, 409.  But "mere conclusory statements" such as those in the Complaint are not enough to avoid dismissal.  *In re Aluminum*, 2015 WL1344429, at *2-3; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (plaintiff "armed with nothing more than conclusions" does not satisfy the applicable pleading requirements).

With respect to Plaintiffs' CEA claims, the Complaint offers no factual allegations—just unsupported conclusions—that STASCO "intended" to manipulate prices and it fails to allege that STASCO "caused artificial prices" for physical Brent or derivatives, which are necessary elements of a viable market manipulation claim.  *In re Amaranth*, 730 F.3d at 173.   Merely alleging that something is "manipulative" or "artificial" does not make it so, and the Complaint is devoid of factual allegations that substantiate its accusations of manipulation by STASCO.

Plaintiffs' antitrust allegations against STASCO also fail to state a claim.  While they accuse STASCO of "collusive" conduct, *see, e.g.*, Compl. ¶¶ 283, 288, 336, 338, 399, Plaintiffs do not allege any facts to show that STASCO agreed with any of the other Defendants to manipulate Platts' Brent crude reporting, much less any facts that would make it plausible to

8

believe STASCO could or would have entered into such an agreement.  *See Mayor & City Council*, 709 F.3d at 135.  Accordingly, and for the reasons set forth in the Joint Trader Memo (Section II), Plaintiffs have not stated any claims under the Sherman Act as to STASCO.

Plaintiffs' unjust enrichment allegations against STASCO likewise fail.  The Complaint makes no allegations that STASCO benefited in any way at the expense of the Plaintiffs or that STASCO had any contractual or other relationship with any of the Plaintiffs relevant to the claims asserted in this case.  Plaintiffs thus have provided no plausible basis for asserting a claim for unjust enrichment against STASCO.  *See In re LIBOR*, 935 F. Supp. 2d at 737; *Georgia Malone & Co.*, 19 N.Y.3d at 516; *see also* Section III of the Joint Trader Memo.

Plaintiffs ask the Court to conclude that it is "plausible" that STASCO violated the law because it allegedly engaged in over-the-counter physical Brent crude oil and derivatives trading activity during four months of the purported thirteen-year class period in which Plaintiffs contend that the Brent crude oil market was distorted by inaccurate reporting.  Unsupported and conclusory accusations that STASCO's conduct was "manipulative," "collusive," or caused "artificial" prices, however, cannot transform allegations of trading activity into allegations of actionable conduct.  Because a court need not accept "legal conclusions couched as factual allegations," Plaintiffs' claims against STASCO should be dismissed pursuant to Rule 12(b)(6).  *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).

### B.   STASCO Is Not Subject to the Court's Jurisdiction

The claims against STASCO also should be dismissed pursuant to Rule 12(b)(2) for the independent reason that STASCO is not subject to *in personam* jurisdiction in this Court.  Courts in the United States may exercise jurisdiction over a non-resident defendant only in cases where the defendant has sufficient "minimum contacts" with the forum such "that he should reasonably

anticipate being haled into court there" with respect to the allegedly unlawful conduct. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).[2]

Two jurisdictional theories are constitutionally acceptable. First, "general or all-purpose jurisdiction" may be appropriate where the defendant is essentially a domiciliary of the forum. *Goodyear Dunlop Tires Ops. S.A. v. Brown*, 564 U.S. ----, 131 S. Ct. 2846, 2851 (2011). General jurisdiction supports adjudication of all claims against the defendant. Specific jurisdiction, on the other hand, "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (internal quotation marks omitted). In other words, specific jurisdiction is limited to claims arising out of forum contacts.

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "[T]o survive a motion to dismiss the plaintiff must plead 'factual allegations [that] constitute a *prima facie* showing of jurisdiction.'" *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010). Plaintiffs have not pleaded a basis for the exercise of jurisdiction over STASCO, and the facts described in the attached Lumens Declaration demonstrate that they cannot do so.

### 1.  STASCO Is Not "At Home" in the United States and Thus Is Not Subject to General Jurisdiction

STASCO—a UK company—does not have affiliations with the United States that are "so constant and pervasive 'as to render it essentially at home in the [United] State[s].'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2013) (*quoting Goodyear*, 131 S. Ct. at 2851). The

---

[2] There are also statutory and rule-based components to the personal jurisdiction analysis. Where, as here, federal law provides for nationwide service of process, "[t]he constitutionality of *in personam* jurisdiction . . . is to be determined by national, rather than local contacts" and the Court should therefore consider STASCO's contacts with the United States as a whole in determining whether personal jurisdiction is constitutionally available. *See SEC v. Softpoint, Inc.*, No. 95 Civ. 2951, 2001 WL 43611, at *5 (S.D.N.Y. Jan. 18, 2001).

"'paradigmatic' bases for the exercise of general jurisdiction" are "domicile, place of incorporation, and principal place of business." *Goodyear*, 131 S. Ct. at 2851. For STASCO, none of these is in the United States. *See* Lumens Decl. ¶ 3. Those facts presumptively preclude the exercise of general jurisdiction over STASCO.

