UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:

NORTH SEA BRENT CRUDE OIL FUTURES            1:13-md-02475 (ALC)
LITIGATION

This document applies to:  ALL CASES.

-----------------------------------------------------------x


## DEFENDANT PHIBRO COMMODITIES LTD.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS TRADER PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT FOR LACK OF PERSONAL JURISDICTION

Defendant Phibro Commodities Ltd. ("Phibro Commodities") hereby replies to Plaintiffs' Opposition to Phibro Commodities' Motion to Dismiss for Lack of Personal Jurisdiction.

**I.     ARGUMENT**

In the Second Amended Consolidated Class Action Complaint, (the "Complaint"), the only specific factual allegation of wrongful conduct by Phibro Commodities is that, in September 2012, Phibro Commodities purchased a cargo of crude in London and the next day offered to sell the cargo in London at a lower price. This London transaction by a London company provides no basis for personal jurisdiction (or, for that matter, an actionable claim). Instead of specific facts sufficient to support personal jurisdiction, Plaintiffs impermissibly rely on conclusory assertions. Plaintiffs have failed to demonstrate that their claims arise out of or relate to Phibro Commodities' U.S. contacts or that Phibro Commodities is the alter ego of any U.S. entity.

**A.     Phibro Commodities Is Not Subject to General Jurisdiction**

General jurisdiction is only appropriate in those limited circumstances where a defendant is "essentially at home" in the forum. *Daimler AG v. Bauman,* ___ U.S. ___, 134 S. Ct. 746, 760–61 (2014) (place of incorporation and principal place of business are the "paradigm[atic]

all-purpose forums" due largely to their "virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable") (citations omitted); *see also Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) (per curiam) ("The natural result of general jurisdiction's 'at home' requirement is that 'only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there.'" (quoting *Daimler*, 134 S. Ct. at 760)).

Phibro Commodities' U.S. contacts are: certain employees of U.S. affiliate Phibro Service, Inc. ("Phibro Services") provide legal, accounting, and risk management support; Phibro Commodities communicates with, reports to, and receives some oversight from U.S. parent Phibro Trading, LLC ("Phibro Trading"); and Phibro Commodities traders initiate certain transactions in the U.S. in which Phibro Trading is the principal. These are not sufficient to deem Phibro Commodities at home in the U.S., particularly when Phibro Commodities (i) is incorporated in the UK, (ii) pays taxes in the UK and not in the US, (iii) maintains its offices in the UK, (iv) maintains its bank accounts in the UK, (v) develops and manages its own trading strategies in the UK, and (vi) has its own management, accounting, general administrative, analyst, and trader personnel in the UK. Plaisted Tr. 16-18, 20, 46-47, 72, 77-78, 108, 151-52.

Recognizing the insufficiency of the U.S. contacts, Plaintiffs argue that Phibro Commodities is the alter ego of its U.S. parent, Phibro Trading. The record does not support this theory.[1]  Plaintiffs have offered nothing to suggest Phibro Commodities was inadequately

---

[1] Factors relevant to determining whether a corporations form should be respected include: "(1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap of ownership, officers, directors, and personnel; (6) common office space, address and telephone numbers; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms' length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities." *MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d. Cir. 2001).

capitalized, funds or property were intermingled, dealings were not at arms' length, that they had common office space, address, or telephone numbers, or that they were not treated as separate profit centers. As to corporate formalities, Plaintiffs mistakenly assert that Phibro Commodities' board of directors did not meet; however, the board did meet by consent with its actions duly recorded in board minutes. Plaisted Tr. 143:23–144:13. Moreover, although Phibro Trading imposed credit and risk limits for Phibro Commodities, the Phibro Commodities traders developed and executed their trading strategies independently.[2] *Id.* 46:12, 108:3-5. And, while the parent allocated aggregate bonus amounts to Phibro Commodities, Phibro Commodities decided the internal allocations of those bonuses within Phibro Commodities in London. *Id.* 23:3-21  This is not a record that would support an alter ego finding.

### B. Phibro Commodities Is Not Subject to Specific Jurisdiction

As to specific jurisdiction, Plaintiffs must show that Phibro Commodities has "'purposefully directed' [its] activities at . . . the forum," the litigation "arise[s] out of or relate[s] to" at least one of the forum-related activities, and the exercise of jurisdiction "comport[s] with 'fair play and substantial justice.'" *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134, 136 (2d Cir. 2014) (citations omitted). Plaintiffs cannot satisfy the second and third requirements.

Phibro Commodities acknowledges that it has directed some limited activities at the U.S.—it relies on certain employees of Phibro Services; it communicates with and reports to Phibro Trading; and its traders caused trades to be executed in the U.S., albeit in the name of Phibro Trading. But Plaintiffs have not alleged or shown any fact that would establish that their

---

[2]  Plaintffs erroneously assert that there was "an overlap of executive personnel between the affiliated Phibro entities," (Opp'n at 6), but the cited deposition testimony does not support this assertion. *See* Plaisted Tr. 149-50. To the extent Plaintiffs place emphasis on Andy Hall's authority over Phibro Commodities in his role as CEO of Phibro Trading, Plaintiffs ignore Mr. Plaisted's testimony that Mr. Hall did not manage Phibro Commodities' day-to-day business. *Id.* 101:15-102:15.

claims arise out of or relate to these U.S.-directed activities. With respect to the trades, Plaintiffs have not identified a single U.S. trade initiated by the Phibro Commodities traders that Plaintiffs claim was part of any manipulation.[3]

The only Phibro Commodities trading activity Plaintiffs have alleged was manipulative is Phibro Commodities' purchase of a Brent Crude Oil cargo in September 2012, followed the next day by an offer to sell the cargo at a lower price. This activity took place in the UK, and there is no fact alleged or shown that would suggest it was directed at the U.S.

