**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

In re:

NORTH SEA BRENT CRUDE OIL FUTURES       1:13-md-02475 (ALC)
LITIGATION

This document applies to:

1:13-cv-07443-ALC (Coordinated Case)

-----------------------------------------------------------x

**SUPPLEMENTAL MEMORANDUM OF LAW OF DEFENDANT**
**SHELL INTERNATIONAL TRADING AND SHIPPING COMPANY LIMITED**
**IN SUPPORT OF ITS MOTION TO DISMISS LANDOWNER PLAINTIFF'S**
**SECOND AMENDED CLASS ACTION COMPLAINT**

Willard K. Tom
J. Clayton Everett, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone:  (202) 739-3000
Facsimile:  (202) 739-3001
wtom@morganlewis.com
jeverett@morganlewis.com

Steven A. Reed
R. Brendan Fee
Dana E. Becker
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:  (215) 963-5000
Facsimile:  (215) 963-5001
sreed@morganlewis.com
bfee@morganlewis.com
dana.becker@morganlewis.com

*Counsel for Defendant*
**Shell International Trading and Shipping Company Limited**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     FACTUAL BACKGROUND ........................................................................................ 3

III.    ARGUMENT ................................................................................................................. 4

      A.      The Complaint Fails to State a Claim Against STASCO ...................................... 4

      B.      STASCO Is Not Subject to the Court's Jurisdiction............................................. 6

            1.      STASCO Is Not "At Home" in the United States and Thus Is Not
               Subject to General Jurisdiction Here ......................................................... 7

            2.      STASCO Does Not Have Sufficient United States Contacts
               Related to This Action to Subject It to Specific Jurisdiction................... 10

                   a.      STASCO Has Not Purposefully Availed Itself of the
                       Protection and Benefit of the Laws of the United States ............. 10

                   b.      STASCO's Alleged European Price Reporting Did Not
                       Target the United States and Thus STASCO Cannot be
                       Subject to Specific Jurisdiction Under the "Effects" Test .......... 12

IV.     CONCLUSION............................................................................................................ 15

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................2, 6

*Avila v. Lease Fin. Grp., LLC*,
   No. 11-Civ-8125, 2012 WL 1948777 (S.D.N.Y. May 30, 2012) .............................................2

*Bancroft & Masters, Inc. v. Augusta Nat'l.*,
   223 F.3d 1082 (9th Cir. 2000) ...............................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................4

*Best Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007) ...............................................................................14

*Beydoun v. Wataniya Restaurants Holding, Q.S.C.*,
   768 F.3d 499 (6th Cir. 2014) ...............................................................................11

*Calder v. Jones*,
   465 U.S. 783 (1984) ....................................................................................12, 14

*Corning Inc. v. Shin Etsu Prods. Co.*,
   242 F.3d 364 (2d Cir. 2000) ...............................................................................14

*Daimler AG v. Bauman*,
   571 U.S. ----, 134 S. Ct. 746 (2013) ............................................................... *passim*

*Goodyear Dunlop Tires Ops. S.A. v. Brown*,
   564 U.S. ----, 131 S. Ct. 2846 (2011) ....................................................6, 7, 8, 10

*Hinds County, Miss. v. Wachovia Bank, N.A.*,
   620 F. Supp. 2d 499 (S.D.N.Y. 2009) ......................................................................4

*In re Aluminum Warehousing Antitrust Litig.*,
   No. 13-md-2481, 2015 WL 1344429 (S.D.N.Y. Mar. 23, 2015) .........................................4, 6

*In re Aluminum Warehousing Antitrust Litig.*,
   No. 13-md-2481, 2015 WL 892255 (S.D.N.Y. Mar. 3, 2015) ...............................................11

*In re Chocolate Confectionary Antitrust Litig.*,
   602 F. Supp. 2d 538 (M.D. Pa. Mar. 4, 2009) ...............................................................14

*In re Roman Catholic Diocese*,
  745 F.3d 30 (2d Cir. 2014)........................................................................................8

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013)....................................................................................13

*In re Terrorist Attacks on Sept. 11, 2001*,
  718 F. Supp. 2d 456 (S.D.N.Y. 2010)......................................................................12