Likewise, this is not "an exceptional case" in which a corporation might be subject to general jurisdiction in a place *other than* its principal place of business or place of incorporation. *See Daimler*, 134 S. Ct. at 761 n.19. Indeed, in *Daimler*, the Supreme Court made clear that the fact that the defendant in that case conducted billions of dollars a year of business in the jurisdiction *did not* make the case "exceptional."[3] Instead, the Court's example of an "exceptional" case was one in which a corporation effectively (albeit temporarily) changed its principal place of business by moving its offices to the United States and conducting all affairs from the United States due to wartime occupation of the corporation's home country. *See* 134 S. Ct. at 756 (discussing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)). Plaintiffs' allegations pertaining to STASCO—(1) unidentified operations in the United States and (2) importation of Brent crude oil into the United States, *see* Compl. ¶ 35—fall far short of this demanding standard, even if those allegations were true. *Cf. Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) ("[E]ven a company's 'engage[ment]' in a substantial, continuous, and systematic course of business' is alone insufficient to render it at home in a forum."); *In re Roman Catholic Diocese*, 745 F.3d 30, 39-41 (2d Cir. 2014) ("limited contacts" with forum insufficient for exercise of general jurisdiction).

---

[3]   *Compare* 134 S. Ct. at 763 (Sotomayor, J., concurring) (noting the billions of dollars of yearly business in California conducted by defendant's U.S. subsidiary), *with id.* at 762 n.20 ("General jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety . . . . A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.").

STASCO does not maintain an office, operate, pay taxes, own property, or have employees or agents within the United States (in Houston or elsewhere).  Lumens Decl. ¶¶ 7-12. Nor is STASCO licensed to conduct business in the United States.  *Id.* ¶ 6.  In addition, STASCO has not imported Brent, Forties, Oseberg or Ekofisk cargoes into the United States during the relevant time period.  *Id.* ¶ 5.  Indeed, paragraph 491 of Plaintiffs' Complaint, which purports to identify those entities that imported Brent crude oil into the U.S., omits STASCO.  It thus contradicts Plaintiffs' main jurisdictional allegation as to STASCO.[4]  As a result, STASCO's alleged contacts are insufficient to subject it to general jurisdiction.

Likewise absent here are any grounds for general jurisdiction over STASCO on the basis of STASCO's alleged affiliation with RDS, which is headquartered outside of the United States, Compl. ¶ 35, and which Plaintiffs agreed to drop from the case.  Plaintiffs have failed to allege any facts connecting STASCO to any RDS-affiliated U.S. subsidiary, and that would not be sufficient to establish general jurisdiction in any event.  *Daimler* made clear that a foreign corporation may not be subject to general jurisdiction on the basis of the contacts of an affiliated United States corporation unless the foreign corporation itself is "at home" in the jurisdiction. 134 S. Ct. at 759.

### 2. STASCO Does Not Have Sufficient United States Contacts Related to This Action to Subject It to Specific Jurisdiction

The touchstone of specific jurisdiction is the connection among the defendant, the forum, and the specific claims in the litigation.  *Walden v. Fiore*, 571 U.S. ----, 134 S.Ct. 1115, 1121 (2014).  To meet the constitutional requirements for specific jurisdiction, Plaintiffs must

---

[4]  Even accepting Plaintiffs' allegations regarding STASCO's alleged importation of Brent crude oil as true, the fact that STASCO could be deemed to have done business in the United States is insufficient to establish that STASCO is "at home" in the United States such that it is subject to general jurisdiction.  *See Daimler,* 134 S. Ct. at 762 & n.20; *Sonera*, 750 F.3d at 226.

demonstrate that: (1) STASCO has contacts with the U.S. by which it "purposefully avails itself of the privilege of conducting activities [in the U.S.], thus invoking the benefits and protections of its laws," and (2) that the lawsuit "aris[es] out of or [is] related to [those] contacts." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. ----, 131 S. Ct. 2780, 2787-788 (2011).

First, turning to the alleged conduct that forms the basis for the instant lawsuit, the gravamen of the Complaint is that Defendants engaged in manipulation with respect to reports regarding overseas transactions in physical Brent crude oil. These reports were made to Platts in Europe, and Platts' publication of prices based on these reports allegedly affected the prices of certain derivatives related to Brent. Plaintiffs' sparse allegations with respect to the activities from which this lawsuit "arises"—out-of-forum conduct with no specific connection to the United States—cannot justify the exercise of specific jurisdiction by this Court.

As demonstrated above, Plaintiffs have failed to allege a plausible factual basis to connect STASCO to the purported conspiracy they allege violated U.S. law and caused them injury. If STASCO is not factually connected to the underlying alleged violation, then it follows that Plaintiffs' claims cannot arise from STASCO's purported United States contacts—thus, specific jurisdiction is lacking. *Cf. In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481, 2015 WL 892255, at *9-10 (S.D.N.Y. Mar. 3, 2015) (foreign entity not subject to personal jurisdiction where inadequate allegations regarding foreign entity's participation in conspiracy).