Lacking facts, Plaintiffs rely on conclusory assertions in the Complaint to argue that the litigation arises out of or relates to Phibro Commodities' forum-related activities. Their key assertion is that "Phibro Commodities knew that 'by reporting false information . . . used by Platts in calculating and publishing its Brent Crude Oil prices,' it would 'directly impact[] the prices of Brent Crude Oil futures contracts . . . traded in the U.S.' and 'benefit[] [its] positions in the Brent Crude Oil futures.'" Opp'n at 3. This is entirely conclusory. No specific facts support this conclusion. Plaintiffs have alleged no information that they claim Phibro Commodities falsely reported or any position Phibro Commodities held that would have benefitted from a false report if one had been made.

Plaintiffs' conclusory assertions cannot support personal jurisdiction. Although "all allegations are construed in the light most favorable to the plaintiff and all doubts are resolved in the plaintiff's favor," *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 487 (S.D.N.Y. 2011), *aff'd sub nom. Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7 (2d Cir. 2012) (citation omitted), ***"[c]onclusory allegations lacking factual specificity, however, do not satisfy***

---

[3] Plaintiffs present evidence that Phibro Commodities entered into Brent Crude Oil trades with U.S. companies HETCO and MSCGI (Opp'n at 2-3); however, these trades were entered outside the U.S., Plaisted Tr. 160:6-17, and Plaintiffs have made no allegation that these trades were improper in any respect.

06306-00001/6777184.1            4

*plaintiff's burden.*" *Id.* (citing *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184–86 (2d Cir. 1998)) (emphasis added).[4]

Unlike the Complaint in this case, the principal cases cited in the Opposition involve specific factual allegations establishing a nexus between the forum-related conduct and alleged conduct giving rise to the claims. *See In re Term Commodities Cotton Futures Litig.*, No. 12 Civ. 6126 (ALC), 2013 WL 9815198 (S.D.N.Y. Dec. 20, 2013) (plaintiffs alleged detailed facts regarding foreign defendant's originating 20% of U.S. cotton production and directing U.S. affiliates to enter into specifically described transactions designed to manipulate physical cotton deliveries in the U.S. to in turn manipulate prices in U.S. markets); *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513 (S.D.N.Y. 2008) (plaintiffs alleged specific manipulative transactions in the U.S. markets that were orchestrated by the foreign defendant). Here, Plaintiffs have failed to plead specific facts sufficient to establish a nexus between any forum-related conduct and any specifically alleged manipulative conduct.

Therefore, Plaintiffs have failed to establish that their claims arise out of or relate to Phibro Commodities' forum-related conduct, and haling Phibro Commodities before this Court would not comport with fair play or substantial justice.

## II.   CONCLUSION

Plaintiffs' claims against Phibro Commodities should be dismissed for lack of personal jurisdiction.

---

[4] To give the appearance that they have alleged more against Phibro Commodities than they actually have, Plaintiffs cite to allegations (which are themselves conclusory) that do not even relate to Phibro Commodities. For example, Plaintiffs cite the Complaint's allegations of supposed manipulation in January 2011; yet, the 40 cited paragraphs of the Complaint only describe alleged manipulation by defendants other than Phibro Commodities. Opp'n at 3, citing Complaint ¶¶ 278–318. Asserting that Phibro Commodities distorted prices of Brent futures contracts traded in the U.S., Plaintiffs cite to paragraphs in the Complaint listing volumes of Brent Crude imported into the U.S. by defendants other than Phibro Commodities. Opp'n at 3, citing Compl. ¶¶491–95, 575. In fact, Phibro Commodities did not import oil into the U.S. Plaisted Tr. 160–61.

Signature block and certificate of service

Dated: May 15, 2015.

                Respectfully submitted,

                **QUINN EMANUEL URQUHART & SULLIVAN L.L.P.**
                By: /s/ Karl S. Stern

                Karl S. Stern
                711 Louisiana Street, Suite 500
                Houston, Texas 77002
                Tel 713.221.7171
                E-mail karlstern@quinnemanuel.com

                **Attorneys for Defendants**
                **Phibro Trading LLC and**
                **Phibro Commodities Ltd.**

<h3 style="text-align:center">CERTIFICATE OF SERVICE</h3>

I hereby certify that on May 15, 2105, a copy of the foregoing was filed electronically and sent by e-mail to all parties who have appeared by operation of this Court's electronic filing system. Parties may access this filing through the court's CM/ECF System.

                /s/ Karl S. Stern
                Karl S. Stern