*Jazini v. Nissan Motor Co.*,
  148 F.3d 181 (2d Cir. 1998)......................................................................................7

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ...................................................................................4

*Laydon v. Mizuho Bank, Ltd.*,
  No. 12 Civ. 3419 (GBD), 2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) ..............13

*Leasco Data Processing Equip. v. Maxwell*,
  468 F.2d 1326 (2d Cir. 1972)..................................................................................12

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012).........................................................................................7

*Mayor & City Council of Baltimore v. Citigroup, Inc.*,
  709 F.3d 129 (2d Cir. 2013).......................................................................................5

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996).........................................................................................7

*Morrison v. Nat'l Australia Bank*,
  468 F.2d 1326 (2d Cir. 2010)..................................................................................12

*Perkins v. Benguet Consol. Mining Co.*,
  342 U.S. 437 (1952)...................................................................................................8

*Peterson v. Islamic Republic of Iran*,
  No. 10 Civ. 4518, 2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013) .............................7

*SEC v. Softpoint, Inc*.,
  No. 95 Civ. 2951, 2001 WL 43611 (S.D.N.Y. Jan. 18, 2001)...................................6

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
  750 F.3d 221 (2d Cir. 2014)...................................................................................8, 9

*Tamam v. Fransabank Sal*,
  677 F. Supp. 2d 720 (S.D.N.Y. 2010).......................................................................7

iii

*Walden v. Fiore*,
    571 U.S. ----, 134 S.Ct. 1115 (2014) ..........................................................................10, 12, 14

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)..........................................................................................................6

**RULES**

Federal Rule of Civil Procedure 12(b)(2) ..............................................................6, 7, 15

Federal Rule of Civil Procedure 12(b)(6) ...................................................................4, 15

## I.    **INTRODUCTION**

Plaintiff David Harter ("Plaintiff") brings this putative class action under the Sherman Act and various state laws alleging that certain trades of physical Brent crude oil in the North Sea adversely affected the prices he was able to charge for oil producing land and crude oil extracted from that land on the other side of the Atlantic Ocean.  Plaintiff's theory about how the alleged conduct supposedly affected him is built upon a series of speculative and vaguely defined links.  As set forth in Defendants' Memorandum of Law in Support of Their Joint Motion To Dismiss Plaintiff's Amended Class Action Complaint (the "Joint Memo") and their Memorandum of Law in Support of Their Joint Motion to Dismiss the Complaints as Exceeding the Extraterritorial Reach of U.S. Law (the "Extraterritoriality Memo") as well as the associated reply memoranda, the Second Amended Class Action Complaint ("Complaint" or "Compl.") (Dkt. 96) is deficient and should be dismissed as to all Defendants.  Among other things, Plaintiff's alleged harm is simply too remote from the alleged violation to be actionable under the federal antitrust laws and related state laws he seeks to invoke.[1]  In addition, this supplemental memorandum addresses the specific defects that doom the Complaint as to Shell International Trading and Shipping Company Limited ("STASCO") in particular.

Plaintiff's claims against STASCO should be dismissed for two independent reasons:

First, the Complaint fails to state a claim against STASCO because it does not allege any facts making it plausible to believe that STASCO violated U.S. law or harmed Plaintiff.  Plaintiff makes various generalized allegations about STASCO's purported trading activity, but the

---

[1]  Pursuant to the April 29, 2015 Stipulation and Order (Dkt. 90), Plaintiff has amended his previous complaint to, *inter alia*, substitute STASCO for Royal Dutch Shell, plc ("RDS") as a Defendant in the action without making other substantive changes to its allegations.  In accordance with the Stipulation and Order and the parties' agreement, the Joint Memo, the Extraterritoriality Memo, and the associated reply memoranda apply to the newly filed Complaint and are incorporated herein by reference.

Complaint alleges nothing more than unsupported conclusions concerning STASCO's supposed manipulation of prices with respect to physical Brent crude oil transactions.  In evaluating the sufficiency of a complaint, "mere conclusory statements" are not to be credited.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Because there are no well-pleaded factual allegations addressed to STASCO's involvement in the alleged conduct that forms the basis for Plaintiff's claims, the Complaint should be dismissed as to STASCO.