Looking at the question the other way, focusing first on what conduct (if any) on the part of STASCO could be said to "purposefully avail" STASCO of the privilege of conducting business in this country, the limited contacts Plaintiffs allege STASCO has with the United States are not contacts which form part of their claims. Plaintiffs allege only two contacts between STASCO and the United States: (1) that STASCO "operates in the U.S., including in

Houston, Texas"; and (2) that STASCO "imports Brent Crude Oil into the U.S." Compl. ¶ 35. Even if those allegations were accurate (they are not), those alleged contacts are not part of the alleged market manipulation Plaintiffs contend caused them injury. Plaintiffs' lawsuit clearly does not "arise out of or relate to [those] contacts." *See Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 508 (6th Cir. 2014) ("The Supreme Court has emphasized that only consequences that *proximately* result form a party's contacts with a forum state will give rise to jurisdiction." (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)) (emphasis in original). Whether STASCO operates an office in Houston or imports Brent into the United States is of no moment to whether STASCO manipulated prices of Brent crude oil trades in Europe. Plaintiffs' allegations pertaining to STASCO's reports concerning Brent crude oil pertain to purported conduct that occurred wholly overseas. Plaintiffs have not—and, indeed, cannot—credibly allege that STASCO's alleged unlawful conduct regarding Brent occurred in the United States. Thus, Plaintiffs' failure to plead a sufficient basis for the exercise of jurisdiction requires dismissal pursuant to Rule 12(b)(2). *Lorely Fin (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, No. 12 Civ. 3723, 2013 WL 1294668, at *5 (S.D.N.Y. Mar. 28, 2013) (dismissal under Rule 12(b)(2) required unless the complaint contains "legally sufficient allegations of jurisdiction, including any averment of facts that, if credited, would suffice to establish jurisdiction over the defendant") (internal quotation marks omitted).

The mere allegation that Plaintiffs suffered harm in trading on United States markets is insufficient to demonstrate that the exercise of specific jurisdiction is appropriate. *See Walden*, 134 S. Ct. at 1125 ("[M]ere injury to a forum resident is not a sufficient connection to the forum."). In order to exercise jurisdiction under the so-called "*effects* test," discussed by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984), Plaintiffs must

demonstrate that STASCO engaged in "(1) intentional, tortious actions; (2) which were expressly aimed at the United States; (3) that causes harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the United States; and (4) the injuries that are the subject of the litigation arise from or relate to defendant's subject conduct." *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 478-79 (S.D.N.Y. 2010); *see generally In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 565 (M.D. Pa. Mar. 4, 2009) (determining specific jurisdiction did not exist under *Calder* test where plaintiffs failed to demonstrate that foreign defendant "engaged in discussions—either domestic or foreign— regarding prices of American . . . products").

The Second Circuit has emphasized that the effects test should "be applied with caution, particularly in the international context." *Leasco Data Processing Equipment v. Maxwell*, 468 F.2d 1326, 1341 (2d Cir. 1972), *abrogated on other grounds by Morrison v. Nat'l Australia Bank*, 468 F.2d 1326 (2d Cir. 2010). This caution is particularly appropriate in this case where Plaintiffs seek to have the Court exercise jurisdiction over a foreign corporation on the basis of vague allegations that fail to support an inference that the foreign corporation expressly aimed allegedly actionable activities at the United States. Although the Complaint contains various allegations regarding STASCO's purported trading activities, *see, e.g.*, ¶¶ 251-254, 280-81, 307-10, these allegations, which fail to describe conduct in the United States or purposefully directed at the United States in particular, cannot be the basis for specific jurisdiction.

## IV.  CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims against STASCO and STUSCO for failure to state a claim under Rule 12(b)(6) and, with respect to STASCO, for lack of personal jurisdiction under Rule 12(b)(2).

Dated:  April 6, 2015

Respectfully submitted,

/s/  Steven A. Reed
Steven A. Reed
R. Brendan Fee
Dana E. Becker
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:  (215) 963-5000
Facsimile:  (215) 963-5001
sreed@morganlewis.com
bfee@morganlewis.com
dana.becker@morganlewis.com

-and-

Willard K. Tom
J. Clayton Everett, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone:  (202) 739-3000
Facsimile:  (202) 739-3001
wtom@morganlewis.com
jeverett@morganlewis.com

*Counsel for Defendants,*
Shell International Trading and Shipping
Company Limited and
Shell Trading (US) Company

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2015, the foregoing Supplemental Memorandum of Law of Defendants Shell International Trading and Shipping Company Limited and Shell Trading (US) Company in Support of Their Motion to Dismiss the Second Amended Class Action Complaint was filed electronically with the Court and served electronically on all counsel of record who have entered an appearance through the Court's CM/ECF system.

/s/  R. Brendan Fee
*Counsel for Defendants,*
Shell International Trading and Shipping Company
Limited and Shell Trading (US) Company

17