Second, the Complaint fails to allege facts establishing a *prima facie* basis for the exercise of personal jurisdiction over STASCO under either a general or specific jurisdiction theory.  As demonstrated by the Declaration of Armand Lumens (hereinafter, "Lumens Decl."),[2] STASCO is a UK limited corporation with its principal place of business in London, England, and thus is not "at home" in the United States for purposes of general jurisdiction.  Plaintiff is also incapable of establishing "specific jurisdiction" over STASCO.  The only STASCO contacts with the United States alleged in the Complaint are that STASCO (1) operates in the United States and (2) imports Brent crude oil into the United States.  Compl. ¶ 11.  However, contrary to Plaintiff's allegations, STASCO does not operate in this country and has not imported Brent, Forties, Oseberg or Ekofisk cargoes into the United States.  Lumens Decl. ¶¶ 5-12.  And, even if Plaintiff's allegations were true, the limited contacts alleged as to STASCO are plainly insufficient to provide a constitutionally adequate basis for the exercise of personal jurisdiction under a specific jurisdiction theory, because they are unrelated to the claims asserted.  Nor are Plaintiff's attenuated allegations that he and other putative class members suffered harm in the United States sufficient to subject STASCO to personal jurisdiction in this Court because

---

[2]   A court "may consider materials outside the pleadings in deciding questions of personal jurisdiction." *Avila v. Lease Fin. Grp., LLC*, No. 11-Civ-8125, 2012 WL 1948777, at *2 (S.D.N.Y. May 30, 2012).

Plaintiff has failed to demonstrate that STASCO expressly aimed its conduct at the United States with the goal of causing harm to landowners and leaseholders of oil producing properties in this country. This is an indispensable requirement for the exercise of specific personal jurisdiction under the so-called "effects" test and it is plainly missing here.

## II.   FACTUAL BACKGROUND

Plaintiff's Complaint, which is brought on behalf of a putative class of landowners and leaseholders of U.S. oil-producing land, alleges, *inter alia*, that Defendants conspired to manipulate prices with respect to physical Brent crude oil and derivatives transactions reported to Platts, an industry publication, in Europe. *See* Compl. ¶ 3. As described more fully in the Joint Memo and Extraterritoriality Memo, Platts publishes a daily assessment of spot prices for Brent crude oil. *Id.* ¶¶ 74-75. Plaintiff claims Defendants manipulated the price assessments published by Platts by entering into false, manipulative or misleading transactions. *Id.* ¶ 90. According to Plaintiff, the Platts assessments for Brent crude oil are correlated with the prices for West Texas Intermediate ("WTI") and Louisiana Light Sweet ("LLS") crude oil (*id.* ¶¶ 40, 47), and the prices paid to members of the putative class for oil pumped from their land and leaseholds in the United States supposedly were tied to the prices for WTI and LLS. *Id.* ¶ 62. Based on that tenuous chain of causation, Plaintiff claims that amounts he and the putative class members received for the sale of oil or land were improperly "suppressed." *Id.* ¶¶ 5, 60.

Plaintiff asserts claims under Sections 1 and 2 of the Sherman Act and various state laws against various Defendants. *Id.* ¶¶ 264-344. The Complaint refers to "Shell" as sometimes including "wholly-owned or closely held subsidiaries of" RDS, a public company organized under the law of England and Wales, but it names only one RDS-affiliated entity—STASCO—as a defendant in this case. *See* Compl. ¶ 11.

3

STASCO, which is incorporated separately from RDS, is a limited company headquartered in London, England.  Lumens Decl. ¶ 3.  Plaintiff alleges (inaccurately) that STASCO "operates in the United States, including in Houston, Texas [and] imports Brent Crude Oil into the U.S."  Compl. ¶ 11.  No other STASCO contacts with the United States are alleged.

STASCO is not registered to do business in the United States and maintains no agent for transaction of business in the United States.  Lumens Decl. ¶¶ 6-7.  It neither owns nor leases any real property in the United States and it does not maintain an office or mailing address in the United States.  *Id.* ¶¶ 8-9.  Nor has STASCO imported Brent, Forties, Oseberg or Ekofisk cargoes into the United States.  *Id.* ¶ 5.

## III.   ARGUMENT

### A.      The Complaint Fails to State a Claim Against STASCO

Dismissal pursuant to Rule 12(b)(6) is appropriate if the Complaint fails to allege "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In order to avoid dismissal in an antitrust conspiracy case, the Complaint must "answer the basic questions:  who, did what, to whom (or with whom), where, and when?"  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).  In other words, Plaintiff must allege specific *facts* establishing the involvement of each defendant in the alleged conspiracy.  *See Hinds County, Miss. v. Wachovia Bank, N.A.*, 620 F. Supp. 2d 499, 512-16 (S.D.N.Y. 2009) (dismissing antitrust complaint because there was "no specific factual averment of involvement" by each defendant in the alleged conspiracy); *see also In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481, 2015 WL 1344429, at *3 (S.D.N.Y. Mar. 23, 2015) (dismissing federal and state antitrust claims as to certain defendants where "the claims as

to them are based solely on corporate proximity"). These standards apply equally to antitrust conspiracy claims asserted under state antitrust and unfair trade practices acts.[3]

Once Plaintiff's conclusory allegations in this case are cast aside, it is apparent that Plaintiff has failed to plead any facts satisfying even the most basic elements of an antitrust claim against STASCO. Indeed, the Complaint offers no factual allegations—just unsupported conclusions—that STASCO entered into an agreement to unlawfully restrain trade. Although Plaintiff accuses STASCO of "collusive" conduct, *see, e.g.*, Compl. ¶¶ 99, 110, 113, 116, 122, 133, 135, 191, he does not allege any facts to show that STASCO agreed with any of the other Defendants to manipulate Platts' Brent crude assessment, much less any facts that would make it plausible to believe STASCO could or would have entered into such an agreement. Failure to plead facts demonstrating that the "crucial question" of "whether the challenged conduct stems from an independent decision or from an agreement, tacit or express" is fatal to Plaintiff's federal antitrust and state law claims. *See Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (internal quotation marks omitted).

Rather than pleading facts in his Complaint, Plaintiff asks the Court to simply conclude that it is "plausible" that STASCO violated the law because STASCO allegedly engaged in physical Brent crude oil and derivatives trading activity during four months of the purported thirteen-year class period in which Plaintiff contends that prices for Brent crude oil were distorted by inaccurate reporting, which in turn supposedly led to distortion of prices for WTI and LLS, and, through a speculative chain of causation, to lower prices on oil extracted from U.S. land and sale prices for the land itself (without ever identifying a single specific transaction

---

[3] As explained in the Joint Memo, the various state antitrust and unfair trade practices statutes asserted in the Complaint must be construed in harmony with federal antitrust law. *See* Joint Memo at § III.B.3 & Appendix 1 (collecting cases and statutes).

in which Plaintiff participated and was harmed). Unsupported and conclusory accusations that STASCO's conduct was "manipulative," "collusive," or caused "artificial" prices, however, cannot transform allegations of trading activity into allegations of actionable conduct. *See In re Aluminum*, 2015 WL 1344429, at *2-3; *see also Iqbal*, 556 U.S. at 678-79 (2009) (plaintiff "armed with nothing more than conclusions" does not satisfy the applicable pleading requirements). Accordingly, and for the reasons set forth in the Joint Memo (Section II), Plaintiff has not stated any claims under the Sherman Act or state antitrust statutes as to STASCO.[4]

### B.    STASCO Is Not Subject to the Court's Jurisdiction

The claims against STASCO also should be dismissed pursuant to Rule 12(b)(2) for the independent reason that STASCO is not subject to *in personam* jurisdiction in this Court. Courts in the United States may exercise jurisdiction over a non-resident defendant only in cases where the defendant has sufficient "minimum contacts" with the forum such "that he should reasonably anticipate being haled into court there" with respect to the allegedly unlawful conduct. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).[5]

Two jurisdictional theories are constitutionally acceptable. First, "general or all-purpose jurisdiction" may be appropriate where the defendant is essentially a domiciliary of the forum. *Goodyear Dunlop Tires Ops. S.A. v. Brown*, 564 U.S. ----, 131 S. Ct. 2846, 2851 (2011).

---

[4] Plaintiff also fails to offer any allegations unique to STASCO pertaining to the asserted state law unfair trade practices claims. These claims are subject to dismissal as to STASCO for the reasons set forth fully in the Joint Memo, Section III.B.

[5] There are also statutory and rule-based components to the personal jurisdiction analysis. Where, as here, federal law provides for nationwide service of process, "[t]he constitutionality of *in personam* jurisdiction . . . is to be determined by national, rather than local, contacts" and the Court should therefore consider STASCO's contacts with the United States as a whole in determining whether personal jurisdiction is constitutionally available. *See SEC v. Softpoint, Inc.*, No. 95 Civ. 2951, 2001 WL 43611, at *5 (S.D.N.Y. Jan. 18, 2001).

General jurisdiction supports adjudication of all claims against the defendant.  Specific

jurisdiction, on the other hand, "is confined to adjudication of issues deriving from, or connected

with, the very controversy that establishes jurisdiction."  *Id.* (internal quotation marks omitted).

In other words, specific jurisdiction is limited to claims arising out of forum contacts.

 "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears

the burden of showing that the court has jurisdiction over the defendant."  *Metropolitan Life Ins.*

*Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  "[T]o survive a motion to

dismiss the plaintiff must plead 'factual allegations [that] constitute a *prima facie* showing of

jurisdiction.'"  *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010).  In

evaluating jurisdiction on a Rule 12(b)(2) motion, the Court need not credit "conclusory

statements . . . without any supporting facts," *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d

Cir. 1998), or accept as true "a legal conclusion couched as a factual allegation," *Licci ex rel.*

*Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (citation omitted).  And,

the Court is only "required to accept the allegations in the complaint as true so long as they are

uncontroverted by defendant's affidavits."  *Peterson v. Islamic Republic of Iran*, No. 10 Civ.

4518, 2013 WL 1155576, at *11 (S.D.N.Y. Mar. 13, 2013).

 Plaintiff has not pleaded a basis for the exercise of jurisdiction over STASCO, and the

facts set forth in the attached Lumens Declaration demonstrate that Plaintiff cannot do so.

 **1. STASCO Is Not "At Home" in the United States and Thus Is Not**
   **Subject to General Jurisdiction Here**

 STASCO—a UK company—does not have affiliations with the United States that are "so

constant and pervasive 'as to render it essentially at home in the [United] State[s].'"  *Daimler AG*

*v. Bauman*, 571 U.S. ----, 134 S. Ct. 746, 751 (2013) (*quoting Goodyear*, 131 S. Ct. at 2851).

The "'paradigm' bases for the exercise of general jurisdiction" are "domicile, place of

incorporation, and principal place of business." *Goodyear*, 131 S. Ct. at 2851. For STASCO, none of these is in the United States. *See* Lumens Decl. ¶ 3. Those facts preclude the exercise of general jurisdiction over STASCO.

This is not "an exceptional case" in which a corporation might be subject to general jurisdiction in a place *other than* its principal place of business or place of incorporation. *See Daimler*, 134 S. Ct. at 761 n.19. Indeed, in *Daimler*, the Supreme Court made clear that the fact that the defendant in that case conducted billions of dollars a year of business in the jurisdiction *did not* make the case "exceptional."[6] Instead, the Court's example of an "exceptional" case was one in which a corporation effectively (albeit temporarily) changed its principal place of business by moving its offices to the United States and conducting all affairs from the United States due to wartime occupation of the corporation's home country. *See id.* at 756 (discussing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)). Plaintiff's allegations pertaining to STASCO—(1) unidentified operations in the United States and (2) importation of Brent crude oil into the United States, *see* Compl. ¶ 11—fall far short of this demanding standard, even if those allegations were true. *Cf. Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) ("[E]ven a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is alone insufficient to render it at home in a forum."); *In re Roman Catholic Diocese*, 745 F.3d 30, 39-41 (2d Cir. 2014) ("limited contacts" with the forum are insufficient for the exercise of general jurisdiction).

---

[6] *Compare* 134 S. Ct. at 763 (Sotomayor, J., concurring) (noting the billions of dollars of yearly business in California conducted by defendant's U.S. subsidiary), *with id.* at 762 n.20 ("General jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety . . . . A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.").

STASCO does not maintain an office, operate, pay taxes, own property, or have employees or agents within the United States (in Houston or elsewhere).  Lumens Decl. ¶¶ 7-12. Nor is STASCO licensed to conduct business in the United States.  *Id.* ¶ 6.  In addition, STASCO has not imported Brent, Forties, Oseberg or Ekofisk cargoes into the United States during the relevant time period.  *Id.* ¶ 5.  Indeed, paragraph 226 of Plaintiff's Complaint, which purports to identify those entities that imported Brent crude oil into the United States, fails to identify a single import transaction involving STASCO.  That paragraph thus contradicts Plaintiff's main jurisdictional allegation as to STASCO.[7]  As a result, STASCO's alleged contacts are insufficient to subject it to general jurisdiction.

Likewise absent here are any grounds for general jurisdiction over STASCO on the basis of STASCO's alleged affiliation with RDS, which is headquartered outside of the United States, Compl. ¶ 11, and which Plaintiff agreed to drop from this case.  Plaintiff has pleaded only unsupported conclusory allegations pertaining to the purported trading activities of RDS-affiliated U.S. entities.  *See id.* ¶¶ 204-206.  Notably absent are any factual allegations connecting STASCO to the alleged activities of any RDS-affiliated U.S. subsidiary.  But, even if Plaintiff had pleaded such facts, that would not be sufficient to establish general jurisdiction. *Daimler* made clear that a foreign corporation may not be subject to general jurisdiction on the basis of the contacts of an affiliated United States corporation unless the foreign corporation itself is "at home" in the jurisdiction.  134 S. Ct. at 759.

---

[7]  Even accepting Plaintiff's allegations regarding STASCO's alleged importation of Brent crude oil as true, the fact that STASCO could be deemed to have done business in the United States is insufficient to establish that STASCO is "at home" in the United States such that it is subject to general jurisdiction.  *See Daimler*, 134 S. Ct. at 762 & n.20; *Sonera*, 750 F.3d at 226.

**2.      STASCO Does Not Have Sufficient United States Contacts Related to This Action to Subject It to Specific Jurisdiction**

Plaintiff's efforts to exercise specific jurisdiction over STASCO also fail.  The Complaint does not contain allegations that, if true, demonstrate that STASCO could foresee being haled into court in the United States for crude oil transactions and price reporting activities that occurred entirely in Europe.  Indeed, the only controversy-related contact alleged in the Complaint is the purported effect that STASCO's physical Brent trading had on the prices of Brent derivatives and futures, which purportedly impacted the LLS and WTI benchmarks, which in turn supposedly depressed physical oil and land prices in Louisiana and elsewhere in the United States.  Those highly attenuated and speculative links do not demonstrate that STASCO has any meaningful connection to the United States with respect to the claims at issue in this lawsuit.  Because that essential prerequisite is absent from Plaintiff's Complaint, STASCO is not subject to specific jurisdiction in this Court.

**a.      STASCO Has Not Purposefully Availed Itself of the Protection and Benefit of the Laws of the United States**

The touchstone of specific jurisdiction is the connection among the defendant, the forum, and the specific claims in the litigation.  *See Walden v. Fiore*, 571 U.S. ----, 134 S.Ct. 1115, 1121 (2014).  To meet the constitutional requirements for specific jurisdiction, Plaintiff must demonstrate that:  (1) STASCO has contacts with the United States by which it "purposefully avails itself of the privilege of conducting activities [in the U.S.], thus invoking the benefits and protections of its laws," and (2) that the lawsuit "aris[es] out of or [is] related to [those] contacts."  *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. ----, 131 S. Ct. 2780, 2787-788 (2011).

First, none of the alleged conduct that is the basis for the instant lawsuit occurred in the United States, and Plaintiff has failed to plead any facts that could support a conclusion that

10

STASCO "purposefully availed" itself of the privilege of conducting business in this country. The gravamen of the Complaint is that Defendants engaged in manipulation with respect to reports to Platts in Europe regarding transactions in physical Brent crude oil in Europe. Thus, Plaintiff's sparse allegations with respect to the activities from which this lawsuit "arises"— conduct outside the forum with no specific connection to the United States—cannot justify the exercise of specific jurisdiction by this Court.

As demonstrated above, Plaintiff also has failed to allege a plausible factual basis to connect STASCO to the purported conspiracy that Plaintiff alleges violated U.S. law and caused injury. Therefore, even if Plaintiff had pleaded a sufficient nexus between the alleged conspiracy and the United States (which he has not), he cannot establish jurisdiction over STASCO. *See In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481, 2015 WL 892255, at *9-10 (S.D.N.Y. Mar. 3, 2015) (foreign entity not subject to personal jurisdiction where inadequate allegations regarding foreign entity's participation in conspiracy).

Second, the limited contacts Plaintiff alleges STASCO has with the United States are not contacts that form part of Plaintiff's claims, and, thus, it cannot be said that this lawsuit "arises out of" those contacts. As discussed, Plaintiff alleges only two contacts between STASCO and the United States: (1) that STASCO "operates in the United States, including in Houston, Texas"; and (2) that STASCO "imports Brent Crude Oil into the U.S." Compl. ¶ 11. Even if those allegations were accurate (they are not), those alleged contacts are not part of the supposed conduct that Plaintiff contends caused injury. *See Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 508 (6th Cir. 2014) ("The Supreme Court has emphasized that only consequences that *proximately* result form a party's contacts with a forum state will give rise to jurisdiction." (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)) (emphasis in

11

original).  Whether STASCO operates an office in Houston or imports Brent into the United

States is of no consequence to whether STASCO manipulated prices of Brent crude oil trades in

Europe.

>    **b.      STASCO's Alleged European Price Reporting Did Not Target**
>    **the United States and Thus STASCO Cannot be Subject to**
>    **Specific Jurisdiction Under the "Effects" Test**

Plaintiff appears to invite the Court to exercise specific jurisdiction over STASCO based

solely on alleged harm which occurred in the United States—reduced compensation for

unidentified sales of U.S. oil and U.S. oil producing land—which Plaintiff contends was

somehow caused by STASCO's price reporting in Europe with respect to transactions in entirely

separate grades of crude in the North Sea.  But, Plaintiff's alleged harm is insufficient to

establish personal jurisdiction over STASCO.  *See Walden*, 134 S. Ct. at 1125 ("[M]ere injury to

a forum resident is not a sufficient connection to the forum.").  In order to exercise jurisdiction

under the so-called "effects" test, discussed by the Supreme Court in *Calder v. Jones*, 465 U.S.

783 (1984), Plaintiff must demonstrate that STASCO engaged in "(1) intentional, tortious

actions; (2) which were expressly aimed at the United States; (3) that causes harm, the brunt of

which is suffered—and which the defendant knows is likely to be suffered—in the United States;

and (4) the injuries that are the subject of the litigation arise from or relate to defendant's subject

conduct."  *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 478-79 (S.D.N.Y.

2010).

The Second Circuit has emphasized that the effects test should "be applied with caution,

particularly in the international context."  *Leasco Data Processing Equip. v. Maxwell*, 468 F.2d

1326, 1341 (2d Cir. 1972), *abrogated on other grounds by Morrison v. Nat'l Australia Bank*, 468

F.2d 1326 (2d Cir. 2010).  Such caution is particularly appropriate in this case where Plaintiff

seeks to have the Court exercise jurisdiction over a foreign corporation on the basis of vague

allegations regarding conduct in Europe that fail to support an inference that the foreign

corporation expressly aimed allegedly actionable activities at the United States.

Plaintiff's threadbare allegations regarding the foreseeability of Defendants' alleged

overseas conduct on the WTI and LLS price benchmarks, *see* Compl. ¶¶ 4, 221-223—even if

accepted as true—fall well short of the requirement that Plaintiff plead facts demonstrating that

STASCO *expressly aimed* its conduct at the United States, and more specifically at Plaintiff's oil

producing land and leasehold interests. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d

659, 674 (2d Cir. 2013) ("The fact that harm in the forum is foreseeable . . . is insufficient for

purpose of establishing specific personal jurisdiction over a defendant."); *see also J. McIntyre*,

131 S. Ct. at 2788-89 (rejecting the notion that the foreseeable effects of a defendant's actions

can be used to establish specific jurisdiction); *Bancroft & Masters, Inc. v. Augusta Nat'l.*, 223

F.3d 1082, 1088 (9th Cir. 2000) (noting it is the presence of allegations demonstrating

"individualized targeting" of the forum which "separates [cases in which courts find personal

jurisdiction over defendants] from others in which [courts] have found the effects test

unsatisfied"); *cf. Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419 (GBD), 2015 WL 1515358, at

*4-6 (S.D.N.Y. Mar. 31, 2015) (dismissing various defendants after declining to exercise

jurisdiction under the "effects" test where plaintiffs failed to plead facts demonstrating

defendants "'expressly aimed' any actions at the United States giving rise to injuries that serve as

the basis for the instant suit").

Indeed, the Complaint is devoid of any allegations explaining how STASCO possibly

could have intended through its trades in physical Brent crude oil in Europe to influence the

prices of Plaintiff's oil and property interests in the United States that are purportedly linked to

the WTI or LLS benchmarks.  Absent "facts showing the knowing nature" of STASCO's

particular actions and the purported effect on Plaintiff's land and leasehold interests in the United

States, Plaintiff has failed to satisfy its burden of pleading a *prima facie* case of specific personal

jurisdiction.  *See Corning Inc. v. Shin Etsu Prods. Co.*, 242 F.3d 364, at *3 (2d Cir. 2000) ("It is

not enough to simply allege that [Defendant]'s actions would have an impact in the United

States."); *see also generally In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538,

565 (M.D. Pa. Mar. 4, 2009) (determining specific jurisdiction did not exist under *Calder* test

where plaintiffs failed to demonstrate that foreign defendant "engaged in discussions—either

domestic or foreign—regarding prices of American . . . products").

     In short, Plaintiff's allegations of manipulation of Brent crude oil prices, which allegedly

occurred entirely in Europe and at most had only an attenuated effect in the United States, fail to

demonstrate that the United States was "the focal point both of the story and of the harm

suffered."  *See Best Lines, Inc. v. Walker*, 490 F.3d 239, 243 (2d Cir. 2007) (quoting *Calder*, 465

U.S. at 789).  The only part of Plaintiff's narrative that implicates the United States is the alleged

unspecified devaluation of his interests in oil producing land, which is several steps removed

from the overseas conduct upon which Plaintiff's claims against STASCO are based.  But "[t]he

proper question" to determine specific personal jurisdiction "is not where the plaintiff

experienced a particular injury or effect but whether the defendant's conduct connects him to the

forum in a meaningful way."  *Walden*, 134 S. Ct. at 1125.  Here, STASCO's trades in physical

Brent crude oil and reporting to Platts in Europe do not connect it to the United States in any

meaningful way, and thus, STASCO should not be forced to defend itself against Plaintiff's

claims in a United States court.

## IV.    **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's claims against STASCO

for failure to state a claim under Rule 12(b)(6) and for lack of personal jurisdiction under Rule

12(b)(2).

Dated:  May 29, 2015                              Respectfully submitted,

/s/ Steven A. Reed
Steven A. Reed
R. Brendan Fee
Dana E. Becker
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:  (215) 963-5000
Facsimile:  (215) 963-5001
sreed@morganlewis.com
bfee@morganlewis.com
dana.becker@morganlewis.com

-and-

Willard K. Tom
J. Clayton Everett, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone:  (202) 739-3000
Facsimile:  (202) 739-3001
wtom@morganlewis.com
jeverett@morganlewis.com

*Counsel for Defendant,*
Shell International Trading and Shipping
Company Limited

15

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2015, Defendant Shell International Trading and Shipping Company Limited's Supplemental Memorandum of Law in Support of its Motion to Dismiss the Second Amended Class Action Complaint was filed electronically with the Court and served electronically on all counsel of record who have entered an appearance through the Court's CM/ECF system.

/s/ R. Brendan Fee
*Counsel for Defendant,*
Shell International Trading and Shipping Company Limited